Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
La Quinta, California 92253
Telephone:  (760) 564-3804
Facsimile:  (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Date:  June 24, 2013<br>Time:  2:00 p.m.<br>Courtroom:  2 |

**PLEASE TAKE NOTICE** that, on June 24, 2013, at 2:00 p.m.., in Courtroom 2 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California 92501—or at such other date, time, or place as the Court may designate—Plaintiff Collette McDonald will move for an order granting preliminary approval of a class-wide settlement reached in the above-captioned action, as well as for conditional certification of the Settlement Class defined in the Settlement Agreement and General Release ("Settlement Agreement").[1]  The Motion will be made and based upon this Notice of Motion; the Memorandum of Points and Authorities appended hereto; the Declarations of Alan Harris and Collette McDonald filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

The required Local Rule 7-3 meet-and-confer took place commencing on March 20, 2013, and on various dates thereafter.  (<u>See</u> May 23, 2013, Decl. of Alan Harris in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("May 23, 2013, Harris Decl.") ¶ 11.)

Dated:  May 23, 2013                                    HARRIS & RUBLE

                                                        _____/s/ *David Zelenski*_____
                                                        Alan Harris
                                                        David Zelenski
                                                        *Attorneys for Plaintiff*

---

[1] Unless otherwise noted, capitalized terms herein have the meanings set forth in the Settlement Agreement.

# *MEMORANDUM OF POINTS AND AUTHORITIES*

## *Table of Contents*

I.      Introduction ................................................................................................ 1

II.     Summary of the Litigation's Claims and of the Relevant Procedural
        History .................................................................................................... 2

        A.      Plaintiff's Initiation of this Action and the Execution of the
                Settlement Agreement .................................................................. 2

        B.      The Specific Claims for Relief Alleged in this Action ................... 4

III.    Summary of the Settlement Agreement .................................................. 7

        A.      The Gross Settlement Payment and Net Settlement Fund ............ 7

        B.      The Estimated Recovery to Class Members ................................. 9

        C.      Additional Non-Monetary Relief Under the Settlement
                Agreement .................................................................................. 11

        D.      Incentive Awards and Attorney's Fees ....................................... 12

        E.      Notice to the Class ..................................................................... 15

        F.      Release Provisions and Opting Out ............................................ 16

IV.     The Court Should Conditionally Certify the Settlement Class and
        Should Preliminarily Approve the Settlement Agreement ..................... 17

        A.      Class Certification Is Warranted ................................................ 17

        B.      The Settlement Meets the Requirements for Preliminary
                Approval ..................................................................................... 20

                i.      Settlement Negotiations Were Conducted at Arm's
                        Length ............................................................................ 20

                ii.     The Settlement Has No Obvious Deficiencies ................. 21

MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION

a.    *The Strength of Plaintiff's Case*...............................................21

b.    *The Likely Duration of Further Litigation* ...............................23

c.    *The Risk of Maintaining Class-Action Status Through Trial*.............................................................23

d.    *The Settlement Amount Offered*................................................24

e.    *The Extent of Discovery and Stage of the Proceedings* ................................................................24

f.    *The Experience and Views of Counsel* ...................................25

g.    *The Reaction of Class Members to the Proposed Settlement*.................................................................25

V.    *Conclusion* .......................................................................................25

MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION

1

## *Table of Authorities*

2

### *Cases*

3

4

Adames v. Mitsubishi Bank, Ltd.
  133 F.R.D. 82 (E.D.N.Y. 1989) .................................................................. 17

5

6

Aguirre v. DSW, Inc.
  2012 U.S. Dist. LEXIS 62984 (C.D. Cal. filed Jan. 19, 2012) ................... 22

7

8

Amgen, Inc. v. Conn. Ret. Plans & Trust Funds
  133 S. Ct. 1184 (2013) .............................................................................. 18

9

10

Angeles v. US Airways, Inc.
  2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013) ...................................... 21

11

12

Blackwell v. Skywest Airlines, Inc.
  2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008) ................................ 21–22

13

14

Boeing Co. v. Van Germet
  444 U.S. 472 (1980) .................................................................................. 14

15

16

Bright v. 99¢ Only Stores
  189 Cal. App. 4th 1472 (2010) ..................................................................... 7

17

18

Brinker Rest. Corp. v. Superior Court
  53 Cal. 4th 1004 (2012) ............................................................................ 23

19

20

Campbell v. First Investors Corp.
  2012 WL 5373423 (S.D. Cal. filed Oct. 29, 2012) .................................... 13

21

22

Cicero v. DirecTV, Inc.
  2010 WL 2991486 (C.D. Cal. filed July 27, 2010) .................................... 14

23

24

Cortez v. Purolator Air Filtration Prods. Co.
  23 Cal. 4th 163 (2000) ............................................................................ 6, 7

25

26

Craft v. County of San Bernardino
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................... 14

27

28

Dunleavy v. Nadler
   213 F.3d 454 (9th Cir. 2000) ................................................................ 17, 21, 24

Elliott v. ITT Corp.
   150 F.R.D. 569 (N.D. Ill. 1992) ........................................................................ 19

Garcia v. Bana
   2013 WL 621793 (N.D. Cal. filed Feb. 19, 2013) .............................................. 8

Hanlon v. Chrysler Corp.
   150 F.3d 1011 (9th Cir. 1998) .......................................................................... 21

Harris v. Investors' Business Daily, Inc.
   138 Cal. App. 4th 28 (2006) .............................................................................. 6

Helm v. Alderwoods Group, Inc.
   2011 WL 5573837 (N.D. Cal. filed Nov. 15, 2011) ......................................... 12

Hopkins v. Stryker Sales Corp.
   2013 WL 496358 (N.D. Cal. filed Feb. 6, 2013) .............................................. 14

In re NASDAQ Market-Makers Antitrust Litig.
   187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................... 23

In re Warfarin Sodium Antitrust Litig.
   212 F.R.D. 231 (D. Del. 2002) ........................................................................ 24

Int'l Union v. Gen. Motors Corp.
   497 F.3d 615 (6th Cir. 2007) ........................................................................... 16

Jones v. Spherion Staffing LLC
   2012 WL 3264081 (C.D. Cal. filed Aug. 7, 2012) ........................................... 22

Joseph v. Gen. Motors Corp.
   109 F.R.D. 635 (D.C. Colo. 1986) ................................................................... 19

Kakani v. Oracle Corp.
   2007 WL 2221073 (N.D. Cal. filed Aug. 2, 2007) ........................................... 10

Labbate-D'Alauro v. GC Servs. Ltd. P'ship
   168 F.R.D. 451 (E.D.N.Y. 1996) ..................................................................... 17

MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION

Linney v. Cellular Alaska P'ship
    151 F.3d 1234 (9th Cir. 1998) ........................................................................ 17

Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.
    221 F.R.D. 523 (C.D. Cal. 2004).................................................................... 23

Negrete v. Allianz Life Ins. Co. of N. Am.
    287 F.R.D. 590 (C.D. Cal. 2012) ................................................................... 18

Officers for Justice v. Civil Serv. Comm.
    688 F.2d 615 (9th Cir. 1982) ......................................................................... 17

Ordonez v. Radio Shack, Inc.
    2013 WL 210223 (C.D. Cal. filed Jan. 17, 2013)......................................... 24

Rannis v. Recchia
    380 Fed. Appx. 646 (9th Cir. 2010)............................................................... 18

Rodriguez v. Disner
    88 F.3d 645 (9th Cir. 2012) ........................................................................... 12

Rodriguez v. West Publ'g Corp.
    2007 WL 2827379 (C.D. Cal. filed Sept. 10, 2007).......................... 23, 24, 25

