Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
La Quinta, California 92253
Telephone:  (760) 564-3804
Facsimile:  (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**DECLARATION OF ALAN HARRIS IN SUPPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Date:  June 24, 2013<br>Time:  2:00 p.m.<br>Courtroom:  2 |

**ALAN HARRIS** declares under penalty of perjury of the laws of the United States and the State of California as follows:

1. I am a member in good standing of the State Bar of California and am one of the attorneys for Plaintiff Collette McDonald in the within action. I make this Declaration in support of the Motion for preliminary approval of the class-wide settlement that has been reached in this action. A true and correct copy of the Settlement Agreement and General Release ("Settlement Agreement") is attached hereto as **Exhibit 1**. If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

### *Experience*

2. I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989). I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974). After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois: Freeman, Freeman & Salzman, P.C.[1] I became a partner in that firm in 1980, and I started my own practice in 1982. I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in complex business litigation for over thirty-six years. See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987);

---

[1] Of my still-living partners in Freeman, Freeman & Salzman, a firm that dissolved in 2007, each became a senior partner in a leading national law firm. Lee Freeman, Jr. was a partner and chair of the Antitrust Litigation Practice Group at Jenner & Block from 2007 to June 2011, and he is now of counsel at Katten & Temple LLP. Jerrold Salzman is of counsel at Skadden, Arps, Slate, Meagher & Flom LLP. Tyrone Fahner is a partner at Mayer Brown, having served as its co-chair from 1998 to 2001 and its chair from 2001 to 2007.

In re Uranium Antitrust Litig., 503 F. Supp. 33 (N.D. Ill. 1981); In re Grand Jury, 469 F. Supp. 666 (M.D. Pa. 1980); In re Anthracite Coal Antitrust Litig., 82 F.R.D. 364 (M.D. Pa. 1979), In re Folding Carton Antitrust Litig., 83 F.R.D. 251 (N.D. Ill. 1978); In re Anthracite Coal Antitrust Litig., 78 F.R.D. 709 (M.D. Pa. 1978); In re Masterkey Antitrust Litig., 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six-week jury trial for plaintiffs); A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp., 68 F.R.D. 383 (N.D. Ill. 1975); In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings, 381 F. Supp. 1108 (N.D. Ill. 1974); Parmet v. Lapin, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004). I have gone to jury and bench trials on behalf of plaintiffs and, once, a bench trial for a defendant, Allstate Insurance Company. I have represented employees in numerous disputes concerning their receipt of wages, both before the California Division of Labor Standards Enforcement and before state and federal courts. See, e.g., Jacobs v. CSAA Inter Ins. Bureau, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. filed May 1, 2009); Escobar v. Whiteside Constr. Corp., 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008) (wage-and-hour collective action); Tremblay v. Chevron Stations, Inc., 2008 Westlaw 2020514 (N.D. Cal. 2008) (wage-and-hour collective action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative wage-and-hour class action); Covillo v. Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Hoffman v. Uncle P Prods., 2008 Cal. App. Unpub. LEXIS 3609; Bithell v. E.P. Mgmt. Servs., LP, 2007 WL 4216854 (Cal. Ct. App. 2007) (sustaining a class-wide settlement as fair and

reasonable, and finding that class counsel adequately represented the class); DuPont v. Avalon Hollywood Servs., Inc., 2007 WL 93386 (Cal. App. 2007); Gregory v. Superior Court, 2004 WL 2786357 (Cal. Ct. App. 2004).  In addition, I have been appointed lead class counsel in many wage-and-hour class actions.  See, e.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Tremblay v. Chevron Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW; Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS; Hansen v. Advanced Tech Sec. Servs., Inc., Los Angeles Sup. Ct. Case No BC 367175 ($1,050,000 settlement); Ross v. Human Res., Inc., Los Angeles Sup. Ct. Case No. BC 351506; Harrington v. Manpay, LLC, Los Angeles Sup. Ct. Case No. BC 312171 ($1,000,000 settlement); Brackett v. Saatchi & Saatchi, Los Angeles Sup. Ct. Case No. BC 298728; Readmond v. Straw Dogs, Inc., Los Angeles Sup. Ct. Case No. BC257394; Greenberg v. EP Mgmt. Servs., LP, Los Angeles Sup. Ct. Case No. BC 237787 ($5,348,000 settlement); Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court Case No. BC 188982 ($450,000 settlement); Saunders v. Metro Image Group, San Diego Sup. Ct. Case No. GIC 809753; Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement); Deckard v. Banco Popular N. Am., related to Silva v. Banco Popular N. Am., C.D. Cal. Case No. CV 08-6709 JFW ($1,050,000 settlement). The present case, along with a majority of the foregoing cases, was prosecuted on a contingent-fee basis.

