Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
Telephone: (760) 564-3804
Facsimile: (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**SUPPLEMENTAL DECLARATION OF COLLETTE McDONALD IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Hearing Held: June 24, 2013<br>Time: 2:00 p.m.<br>Courtroom: 2 |

**COLLETTE McDONALD** declares under penalty of perjury of the laws of the United States and the State of California as follows:

1. I am the Plaintiff in the above-captioned action. If sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

2. I am a former employee of Airport Terminal Services, Inc. ("ATS"). I worked for ATS as a customer-service agent from approximately mid-2005 through approximately mid-2011, when my employment ended. As an ATS customer-service agent, I was always paid an hourly wage. My hourly wage varied from approximately $14.00 in 2008 to approximately $17.00 at the end of my employment. I recollect that, since November 2007, there were more than ten workdays on which I worked through a meal break and for which a canceled-meal coding was recorded on my time sheets. My understanding of ATS's timekeeping system is that my missed breaks were recorded so that ATS could reverse an automatic meal-period deduction taken every day by the timekeeping system. I was required to complete a form for all such missed breaks explaining that the reason I had missed a meal was because it was too busy for me to take the required break. I do not recall ever receiving an additional hour of pay for any of these canceled meals—a fact confirmed by a review of my weekly time records and wage statements.

3. An example of one such canceled meal can be found in my time and pay records for the pay period from February 28, 2011, through March 6, 2011, copies of which are attached hereto as **Exhibit 1**. According to my "Weekly Time Sheet" for this pay period, I worked a total of 39.80 regular hours and 1.30 overtime hours, for a total of 41.10 hours. According to my pay stub for the pay period, although I received compensation for each of 41.10 hours, I should have received an additional hour of pay because, on February 28, I worked through my meal period. The canceled meal is reflected on the bottom my Weekly Time Sheet with the notation "NO LUNCH." In other words, I should have received compensation for 42.10 hours of work instead of for

1  41.10 hours of work.  My understanding is that the meal-period claim I have brought in
2  this lawsuit is to collect this additional hour of pay for all ATS airport agents who
3  themselves experienced "NO LUNCH" codings.

4      4.    During my employment as an ATS customer-service agent, I was required
5  by ATS to wear a uniform consisting of a pair of navy-blue pants, a navy-blue skirt, or a
6  navy-blue dress, on the one hand, and a white blouse and navy-blue vest, on the other
7  hand.  I did not wear my uniform outside of work.  My superiors at ATS explained to me
8  that it was my responsibility to keep my uniform in a clean condition.  Further to ATS's
9  direction, I regularly cleaned my uniform.  However, not once was I reimbursed for the
10 costs of cleaning my uniform.  Additionally, I was never told by any of my superiors at
11 ATS that I was permitted to request reimbursement for uniform-cleaning costs.

12     5.    On May 9, 2013, I signed a copy of the Settlement Agreement and General
13 Release ("Settlement Agreement").  Before signing the Settlement Agreement, I had an
14 opportunity to review its terms in detail, and I thoroughly reviewed and discussed those
15 terms with John Dorigan, who is one of the attorneys representing me in this lawsuit.  I
16 understand that the Settlement Agreement is a long-form version of a short-form
17 agreement signed by the parties during a private mediation session, which I attended with
18 John Dorigan and Alan Harris.  Mr. Harris is another attorney representing me in this
19 lawsuit.

20     6.    In my opinion, the $250,000 settlement payment called for by the Settlement
21 Agreement represents a favorable resolution of airport agents' claims stemming from my
22 canceled-meal and uniform-cleaning claims.  I understand that, under the Settlement
23 Agreement, ATS's agents are likely to receive the full amount of their unpaid meal-
24 period wages (with the average meal-period payment likely being between $200 to $400),
25 plus anywhere from an additional $77 (at least) to amounts as high as $300.  I also
26 understand that ATS will inquire with the relevant regulators whether additional seating
27 can be provided to its employees in the future.  I signed the Settlement Agreement
28 precisely because I thought that ATS's employees—the people whom I am seeking to

represent in this action—would approve of these amounts and would welcome the provision of additional seating.

7. I understand that, under the Settlement Agreement, my attorneys may ask the Court that an additional payment be made to me of up to $5,000. However, I also understand that it is entirely up to the Court to decide whether to award me any such amounts whatsoever. In fact, this was my understanding when I decided to be a part of this lawsuit. Additionally, when I was considering whether to sign the Settlement Agreement, I understood that I owed a duty to act in the best interests of ATS's employees and that I was to evaluate the settlement without regard to the prospect of receiving any sort of "enhanced" payment beyond what other employees would receive. Although I have spent considerable time working on this lawsuit—including discussing my claims with my attorneys, explaining to them ATS's policies, helping them to interpret ATS's payroll documents, and attending the private mediation—my motivation has always been to see that ATS pays its employees for their missed meals, reimburses them for taking care of their uniforms, and provides appropriate seating. Because I believe that the cash recoveries to ATS's employees under the Settlement Agreement—not to mention ATS's obligation to see if additional seating can be provided in the future—are so favorable, I would continue to support the Settlement Agreement even if the Court were to deny awarding me any additional payments.

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed July 3, 2013, in the County of Riverside, State of California.

*Collette McDonald*
Collette McDonald