

**TENTATIVE**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES -- GENERAL

Case No.  EDCV 11-1946VAP(SPx)                          Date:  June 24, 2013

Title:      COLLETTE McDONALD, individually and on behalf of all others similarly situated -v- AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
===============================================================

PRESENT:      HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

Marva Dillard                                    None Present
Courtroom Deputy                                 Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFFS:                              DEFENDANTS:

        None                                     None

PROCEEDINGS:      MINUTE ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (IN CHAMBERS)

Before the Court is a Motion for Preliminary Approval of Class-Action Settlement and Conditional Certification of Settlement Class filed by Plaintiff Collette McDonald ("Plaintiff") on behalf of herself and others similarly situated ("Proposed Class Members") (Doc. No. 26) ("Motion" or "Mot.").  For the reasons set forth below, the Court DENIES Plaintiff's Motion.

## I. BACKGROUND

On November 2, 2011, Plaintiff filed a complaint in the California Superior Court (Ex. 1 to Not. of Removal (Doc. No. 1) ("Complaint") against Defendant Airport

MINUTES FORM 11
CIVIL -- GEN                                      Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

Terminal Services ("Defendant"), alleging (1) failure to provide meal-period wages in violation of Cal. Labor Code §§ 226.7 and 512; (2) failure to provide adequate pay stubs in violation of Cal. Labor Code § 226; (3) failure to reimburse for uniform-maintenance expenses in violation of Cal. Labor Code § 2802; (4) failure to timely pay all wages in violation of Cal. Labor Code §§ 201-203; and (5) violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (See Compl.)[1]

On December 9, 2011, Defendant removed the action to this Court. (See Not. of Removal.)

On October 25, 2012, Plaintiff filed a Notice of Tentative Settlement, providing that the parties intended to have a settlement agreement executed by November 15, 2012. (See Doc. No. 21 ("Notice of Tentative Settlement") at 2.)

On May 2, 2013, this Court issued an Order to Show Cause regarding dismissal for failure to prosecute. (Doc. No. 22 ("OSC").) On May 10, 2013, Plaintiff responded that though the parties had completed a "short-form Memorandum of Understanding" in October of 2012, they were still "actively engaged in negotiating a long-form Settlement Agreement and General Release" and awaiting execution of the settlement agreement. (See Doc. No. 23 ("Response").) On May 15, 2013, Plaintiff filed a Notice of Execution of the Long-Form Settlement Agreement. (See Doc. No. 24.)

On May 23, 2013, Plaintiff filed the instant Motion. With the Motion, Plaintiff filed the Declaration of Alan Harris (Doc. No. 27) ("Harris Decl.") with Exhibit 1 (Doc. No. 27-1) ("Proposed Settlement Agreement") and Exhibit 2 (Doc. No. 27-2) ("Proposed Class Notice"); and the Declaration of Collette McDonald (Doc. No. 28) ("McDonald Decl."). On May 31, 2013, Defendant filed a Notice of Non-Opposition to Plaintiff's Motion for Preliminary Approval (Doc. No. 30).

------

[1]Although the parties stipulated for an extension of time to file a first amended complaint ("FAC") (see Doc. No. 20), the FAC was never filed.

MINUTES FORM 11
CIVIL -- GEN                           Page 2          Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

# II. LEGAL STANDARDS

## A.    Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1996). A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." Id.

To bring a class action under Rule 23(a), a plaintiff must demonstrate:
(1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

Fed. R. Civ. P. 23(a).

In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Here, Plaintiffs move for class certification under Rule 23(b)(3). (Mot. at 19.)

Where a plaintiff moves for class certification under Rule 23(b)(3), she must prove:

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[2] Fed. R. Civ. P. 23(b)(3).

## B.    Preliminary Approval of Settlement Under Rule 23

Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing.  See Federal Judicial Center, Manual for Complex Litigation, § 21. 632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Liti., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating the purpose of a preliminary approval hearing is to "ascertain where there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."); Manual for Complex Litigation, § 21.632.

## III. DISCUSSION
### A.    Rule 23 Class Certification

In the Complaint, Plaintiff seeks certification of a California settlement class, described as: "[a]ll persons employed by ATS in California and commonly referred to

---

[2]The Court need not consider a fourth factor – the likely difficulties in managing a class action – in the context of a class action settlement.

Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, Individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

as [Airport Agents][3] from approximately October 12, 2007, to the date of the filing of a motion for class certification."  (Compl. ¶ 19.)

Plaintiffs have not sufficiently established a proper basis for class certification under Rule 23(a), as discussed below.

### 1.    Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), joinder of all class members must be "impracticable," but not necessarily impossible.  Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 588 (C.D. Cal. 2008).  "Plaintiffs need not identify with precision the number of class members and may instead rely on reasonable inferences."  Id.  Furthermore, there is no specific number requirement, as the court may examine the specific facts of each case.  Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Indeed, courts have not required evidence of a specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4).  Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

Here, Plaintiff states "there are approximately 1,098 individuals who have been employed [by Defendant] in California since November 2, 2007."  (Harris Decl. ¶ 7.)  Plaintiff has specifically identified the number of Proposed Class Members, and bases this number on reasonable investigation and inference: information gleaned from Defendant's payroll and personnel records.  (See Proposed First Amended Complaint (Ex. A to Doc. No. 20) ¶ 20.)  It would be impractical to join 1,098 individuals.  Accordingly, Plaintiff has satisfied the numerosity requirement.

---

[3]Plaintiff includes the following under the label Airport Agents: Agents, Lead Agents, Supervisor Agents,  Ramp Agents, Ramp Leads, Ramp Supervisors, Cargo Agents, Cargo Leads, Cargo Supervisors, Passenger Service Agents, Passenger Service Leads, Passenger Service Supervisors, Station Agents, Lead Station Agents, Supervisor Station Agents, and Cabin Grooming Agents.  (Compl. at ¶ 19.)

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-
100, inclusive
MINUTE ORDER of June 24, 2013

## 2.    Commonality

Commonality is "the rule requiring a plaintiff to show that 'there are quests of law or fact common to the class.'"  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551-52 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  <u>Id.</u> (quoting <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157 (1982)). "Their claims must depend upon a common contention."  <u>Id.</u> at 2551.  Even a single common question will suffice.  <u>Id.</u> at 2556.

Here, Plaintiff identifies four common issues in her Complaint: (1) whether Defendant's policy of not providing meal-period premium wages for documented inadequate meal breaks violates the California Labor Code's express requirement that wages be provided for missed meal breaks, as well as the requirement that pay stubs reflect all compensation due and owing; (2) whether Defendant is required to reimburse Airport Agents for uniform-cleaning costs; (3) whether the failure to reimburse for uniform-cleaning costs (as well as the failure to provide meal-period premium wages) constitutes a failure to pay all outstanding wages upon the termination of employment; and (4) whether Defendant's policy constitutes unfair competition.  (Compl. ¶ 26.)

Plaintiff fails to provide evidence in support of a finding regarding these common questions.  The only evidence Plaintiff sets forth is that the payroll records of 410 of the 1,098 Potential Class Members were stamped with a "NO LUNCH" coding, indicating their meal periods were canceled.  (Harris Decl. ¶ 7.)  Plaintiff declares she did not receive meal-period premium pay when her pay records were stamped with a "NO LUNCH" coding.  (McDonald Decl. ¶ 6.)  Plaintiff, however, has not set forth any other evidence to demonstrate a common question.  Accordingly, Plaintiff has not satisfied the commonality requirement.

## 3.    Typicality

The Ninth Circuit in <u>Hanlon v. Chrysler Corp.</u> explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d 1011, 1020 (9th Cir. 1998).  Thus, to find typicality, a "court does not need to find that the claims of the

Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

purported class representatives are identical to the claims of the other class members." Haley, 169 F.R.D. at 649. The class representative "must be able to pursue [her] claims under the same legal or remedial theories as the unrepresented class members." Paxil, 212 F.R.D. at 549.

Here, Plaintiff argues:

> The fact-pattern for Plaintiff is similar, if not identical, to the fact pattern for other Settlement Class members: Plaintiff and Settlement Class members earned hourly wages but were never provided meal-period compensation for documented cancelled meals, and they were required to shoulder the expense of maintaining their uniforms.

