# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 11-1946VAP(SPx)                    Date:  July 16, 2013

Title:     COLLETTE McDONALD, individually and on behalf of all others similarly situated *-v-* AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
================================================================
PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

         Marva Dillard                          None Present
         Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR                  ATTORNEYS PRESENT FOR
PLAINTIFFS:                            DEFENDANTS:

         None                                   None

PROCEEDINGS:        MINUTE ORDER GRANTING PLAINTIFF'S MOTION FOR
                    PRELIMINARY APPROVAL OF CLASS ACTION
                    SETTLEMENT (IN CHAMBERS)

       Before the Court is a Motion for Preliminary Approval of Class-Action Settlement and Conditional Certification of Settlement Class filed by Plaintiff Collette McDonald ("Plaintiff") on behalf of herself and others similarly situated ("Proposed Class Members") (Doc. No. 26) ("Motion" or "Mot.").  The matter came before the Court for hearing on June 24, 2013.  The Court has considered the papers filed in support of of the Motion, and for the reasons set forth below, the Court GRANTS Plaintiff's Motion.


## I. BACKGROUND

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

On November 2, 2011, Plaintiff filed a complaint in the California Superior Court (Ex. 1 to Not. of Removal (Doc. No. 1) ("Complaint") against Defendant Airport Terminal Services, Inc. ("Defendant"), alleging (1) failure to provide meal-period wages in violation of Cal. Labor Code §§ 226.7 and 512; (2) failure to provide adequate pay stubs in violation of Cal. Labor Code § 226; (3) failure to reimburse for uniform-maintenance expenses in violation of Cal. Labor Code § 2802; (4) failure to timely pay all wages in violation of Cal. Labor Code §§ 201-203; and (5) violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (See Compl.)[1]

On December 9, 2011, Defendant removed the action to this Court. (See Not. of Removal.)

On October 25, 2012, Plaintiff filed a Notice of Tentative Settlement, providing that the parties intended to have a settlement agreement executed by November 15, 2012. (See Doc. No. 21 ("Notice of Tentative Settlement") at 2.)

On May 2, 2013, this Court issued an Order to Show Cause regarding dismissal for failure to prosecute. (Doc. No. 22 ("OSC").) On May 10, 2013, Plaintiff responded that though the parties had completed a "short-form Memorandum of Understanding" in October of 2012, they were still "actively engaged in negotiating a long-form Settlement Agreement and General Release" and awaiting execution of the settlement agreement. (See Doc. No. 23 ("Response").) On May 15, 2013, Plaintiff filed a Notice of Execution of the Long-Form Settlement Agreement. (See Doc. No. 24.)

On May 23, 2013, Plaintiff filed the instant Motion. With the Motion, Plaintiff filed the Declaration of Alan Harris (Doc. No. 27) ("Harris Decl.") with Exhibit 1 (Doc. No. 27-1) ("Proposed Settlement Agreement") and Exhibit 2 (Doc. No. 27-2) ("Proposed Class Notice"); and the Declaration of Collette McDonald (Doc. No. 28) ("McDonald Decl."). On May 31, 2013, Defendant filed a Notice of Non-Opposition to Plaintiff's Motion for Preliminary Approval (Doc. No. 30).

_____

[1]Although the parties stipulated for an extension of time to file a first amended complaint ("FAC") (see Doc. No. 20), the FAC was never filed.

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 2

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

     This Motion came for hearing before the Court on June 24, 2013.  The Court issued a tentative ruling denying the Motion, and permitted Plaintiff to file additional briefing in support of the Motion.  On July 8, 2013, Plaintiff filed a supplemental memorandum (Doc. No. 32) ("Supp. Mem."), the Declaration of Collette McDonald (Doc. No. 33) ("McDonald Declaration II") with Exhibit 1 (Doc. No. 33-1); the Declaration of Alan Harris (Doc. No. 34) ("Harris Declaration II") with Exhibits 1-8 (Doc. Nos. 34-1 to 34-8); and the Declaration of John P. Dorigan (Doc. No. 35) ("Dorigan Declaration") with Exhibit 1 (Doc. No. 35-1).

## II. LEGAL STANDARDS

### A.  Class Certification

     Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1996).  A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  Id.

     To bring a class action under Rule 23(a), a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

Fed. R. Civ. P. 23(a).

     In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action.  Here, Plaintiff moves for class certification under Rule 23(b)(3).  (Mot. at 19.)

     Where a plaintiff moves for class certification under Rule 23(b)(3), she must prove:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[2]

Fed. R. Civ. P. 23(b)(3).