Rodriguez v. West Publ'g Corp.
    563 F.3d 948 (9th Cir. 2012) .................................................................... 12, 23

Rowe v. N.H. Motor Transp. Ass'n
    552 U.S. 364 (2008)....................................................................................... 21

Sandoval v. Tharaldson Employee Mgmt., Inc.
    2010 WL 2486346 (C.D. Cal. filed June 15, 2010)...................................... 10

Sibert v. TV Magic, Inc.
    2012 WL 3589795 (C.D. Cal. filed Aug. 21, 2012)...................................... 18

Singer v. Becton Dickinson & Co.
    2010 WL 2196104 (S.D. Cal. filed June 1, 2010) ......................................... 14

Smith v. CRST Van Expedited, Inc.
    2013 WL 163293 (S.D. Cal. filed Jan. 14, 2013) .................................... 10, 13

MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION

Staton v. Boeing Co.
    327 F.3d 938 (9th Cir. 2003) ...................................................... 15

Steinhebel v. Los Angeles Times Commc'ns, LLC
    126 Cal. App. 4th 696 (2005) ...................................................... 6

Tomkins v. C & S Wholesale Grocers, Inc.
    2012 U.S. Dist. LEXIS 24943 (E.D. Cal. filed Feb. 27, 2012) ...................................... 7

Torrisi v. Tucson Elec. Power Co.
    8 F.3d 1370 (9th Cir. 1993) ...................................................... 21

Van Vranken v. Atl. Richfield Co.
    901 F. Supp. 294 (N.D. Cal. 1995) .............................................. 13

Vasquez v. Coast Valley Roofing, Inc.
    266 F.R.D. 482 (E.D. Cal. 2010) ...................................... 10, 13, 14

Wal-Mart Stores, Inc. v. Dukes
    131 S. Ct. 2541 (2011) ........................................................... 18

Wren v. RGIS Inventory Specialists
    2011 WL 1230826 (N.D. Cal. filed Apr. 1, 2011) ........................... 12

Yokoyama v. Midland Nat'l Life Ins. Co.
    594 F.3d 1087 (9th Cir. 2010) .................................................. 20

York v. Starbucks Corp.
    2009 WL 8617536 (C.D. Cal. filed Dec. 3, 2009) ............................ 6

Young v. Polo Retail, Inc.
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................... 20

**Statutes**

49 U.S.C. § 41713 ................................................................. 21

Cal. Bus. & Prof. Code § 17200 ........................................ 3, 6, 7

Cal. Bus. & Prof. Code § 17203 ............................................. 7

Cal. Bus. & Prof. Code § 17208 .......................................................................... 7

Cal. Civ. Proc. Code § 338 ................................................................................. 7

Cal. Lab. Code § 201 ..................................................................................... 2, 6

Cal. Lab. Code § 202 ........................................................................................ 6

Cal. Lab. Code § 203 .......................................................................... 2, 6, 8, 22

Cal. Lab. Code § 226 ...................................................................... 2, 5, 6, 8, 22

Cal. Lab. Code § 226.7 ................................................................... 2, 4, 5, 11

Cal. Lab. Code § 512 ...................................................................... 2, 4, 9, 23

Cal. Lab. Code § 1198 ...................................................................................... 7

Cal. Lab. Code § 2802 ................................................................................. 2, 5

*Rules*

Fed. R. Civ. Proc. 23 ..................................................... 15, 16, 17, 18, 19, 23

*Regulations*

8 Cal. Code Regs. § 11090 .......................................................... 4, 5, 7, 22

*Secondary Sources*

4 Alba Conte & Herbert Newberg
    Newberg on Class Actions (4th ed. 2002) ................................................ 23

Manual for Complex Litigation (Second) (1985) ........................................ 20

The Preexistence Principle and the Structure of the Class Action
    103 Colum. L. Rev. 149 (2003) ................................................................ 18

*I.    Introduction.*

Plaintiff Collette McDonald and Defendant Airport Terminal Services, Inc. ("ATS") have reached a settlement of the class-wide claims alleged in the above-captioned action.  Plaintiff now moves for preliminary approval of the settlement and conditional certification of the Settlement Class.

In this action, Plaintiff contends that ATS did not provide employees with statutorily required meal-period wages for those instances when their time records reflect a missed meal.  She also contends that ATS failed to reimburse employees for the costs associated with maintaining their uniforms.  On account of these alleged failures, Plaintiff contends that ATS's pay stubs failed to specify all of the information required by the California Labor Code.  Similarly, she contends that ATS's alleged failures have resulted in a violation of the Labor Code's requirement that all wages due and owing be paid to former employees upon the termination of their employment.  Finally, she alleges that ATS failed to provide adequate seating to its employees.

Under the terms of the Settlement Agreement executed by the parties, a Gross Settlement Payment of $250,000 will be tendered to compensate employees for the alleged violations.  After deducting amounts for requested attorney's fees and costs, estimated claims-administration expenses, and an "incentive" award to Plaintiff (all as approved by the Court), a total of $132,500 will remain for the Settlement Class—a substantial figure, given that ATS's records demonstrate that, under Plaintiff's theory of recovery, total damages for missed meals amounts to only $46,151.47.  Accordingly, assuming 100% participation by all 1,098 members of the Settlement Class, the plan of allocation specified by the Settlement Agreement will compensate employees for *nearly all* missed meals.  Also assuming 100% participation, the settlement will provide *additional* payments of $77.42 to each participating Settlement Class member for Plaintiff's remaining claims.[2]  Furthermore, ATS has agreed to certain non-monetary

---

[2] Of course, a 100% participation rate is unlikely for any class of an appreciable size. As explained below, because the Gross Settlement Payment is non-reversionary,

relief, including (i) providing additional training to its supervisor personnel as to meal breaks, (ii) requesting the installation of additional seating as permitted by airport operators and regulators, and (iii) requesting the provision of floor mats as permitted by airport operators and regulators to alleviate the stress of standing when seating is an impossibility. All told, this is an outstanding result, particularly in light of the arguably *dispositive airline-industry defenses* applicable to each of Plaintiff's claims, discussed *infra*. The settlement should therefore be approved.

## II.    Summary of the Litigation's Claims and of the Relevant Procedural History.

### A.    Plaintiff's Initiation of this Action and the Execution of the Settlement Agreement.

Plaintiff commenced this action in Riverside County Superior Court on November 2, 2011. (Dec. 9, 2011, Notice of Removal of Civil Action to U.S. Dist. Court ("Dec. 9, 2011, Notice of Removal") Ex. 1 at p. 18 of 58.) ATS removed Plaintiff's action to this Court on December 9, 2011. (See generally Dec. 9, 2011, Notice of Removal.)

Plaintiff's Complaint alleges that ATS failed to provide California employees with proper meal breaks under sections 226.7 and 512 of the Labor Code, and that ATS failed to reimburse California employees for the costs of maintaining their uniforms under section 2802 of the Labor Code. (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 7–8, 11–12, 32–35, 40–41.) The Complaint also alleges a derivative claim—stemming from the meal-break allegations—that ATS failed to provide adequate pay stubs to employees under section 226 of the Labor Code. (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 9–10, 36–39.) Similarly, the Complaint alleges a derivative claim—also stemming from the meal-break allegations, as well as from the uniform-reimbursement allegations—that ATS failed to pay all wages due and owing to former employees under sections 201 through 203 of the Labor Code. (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 13, 42–44.) In addition, the Complaint alleges a derivative unfair-competition claim under

---

participating Settlement Class members stand to receive significantly more than these estimated amounts.

section 17200 *et seq.* of the California Business and Professions Code stemming from ATS's alleged failures to provide proper breaks and uniform-maintenance reimbursement.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 45–46.)  Finally, the Complaint alleges that ATS failed to provide adequate seating for employees.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 14–15.)