3. David Zelenski, an attorney at my firm who worked on the above- captioned matter, has worked with me on numerous wage-and-hour matters.  See, e.g., Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S.

Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative wage-and-hour class action); Covillo v. Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action). He has also been appointed class counsel in numerous wage-and-hour actions. See e.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement). Mr. Zelenski is a graduate of Reed College (B.A. 1999) and the University of Southern California (J.D. 2003) (law review). He is a member of the California Bar (June 28, 2004), and his law-school Note, Talent Agents, Personal Managers, and Their Conflicts in the New Hollywood, 76 S. Cal. L. Rev. 979 (2003), has been cited by the California Supreme Court in Marathon Entertainment, Inc. v. Blasi, 42 Cal. 4th 974 (2008). In addition, Mr. Zelenski was designated a 2013 "Super Lawyers Rising Star."

### *Summary of Plaintiff's Claims and of Settlement Negotiations*

4. This case was filed by my office on Plaintiff's behalf on November 2, 2011, in Riverside County Superior Court. Plaintiff's Complaint alleges that Defendant Airport Terminal Services, Inc. ("ATS") failed to provide California employees with proper meal breaks under sections 226.7 and 512 of the California Labor Code. The basis of the meal-break allegation is that, although the time records ATS maintains for its employees reflect "cancelled" meal breaks—*i.e.*, non-provided meal breaks—the pay stubs that ATS provided to those employees reflect that no meal-period compensation was ever paid for the missed meals.

5. In addition to the missed-meal-break claim, the Complaint alleges that ATS

1. failed to reimburse California employees for the costs of maintaining their uniforms under section 2802 of the Labor Code and that ATS failed to provide adequate seating to employees at its California airport worksites. Based on these allegations, the Complaint asserts several "derivative" claims under California law. First, the Complaint contends that, on account of ATS's alleged failure to provide proper meal breaks, ATS violated section 226 of the Labor Code regarding the provision of accurate pay stubs. Similarly, the Complaint contends that, on account of ATS's alleged failure to provide proper meal breaks and proper uniform-maintenance reimbursement, ATS violated sections 201, 202, and 203 of the California Labor Code regarding the timely payment of wages, as well as section 17200 *et seq.* of the California Business and Professions Code.

6. In December 2011, ATS removed Plaintiff's Complaint to this Court. Thereafter, my office filed a Motion to strike ATS's Answer, arguing that ATS's alleged affirmative defenses were defective under both federal and state procedural law. In lieu of having the Court rule on Plaintiff's Motion, the parties stipulated to a continuance of the hearing on the Motion so that they could meet and confer about resolving Plaintiff's claims. In connection with these attempts at resolution, ATS's counsel provided my office with information as to the size of the class defined by the Complaint and the total number of missed meal breaks during the putative class period. ATS also provided information regarding its provision of seating to employees, including evidence that Plaintiff herself was provided a seat at her desk and that "proximate" seating was made available to ATS's employees who work "under wing" on airport tarmacs.

7. According to the information provided to me by ATS, there are approximately 1,098 individuals who have been employed by ATS in California since November 2, 2007. Also according to the information provided to me by ATS, the average hourly wage of these 1,098 individuals is $12.47. Of these 1,098 individuals, ATS's payroll records reflect that 410 have "NO LUNCH" codings on their pay records since November 2, 2007, *i.e.*, 410 individuals experienced cancelled meal periods. The total number of such cancelled meal periods across these 410 individuals is 3,701.