(Mot. at 19.) Plaintiff provides her own declaration in support of her argument, in which she declares: (1) she is a "former hourly-paid employee of [Defendant] (McDonald Decl. ¶ 2.); and (2) she "believe[s] that [her] individual claims are typical of the claims of [Defendant's] other employees in that, among other things, [she] did not receive meal-period 'premium' pay for those instances when [her] time sheets reflect a 'NO LUNCH' coding" (McDonald Decl. ¶ 6).

Plaintiff's evidence is insufficient. Plaintiff does not present evidence regarding when she worked for Defendant and what position she held. Moreover, Plaintiff does not present sufficient evidence demonstrating how her claims are typical of the class. Accordingly, Plaintiff has not satisfied the typicality requirement.

## 4.    Adequacy of Representation

Rule 23(a)(4) demands that "representative parties will fairly and adequately protect the interests of the class." This determination "is a question of fact that depends on the circumstances of each case." In re Nat'l W. Life Ins. Deferred Annuities Litig., No. 05-1018, 2010 WL 2735732, at *5 (S.D. Cal. July 12, 2010) (citing McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981)).

> Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-
100, inclusive
MINUTE ORDER of June 24, 2013

<u>Hanlon</u>, 150 F.3d at 1020.

As to the adequacy of the named Plaintiff, Plaintiff declares she has
substantially contributed to the pursuit of the action on behalf of the proposed class
by discussing the case for "more than fifteen hours" with counsel, spending
"additional numerous hours" reviewing various documents related to her
employment, providing her attorneys with the factual background to understand
these documents, and attending a full-day mediation session.  (McDonald Decl. ¶¶
3-4.)  Plaintiff also declares that she does not have a conflict of interest.  (<u>Id.</u> at ¶¶ 5-
6.)

Plaintiff undoubtedly has spent time being involved in this action. The
Proposed Settlement Agreement, however, sets forth an incentive award payment of
$5,000.00 for her.  (Mot. at 10.)  This is significantly larger than the approximately
$180 payment to each of the Proposed Class Members.  (<u>Id.</u>)  "Where, as here, the
class representatives face significantly different financial incentives than the rest of
the class because of the conditional incentive awards that are built into the structure
of the settlement, we cannot say that the representatives are adequate." <u>Radcliffe v.
Experian Information Solutions, Inc.</u>, ___ F.3d ___, 2013 WL 1831760, at *6 (9th
Cir. May 2, 2013).  A class representative's "divergent interests, as a result of the
conditional incentive payments, undermine[ his or her] ability to 'fairly and
adequately protect the interests of the class.'"  <u>Id.</u> (citing Fed. R. Civ. P. 23(a)(4)).
Accordingly, because of the significantly large incentive payment, when compared to
the potential award for other Proposed Class Members, Plaintiff has not
demonstrated she can fairly and adequately represent the proposed class.

As to the adequacy of class counsel, Plaintiff seeks to appoint as class
counsel Alan Harris ("Harris") and David Zelenski ("Zelenski") from Harris & Ruble,
and John P. Dorigan ("Dorigan") of the Law Offices of John P. Dorigan.  (Proposed
Settlement Agreement at 1.)  In determining adequacy of counsel pursuant to Rule
23(g), the Court:

must consider: (I) the work counsel has done in identifying or
investigating potential claims in the action; (ii) counsel's experience in
handling class actions, other complex litigation, and the types of claims

MINUTES FORM 11
CIVIL -- GEN                                    Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

asserted in the action; (iii) counsel's knowledge of the applicable law;
and (iv) the resources that counsel will commit to representing the class.
Fed. R. Civ. P. 23(g)(1).

Harris's declaration details the work that he and Zelenski have completed thus far in prosecuting this action and negotiating a settlement. (Harris Decl. ¶¶ 4-8.) Harris has "been appointed to lead class counsel in many wage-and-hour class actions," in addition to representing "plaintiffs in complex business litigation for over thirty-six years" and employees in numerous wage cases. (Harris Decl. ¶ 2.) Zelenski "has also been appointed class counsel in numerous wage-and-hour actions." (Id. at ¶ 3.) Neither Harris nor Zelenski have a conflict of interest with Plaintiff or any class members. (Id. at ¶ 12.) As to Harris and Zelenski, Plaintiff has sufficiently established their "ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Unlike Harris and Zelenski, however, there is no evidence submitted setting forth Dorigan's qualifications. It has not been proven, therefore, that Dorigan can fairly and adequately represent the class.