## B.    Preliminary Approval of Settlement Under Rule 23

Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing.  See Federal Judicial Center, Manual for Complex Litigation, § 21. 632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Liti., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating the purpose of a preliminary approval hearing is to "ascertain where there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."); Manual for Complex Litigation, § 21.632.

## III. DISCUSSION
## A.    Rule 23 Class Certification

---

[2]The Court need not consider a fourth factor – the likely difficulties in managing a class action – in the context of a class action settlement.

In the Complaint, Plaintiff seeks certification of a California settlement class, described as: "[a]ll persons employed by ATS in California and commonly referred to as [Airport Agents][3] from approximately October 12, 2007, to the date of the filing of a motion for class certification."  (Compl. ¶ 19.)

Plaintiff has sufficiently established a proper basis for class certification under Rule 23(a), as discussed below.

### 1.    Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), joinder of all class members must be "impracticable," but not necessarily impossible.  Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 588 (C.D. Cal. 2008).  "Plaintiffs need not identify with precision the number of class members and may instead rely on reasonable inferences."  Id.  Furthermore, there is no specific number requirement, as the court may examine the specific facts of each case.  Ballard v. Equifax Check Servs., INc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Indeed, courts have not required evidence of a specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4).  Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

Here, Plaintiff states "there are approximately 1,098 individuals who have been employed [by Defendant] in California since November 2, 2007."  (Harris Decl. ¶ 7.)  Plaintiff has specifically identified the number of Proposed Class Members, and bases this number on reasonable investigation and inference: information gleaned from Defendant's payroll and personnel records.  (See Proposed First Amended Complaint (Ex. A to Doc. No. 20) ¶ 20.)  It would be impractical to join 1,098 individuals.  Accordingly, Plaintiff has satisfied the numerosity requirement.

---

[3]Plaintiff includes the following under the label Airport Agents: Agents, Lead Agents, Supervisor Agents, Ramp Agents, Ramp Leads, Ramp Supervisors, Cargo Agents, Cargo Leads, Cargo Supervisors, Passenger Service Agents, Passenger Service Leads, Passenger Service Supervisors, Station Agents, Lead Station Agents, Supervisor Station Agents, and Cabin Grooming Agents.  (Compl. at ¶ 19.)

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

## 2.    Commonality

Commonality is "the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011) (quoting Fed. R. Civ. P. 23(a)(2)).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Id. (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)).  "Their claims must depend upon a common contention."  Id. at 2551.  Even a single common question will suffice.  Id. at 2556.

Here, Plaintiff identifies four common issues in her Complaint: (1) whether Defendant's policy of not providing meal-period premium wages for documented inadequate meal breaks violates the California Labor Code's express requirement that wages be provided for missed meal breaks, as well as the requirement that pay stubs reflect all compensation due and owing; (2) whether Defendant is required to reimburse Airport Agents for uniform-cleaning costs; (3) whether the failure to reimburse for uniform-cleaning costs (as well as the failure to provide meal-period premium wages) constitutes a failure to pay all outstanding wages upon the termination of employment; and (4) whether Defendant's policy constitutes unfair competition.  (Compl. ¶ 26.)

### a.    Meal-Period Claim

Plaintiff's meal-period claim is focused on "a very specific subset of meal-period violations, namely, those instances in which [Defendant's] payroll records reflect when an employee has a "NO LUNCH" coding."  (Supp. Mem. at 3; see also Harris Decl. II ¶ 5.)  Defendant's timekeeping system would automatically deduct a meal break each workday for all agents.  (Harris Decl. II ¶ 5.)  When an agent was unable to take a meal break, Defendant would reverse the automatic deduction in its timekeeping system so that the current number of hours worked by agents were reflected therein.  (Id.)  Defendant required employees to sign a "NO LUNCH" form whenever they did not take a meal break.  (Id.)  A "NO LUNCH" coding was then made in Defendant's timekeeping system to reverse the automatic deduction.  (Id.)  In other words, Defendant did not pay the meal-period wage for any instance that a "NO LUNCH" coding was made.  (Id. at ¶ 6.)

The payroll records of 410 of the 1,098 Proposed Class Members were stamped with a "NO LUNCH" coding.  (Harris Decl. ¶ 7.)  Moreover, the policy to reverse the automatic deduction when a "NO LUNCH" coding was made applied to all 1,098 Proposed Class Members.  (Harris Decl. II ¶ 6.)  Plaintiff declares she did not receive meal-period premium pay when her pay records were stamped with a "NO LUNCH" coding, (McDonald Decl. ¶ 6), and she experienced at least ten such instances since November 2011.  (McDonald Decl. II ¶ 2.)

Plaintiff, therefore, has demonstrated that Defendant's failure to pay meal-period wages, based on its "NO LUNCH" coding policy, is a common question.