After ATS had removed Plaintiff's Complaint to this Court, Plaintiff filed a Motion to strike ATS's Answer, arguing that ATS's alleged affirmative defenses were defective under both federal and state procedural law.  (Dec. 29, 2011, Notice of Mot. & Mot. to Strike Def. ATS's Ans. to Pl. Collette McDonald's Unverified Compl. for Damages at 2:20–10:4.)  In lieu of having the Court rule on Plaintiff's Motion, the parties stipulated to a continuance of the hearing on the Motion so that they could meet and confer about resolving Plaintiff's claims.  (See generally Jan. 5, 2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans. to Pl. Collette McDonald's Compl., *et al.*, Pending Early Settlement Discussions; Feb. 8, 2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans. to Pl. Collette McDonald's Compl., *et al.*, Pending Early Settlement Discussions.)  In connection with these attempts at resolution, ATS's counsel provided Plaintiff's counsel with information as to the size of the class defined by the Complaint and the total number of missed meal breaks during the class period.  (May 23, 2013, Harris Decl. ¶¶ 6–7.)  ATS also provided information regarding ATS's provision of employee seating, including evidence that Plaintiff herself had been provided a seat at her desk.  (May 23, 2013, Harris Decl. ¶ 6.)

After extensive negotiations, including several settlement offers and counteroffers, the parties agreed that the services of a private mediator would assist in resolving Plaintiff's claims.  (May 23, 2013, Harris Decl. ¶ 8.)  In June 2012, the parties selected Lynn Frank of Frank and Feder—a mediator well-versed in wage-and-hour actions, including those brought in the airline industry—to act as mediator.  (May 23, 2013, Harris Decl. ¶ 8.)  Mediation with Ms. Frank went forward in September 2012, during which the parties executed a short-form Memorandum of Understanding providing for

1    the creation of a $250,000 settlement fund.  (May 23, 2013, Harris Decl. ¶ 8.)

2         Over the course of the next several months, the parties proceeded to negotiate the

3    terms of a long-form settlement agreement encompassing the terms of the Memorandum

4    of Understanding.  (May 23, 2013, Harris Decl. ¶ 8.)  In May 2013, those negotiations

5    resulted in the execution of the Settlement Agreement that is presently before the Court

6    for preliminary approval.  (May 23, 2013, Harris Decl. ¶ 8.)

7         **B.    *The Specific Claims for Relief Alleged in this Action.***

8         The relevant Industrial Welfare Commission ("IWC") wage order provides that

9    "[n]o employer shall employ any person for a work period of more than five (5) hours

10   without a meal period of not less than 30 minutes."  8 Cal. Code Regs. § 11090 subsec.

11   11(A).  <u>See</u> also Cal. Lab. Code § 512(a) (stating that "[a]n employer may not employ an

12   employee for a work period of longer than five hours per day without providing the

13   employee with a meal period of not less than 30 minutes").  Under the Labor Code, "[i]f

14   an employer fails to provide an employee a meal period . . . in accordance with an

15   applicable order of the [IWC], the employer shall pay the employee one additional hour

16   of pay at the employee's regular rate of compensation for each work day that the meal . . .

17   period [wa]s not provided."  Cal. Lab. Code § 226.7(b).  As alleged in the Complaint, the

18   nature of ATS's hourly employees' work at airport worksites at times prevented them

19   from taking their meal breaks.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶ 8.)  Also as

20   alleged in the Complaint, the time sheets that ATS has maintained for its hourly

21   employees reflect those instances when the employees indicated they had been unable to

22   take a required meal period.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶ 8 & p. 36 of 58

23   (coding a missed meal as "NO LUNCH").)  Although ATS's time records reflect these

24   "cancelled" meal breaks, the pay stubs that ATS provided to its hourly employees reflect

25   that no meal-period compensation was paid for the missed meals.  (Dec. 9, 2011, Notice

26   of Removal Ex. 1 at ¶¶ 8, 34.  <u>Compare</u> Dec. 9, 2011, Notice of Removal Ex. 1 at p. 36 of

27   58 (time sheet reflecting 39.8 total "Reg." hours worked and 1.3 total "OT" hours

28   worked, along with "NO LUNCH" on "2/28") <u>with</u> Dec. 9, 2011, Notice of Removal Ex.

1  1 at p. 35 of 58 (pay stub reflecting compensation for 39.8 "REGULAR" hours and 1.3
2  "OVERTIME" hours, but no compensation for the 2/28 missed meal).)  Plaintiff
3  therefore contends that ATS is liable for an additional hour of pay for each workday
4  where a "NO LUNCH" notation is made on its hourly employees' time sheets.

5      In addition to the missed-meal claim, Plaintiff's Complaint alleges that ATS failed
6  to reimburse hourly employees for the costs of maintaining their uniforms.  (Dec. 9,
7  2011, Notice of Removal Ex. 1 at ¶¶ 11–12, 40–41.)  Under section 2802 of the Labor
8  Code, an employer is required to "indemnify his or her employee[s] for all necessary
9  expenditures or losses incurred by the employee[s] in direct consequence of the discharge
10  of [their] duties."  Cal. Lab. Code § 2802(a).  Plaintiff contends that uniform-
11  maintenance expenses are a "necessary expenditure" for which ATS bears the burden of
12  paying.  See 8 Cal. Code Regs. § 11090 subsec. 9(A) (stating that, "[w]hen uniforms are
13  required by the employer to be worn by the employee as a condition of employment, such
14  uniforms shall be provided and maintained by the employer").

15      Based on these two underlying claims, Plaintiff's Complaint alleges several
16  derivative violations of California law.  First, the Complaint alleges that ATS's failure to
17  provide meal-period-premium wages for "NO LUNCH" workdays results in a violation
18  of California's pay-stub statute, section 226 of the Labor Code.  (Dec. 9, 2011, Notice of
19  Removal Ex. 1 at ¶¶ 9–10, 36–39.)  Section 226 requires employers to provide their
20  employees with "accurate itemized statement[s]" accompanying their paychecks, listing,
21  inter alia, all "gross wages earned" and "net wages earned."  Cal. Lab. Code § 226(a).  If
22  "[a]n employee suffer[s] injury as a result of a knowing and intentional failure by an
23  employer" to provide such information, the employee "is entitled to recover the greater of
24  all actual damages" or statutory damages of up to $100 for each incorrect pay stub.  Id.
25  § 226(e).  According to Plaintiff, whenever ATS coded a "NO LUNCH" workday for an
26  hourly employee, it should have paid a missed-break wage under section 226.7 of the
27  Labor Code—a wage that should have appeared on the employee's pay stubs.  Plaintiff
28  contends that the failure to list these wages on pay stubs entitles hourly employees to the

1  damages set forth in section 226.

2       Plaintiff's second derivative claim is for "continuing wages" under sections 201

3  through 203 of the Labor Code.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 13, 42–

4  44.)  Section 201 states that, "[i]f an employer discharges an employee, the wages earned

5  and unpaid at the time of discharge are due and payable immediately."  Cal. Lab. Code

6  § 201(a).  Similarly, if an employee quits, "his or her wages shall become due and

7  payable not later than 72 hours thereafter, unless the employee has given 72 hours

8  previous notice of his or her intention to quit, in which case the employee is entitled to

9  his or her wages at the time of quitting."  Id. § 202(a).  If an employer "willfully fails to

10  pay" former employees within the time limits set by sections 201 or 202, whichever the

11  case may be, then "the wages of the employee[s] shall continue as a penalty from the due

12  date thereof at the same rate until paid or until an action therefor is commenced," up to a

13  maximum of thirty days.  Id. § 203(a).  Plaintiff was not paid all missed-breaks wages as

14  detailed above, entitling her to continuing wages under section 203.  See, e.g., York v.