8.      After extensive negotiations with ATS's counsel, including several settlement offers and counteroffers, the parties agreed that the services of a private mediator would assist in resolving Plaintiff's claims.  In June 2012, the parties selected Lynn Frank of Frank and Feder—a mediator well-versed in wage-and-hour actions, including those brought in the airline industry—to act as mediator.  Mediation with Ms. Frank went forward in September 2012, during which the parties executed a short-form Memorandum of Understanding providing for the creation of a $250,000 settlement fund.  Since the execution of that Memorandum, the parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  In May 2013, those negotiations resulted in the execution of the Settlement Agreement attached hereto.

### *Reasonableness of the Settlement Agreement*

9.      I have concluded that the Settlement Agreement represents a fair, reasonable, and adequate resolution of this case for several reasons.  First, as an airline-industry employer, certain potentially dispositive defenses exist that may obviate *any and all* damages in this case.  As explained in the concurrently filed Memorandum of Points and Authorities, the Airline Deregulation Act ("ADA") may operate to preempt Plaintiff's meal-period claims.  If ADA preemption applies, then *none* of the Settlement Class are entitled to *any* meal-period damages, let alone damages stemming from Plaintiff's meal-period-derivative claims.  That said, given the data noted above as to missed breaks, the $250,000 Gross Settlement Payment called for by the Settlement Agreement will likely provide participating Class Members with 100% of what they are owed for missed breaks.  Moreover, also as discussed in the concurrently filed Memorandum of Points and Authorities, even if Plaintiff's underlying meal-period claim is not preempted, recent Central District of California authority holds that derivative claims under sections 203 and 226 cannot be based on violations of California's meal-period statute.  Another potentially dispositive defense applies to Plaintiff's claim for improper seating.  As airline-industry employees, many of whom work "under wing" on

airport tarmacs, Settlement Class members are arguably required to be on their feet for the duration of any given the workday.  As a result, the nature of their work may not reasonably permit the use of seats.  Accordingly, ATS may only be required to provide seating in reasonable proximity to the work area; so long as Settlement Class members are permitted to use such [proximate] seats, there is no violation.  As noted above, in advance of the mediation, ATS provided materials to my office indicating that it arguably does provide such reasonably proximate seating to employees.  Despite these defenses, my office successfully negotiated a $250,000 Gross Settlement Payment that will provide additional compensation—apart from the meal-period recovery—for ATS's alleged violations, including non-monetary relief that would otherwise be unattainable, given Plaintiff's status as a former employee.

     10.    Before executing the Settlement Agreement, my office and my co-counsel—John P. Dorigan—reviewed its terms with Plaintiff McDonald.  We discussed the terms with her, as well as the considerations described above in paragraph 9.  Plaintiff has since concluded that the settlement represents a fair, reasonable, and adequate resolution of this case.  A true and correct copy of her Declaration in support of the Settlement Agreement is filed herewith.

     11.    The Settlement Agreement calls for the appointment of a Claims Administrator to deliver the Class Notice and claim form to the Settlement Class.  A true and correct template copy of the Class Notice proposed by the parties, with the accompanying claim form (also approved by the parties), is attached hereto as **Exhibit 2**.  Presently, I propose that Gilardi & Co., LLC ("Gilardi") be appointed as Claims Administrator.  Gilardi is a well-established firm based in San Rafael, California with a respected national reputation.  My office has used Gilardi before in connection with administering class-wide settlements, and, with respect to those settlements, Gilardi diligently performed duties substantially similar to those called for by the present Settlement Agreement.  Gilardi estimates that it can perform its administration duties

/ / / / /

associated with the within settlement for $19,974.[2]

12. To date, my firm has advanced all costs incurred in this case. Similarly, the required legal services have been provided on a contingent-fee basis. My firm has no conflict of interest with Plaintiff or any members of the Settlement Class, and I believe that my firm has, thus far, fairly and adequately represent the interests of the Class.

13. The required meet-and-confer for the Motion for preliminary approval took place commencing on March 20, 2013, when I provided ATS's counsel with a draft copy of the Motion for their review, and on various dates thereafter.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed May 23, 2013, in the County of Los Angeles, State of California.

                                                      /s/ *Alan Harris*
                                                     Alan Harris

---

[2] The parties are presently accepting additional claims-administration estimates. By the June 24, 2013, preliminary-approval hearing date, I anticipate that the parties will have reached an agreement as to the selection of the Claims Administrator.