Accordingly, while Plaintiff not submitted evidence to establish the adequacy of Dorigan, she has submitted evidence to establish the adequacy of Harris and Zelenski as class counsel. Therefore, Plaintiff has demonstrated counsel's "ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### 5.    Class Certification Under Rule 23(b)(3)

Plaintiff requests class certification under Rule 23(b)(3). (See Mot. at 19-20.) Rule 23(b)(3) applies where "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent matters to consider include (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or

MINUTES FORM 11
CIVIL -- GEN

Initials of Deputy Clerk _____

undesirability of concentrating the litigation of the claims in the particular forum; and
(4) the likely difficulties in managing a class. Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "tests whether proposed classes are sufficiently
cohesive to warrant adjudication by representation" and "focuses on the relationship
between the common and individual issues." Hanlon, 150 F.3d at 1022 (internal
quotation marks and citations omitted). "When common questions represent a
significant aspect of the case and they can be resolved for all members of the class
in a single adjudication, there is a clear justification for handling the dispute on a
representative rather than on an individual basis." Wright, Miller & Kane, Federal
Practice and Procedure: Civil 3d § 1778. When one or more of the central issues in
the action are common to the class and can be deemed to predominate, certification
may be proper under Rule 23(b)(3) even though other important matters, such as
damages or affirmative defenses, will have to be tried separately. (Id.)

As discussed above, Plaintiff has not established that commonality exists
among class members. As such, the Court cannot determine whether common and
central issues predominate over questions affecting individual members. Thus,
Plaintiffs do not satisfy Rule 23(b)(3).

## B.    Fairness and Adequacy of Settlement Agreement

In determining whether or not the settlement is fair, reasonable, and adequate,
courts balance several factors, including: (1) whether the proposed settlement
appears to be the product of serious, informed, non-collusive negotiations; (2) the
strength of plaintiffs' case; (3) the risk, expense, complexity, and likely duration of
further litigation; (4) the risk of maintaining class action status throughout the trial;
(5) the amount offered in settlement; (6) the extent of discovery completed, and the
stage of the proceedings; (7) the experience and views of counsel; (8) the presence
of a governmental participant;[4] and (9) the reaction of the class members to the
proposed settlement. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th
Cir. 1992); In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079 (citing Manual
for Complex Litigation, Second § 30.44 (1985)).

---

[4]As this factor does not apply to this case, the Court does not address it.

MINUTES FORM 11
CIVIL -- GEN                                    Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

## 1.    Settlement Agreement Terms
### a.    Parties to the Settlement Agreement

The Proposed Settlement Agreement is between Plaintiff Collette McDonald, individually and on behalf of others similarly situated on the one hand, and Defendant Airport Terminal Services, Inc., on the other hand.  (Proposed Settlement Agreement at 1.)

### b.    Settlement Payments

The Proposed Settlement Agreement requires Defendant to pay a total settlement sum of $250,000 ("Gross Settlement Payment").  (Proposed Settlement Agreement at 3.)  The Gross Settlement Payment shall be used to satisfy: (I) attorneys' fees and costs; (ii) claims-administration fees; (iii) Plaintiff's enhancement payment; (iv) payment to Class Members; and (v) any and all payments (and associated costs) required by the Proposed Settlement Agreement.  (Proposed Settlement Agreement at 3.)  In terms of the payment to the settlement class, after deducting attorneys' fees, Plaintiff's enhancement award, any tax liabilities, and claim administration fees, the balance (the "Net Settlement Fund" or "NSF") will be distributed to Proposed Class Members who submit valid and timely claim forms. (Id. at 4.)  Two-thirds of the NSF will be evenly distributed among all Proposed Class Members who submit valid and timely claim forms.  (Id.)  The remaining one-third of the NSF will be distributed pro rata based on the number of canceled meal periods as reported by Defendant.  (Id.)

Assuming the Court approves $82,500 in attorneys' fees (33% of the Gross Settlement Payment), $15,000 in litigation expenses, $20,000 in claims-administration expenses, and a $5,000 incentive award for Plaintiff, $127,500 will remain for distribution to participating class members.  (Mot. at 10.)  Assuming participation from 100% of the Proposed Class Members, the average net payment to proposed class members who experienced canceled meals will be $103.65, and the average net payment to proposed class members for non-meal break claims will be $77.42.  (Id.)