Plaintiff also argues persuasively that a common question exists for the meal-period claim because of Defendant's preemption defense.  (Supp. Mem. at 6.)  Specifically, Defendant has argued that Plaintiff's meal-period claim is preempted under the Airline Deregulation Act ("ADA").  (Harris Decl. II ¶ 14.)  Defendant has argued that its compliance with California's meal-period statute would have an effect on the scheduling of flights and have an ultimate effect on airfare; therefore, California's meal-period statute is arguably pre-empted by the ADA.  (Id.)  This defense creates a commonality amongst the Proposed Class Members.  See Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 490 (E.D. Cal. 2006) ("Where a central common defense may bar each of plaintiff's claims, class action treatment is particularly apt.  This is because '[i]f the defense succeeds, the entire litigation is disposed of.  If it fails, it will not be an issue in the subsequent individual trials.'")

### b.    Expense Reimbursement Claim

Plaintiff alleges that Defendant failed to reimburse its employees for the costs of maintaining their uniforms, in violation of Cal. Labor Code Section 2802.  (Compl. ¶¶ 11-12; 40-41.)  Section 2802 requires an employer to "indemnify his or her employee[s] for all necessary expenditures or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties."  Cal. Lab. Code § 2802(a).  "When uniforms are required by employers to be worn by . . . employee[s] as a condition of employment, such uniforms shall be provided and maintained by the employer."  8 Cal. Code Regs. § 11090 subsec. 9(A).

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

Every Proposed Class Member, including Plaintiff, was required to wear a uniform provided by Defendant.  (Harris Decl. II ¶ 11.)  The Proposed Class Members were told it was their responsibility to keep their uniforms clean.  (Id.)  Defendant did not explain to the Proposed Class Members that they could request cleaning-cost reimbursement and Defendant never provided any such reimbursement.  (Id.)  Whether Defendant is responsible for reimbursement costs is a common question here.

### c.    Unfair Competition

As for Plaintiff's unfair competition claim, she argues that this claim is based entirely on her meal-period and expense reimbursement claims, and therefore, the same commonality analysis applies.  The Court is persuaded by Plaintiff's argument.

Plaintiff, therefore, has demonstrated common questions exist, and has satisfied the commonality requirement.

### 3.    Typicality

The Ninth Circuit in Hanlon v. Chrysler Corp. explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d 1011, 1020 (9th Cir. 1998).  Thus, to find typicality, a "court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members."  Haley, 169 F.R.D. at 649.  The class representative "must be able to pursue [her] claims under the same legal or remedial theories as the unrepresented class members."  Paxil, 212 F.R.D. at 549.

Here, Plaintiff argues:

> The fact-pattern for Plaintiff is similar, if not identical, to the fact pattern for other Settlement Class members: Plaintiff and Settlement Class members earned hourly wages but were never provided meal-period compensation for documented cancelled meals, and they were required to shoulder the expense of maintaining their uniforms.

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

(Mot. at 19.)  Plaintiff worked for Defendant as a customer service agent from mid-2005 to mid-2011.  (McDonald Decl. II ¶ 2.)  Plaintiff was paid an hourly wage, which varied from $14.00 in 2008 to approximately $17.00 at the end of her employment.  (Id.)

Plaintiff further declares: (1) she is a "former hourly-paid employee of [Defendant] (McDonald Decl. ¶ 2.); and (2) she "believe[s] that [her] individual claims are typical of the claims of [Defendant's] other employees in that, among other things, [she] did not receive meal-period 'premium' pay for those instances when [her] time sheets reflect a 'NO LUNCH' coding" (McDonald Decl. ¶ 6).  During her time working for Defendant, Plaintiff experienced at least ten days where she worked through her meal break and where a "NO LUNCH" coding was stamped on her time sheets.

Additionally, Defendant required Plaintiff to wear a uniform, which Defendant directed her to clean and maintain.  (McDonald Decl. II ¶ 4.)  Plaintiff was not reimbursed for the costs of cleaning her uniform, and was never informed that she could submit reimbursement requests for these costs.  (Id.)

Plaintiff has sufficiently demonstrated that her claims are typical of the class.  Accordingly, Plaintiff has satisfied the typicality requirement.

## 4.    Adequacy of Representation

Rule 23(a)(4) demands that "representative parties will fairly and adequately protect the interests of the class."  This determination "is a question of fact that depends on the circumstances of each case."  In re Nat'l W. Life Ins. Deferred Annuities Litig., No. 05-1018, 2010 WL 2735732, at *5 (S.D. Cal. July 12, 2010) (citing McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981)).

Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

Hanlon, 150 F.3d at 1020.

As to the adequacy of the named Plaintiff, Plaintiff declares she has

MINUTES FORM 11                                        Initials of Deputy Clerk ___md____
CIVIL -- GEN                    Page 9

substantially contributed to the pursuit of the action on behalf of the proposed class by discussing the case for "more than fifteen hours" with counsel, spending "additional numerous hours" reviewing various documents related to her employment, providing her attorneys with the factual background to understand these documents, and attending a full-day mediation session.  (McDonald Decl. ¶¶ 3-4.)  Plaintiff also assisted by explaining Defendant's policies and interpreting Defendant's payroll documents.  (McDonald Decl. II ¶ 7.)  Plaintiff further declares that she does not have a conflict of interest.  (Id. at ¶¶ 5-6.)

Plaintiff undoubtedly has spent time being involved in this action. The Proposed Settlement Agreement, however, sets forth an incentive award payment of $5,000.00 for her.  (Mot. at 10.)  This is significantly larger than the approximately $180.00 payment to each of the Proposed Class Members. (Id.)  In Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. May 2, 2013), the Ninth Circuit stated: "Where, as here, the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate."  A class representative's "divergent interests, as a result of the conditional incentive payments, undermine [his or her] ability to 'fairly and adequately protect the interests of the class.'"  Id. (citing Fed. R. Civ. P. 23(a)(4)).

Plaintiff argues that Radcliffe is distinguishable because the Ninth Circuit was evaluating an incentive award that was expressly conditioned on the named representative's support of the settlement.  (Supp. Mem. at 17.)  Specifically, the Ninth Circuit stated that they were "not confronted with run-of-the-mill incentive awards, but rather a settlement provision that weighs on the class representatives' independent judgment on whether to support the settlement by calling for the denial of incentive awards if they do not support it."  Radcliffe, 715 F.3d at 1166.

Plaintiff's argument is persuasive.  Since Plaintiff's incentive award here is not conditional (see Supp. Mem. at 18), Plaintiff's interests are not divergent, and she has the ability to protect the interests of the class fairly and adequately.

As to the adequacy of class counsel, Plaintiff seeks to appoint as class

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

counsel Alan Harris ("Harris") and David Zelenski ("Zelenski") of Harris & Ruble, and John P. Dorigan ("Dorigan") of the Law Offices of John P. Dorigan. (Proposed Settlement Agreement at 1.) In determining adequacy of counsel pursuant to Rule 23(g), the Court:

> must consider: (I) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1).

Harris's declaration details the work that he and Zelenski have completed thus far in prosecuting this action and negotiating a settlement. (Harris Decl. ¶¶ 4-8.) Harris has "been appointed to lead class counsel in many wage-and-hour class actions," in addition to representing "plaintiffs in complex business litigation for over thirty-six years" and employees in numerous wage cases. (Harris Decl. ¶ 2.) Zelenski "has also been appointed class counsel in numerous wage-and-hour actions." (Id. at ¶ 3.) Neither Harris nor Zelenski have a conflict of interest with Plaintiff or any class members. (Id. at ¶ 12.) With her supplemental briefing, Plaintiff also submitted the Dorigan Declaration. Dorigan has represented plaintiffs in a limited number of wage and hour class actions, and has practiced law for over thirty years. (Dorigan Decl. ¶¶ 2-4.)

Plaintiff has demonstrated counsel's "ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## 5.    Class Certification Under Rule 23(b)(3)

Plaintiff requests class certification under Rule 23(b)(3). (See Mot. at 19-20.) Rule 23(b)(3) applies where "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent matters to consider include (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class. Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022 (internal quotation marks and citations omitted). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1778. When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately. (Id.)

As discussed above, Plaintiff has demonstrated commonality amongst the Proposed Class Members. Plaintiff identifies four common issues in her Complaint: (1) whether Defendant's policy of not providing meal-period premium wages for documented inadequate meal breaks violates the California Labor Code's express requirement that wages be provided for missed meal breaks, as well as the requirement that pay stubs reflect all compensation due and owing; (2) whether Defendant is required to reimburse Airport Agents for uniform-cleaning costs; (3) whether the failure to reimburse for uniform-cleaning costs (as well as the failure to provide meal-period premium wages) constitutes a failure to pay all outstanding wages upon the termination of employment; and (4) whether Defendant's policy constitutes unfair competition. (Compl. ¶ 26.)   Plaintiff has sufficiently demonstrated that common issues predominate over any individualized inquiries. A class action appears to be superior to other available methods for fairly and efficiently adjudicating this matter.

Thus, Plaintiff satisfies Rule 23(b)(3).