15  Starbucks Corp., 2009 WL 8617536 at *4 (C.D. Cal. filed Dec. 3, 2009) (explaining that

16  continuing-wage liability can be "derivative" of an underlying failure to pay wages);

17  Steinhebel v. Los Angeles Times Commc'ns, LLC, 126 Cal. App. 4th 696, 703–04, 711–

18  12 (2005) (describing "derivative" continuing-wage liability).  The same goes for all

19  other similarly situated hourly-paid employees of ATS.

20       Plaintiff's third derivative claim is for unfair competition under Business and

21  Professions Code section 17200 et seq.  (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 45–

22  46.)  Section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent

23  business act or practice."  Cal. Bus. & Prof. Code § 17200.  In effect, "[a]n action based

24  on this state statute 'borrows' violations of other laws when committed pursuant to

25  business activity."  Harris v. Investors' Business Daily, Inc., 138 Cal. App. 4th 28, 32–33

26  (2006).  Because unpaid wages are recoverable under section 17200 et seq., see Cortez v.

27  Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 177–78 (2000), Plaintiff may

28  properly seek restitution of missed-break wages and uniform-maintenance expenses for

themselves and all similarly situated hourly employees under the unfair-competition law simultaneously with their claims under the Labor Code, <u>see</u> Cal. Bus. & Prof. Code § 17203 (stating that a "court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition").

Finally, Plaintiff's Complaint asserts a claim for ATS's alleged failure to provide adequate seating at its airport worksites. (Dec. 9, 2011, Notice of Removal Ex. 1 at ¶¶ 14–15.) In this regard, the relevant wage order requires that "[a]ll working employees . . . be provided with suitable seats when the nature of the work reasonably permits the use of seats." 8 Cal. Code Regs. § 11090 subsec. 14(A). A violation of the IWC wage order's seating requirement is an actionable violation of the Labor Code. <u>See</u> Cal. Lab. Code § 1198 (stating that "the standard conditions of labor fixed by the [IWC] shall be . . . the standard conditions of labor" and that "[t]he employment of any employee . . . under conditions of labor prohibited by the order is unlawful"); <u>Bright v. 99¢ Only Stores</u>, 189 Cal. App. 4th 1472, 1479 (2010) (holding that "section 1198 renders unlawful violations of the suitable seating requirement of [the] wage order").

**III.    Summary of the Settlement Agreement.**

    **A.    The Gross Settlement Payment and Net Settlement Fund.**

The Settlement Class consists of all non-exempt employees who were employed by ATS within California from November 2, 2007 (*i.e.*, four years prior to the filing of the Complaint), to the date that the Court grants preliminary approval of the Settlement Agreement.[3] (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 3.) According to ATS, there

---

[3] Plaintiffs' Labor Code claims for missed breaks and for uniform-maintenance reimbursement, which are subject to a three-year limitations period, <u>see</u> Cal. Civ. Proc. Code § 338 (adopting a three-year statute for "action[s] upon a liability created by statute), are subsumed by the Business and Professions Code's longer, four-year statutory period, <u>see</u> Cal. Bus. & Prof. Code § 17208 (stating that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"). <u>See Tomkins v. C & S Wholesale Grocers, Inc.</u>, 2012 U.S. Dist. LEXIS 24943 at *11–12 [Westlaw cite unavailable] (E.D. Cal. filed Feb. 27, 2012) (explaining that, because California's unfair-competition law "'admits of no exceptions,'" a wage-and-hour claim brought via section 17200 *et seq.* "'is subject to the four-year period of limitations created by . . . section [17208]'") (quoting <u>Cortez</u>, 23 Cal.

1    are a total of 1,098 Settlement Class members.  (May 23, 2013, Harris Decl. ¶ 7.)  Under

2    the Settlement Agreement, ATS will pay $250,000 in cash for the benefit of these 1,098

3    members.  (May 23, 2013, Harris Decl. ¶¶ 1, 7 & Ex. 1 at § 7.)  The $250,000 settlement

4    amount constitutes the Gross Settlement Payment.  (May 23, 2013, Harris Decl. ¶ 1 &

5    Ex. 1 at § 7.)  The Gross Settlement Payment will be used to pay the costs of delivering

6    the Class Notice and the claim form to the Settlement Class, as well as to pay (i)

7    attorney's fees and costs to Class Counsel and (ii) an incentive award to Plaintiff, all as

8    approved by the Court.[4]  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.A–C.)

9       After the above-noted deductions have been made from the Gross Settlement

10    Payment, the balance (the "Net Settlement Fund") will be distributed in a two-step

11    process to Settlement Class members in satisfaction of the claims alleged in the

12    Complaint.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)  In the first step, 33.33%

13    of the Net Settlement Fund will be distributed among Settlement Class members who do

14    not "opt out" of the settlement and who submit valid and timely claim forms.[5]  (May 23,

15    2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)  This distribution will be made on a *pro rata*

16    basis according to the number of "cancelled" meal periods experienced by each Class

17    Member, as reflected in ATS's payroll records, relative to the total number of cancelled

18    meal periods for all Class Members who have submitted valid and timely claim forms.

---

20    4th at 178–79).  The one-to-three-year statutory period for Plaintiff's wage-statement claim, see Garcia v. Bana, 2013 WL 621793 at *12–13 (N.D. Cal. filed Feb. 19, 2013) (explaining that claims under section 226 are subject to a one-year or three-year limitations period, depending on whether "actual" or "statutory" damages are sought), is likewise shorter than the four-year period under the unfair-competition law.  Similarly, Plaintiff's claim for continuing wages is no longer than four years.  See Cal. Lab. Code § 203(b) (stating that "[s]uit may be filed for [continuing-wage] penalties at any time before the expiration of the statute on an action for the wages from which the penalties arise").

24    [4] Class Counsel will request an award of attorney's fees of up to 33% of the Gross Settlement Payment, an award of costs not to exceed $15,000, and an incentive payment to Plaintiff of up to $5,000.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.)  The reasonableness of these amounts is discussed *infra* in section III.D. of this Memorandum. As for claims-administration fees and expenses, Class Counsel presently anticipate that such fees and costs will not exceed $20,000.  (May 23, 2013, Harris Decl. ¶ 11.)

27    [5] Settlement Class members who do not opt out as described *infra* in section III.F. of this Memorandum are referred to as "Class Members."  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 3.)

(May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)  Accordingly, the more workdays that ATS's time sheets reflect a "NO LUNCH" coding for a participating Class Member, the greater his or share.  In the second step of the distribution, the remaining 66.67% of the Net Settlement Fund will be divided evenly among all Class Members who submit valid and timely claim forms.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)

The portion of the Net Settlement Fund distributed according to cancelled meal periods will be characterized as 50% wages, 25% liquidated damages, and 25% interest; the portion distributed evenly among Class Members will be characterized as 75% expense reimbursement and 25% interest.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)  As to the portion constituting wages, relevant employer taxes will be withheld.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.D.)  Unclaimed funds (on account of, for example, uncashed settlement checks) will escheat to the State of California Controller's Office unclaimed-property fund, where they will be held for Class Members as unclaimed property.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 12.E.)  ATS is therefore not entitled to a reversion of any amounts in the Net Settlement Fund.  (See May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.)

## B.    The Estimated Recovery to Class Members.

Again, the total Settlement Class consists of 1,098 members.  (May 23, 2013, Harris Decl. ¶ 7.)  According to ATS's records, across the 1,098 members, there were a total of 3,701 cancelled meals (i.e., "NO LUNCH" codings) during the period of time from November 2, 2007, through December 27, 2012, for shifts of longer six hours.[6] (May 23, 2013, Harris Decl. ¶ 7.)  Also according to ATS's records, those 3,701 cancelled meals were experienced by 410 separate Settlement Class members.  (May 23, 2013, Harris Decl. ¶ 7.)  On average, then, the 410 Settlement Class members experienced approximately 9 cancelled meals each.