Initials of Deputy Clerk _____

### c.    Non-Monetary Relief

Under the Proposed Settlement Agreement, Defendant agrees to provide the following non-monetary relief, within 180 days of final approval of the settlement: (1) Defendant will provide refresher training to supervisors to clarify that all breaks that do not interfere with airline routes, rates, or services are permitted and authorized; (2) Defendant will inquire with third-party airport operators and regulators whether mats are permitted and, if permitted, will request their installation at work locations; (3) Defendant will inquire with third-party operators and regulators whether additional seating is permitted and, if permitted, will request provision of such seating at locations where it will not interfere with the nature of, or practical realities regarding, the work performed.  (Mot. at 11-12; Proposed Settlement Agreement at 5.)

### 2.    Whether the Proposed Settlement Is the Product of Non-collusive Negotiations

The Proposed Settlement Agreement appears to be the product of non-collusive negotiations.  The parties conducted extensive negotiations, including several settlement offers and counter-offers.  (Harris Decl. ¶ 8.)  The parties agreed to work with a private mediator in June 2012, and participated in mediation in September 2012.  (Id.)  The mediation was fruitful, and resulted in a short-form memorandum of understanding providing for the creation of a $250,000 settlement fund.  (Id.)  Since the execution of that memorandum, the parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the memorandum of understanding.  (Id.)  These negotiations resulted in the execution of the Proposed Settlement Agreement in May 2013.  The Proposed Settlement Agreement appears to be the product of arm's length, informed, and non-collusive negotiations, and the Court finds this factor weighs in favor of approval.

### 3.    Strength of Plaintiff's Case

Plaintiff concedes that "certain potentially dispositive defenses exist that may obviate any and all damages in this case." (Harris Decl. ¶ 9 (emphasis in original).) First, Plaintiff's meal-break claims may be preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  (Mot. at 21; Harris Decl. ¶ 9.)  If preemption

MINUTES FORM 11
CIVIL -- GEN

Initials of Deputy Clerk _____

applies, then potential class members are not entitled to any meal-period damages. (Id.) Even if preemption does not apply, Plaintiff's derivative claims for noncompliant pay stubs and continuing wages cannot be based on violations of California's meal-period statute. (Id.) Finally, Plaintiff's claim for improper seating may not apply because the nature of the work may not reasonably permit the use of seats. (Id.) According to Plaintiff, "[t]hese defenses potentially eliminate any liability for Plaintiff's pay-stub, continuing-wage, and seating claims." (Mot. at 23.) In light of these defenses, and in consideration of the weaknesses in Plaintiff's case, a $250,000 Gross Settlement Payment appears to be reasonable. Therefore, this factor weighs in favor of the proposed settlement.

### 4. Risk, Exposure, Complexity, and Likely Duration of Further Litigation

As stated above, Plaintiff faces the risk that she will not succeed on the merits of her claims. Furthermore, Plaintiff notes that even if she and the Proposed Class Members eventually prevail on the merits of the claim, they risk recovering less than the settlement because, as noted above, they may not be able to recover meal-period damages and damages from their derivative claims. Additionally, to litigate this action to its conclusion likely would be expensive and time consuming. (Mot. at 23.) For the foregoing reasons, this factor weighs in favor of the proposed settlement.

### 5. Risk of Maintaining Class Action Status Throughout the Trial

There is a risk that Plaintiff's claims may be decertified before trial. (Mot. at 23-24.) It is difficult to "'determin[e] on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all.'" (Mot. at 24 (quoting Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. Jan. 17, 2013).) This factor weighs in favor of the proposed settlement.