## B.   Fairness and Adequacy of Settlement Agreement

In determining whether or not the settlement is fair, reasonable, and adequate, courts balance several factors, including: (1) whether the proposed settlement

appears to be the product of serious, informed, non-collusive negotiations; (2) the strength of plaintiffs' case; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the risk of maintaining class action status throughout the trial; (5) the amount offered in settlement; (6) the extent of discovery completed, and the stage of the proceedings; (7) the experience and views of counsel; (8) the presence of a governmental participant;[4] and (9) the reaction of the class members to the proposed settlement.  <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1291 (9th Cir. 1992); <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d at 1079 (citing <u>Manual for Complex Litigation, Second</u> § 30.44 (1985)).

**1.     Settlement Agreement Terms**
      **a.     Parties to the Settlement Agreement**

The Proposed Settlement Agreement is between Plaintiff Collette McDonald, individually and on behalf of others similarly situated on the one hand, and Defendant Airport Terminal Services, Inc., on the other hand.  (Proposed Settlement Agreement at 1.)

      **b.     Settlement Payments**

The Proposed Settlement Agreement requires Defendant to pay a total settlement sum of $250,000.00 ("Gross Settlement Payment").  (Proposed Settlement Agreement at 3.)  The Gross Settlement Payment shall be used to satisfy: (I) attorneys' fees and costs; (ii) claims-administration fees; (iii) Plaintiff's enhancement payment; (iv) payment to Class Members; and (v) any and all payments (and associated costs) required by the Proposed Settlement Agreement.  (Proposed Settlement Agreement at 3.)  In terms of the payment to the settlement class, after deducting attorneys' fees, Plaintiff's enhancement award, any tax liabilities, and claim administration fees, the balance (the "Net Settlement Fund" or "NSF") will be distributed to Proposed Class Members who submit valid and timely claim forms.  (<u>Id.</u> at 4.)  Two-thirds of the NSF will be evenly distributed among all Proposed Class Members who submit valid and timely claim forms.  (<u>Id.</u>)  The remaining one-third of the NSF will be distributed pro rata based on the number of canceled meal periods as reported by Defendant.  (<u>Id.</u>)

_____

[4]As this factor does not apply to this case, the Court does not address it.

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

Assuming the Court approves $82,500.00 in attorneys' fees (33% of the Gross Settlement Payment)[5], $15,000.00 in litigation expenses, $20,000.00 in claims-administration expenses, and a $5,000.00 incentive award for Plaintiff, $127,500.00 will remain for distribution to participating class members. (Mot. at 10.) Assuming participation from 100% of the Proposed Class Members, the average net payment to Proposed Class Members who experienced canceled meals will be $103.65, and the average net payment to Proposed Class Members for non-meal break claims will be $77.42. (Id.)

### c.    Non-Monetary Relief

Under the Proposed Settlement Agreement, Defendant agrees to provide the following non-monetary relief, within 180 days of final approval of the settlement: (1) Defendant will provide refresher training to supervisors to clarify that all breaks that do not interfere with airline routes, rates, or services are permitted and authorized; (2) Defendant will inquire with third-party airport operators and regulators whether mats are permitted and, if permitted, will request their installation at work locations; (3) Defendant will inquire with third-party operators and regulators whether additional seating is permitted and, if permitted, will request provision of such seating at locations where it will not interfere with the nature of, or practical realities regarding, the work performed. (Mot. at 11-12; Proposed Settlement Agreement at 5.)

### 2.    Whether the Proposed Settlement is the Product of Non-collusive Negotiations

The Proposed Settlement Agreement appears to be the product of non-collusive negotiations. The parties conducted extensive negotiations, including several settlement offers and counter-offers. (Harris Decl. ¶ 8.) The parties agreed to work with a private mediator in June 2012, and participated in mediation in September 2012. (Id.) The mediation was fruitful, and resulted in a short-form memorandum of understanding providing for the creation of a $250,000.00 settlement fund. (Id.) Since the execution of that memorandum, the parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the memorandum of understanding. (Id.) These

---

[5]Twenty-five percent is benchmark for common fund cases. Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                    Page 14

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

negotiations resulted in the execution of the Proposed Settlement Agreement in May 2013.  The Proposed Settlement Agreement appears to be the product of arm's length, informed, and non-collusive negotiations, and the Court finds this factor weighs in favor of approval.