---

[6] The six-hour cut-off is significant because, under the Labor Code, if employees work shifts shorter than six hours, they may "waive" their meal periods, meaning that cancelled meals during shifts of fewer than six hours arguably do not require the payment of meal-period wages.  See Cal. Lab. Code § 512(a) (stating that, "if the total work period per day of the employee is no more than six hours, the meal period may be waived").

Assuming that the Court approves $82,500 in attorney's fees (equal to 33% of the Gross Settlement Payment), $15,000 in litigation expenses, $20,000 in claims-administration expenses, and a $5,000 incentive award, $127,500 will remain for distribution to participating Class Members.  Again, of the $127,500, 33.33%, or $42,495.75, will be allocated for cancelled meals, and 66.67%, or $85,004.25, will be allocated for the remaining claims.  Assuming a 100% participation rate, the average net payment to Class Members who experienced cancelled meals will therefore be $103.65 (= $42,495.75 ÷ 410 Class Members), or $11.48 per cancelled meal (= $42,495.75 ÷ 3,701 cancelled meals).  Also assuming a 100% participation rate, the average net settlement payment to Class Members for Plaintiff's non-meal-break claims will be $77.42 (= $85,004.25 ÷ 1,098 Class Members).

Of course, "[h]uman nature dictates that[,] despite counsel's best efforts, not all [Settlement C]lass members will submit claims."  Kakani v. Oracle Corp., 2007 WL 2221073 at *4 (N.D. Cal. filed Aug. 2, 2007).  Accordingly, it is more reasonable to assume a participation rate by the Settlement Class between 25% and 50%.  See e.g., Smith v. CRST Van Expedited, Inc., 2013 WL 163293 at *4 (S.D. Cal. filed Jan. 14, 2013) (in approving a settled wage-and-hour class action, noting that 44% of the class had submitted claims, which the court characterized as a "positive" response); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 485 (E.D. Cal. 2010) (in approving a settled wage-and-hour class action, noting that "31% of the class submitted claims"); Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response).  If 50% of the Settlement Class submit claims, the average net settlement payment for cancelled meals doubles to $207.29 (= $42,495.75 ÷ 205 Class Members), or $22.96 per cancelled meal (= $42,495.75 ÷ 1,851 cancelled meals), and the average net settlement payment for Plaintiff's remaining claims doubles to $154.83 (= $85,004.25 ÷ 549 Class Members); if 25% of the Settlement Class submit claims, the average net

settlement payment for cancelled meals increases to $412.58 (= $42,495.75 ÷ 103 Class Members), or $45.94 per cancelled meal (= $42,495.75 ÷ 925 cancelled meals), and the average net settlement payment for Plaintiff's remaining claims increases to $309.11 (= $85,004.25 ÷ 275 Class Members).

The estimated average net payments represent a substantial proportion of the damages in this case.  This follows because, under the Labor Code, an employee's meal-period wage is equal to his or her "regular rate," which for present purposes is his or her hourly wage, see Cal. Lab. Code § 226.7 (stating that the extra compensation owing for a missed meal equals "one additional hour of pay at the employee's regular rate of compensation"), and because, according to ATS's records, the average hourly wage for Settlement Class members was only $12.47.  (May 23, 2013, Harris Decl. ¶ 7.) Accordingly, total damages for missed meals equals $46,151.47 (= 3,701 cancelled meals × $12.47 hourly wage), or $112.56 (= $46,151.47 ÷ 410 Settlement Class members) for each Settlement Class member who experienced a cancelled meal.  Accordingly, even assuming a 100% participation rate, the $42,495.75 estimated net recovery for cancelled meals will compensate employees nearly in full for all cancelled meals.  Furthermore, the additional $85,004.25 that Settlement Class members will receive on account of Plaintiff's remaining allegations represents a reasonable compromise of those claims— particularly given the potentially dispositive defenses available to ATS in this action, discussed *infra* in section IV.B.ii.a. of this Memorandum.

## C.   *Additional Non-Monetary Relief Under the Settlement Agreement.*

Aside from the above-described cash fund, ATS has agreed under the Settlement Agreement to provide the Settlement Class with additional non-monetary relief. Specifically, within 180 days of final approval of the settlement:

A.   ATS will provide refresher training to supervisors to clarify that all breaks that do not interfere with airline routes, rates, or services are permitted and authorized.

B.   ATS will inquire of third-party airport operators and regulators

1     whether mats are permitted and, if permitted, will request their

2     installation at work locations.

3     C.     ATS will inquire with third-party airport operators and regulators

4            whether additional seating is permitted and, if permitted, will request

5            provision of such seating at locations where it will not interfere with

6            the nature of, or practical realities regarding, the work performed.

7     (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 8.)  This is a noteworthy prospective

8     benefit, given that Plaintiff is a former employee who necessarily would not have been

9     able to obtain such relief even if she had prevailed at trial.  See, e.g., Helm v. Alderwoods

10    Group, Inc., 2011 WL 5573837 at *1, 5 (N.D. Cal. filed Nov. 15, 2011) (in a wage-and-

11    hour action alleging Labor Code violations, holding that "[a] former employee does not

12    have standing to seek injunctive relief for any of the violations of his former employer

13    because he cannot demonstrate  a 'real or immediate threat of irreparable injury'").

14    Because "this concession from [ATS] exceeds what Plaintiff[] could have obtained even

15    if [she] had prevailed at trial," it has value separate and apart from the cash fund

16    described above.  Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *28 (N.D.

17    Cal. filed Apr. 1, 2011).

18              *D.     Incentive Awards and Attorney's Fees.*

19         Under the terms of the Settlement Agreement, Class Counsel will apply for an

20    incentive award to Plaintiff McDonald of $5,000 for her efforts in bringing and

21    prosecuting this case.  (May 23, 2013, Harris Decl. ¶ 1 Ex. 1 at § 7.C.)  Granting the

22    requested incentive award will *still* result in the settlement amounts detailed above.

23         According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action

24    cases" and "are intended to compensate class representatives for work done on behalf of

25    [a] class, to make up for financial or reputational risk undertaken in bringing the action,

26    and, sometimes, to recognize their willingness to act as a private attorney general."

27    Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis

28    removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  As recently

explained by the Southern District of California, courts should consider "'the risk to the class representative in commencing suit, both financial and otherwise,'" as well as "'the amount of time and effort spent by the class representative'" and "'the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation.'" Smith, 2013 WL 163293 at *6 (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors weigh in favor of approving the award. First, as a direct result of Plaintiff's having brought this suit, participating Class Members will likely receive all of their outstanding meal-break compensation, plus additional amounts for their derivative claims. Second, Plaintiff has expended considerable time conferring with Class Counsel and their investigators, providing factual background and support, analyzing ATS's provided data, and attending the mediation. (May 23, 2013, Decl. of Collette McDonald in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("May 23, 2013, McDonald Decl.") ¶¶ 2–4.) Third, she "undertook the financial risk that, in the event of a judgment in favor of [ATS] in this action, [she] could have been personally responsible for any costs awarded in favor of [ATS]." Vasquez, 266 F.R.D. at 491. Indeed, incentive awards are particularly appropriate in the context of employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." Campbell v. First Investors Corp., 2012 WL 5373423 at *8 (S.D. Cal. filed Oct. 29, 2012). Because the requested incentive payment is *below* the range awarded in similar cases, see Smith, 2013 WL 163293 at *6 (noting that incentive awards range from $25,000 to $50,000), it should be approved.