### 6. Amount Offered in Settlement

The amount offered in settlement is $250,000. (Proposed Settlement Agreement at 3.) In exchange for the settlement, class members agree to release "any and all claims, debts, liabilities, demands, obligations, guarantees, costs,

MINUTES FORM 11
CIVIL -- GEN                        Page 13          Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

*[handwritten: that's the other payment]*

expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type that is based on or arises out of the allegations in the Lawsuit . . . ." (Proposed Settlement Agreement at 9.) The Gross Settlement Payment "will likely result in the payment of 100% of participating Class Members' missed-meal compensation, as well as an additional $77.42 (at least) for Plaintiff's remaining allegations." (Mot. at 24.) Plaintiff, however, does not specify how the Gross Settlement Payment remedies Plaintiff's other alleged injuries, e.g., reimbursement for uniform maintenance. Accordingly, the Court cannot determine whether the Gross Settlement Payment appears to be adequate and reasonable. Thus, this factor weighs against the proposed settlement.

**7.    Extent of Discovery Completed, and Stage of    Proceedings**
"Plaintiff has not had occasion to undertake any 'formal' discovery," but has information, as provided by Defendant, regarding "the size of the Settlement Class, as well as the total number of cancelled breaks during the class period." (Mot. at 24; Harris Decl. ¶¶ 6-7.) In addition, counsel "undertook their own independent investigation to inform their negotiating position, including risk re-evaluation in light of the potentially dispositive defenses . . . ." (Mot. at 24-25.) Plaintiff has provided no specific information on which documents, if any, she received. The information that Plaintiff did receive -- the size of the settlement class and the number of cancelled breaks -- concerns only part of the injurious conduct upon which Plaintiff's Complaint is based. For example, Plaintiff does not provide any information regarding Defendant's failure to provide adequate pay stubs, failure to provide adequate seating, or failure to reimburse for maintenance of uniforms. (See Compl. ¶¶ 9, 12.) Plaintiff has also provided no specific information regarding her "independent investigation" and how it informed the proposed settlement. Thus, the Court cannot determine whether Plaintiff has conducted sufficient investigation of the various issues in this case to warrant approval.

*[handwritten left margin: did provide data]*
*[handwritten: derivative]*

**8.    Experience and Views of Counsel**
As explained above, Plaintiff has demonstrated sufficiently counsel's experience. This factor weighs in favor of approval.

Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-
100, inclusive
MINUTE ORDER of June 24, 2013

### 9.     The Reaction of the Class Members to the Proposed Settlement

The reaction of potential class members to the proposed settlement is unavailable because class notice has not been delivered.  (Mot. at 25.)  At this stage, this factor is neutral as to the proposed settlement.

Finding the factors are neutrally balanced, the Court cannot determine whether the settlement is fair, reasonable, and adequate.

## C.     Attorneys' Fees and Incentive Payment for Plaintiff

Plaintiff seeks allocation of settlement funds for attorneys' fees and costs, and for an incentive award payment.  Therefore, the Court also must evaluate the fairness and reasonableness of these allocations.

### 1.     Attorneys' Fees

Under the Proposed Settlement Agreement, Plaintiff's counsel requests attorneys' fees of up to 33 percent of the Gross Settlement Payment, and up to $15,000 in costs and expenses.  (Mot. at 14; Proposed Settlement Agreement at 3.)

Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method[8] or the percentage-of-the-fund method.[9]  Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing Vizcaino v.

---

[8]Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary to account for the risks associated with representation.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

[9]Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund.  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

MINUTES FORM 11
CIVIL -- GEN                                    Initials of Deputy Clerk _____
                              Page 15

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)).  "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'"  Alberto v. GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008) (citations omitted).

"Although statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."  Six Mexican Workers, 904 F.2d at 1311.  Twenty-five percent is the "'benchmark' award that should be given in common fund cases."  Id.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Id.

Plaintiff argues that their 33 percent request, which exceeds the 25 percent benchmark for common fund cases, is warranted because (1) potential class members will receive 100% of their outstanding meal-period compensation and (2) based on a lodestar calculation, the amount of attorneys' fees is greater than 33 percent of the Gross Settlement Payment.

Plaintiff does not adequately demonstrate a reason for departing from the 25 percent benchmark.  First, while potential class members may receive 100 percent of their outstanding meal-period compensation, Plaintiff neglects to address recovery for other alleged injuries (e.g., inadequate pay stubs, reimbursement for uniform maintenance).  Second, Plaintiff has provided no information to determine the lodestar calculation.  Thus, the Court finds the amount of attorneys' fees requested does not support preliminary approval of the settlement.