### 3.    Strength of Plaintiff's Case

Plaintiff concedes that "certain potentially dispositive defenses exist that may obviate any and all damages in this case."  (Harris Decl. ¶ 9 (emphasis in original).)  First, Plaintiff's meal-break claims may be preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  (Mot. at 21; Harris Decl. ¶ 9.)  If preemption applies, then Proposed Class Members are not entitled to any meal-period damages.  (Id.)  Even if preemption does not apply, Plaintiff's derivative claims for noncompliant pay stubs and continuing wages cannot be based on violations of California's meal-period statute.  (Id.)  Finally, Plaintiff's claim for improper seating may not apply because the nature of the work may not reasonably permit the use of seats.  (Id.)  According to Plaintiff, "[t]hese defenses potentially eliminate any liability for Plaintiff's pay-stub, continuing-wage, and seating claims."  (Mot. at 23.)  In light of these defenses, and in consideration of the weaknesses in Plaintiff's case, a $250,000.00 Gross Settlement Payment appears to be reasonable.  Therefore, this factor weighs in favor of the proposed settlement.

### 4.    Risk, Exposure, Complexity, and Likely Duration of Further Litigation

As stated above, Plaintiff faces the risk that she will not succeed on the merits of her claims.   Furthermore, Plaintiff notes that even if she and the Proposed Class Members eventually prevail on the merits of the claim, they risk recovering less than the proposed settlement because, as noted above, they may not be able to recover meal-period damages and damages from their derivative claims.  Additionally, to litigate this action to its conclusion likely would be expensive and time consuming.  (Mot. at 23.)  For the foregoing reasons, this factor weights in favor of the proposed settlement.

### 5.    Risk of Maintaining Class Action Status Throughout the Trial

There is a risk that Plaintiff's claims may be decertified before trial. (Mot. at 23-24.) It is difficult to "'determin[e] on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all.'" (Mot. at 24 (quoting Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. Jan. 17, 2013).) This factor weighs in favor of the proposed settlement.

**6.    Amount Offered in Settlement**

The amount offered in settlement is $250,000.00. (Proposed Settlement Agreement at 3.) In exchange for the settlement, class members agree to release "any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type that is based on or arises out of the allegations in the Lawsuit . . . ." (Proposed Settlement Agreement at 9.)

Plaintiff argues that the Gross Settlement Payment "will likely result in the payment of 100% of participating Class Members' missed-meal compensation." (Mot. at 24.) The average hourly wage for the Proposed Class Members was $12.47. (Harris Decl. II ¶ 7.) Total damages for Plaintiff's meal-period claims are estimated to be $46,151.47 (3,701 "NO LUNCH" workdays multiplied by $12.47 hourly wage). (Id.) Assuming an even distribution of the 3,701 "NO LUNCH" codings to the 410 Proposed Class Members who had a "NO LUNCH" coding stamped on their time sheets, each of the 410 Proposed Class Members is entitled to approximately $112.00 ($12.47 hourly wage multiplied by nine "NO LUNCH" workdays) for their meal-period claim.

Under the Settlement Agreement, 33% of the Net Settlement Fund ($127,500.00, based on Plaintiff's estimates of attorney's fees and other costs), or $42,495.75, will be distributed on a pro rata basis to the 410 Proposed Class members who had a "NO LUNCH" coding stamped on their time sheets. (Harris Decl. II ¶ 8.) This is only $3,655.72 less than the total damages calculated in the paragraph above. Assuming all 410 Proposed Class Members submit valid claims, they will each receive approximately $104.00.

As for Plaintiff's uniform-cleaning claim, Defendant never expressly required its employees to professionally clean their uniforms.  (Supp. Mem. at 22.)  It appears Proposed Class Members machine-washed, not dry-cleaned, their uniforms.  (Id.)  Under the Settlement Agreement, 66.7% of the $127,500.00 Net Settlement Fund, or $85,004.25, will be distributed on a pro rata basis to the 1,098 Proposed Class Members who submit valid claims.  Assuming 100% participation, each Proposed Class Member will receive $77.00 ($85,004.25 divided by 1,098 Proposed Class Members) for their uniform-cleaning reimbursement claim.

Based on the above discussion, the Court finds that the Gross Settlement Payment remedies Plaintiff and the Proposed Class Members for their alleged injuries.  This factor weighs in favor of the proposed settlement.

### 7.    Extent of Discovery Completed, and Stage of Proceedings

"Plaintiff has not had occasion to undertake any 'formal' discovery," but has information, as provided by Defendant, regarding "the size of the Settlement Class, as well as the total number of cancelled breaks during the class period."  (Mot. at 24; Harris Decl. ¶¶ 6-7.)  In addition, counsel "undertook their own independent investigation to inform their negotiating position, including risk re-evaluation in light of the potentially dispositive defenses . . . ."  (Mot. at 24-25.)