ATS has agreed not to oppose Class Counsel's incentive-award application. (See May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.C.) ATS has also agreed not to oppose Class Counsel's application for an award of attorney's fees and reimbursement of litigation expenses. (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.A.) Pursuant to the terms of the Settlement Agreement, Class Counsel intend to apply for an award of

attorney's fees in an amount not to exceed 33% of the Gross Settlement Payment, *i.e.*, $82,500, as well as an award of costs not to exceed $15,000. (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.A.) Principles of equity permit fees and costs to come from the fund as a whole. <u>See</u>, <u>e.g.</u>, <u>Boeing Co. v. Van Germet</u>, 444 U.S. 472, 478 (1980) (explaining that the "common-fund" doctrine "allows a court to . . . assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.").

Although the requested 33% exceeds the 25% "benchmark" for common-fund cases, <u>see</u>, <u>e.g.</u>, <u>Vasquez</u>, 266 F.R.D. at 491 (stating that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"), it is warranted in this case on account of (i) the fact that participating Class Members will likely receive 100% of their outstanding meal-period compensation even if the requested fee is awarded—an outstanding result, given the potentially dispositive defenses to Plaintiff's claims, discussed *infra* in section IV.B.ii.a. of this Memorandum—and (ii) the fact that Class Counsel's lodestar is significantly more than $82,500. <u>See</u> <u>Singer v. Becton Dickinson & Co.</u>, 2010 WL 2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund when class members would recover "110% of their claimed losses"); <u>Hopkins v. Stryker Sales Corp.</u>, 2013 WL 496358 at *3 (N.D. Cal. filed Feb. 6, 2013) (explaining that courts depart from the benchmark when the requested fees are "significantly less than the lodestar"). According to the Central District, when compared to other settlements of comparable size, the 33% request is reasonable. <u>See</u>, <u>e.g.</u>, <u>Craft v. County of San Bernardino</u>, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (explaining that "25% is substantially below the average class fund fee nationally" and that "[c]ases of under $10 [m]illion will often result in fees above 25%"); <u>Cicero v. DirecTV, Inc.</u>, 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "case law surveys suggest that . . . 30–50% [is] commonly awarded in case[s] in which the common fund is relatively small"). In any event, the Settlement Class will be given an opportunity to object to Class Counsel's requested fees, and the

1    Court will have an opportunity to address the fee award after Class Counsel have filed the

2    necessary motion.

3        ***E.    Notice to the Class.***

4        Plaintiff presently requests that the Court appoint Gilardi & Co., LLC

5    ("Gilardi")—a well-established firm based in San Rafael, California with a respected

6    national reputation—as the Claims Administrator responsible for delivering the Class

7    Notice and the claim form to Settlement Class members.  (May 23, 2013, Harris Decl.

8    ¶ 11.)  As noted above, the expenses associated with claims administration will be come

9    from the Gross Settlement Payment.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 7.B.)

10   This is appropriate.  Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that

11   "[t]he post-settlement cost of providing notice to the class can reasonably be considered a

12   benefit to the class").  Gilardi estimates that such expenses will not exceed $20,000.

13   (May 23, 2013, Harris Decl. ¶ 11.)  Based on this estimate, deducting claims-

14   administration expenses from the Gross Settlement Payment will still enable participating

15   Class Members to likely be paid in full for their missed breaks, and it will still permit the

16   additional payments for Plaintiff's other claims, detailed above.

17       The Class Notice to be delivered to Settlement Class members includes the

18   information required by Rule 23 of the Federal Rules of Civil Procedure.  Specifically,

19   the Class Notice describes the nature of the action, the definition of the Settlement Class,

20   and the class-wide claims; it explains that Settlement Class members may enter an

21   appearance through an attorney and that the Court will exclude those members requesting

22   exclusion; and it specifies the time requirements and manner of requesting exclusion, as

23   well as the binding effect of a class-wide judgment.  (Compare May 23, 2013, Harris

24   Decl. ¶ 11 & Ex. 2 at pp. 1–5 with Fed. R. Civ. Proc. 23(c)(2)(B) (stating that "[t]he

25   notice must clearly and concisely state in plain, easily understood language:  (i) the

26   nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues,

27   or defenses; (iv) that a class member may enter an appearance through an attorney if the

28   member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).").)  Although Rule 23 does not require that notices inform class members of their objection rights, see Int'l Union v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007), the Class Notice herein explains that Settlement Class members may object (May 23, 2013, Harris Decl. ¶ 11 & Ex. 2 at pp. 4–5).  Furthermore, (i) the Class Notice indicates the time and place of the hearing to consider final approval of the settlement, (ii) it prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries, and (iii) it provides information regarding attorney's fees and the incentive award.  (May 23, 2013, Harris Decl. ¶ 11 & Ex. 2 at pp. 2–3, 5.)  See William W Schwarzer, et al., California Practice Guide:  Federal Civil Procedure Before Trial ¶ 10:824 (The Rutter Group 2012) (specifying the content of settlement notice).  In addition, the Class Notice explains the procedures for allocating and distributing the Net Settlement Fund to participating Class Members.  (May 23, 2013, Harris Decl. ¶ 11 & Ex. 2 at p. 3.)

Under the Settlement Agreement, the Claims Administrator will deliver the Class Notice and claim form to Settlement Class members via first-class mail within ten days of receiving address information from ATS.[7]  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 12.A.)  Settlement Class members will have forty-five days from the date of mailing to submit completed claim forms or exclusion requests to the Claims Administrator.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 12.A.)  Settlement Class members will also be permitted to file objections up to sixteen court days before the date set for hearing the motion for final approval.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 13.)

### F.    Release Provisions and Opting Out.

If the Court grants final approval of the settlement, then, in exchange for the consideration described above, Class Members will be deemed to have released ATS from those claims that were or could have been asserted in the Complaint stemming from

---

[7] ATS will provide the Claims Administrator with a list of the last-known names, addresses, and social-security numbers of Settlement Class members within thirty days of preliminary approval.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 11.)

the specific facts alleged therein.  (May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at § 14.)  If a
Settlement Class member opts out pursuant to the procedures outlined in the Class
Notice, then he or she will not release any claims that he or she may have against ATS.
(See May 23, 2013, Harris Decl. ¶ 1 & Ex. 1 at §§ 3 (stating that "[t]he Settlement
Class . . . will not include any person who files a timely request for exclusion," and
defining "Class Members" as only those individuals "who do not request exclusion"),
12.A (stating that only those Settlement Class members "who do[] not affirmatively opt
out of the settlement by submitting a valid and timely request for exclusion shall be
bound by all of the Settlement Agreement's terms, including those pertaining to the
released claims"), 14 (stating that "Class Members [*i.e.*, individuals who do not opt out]
release[] Defendant").)

## IV.   *The Court Should Conditionally Certify the Settlement Class and Should Preliminarily Approve the Settlement Agreement.*

### A.   *Class Certification Is Warranted.*

There is authority to the effect that a pre-certification settlement is subject to a
somewhat higher level of scrutiny than one negotiated post-certification.  See, e.g.,
Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000).  However, concerns about the
rights of absent Settlement Class members can be dispelled by the Court's review of the
Settlement Agreement and by the procedural protections provided by Rule 23.  Officers
for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459
U.S. 1217 (1983).  A trial court has wide discretion in certifying a class for settlement
purposes and will be reversed "'only upon a strong showing that [its] decision was a clear
abuse of discretion.'"  Dunleavy, 213 F.3d at 461 (quoting Linney v. Cellular Alaska
P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).