## 2.    Incentive Payment for Plaintiff
The Settlement proposes an incentive award of up to $5,000 to the Plaintiff for her efforts in bringing and prosecuting this case.  (Mot. at 12; Proposed Settlement Agreement at 4.)

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

In determining the appropriateness of the incentive payment, the Court may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (of lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). A "significant disparity between the incentive awards and the payments to the rest of the class members further exacerbate[s] the conflict of interest caused by the conditional incentive awards." Radcliffe, 2013 WL 1831760, at *5. "The conditional incentive awards removed a critical check on the fairness of the class-action settlement, which rests on the unbiased judgment of class representatives similarly situated to absent class members." Id.

Plaintiff filed a declaration detailing the time she devoted to the case: meeting with her attorneys, helping draft and review the complaint, reviewing and interpreting Defendant's documents, and attending a full-day mediation session. (McDonald Decl. ¶¶ 2-4.) Plaintiff also declared that her "primary concern at all times has been" that Defendant's employees be treated fairly. Plaintiff, however, has provided no evidence regarding the risks she faced in commencing the suit; any notoriety or personal difficulties encountered; and the duration of the litigation.

Moreover, there is a significant disparity between the proposed incentive award for Plaintiff and the potential payment for other Proposed Class Members. Specifically, the incentive award is roughly twenty-seven times greater than the amount a Proposed Class Member can expect to receive. This significant disparity is indicative of a conflict of interest.

Accordingly, the Court finds that the incentive award is not reasonable in light of the time expended, the applicable risks, and the disparity between the incentive award and the awards other class members will receive.

MINUTES FORM 11
CIVIL -- GEN

Page 17

Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of June 24, 2013

## D.    Notice and Administrative Procedures

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Plaintiff must provide notice that is "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). Likewise, claims forms must be informative and accurate. Id. at 172; Churchill Village, LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard.").

### 1.    Claim Forms

Claim forms must be timely, accurate, and informative. Hoffman-LaRoche, 493 U.S. at 172. Plaintiff attached the proposed class action notice ("Class Notice") and claim form ("Claim Form") as Exhibit 2 to the Harris Decl. (Doc. No. 27-2) ("Proposed Class Notice").

According to the Claim Form, to receive payment, a class member must complete and submit the Claim Form to the settlement administrator by a date to be determined. (Proposed Class Notice at 6.) The Class Notice also provides class members the option of opting out, objecting, or doing nothing. (Id. at 5.)

While the Claim Form generally appears acceptable, the Court notes one areas of concern. The Claim Form lacks a convenient way for class members to exclude themselves. Plaintiff provides general directions on how to submit a request for exclusion, but fails to provide a request for exclusion form. The Court directs Plaintiff to provide class members with an exclusion form.

### 2.    Administrative Procedures

Plaintiff proposes retaining Gilardi & Co., LLC ("Gilardi") as the settlement administrator ("Settlement Administrator") over the claim proceedings. (Harris Decl. ¶ 11.) The estimated cost of claims administration if $19,974. (Id.)

MINUTES FORM 11
CIVIL -- GEN                          Page 18            Initials of Deputy Clerk _____

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, Individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, Inclusive
MINUTE ORDER of June 24, 2013

The parties propose that within 30 calendar days of entry of preliminary approval, Defendant will provide the Settlement Administrator a database that contains the last-known name, mailing address, social security number, and number of meal-period cancellations for all members of the Settlement Class ("Class List"). (Proposed Settlement Agreement at 6.)  Within ten calendar days of receipt of the Class List, the Settlement Administrator will provide the Class Notice to potential class members.  (Id. at 7.)

After Class Notices are mailed, the Settlement Class shall have forty-five calendar days to respond and mail claim forms or opt-out requests.  (Id.)  The Settlement Administrator will make "reasonable, but not extraordinary, efforts" to locate members of the proposed class, including an "address follow-up on returned mail" and a corresponding extension of the response time for those class members. (Id. at 6.)

Apart from the noted concern regarding the Claim Form, the Court finds the notice and administrative procedures adequate.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Approval of Class-Action Settlement and Conditional Certification of Settlement Class, without prejudice.

**IT IS SO ORDERED.**

MINUTES FORM 11
CIVIL -- GEN

Initials of Deputy Clerk _____

Page 19