Regarding the meal-period claim, Plaintiff's counsel was provided with data indicating the precise number of "NO LUNCH" codings stamped on Proposed Class Members' timesheets.  (Harris Decl. II ¶ 6.)  Plaintiff's counsel also conducted interviews with some Proposed Clas Members to verify Plaintiff's meal-period claims.  (Id.)

As for the uniform-cleaning reimbursement claim, Plaintiff's counsel examined the uniforms and conducted interviews with Proposed Class Members.  (Id. at ¶ 12.)  Plaintiff's counsel also received information from Defendant regarding requesting new uniforms, in lieu of cleaning them.  (Id.)

Finally, regarding the inadequate seating claim, Defendant provided photographs to Plaintiff's counsel documenting the locations in which it presently

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

provides employee seating.  (Harris Decl. II ¶ 15.)  Plaintiff's counsel also interviewd Proposed Class Members regarding this claim.  (Id.)

Plaintiff has conducted sufficient investigation of the various issues in this case to warrant approval.  This factor weighs in favor of the proposed settlement.

### 8.     Experience and Views of Counsel

As explained above, Plaintiff has demonstrated sufficiently counsel's experience.  Counsel is also in favor of the proposed settlement.  This factor weighs in favor of approval.

### 9.     The Reaction of the Class Members to the Proposed Settlement

The reaction of Proposed Class Members to the proposed settlement is unavailable because class notice has not been delivered.  (Mot. at 25.)  At this stage, this factor is neutral as to the proposed settlement.

Finding the factors favor approval of the settlement, the Court finds that the settlement is fair, reasonable, and adequate.

## C.     Attorneys' Fees and Incentive Payment for Plaintiff

Plaintiff seeks allocation of settlement funds for attorneys' fees and costs, and for an incentive award payment.  Therefore, the Court also must evaluate the fairness and reasonableness of these allocations.

### 1.     Attorneys' Fees

Under the Proposed Settlement Agreement, Plaintiff's counsel requests attorneys' fees of up to 33 percent of the Gross Settlement Payment, and up to $15,000.00 in costs and expenses.  (Mot. at 14; Proposed Settlement Agreement at 3.)

Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the

MINUTES FORM 11                                          Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 18

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

lodestar method[8] or the percentage-of-the-fund method.[9]  Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)).  "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'"  Alberto v. GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008) (citations omitted).

"Although statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."  Six Mexican Workers, 904 F.2d at 1311.  Twenty-five percent is the "'benchmark' award that should be given in common fund cases."  Id.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Id.

Plaintiff argues that her 33 percent request is warranted because (1) Proposed Class Members will receive 100% of their outstanding meal-period compensation and (2) based on a lodestar calculation, the amount of attorneys' fees is greater than 33 percent of the Gross Settlement Payment.

In her supplemental briefing, Plaintiff sets forth information to determine the lodestar calculation.  According to the records provided, Plaintiff's counsel has expended a total of 307.70 hours working on this matter.  Based on counsel's hourly

---

[8]Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary to account for the risks associated with representation.  Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

[9]Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund.  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-
100, inclusive
MINUTE ORDER of July 16, 2013

rates, the total lodestar calculation is $127,358.25.[10]  Plaintiff argues that, since the
lodestar significantly exceeds the benchmark level of fees, the 33 percent request is
reasonable.

Plaintiff adequately demonstrates a reason for departing from the 25 percent
benchmark.  First, Proposed Class Members will receive nearly 100 percent of their
outstanding meal-period compensation and as well reimbursement for uniform
cleaning costs.  Second, the lodestar calculation significantly exceeds the
benchmark level of fees.  Thus, the Court finds the amount of attorneys' fees
requested supports preliminary approval of the settlement.

### 2.    Incentive Payment for Plaintiff

The Settlement proposes an incentive award of up to $5,000.00 to the named
Plaintiff for her efforts in bringing and prosecuting this case.  (Mot. at 12; Proposed
Settlement Agreement at 4.)

> In determining the appropriateness of the incentive payment, the Court
> may consider in determining whether to make an incentive award
> include: 1) the risk to the class representative in commencing suit, both
> financial and otherwise; 2) the notoriety and personal difficulties
> encountered by the class representative; 3) the amount of time and effort
> spent by the class representative; 4) the duration of the litigation; and 5)
> the personal benefit (of lack thereof) enjoyed by the class representative
> as a result of the litigation.

Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff filed a declaration detailing the time she devoted to the case: meeting
with her attorneys, helping draft and review the complaint, reviewing and interpreting

---

[10]Harris expended 63.40 hours at an hourly rate of $600.00 for a total of $38,040.00.
(Harris Decl. ¶ 21.)  Zelenski expended 161.70 hours at an hourly rate of $322.50 for a total of
$52,148.25.  (Id.)  Dorigan expended 82.60 hours at an hourly rate of $450.00 for a total of
$37,170.00.  (Id. at ¶ 23.)