Class actions are favored, and Rule 23 is to be given a broad, rather than a
restrictive, interpretation in favor of maintaining class actions.  Adames v. Mitsubishi
Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989); Labbate-D'Alauro v. GC Servs. Ltd.
P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four certification

1  requirements:  (i) The class must be so numerous "that joinder of all members is

2  impracticable," (ii) there must be "questions of law or fact common to the class," (iii) the

3  claims of the representative plaintiffs must be "typical of the claims of the class," and (iv)

4  the class representative must show that he or she "will fairly and adequately protect the

5  interests of the class."  Fed. R. Civ. Proc. 23(a).

6      Here, the numerosity requirement is met.  Again, the total number of Settlement

7  Class members is 1,098.  (May 23, 2013, Harris Decl. ¶ 7.)  Given that "courts will

8  typically find the numerosity requirement satisfied when a class includes 40 or more

9  members," Sibert v. TV Magic, Inc., 2012 WL 3589795 at *2 (C.D. Cal. filed Aug. 21,

10 2012) (citing Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010)), and given that

11 joinder of all 1,098 Settlement Class members would be "impracticable," the Settlement

12 Class is sufficiently numerous to justify certification.

13     Likewise, the commonality requirement is met.  In this regard, a plaintiff is *not*

14 required to show that there is commonality on *every* factual and legal issue; instead, "for

15 purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."  Wal-Mart

16 Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011) (brackets in original) (quoting

17 Richard A. Nagareta, The Preexistence Principle and the Structure of the Class Action,

18 103 Colum. L. Rev. 149, 176 n.110 (2003)).  See also Negrete v. Allianz Life Ins. Co. of

19 N. Am., 287 F.R.D. 590, 601–02 (C.D. Cal. 2012) (explaining that, "[e]ven after Dukes,

20 the commonality inquiry does not require plaintiffs to demonstrate the 'predominance' of

21 common issues over individualized ones, nor the 'cohesion' of the class").  With respect

22 to the present matter, there is considerable commonality among Settlement Class

23 members, as ATS never paid meal-period wages for workdays when "NO LUNCH" was

24 coded on their time sheets.  Whether that policy is legal or illegal can be determined on a

25 class-wide basis only once rather than 1,098 separate times in individual suits brought by

26 each Settlement Class member.  See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds, 133

27 S. Ct. 1184, 1191 (2013) (explaining that class certification "requires a showing that

28 *questions* common to the class predominate, not that those questions will be answered, on

the merits, in favor of the class") (emphasis in original).  The same goes for whether ATS was required to reimburse employees for maintaining their uniforms, as well as for whether the nature of ATS's worksites reasonably permitted the use of seats.  These issues, in fact, predominate over issues that affect only individual Settlement Class members (for example, the individual meal-period damages owing to each Settlement Class member).  Moreover, even if it should turn out that the Class definition includes individuals who have not been injured or who do not wish to pursue claims, that is not a bar to certification.  See Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992).  Cf. Joseph v. Gen. Motors Corp., 109 F.R.D. 635, 639–40 (D.C. Colo. 1986).

Plaintiff also meets the typicality requirement, and she is an adequate class representative.  The fact-pattern for Plaintiff is similar, if not identical, to the fact-pattern for other Settlement Class members:  Plaintiff and Settlement Class members earned hourly wages but were never provided meal-period compensation for documented cancelled meals, and they were required to shoulder the expense of maintaining their uniforms.  Plaintiff also has no conflicts of interest with Settlement Class members, as she shares their likely desire to be paid in full.  (See May 23, 2013, McDonald Decl. ¶ 6.) Additionally, Plaintiff is committed to pursuing the claims of the Settlement Class, and her motivation in retaining counsel and pursuing this action has been to seek reimbursement for herself and Settlement Class members, as well as to ensure that ATS complies with wage-and-hour requirements.  (See May 23, 2013, McDonald Decl. ¶ 5.)

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b).  Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. Proc. 23(b)(3).  As noted with respect to the commonality requirement, the central issue in this case is the legality of ATS's meal-period, uniform-maintenance, and seating policies.  The only individual determinations, then, are the

1  quantification of damages for each Settlement Class member—and such individual

2  determinations do not defeat class certification.  See Yokoyama v. Midland Nat'l Life

3  Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential existence of

4  individualized damage assessments, however, does not detract from the action's

5  suitability for class certification," and explaining "that '[t]he amount of damages is

6  invariably an individual question and does not defeat class action treatment'").

7      **B.    The Settlement Meets the Requirements for Preliminary Approval.**

8      If a proposed settlement appears to be the product of "'serious, informed, non-

9  collusive negotiations," and if it "has no obvious deficiencies," the court "should direct

10  that notice be given to the class of a formal fairness hearing.'"  Young v. Polo Retail,

11  Inc., 2006 WL 3050861 at *5 (N.D. Cal. Oct. 25, 2006) (quoting Manual for Complex

12  Litigation (Second) § 30.44 (1985)).  The Settlement Agreement satisfies these

13  requirements.

14          **i.    Settlement Negotiations Were Conducted at Arm's Length.**

15      There is no doubt that the Settlement Agreement was reached through arm's length

16  bargaining.  Again, the parties participated in private mediation before an experienced

17  wage-and-hour mediator familiar with the airline industry.  (May 23, 2013, Harris Decl.

18  ¶ 8.)  During the mediation, Class Counsel gave serious consideration to ATS's

19  potentially dispositive affirmative defenses, discussed *infra* in section IV.B.ii.a. of this

20  Memorandum.  (May 23, 2013, Harris Decl. ¶ 9.)  Moreover, in advance of the

21  mediation, ATS's counsel provided Class Counsel with information as to the size of the

22  Settlement Class, as well as to the total number of cancelled meal breaks during the class

23  period.  (May 23, 2013, Harris Decl. ¶ 6.)  Class Counsel were thus able to calculate a

24  precise amount of damages.  Ultimately, the parties agreed upon a Gross Settlement

25  Payment of $250,000—an amount that will likely provide participating Class Members

26  with 100% of their outstanding meal-period compensation, as well as additional amounts

27  for Plaintiff's other claims.  The parties have also since negotiated significant non-

28  monetary relief to remedy the alleged violations on a going-forward basis.

1    *ii.    The Settlement Has No Obvious Deficiencies.*

2    According to the Ninth Circuit:

3        "Assessing a settlement proposal requires a district court to balance a

4        number of factors:  the strength of the plaintiffs' case; the risk, expense,

5        complexity, and likely duration of further litigation; the risk of maintaining a

6        class-action status throughout the trial; the amount offered in the settlement;

7        the extent of discovery completed and the stage of the proceedings; the

8        experience and views of counsel; . . . and the reaction of the class members

9        to the proposed settlement."

10    Dunleavy, 213 F.3d at 458 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

11    Cir. 1998)) (ellipses in original).  Certain factors may predominate in different factual

12    contexts, and one factor alone may predominate over all the others and provide sufficient

13    grounds for approval of a settlement.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d

14    1370, 1376 (9th Cir. 1993).

15        *a.    The Strength of Plaintiff's Case.*

16        Since this case's inception, ATS has asserted that Plaintiff's meal-break claims are

17    preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  (May 23,

18    2013, Harris Decl. ¶ 9.)  As recently held by the Northern District of California, because

19    "ADA preemption applies to 'state enforcement actions having a connection with, or

20    reference to[,] carrier rates, routes or services . . . even if a state law's effect on rates,

21    routes or services is only indirect,'" and because "enforcing state meal period . . .

22    regulations would impermissibly regulate an air carrier's service" by, say, "prevent[ing]

23    an aircraft from being fueled or serviced" or by preventing "cargo from being unloaded

24    such that [there] would [be an] impact [on] the schedule of the point-to-point

25    transportation of passengers or cargo," California's meal-break statute is preempted.