MINUTES FORM 11                                          Initials of Deputy Clerk ___md____
CIVIL -- GEN                      Page 20

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

Defendant's documents, and attending a full-day mediation session. (McDonald Decl. ¶¶ 2-4.) Plaintiff also helped counsel by explaining Defendant's policies and interpreting Defendant's payroll documents. (McDonald Decl. II ¶ 7.) Plaintiff declares her "primary concern at all times has been" that Defendant's employees be treated fairly. (McDonald Decl. ¶ 5.) Plaintiff further declares that she "would continue to support the Settlement Agreement even if the Court were to deny awarding [her] any additional payments." (McDonald Decl. II ¶ 7.)

As an initial matter, and as discussed above, Plaintiff distinguished Radcliffe on the basis that the incentive award here is not conditioned on Plaintiff's approval of the settlement. Although this argument is well-taken, the Court is still concerned with the "significant disparity" (Radcliffe, 715 F.3d at 1165) between the incentive award and the payments to the rest of the class members. Assuming 100% participation by the Proposed Class Members (which, the Court recognizes, would be unique), the individual payment to Proposed Class Members who have a meal-period claim (410 Proposed Class Members) would be approximately $181.00. For the remaining 688 Proposed Class Members who do not have a meal-period claim, the individual payment would be $77.00. Plaintiff's proposed incentive award is significantly larger than either of these amounts.

Accordingly, the Court finds that an incentive award of $5,000.00 is not reasonable in light of the time expended, the applicable risks, and the disparity between the incentive award and the awards other class members will receive.

Instead, the Court revises the incentive award, based on the number of hours worked by Plaintiff in this case, multiplied by her median hourly wage. The Court approximates Plaintiff has spent 80 hours working on this case. Her median hourly wage is $15.50. (See McDonald Decl. II ¶ 2.) Multiplying these two amounts, the Court finds that an incentive award of $1240.00 is appropriate.

## D.    Notice and Administrative Procedures

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Plaintiff must provide notice that is "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). Likewise,

claims forms must be informative and accurate.  Id. at 172; Churchill Village, LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard.").

### 1.    Claim Forms

Claim forms must be timely, accurate, and informative.  Hoffman-LaRoche, 493 U.S. at 172.  Plaintiff attached the proposed class action notice ("Class Notice") and claim form ("Claim Form") as Exhibit 2 to the Harris Decl. (Doc. No. 27-2) ("Proposed Class Notice").

According to the Claim Form, to receive payment, a class member must complete and submit the Claim Form to the settlement administrator by a date to be determined.  (Proposed Class Notice at 6.)  The Class Notice also provides class members the option of opting out, objecting, or doing nothing.  (Id. at 5.)

With her additional briefing, Plaintiff also submitted a revised request for exclusion form.  (Supp. Mem. at 25; Ex. 8 to Harris Decl.)   This request for exclusion form provides class members the option of excluding themselves from the settlement.  (Id.)

The Claim Form submitted is acceptable.

### 2.    Administrative Procedures

Plaintiff proposes retaining Gilardi & Co., LLC ("Gilardi") as the settlement administrator ("Settlement Administrator") over the claim proceedings.  (Harris Decl. ¶ 11.)  The estimated cost of claims administration is $19,974.00.  (Id.)

The parties propose that within 30 calendar days of entry of preliminary approval, Defendant will provide the Settlement Administrator a database that contains the last-known name, mailing address, social security number, and number of meal-period cancellations for all members of the Settlement Class ("Class List"). (Proposed Settlement Agreement at 6.)  Within ten calendar days of receipt of the

EDCV 11-1946VAP(SPx)
COLLETTE McDONALD, individually and on behalf of all others similarly situated v. AIRPORT TERMINAL SERVICES, INC., and DOES 1-100, inclusive
MINUTE ORDER of July 16, 2013

Class List, the Settlement Administrator will provide the Class Notice to Proposed Class Members.  (Id. at 7.)

After Class Notices are mailed, the Settlement Class shall have forty-five calendar days to respond and mail claim forms or opt-out requests.  (Id.)  The Settlement Administrator will make "reasonable, but not extraordinary, efforts" to locate members of the proposed class, including an "address follow-up on returned mail" and a corresponding extension of the response time for those class members.  (Id. at 6.)

The Court finds the notice and administrative procedures adequate.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Preliminary Approval of Class-Action Settlement and Conditional Certification of Settlement Class.

**IT IS SO ORDERED.**