26    Angeles v. US Airways, Inc., 2013 WL 622032 at *8–9 (N.D. Cal. filed Feb. 19, 2013)

27    (quoting Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008)) (quotation marks

28    omitted).  See also Blackwell v. Skywest Airlines, Inc., 2008 WL 5103195 at *15–18

(S.D. Cal. filed Dec. 3, 2008) (holding that California's meal-period requirements are preempted under the ADA because they impact an airline's services, routes, and prices). If preemption applies, *none* of the Settlement Class are entitled to *any* meal-period damages, let alone damages stemming from Plaintiff's derivative claims.[8] The $250,000 Gross Settlement Payment, which will likely provide participating Class Members with 100% of what they are owed for missed breaks, is therefore more than reasonable. This factor thus weighs in favor of approving the settlement.

Indeed, even if Plaintiff's underlying meal-period claim were not preempted, a recent Central District decision holds that derivative claims for noncompliant pay stubs and continuing wages cannot be based on violations of California's meal-period statute. See Jones v. Spherion Staffing LLC, 2012 WL 3264081 at *8–9 (C.D. Cal. filed Aug. 7, 2012) (explaining that, because a missed-breaks lawsuit fundamentally asserts a claim that an employer failed to provide proper breaks instead of a claim that an employer failed to provide wages, there is no derivative violation of Labor Code sections 226 or 203). Another potentially dispositive defense applies to Plaintiff's claim for improper seating. As airline-industry employees, many of whom work "under wing" on airport tarmacs (see May 23, 2013, Harris Decl. ¶ 9), Settlement Class members are arguably required to be on their feet for the duration of any given workday. As a result, "the nature of the[ir] work" may not "reasonably permit[]" the use of seats. 8 Cal. Code Regs. § 11090 subsec. 14(A). See also Aguirre v. DSW, Inc., 2012 U.S. Dist. LEXIS 62984 at *34 [Westlaw cite unavailable] (C.D. Cal. filed Jan. 19, 2012) (holding that "subsection (A) should not be interpreted to require an employer to provide an employee engaged in a 'standing' job a seat whether engaged in active duties or not"). Accordingly, ATS may only be required to provide seating "in reasonable proximity to the work area"; so long as Settlement Class members are "permitted to use such [proximate] seats," there is no violation. 8 Cal. Code Regs. § 11090 subsec. 14(B). As noted above, in advance of the mediation, ATS provided materials to Class Counsel indicating that it arguably does

---

[8] Preemption, in other words, is a common issue further justifying class certification.

1  provide such reasonably proximate seating to employees.  (May 23, 2013, Harris Decl.

2  ¶ 6.)  These defenses potentially eliminate *any* liability for Plaintiff's pay-stub,

3  continuing-wage, and seating claims.  Given these defenses, the $250,000 Gross

4  Settlement Payment, which will provide participating Class Members with at least $77.42

5  *on top of* their meal-period recoveries, should be approved.

6                      **b.**        **The Likely Duration of Further Litigation.**

7          In most cases, "'unless the settlement is clearly inadequate, its acceptance and

8  approval are preferable to lengthy and expensive litigation with uncertain results.'"  Nat'l

9  Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004)

10  (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed.

11  2002)).  Because the putative Settlement Class has not yet been certified and because

12  notice has not been sent out, the likely duration of further litigation might well be several

13  years.  Accordingly, this factor also weighs in favor of approving the settlement.

14                      **c.**        **The Risk of Maintaining Class-Action Status Through Trial.**

15          Of course, "there is no guarantee that [a d]efendant w[ill] not move for and obtain

16  decertification of [a c]lass before or during trial."  Rodriguez v. West Publ'g Corp., 2007

17  WL 2827379 at *8 (C.D. Cal. filed Sept. 10, 2007) (citing In re NASDAQ Market-

18  Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)), rev'd on other grounds,

19  563 F.3d 948 (9th Cir. 2009).  See also Rodriguez, 2007 WL 2827379 at *8 (stating that,

20  "if 'insurmountable management problems were to develop at any point, class

21  certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re

22  NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 476).  With respect to meal-

23  break claims in particular, the California Supreme Court has held that "[a]n employer's

24  duty . . . under . . . section 512 . . . is an obligation to provide a meal period," which is

25  satisfied if the employer "relieves its employees of all duty, relinquishes control over

26  their activities and permits them a reasonable opportunity to take an uninterrupted 30-

27  minute break."  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).

28  This means that an employer is not liable for meal-break violations if the employee

voluntarily foregoes a break.  As recently explained by the Central District of California, there is often "no way of determining on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all." Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013).  There is thus a risk that Plaintiff's claims may be decertified before trial, and this factor weighs in favor of approval.

### d.    The Settlement Amount Offered.

The Gross Settlement Payment is $250,000, which will likely result in the payment of 100% of participating Class Members' missed-meal compensation, as well as an additional $77.42 (at least) for Plaintiff's remaining allegations.  These net amounts will be paid even after contemplated attorney's fees and costs, as well as claims-administration fees and costs, are deducted.  This represents a more-than-reasonable resolution of this case.  See Rodriguez, 2007 WL 2827379 at *9 (noting that a "'settlement amount representing 33% of the maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements'") (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257–58 (D. Del. 2002).  Consequently, this factor weighs in favor of approving the settlement.

### e.    The Extent of Discovery and Stage of the Proceedings.

Given the parties' attempts at an early resolution of this case, Plaintiff has not had occasion to undertake any "formal" discovery.  However, as explained by the Ninth Circuit, "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" Dunleavy, 213 F.3d at 459 (quoting Linney, 151 F.3d at 1239).  In negotiating the Settlement Agreement, Class Counsel were provided with information as to the size of the Settlement Class, as well as to the total number of cancelled breaks during the class period.  (May 23, 2013, Harris Decl. ¶¶ 6–7.)  ATS also provided information regarding its provision of employee seating.  (May 23, 2013, Harris Decl. ¶ 6.)  In addition, Class Counsel undertook their own independent investigation to

1  inform their negotiating position, including risk re-evaluation in light of the potentially
2  dispositive defenses noted above. (See May 23, 2013, Harris Decl. ¶ 9.) All told, they
3  had sufficient information to make an informed decision about settlement. This factor
4  thus weighs in favor of approval.

5              *f.*       ***The Experience and Views of Counsel.***

6          As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have
7  substantial experience in prosecuting class actions, including wage-and-hour actions.
8  (See May 23, 2013, Harris Decl. ¶¶ 2–3.) Class Counsel are of the opinion that the
9  Settlement Agreement represents an excellent bargain for the Settlement Class, given the
10 inherent risks, hazards, and expenses of carrying the case through trial. (May 23, 2013,
11 Harris Decl. ¶ 9.) As the Central District has explained, this weighs strongly in favor of
12 approving the settlement. See Rodriguez, 2007 WL 2827379 at *9 (explaining that "the
13 trial court is entitled to, and should, rely upon the judgment of experienced counsel for
14 the parties").

15             *g.*       ***The Reaction of Class Members to the Proposed Settlement.***

16         The reaction of Class Members to the Settlement Agreement cannot, of course, be
17 known until preliminary approval is given, Class Notice is delivered, and responses are
18 received. This factor is therefore neutral at the preliminary-approval stage.

19 **V.    *Conclusion.***

20         Under the Settlement Agreement, participating Class Members will likely receive
21 100% of their unpaid meal-break compensation, as well as additional amounts for their
22 seating, uniform, and derivative claims. This represents a significant portion of the
23 damages sought by Plaintiff's lawsuit. The Court therefore should grant conditional
24 certification of the Settlement Class and should preliminarily approve the settlement.

25

26 Dated: May 23, 2013                          HARRIS & RUBLE

27                                              /s/ *David Zelenski*

28                                              Alan Harris, David Zelenski