Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
La Quinta, California 92253
Telephone:  (760) 564-3804
Facsimile:  (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>       v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>              Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Date:  November 18, 2013<br>Time:  2:00 p.m.<br>Courtroom:  2 |

**PLEASE TAKE NOTICE** that, on November 18, 2013, at 2:00 p.m., in Courtroom 2 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California 92501—or at such other date, time, or place as the Court may designate— Plaintiff Collette McDonald will move pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding $82,500 in attorney's fees and $8,069.34 in incurred litigation costs from the common-fund settlement reached in the above-captioned action.  The Motion will be made and based upon this Notice; the Memorandum of points and authorities appended hereto; the Declarations of Alan Harris and John P. Dorigan filed herewith; the Request for judicial notice filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

The Motion is made pursuant to the July 16, 2013, Order granting preliminary approval of the class-wide Settlement Agreement and General Release ("Settlement Agreement"),[1] as well as pursuant to the Court-approved Class Notice disseminated on August 26, 2013.  The Class Notice specifies a claims-submission deadline of October 10, 2013; an objection deadline of October 25, 2013; and a final-fairness-hearing date of November 18, 2013.  Plaintiff intends on moving for final approval of the Settlement Agreement after the October 10, 2013, claims window has closed.[2]

/ / / / /

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings set forth in the Settlement Agreement.

[2] As explained in the Memorandum of points and authorities appended hereto, the present Motion is being filed before the final-approval papers to safeguard the due-process rights of the Settlement Class.  See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th Cir. 2010) (holding that a district court should set a schedule that provides class members an opportunity to review class counsel's completed fee motion before the objection window expires).  Plaintiff will lodge a single, consolidated Proposed Order granting final approval and the present fee-and-cost request when she files her final-approval papers.

1        The required meet-and-confer took place commencing on May 7, 2013—when the

2    Settlement Agreement was executed—and on various dates thereafter.

3

4    Dated:  September 26, 2013                HARRIS & RUBLE

5                                                        /s/ David Zelenski

6                                             Alan Harris
                                             David Zelenski
7                                             Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## *MEMORANDUM OF POINTS AND AUTHORITIES*

### *Table of Contents*

I.    Introduction ................................................................................... 1

II.   Summary of the Relevant Procedural History of Plaintiff's Claims ....................... 2

      A.    Plaintiff's Initiation of this Action and the Parties' Attempts at Resolution ......................................................... 2

      B.    The Specific Claims for Relief Alleged in this Action .................................. 3

            1.    Plaintiff's Meal-Period Claim ............................................ 3

            2.    Plaintiff's Expense-Reimbursement and Derivative Claims ............................................... 6

            3.    Plaintiff's Improper-Seating Claim .................................... 10

      C.    The Order Granting Preliminary Approval ................................ 11

III.  Argument ..................................................................................... 11

      A.    Class Counsel Are Entitled to Recover Fees from the Common Fund ........................................................... 11

      B.    Class Counsel's Requested Fees Are Within the Range of Approval .................................................. 13

            1.    The Results Obtained and the Degree of Risk Assumed .................... 15

            2.    The Non-Cash Component of the Settlement ............................. 17

            3.    The "Market Rate" for Class Counsel's Services ...................... 17

            4.    Class Counsel's Contingent-Based Representation ..................... 18

            5.    Class Counsel's Skill and the Complexity of the Issues ............... 19

            6.    The Reaction of the Class ............................................ 19

i

C.    The Lodestar "Crosscheck" Confirms that the Requested Fees
Are Reasonable.............................................................................20

D.    Class Counsel's Requested Expense Reimbursement Is Proper...................25

IV.    Conclusion .........................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Table of Authorities*

*Cases* [3]

Anderson v. Nextel Retail Stores, LLC
   2010 U.S. Dist. LEXIS 71598 (C.D. Cal. filed June 30, 2010).....................21

Angeles v. U.S. Airways, Inc.
   2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013)................................... 15, 16

Blackwell v. SkyWest Airlines, Inc.
   2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008)......................................16

Blum v. Stenson
   465 U.S. 886 (1984).................................................................................21

Boeing Co. v. Van Gemert
   444 U.S. 472 (1980).................................................................................13

Bond v. Ferguson
   2011 WL 2648879 (E.D. Cal. filed June 30, 2011)....................................14

Bright v. 99¢ Only Stores
   189 Cal. App. 4th 1472 (2010) .................................................................10

Bywaters v. United States
   670 F.3d 1221 (Fed. Cir. 2012) ..........................................................22–23

Carter v. Anderson Merchandisers, LP
   2010 WL 1946757 (C.D. Cal. filed May 11, 2010)....................................19

Chinese Daily News, Inc. v. Wang
   132 S. Ct. 74 (2011)................................................................................22

Cicero v. DirecTV, Inc.
   2010 WL 2991486 (C.D. Cal. filed July 27, 2010) ...................................18

Clark v. Payless Shoesource, Inc.
   2012 WL 3064288 (W.D. Wash. filed July 27, 2012)................................13

_____

[3] Pursuant to the Court's Standing Order, where possible, all legal-database citations are to Westlaw instead of Lexis.

Collado v. Toyota Motor Sales, U.S.A., Inc.
  2011 WL 5506080  (C.D. Cal. filed Oct. 17, 2011) ................................................ 24–25

Craft v. County of San Bernardino
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................ 18

Davis v. City of San Franciso
  984 F.2d 345 (9th Cir. 1993) ...................................................................................... 21

Davis v. City of San Francisco
  976 F.2d 1536 (9th Cir. 1992) .................................................................................... 21

Franco v. Ruiz Food Prods., Inc.
  2012 WL 5941801 (E.D. Cal. filed Nov. 27, 2012) .................................... 17, 19, 20, 25

Garcia v. Gordon Trucking, Inc.
  2012 WL 5364575 (E.D. Cal. filed Oct. 31, 2012) ...................................................... 19

Gardner v. Equilon Enters., LLC
  2012 U.S. Dist. LEXIS 142033 (C.D. Cal. filed Oct. 1, 2012) .................................... 12

Gardner v. GC Servs., LP
  2012 WL 1119534 (S.D. Cal. filed Apr. 2, 2012) ........................................................ 18

Gates v. Deukmejian
  987 F.2d 1392 (9th Cir. 1992) .................................................................................... 21

Greko v. Diesel U.S.A., Inc.
  2013 WL 1789602 (N.D. Cal. filed Apr. 26, 2013) ................................................ 12–13

Harris v. Investors' Business Daily, Inc.
  138 Cal. App. 4th 28 (2006) ........................................................................................ 9

Hash v. United States
  2012 WL 1252624 (D. Idaho filed Apr. 13, 2012) ...................................................... 23

Helm v. Alderwoods Group, Inc.
  2011 WL 5573837 (N.D. Cal. filed Nov. 15, 2011) ...................................................... 17

Hopkins v. Stryker Sales Corp.
  2013 WL 496358 (N.D. Cal. filed Feb. 6, 2013) ............................................... 14, 17, 18

PL.'S MOT. FOR AWARD OF ATT'YS FEES & COSTS; MEM. OF P. & A. IN SUPP. THEREOF

In re Activision Sec. Litig.
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................ 14

In re ATM Fee Antitrust Litig.
    686 F.3d 741 (9th Cir. 2011) ........................................................................... 21

In re Bluetooth Headset Prods. Litig.
    654 F.3d 936 (9th Cir. 2011) ...................................................................... 12, 13

In re Chiron Sec. Litig.
    2007 WL 4249902 (N.D. Cal. filed Nov. 30, 2007) ........................... 22, 23, 24

In re Heritage Bond Litig.
    2005 WL 1594403 (C.D. Cal. filed June 10, 2005) ......................................... 20

In re HP Laser Printer Litig.
    2011 WL 3861703 (C.D. Cal. filed Aug. 31, 2011) ......................................... 22

In re HPL Techs., Inc. Sec. Litig.
    366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................... 21–22, 24

In re Linerboard Antitrust Litig.
    2004 WL 1221350 (E.D. Pa. filed June 2, 2004) ....................................... 20–21

In re Mercury Interactive Corp. Sec. Litig.
    618 F.3d 988 (9th Cir. 2010) ........................................................................... 12

In re Nuvelo Sec. Litig.
    2011 WL 2650592 (N.D. Cal. filed July 6, 2011) ............................... 14, 15, 18

In re Petition of Hill
    775 F.2d 1037 (9th Cir. 1985) ......................................................................... 13

In re TFT-LCF (Flat Panel) Antitrust Litig.
    2011 WL 7575004 (N.D. Cal. filed Dec. 27, 2011) ......................................... 12

Jones v. Spherion Staffing LLC
    2012 U.S. Dist. LEXIS 112396 (C.D. Cal. filed Aug. 7, 2012) ....................... 16

Kakani v. Oracle Corp.
    2007 WL 2221073 (N.D. Cal. filed Aug. 2, 2007) ............................................. 5

Knight v. Red Door Salons, Inc.
    2009 WL 248367 (N.D. Cal. filed Feb. 2, 2009).................................................. 14, 25

Laffey v. Northwest Airlines, Inc.
    572 F. Supp. 354 (D.D.C. 1983)......................................................................22, 23, 24

Morales v. Stevco, Inc.
    2013 WL 1222058 (E.D. Cal. filed Mar. 25, 2013) ............................................. 18, 19

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................................ 20

Odrick v. UnionBanCal Corp.
    2012 WL 6019495 (N.D. Cal. filed Dec. 3, 2012) ..................................................... 25

Pierce v. County of Orange
    905 F. Supp. 2d 1017 (C.D. Cal. 2012) ...................................................................... 22

Plaisted v. Dress Barn, Inc.
    2013 WL 300913 (C.D. Cal. filed Jan. 25, 2013)....................................................... 10

Rowe v. N.H. Motor Transp. Ass'n
    552 U.S. 364 (2008)..................................................................................................... 15

Rutti v. Lojack Corp.
    2012 WL 3151077 (C.D. Cal. filed July 31, 2012) ................................................21, 22

Sandoval v. Thararldson Employee Mgmt., Inc.
    2010 WL 2486346 (C.D. Cal. filed June 15, 2010)................................................ 5, 20

Silva v. U.S. Bancorp
    2011 WL 7096576 (C.D. Cal. filed Oct. 6, 201) ........................................................ 10

Singer v. Becton Dickinson & Co.
    2010 WL 2196104 (S.D. Cal. filed June 1, 2010) ...................................................... 14

Six (6) Mexican Workers v. Arizona Citrus Growers
    904 F.2d 1301 (9th Cir. 1990) .................................................................................... 13

Smith v. CRST Van Expedited, Inc.
    2013 WL 163293 (S.D. Cal. filed Jan. 14, 2013) ......................................................... 5

1

<u>Staton v. Boeing Co.</u>
    327 F.3d 938 (9th Cir. 2003) ................................................................ 12

<u>Theme Promotions, Inc. v. New Am. Mktg. FSI</u>
    546 F.3d 991 (9th Cir. 2008) .................................................................. 9

<u>Thieriot v. Celtic Ins. Co.</u>
    2011 WL 1522385 (N.D. Cal. filed Apr. 21, 2011) ............................... 18–19

<u>Trevino v. Gates</u>
    99 F.3d 911 (9th Cir. 1996) ................................................................. 21

<u>Vasquez v. Coast Valley Roofing, Inc.</u>
    266 F.R.D. 482 (E.D. Cal. 2010) ............................................................ 5

<u>Vizcaino v. Microsoft Corp.</u>
    290 F.3d 1043 (9th Cir. 2002) ............................................ 13, 14, 18, 20

<u>Wang v. Chinese Daily News, Inc.</u>
    2008 U.S. Dist. LEXIS 123824 (C.D. Cal. filed Oct. 3, 2008) .................. 22

<u>Weeks v. Kellogg Co.</u>
    2011 U.S. Dist. LEXIS 155472 (C.D. Cal. filed Nov. 23, 2011) ............... 12

<u>Wren v. RGIS Inventory Specialists</u>
    2011 WL 1230826  (N.D. Cal. filed Apr. 1, 2011) ................................. 17

***Statutes***

49 U.S.C. § 41713 ..................................................................................... 15

Cal. Bus. & Prof. Code § 17200 ......................................................... 2, 6, 8–9

Cal. Bus. & Prof. Code § 17203 .................................................................. 9

Cal. Bus. & Prof. Code § 17208 .................................................................. 9

Cal. Civ. Proc. Code § 338 .......................................................................... 9

Cal. Lab. Code § 201 ......................................................................... 6, 7, 8

PL.'S MOT. FOR AWARD OF ATT'YS FEES & COSTS; MEM. OF P. & A. IN SUPP. THEREOF

Cal. Lab. Code § 202 ................................................................................ 7, 8

Cal. Lab. Code § 203 ............................................................................ 6, 7, 16

Cal. Lab. Code § 226 ............................................................................ 6, 8, 16

Cal. Lab. Code § 226.7 ............................................................................... 4, 6

Cal. Lab. Code § 512 ..................................................................................... 3

Cal. Lab. Code § 1198 .................................................................................. 10

Cal. Lab. Code § 2802 .................................................................................... 6

Cal. Lab. Code § 2698 .................................................................................. 10

**Rules**

Fed. R. Civ. Proc. 23 ............................................................................. 11, 12

**Regulations**

8 Cal. Code Regs. § 11090............................................................................. 3, 6, 10

# I. *Introduction.*

On July 16, 2013, the Court preliminarily approved a Settlement Agreement between Plaintiff Collette McDonald and Defendant Airport Terminal Services, Inc. ("ATS"). The Settlement Agreement seeks to resolve class-wide and representative claims for (a) ATS's alleged failure to pay meal-period wages to employees for documented missed meal breaks, (b) ATS's alleged failure to reimburse employees for the costs of maintaining their uniforms, and (c) ATS's alleged failure to provide employees with adequate workplace seating. The Settlement Agreement also seeks to resolve class-wide claims for (d) "continuing wages," (e) pay-stub damages, and (f) unfair competition that are derivative of the above-noted failures to provide meal-period compensation and uniform-maintenance reimbursement.

The total Settlement Class consists of 1,238 current and former employees. Under the Settlement Agreement, ATS has agreed to make a $250,000 Gross Settlement Payment for the benefit of the Settlement Class. Class Notice was delivered by the appointed Claims Administrator on October 10, 2013, and settlement payments will be made to those Class Members who submit valid claim forms in response to the Class Notice. From the $250,000 common fund, Class Counsel seek attorney's fees of 33%, *i.e.*, $82,500; and $8,069.34 in incurred litigation expenses. Based on the present rate of submitted claims, even if the Court grants the present Motion in full, participating Class Members will likely receive between $100 to $300 *more* than what they are owed in missed-meal compensation under Plaintiff's theory of the case, as well as an *additional* $145 to $290 for their non-meal claims. ATS will also provide additional non-monetary relief to the Class to reduce the prospect of future missed breaks and future seating violations—relief that, as explained below, could not be achieved absent settlement. All told, then, the monetary and non-monetary relief represents an outstanding result. This is particularly true in light of the arguably dispositive airline-industry defenses applicable to each of Plaintiff's claims. Class Counsel's fee-and-cost request should therefore be approved as fair, reasonable, and adequate.

**II.    Summary of the Relevant Procedural History and of Plaintiff's Claims.**

      **A.    Plaintiff's Initiation of this Action and the Parties' Attempts at Resolution.**

Plaintiff commenced this action in Riverside County Superior Court on November 2, 2011.  (Dec. 9, 2011, Notice of Removal of Civil Action to U.S. Dist. Court ("Dec. 9, 2011, Removal") [Docket No. 1] Ex. 1 at p. 18 of 58.)  ATS removed the action on December 9, 2011.  (See generally Dec. 9, 2011, Removal [Docket No. 1].)

Plaintiff's Complaint alleges that ATS violated the Labor Code by failing to provide employees with proper meal breaks and failing to reimburse employees for the costs of maintaining their uniforms.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 7–8, 11–12, 32–35, 40–41.)  The Complaint also alleges a derivative claim under the Labor Code—stemming from the meal-break allegations—that ATS failed to provide adequate pay stubs to employees.  (Dec. 9, 2011, Removal [Docket No. 1] at ¶¶ 9–10, 36–39.)  Similarly, the Complaint alleges a derivative Labor Code claim—also stemming from the meal-break allegations, as well as from the uniform-reimbursement allegations—that ATS failed to pay all wages due and owing to former employees.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 13, 42–44.)  In addition, the Complaint alleges a derivative unfair-competition claim under the California Business and Professions Code stemming from ATS's alleged failures to provide proper breaks and uniform-maintenance reimbursement.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 45–46.)  Finally, the Complaint alleges that ATS failed to provide adequate seating for employees.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 14–15.)

After ATS had removed Plaintiff's Complaint to this Court, Plaintiff filed a Motion to strike ATS's Answer, arguing that ATS's affirmative defenses had been defectively alleged.  (Dec. 29, 2011, Notice of Mot. & Mot. to Strike ATS's Ans. to Pl.'s Unverified Compl. for Damages [Docket No. 10] at 2:20–10:4.)  In lieu of having the Court rule on Plaintiff's Motion, the parties stipulated to a continuance of the hearing on the Motion so that they could meet and confer about resolving Plaintiff's claims by settlement.  (See generally Jan. 5, 2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans.

1    to Pl. Collette McDonald's Compl., *et al.*, Pending Early Settlement Discussions; Feb. 8,

2    2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans. to Pl. Collette

3    McDonald's Compl., *et al.*, Pending Early Settlement Discussions [Docket No. 12].)

4          After extensive negotiations, the parties agreed that the services of a private

5    mediator would assist in resolving Plaintiff's claims.  (Sept. 26, 2013, Decl. of Alan

6    Harris in Supp. of Mot. for Att'ys Fees & Reimbursement of Costs ("Sept. 26, 2013,

7    Harris Decl.") [Docket No. 39] ¶ 4.)  In June 2012, the parties selected Lynn Frank of

8    Frank and Feder—a mediator well-versed in wage-and-hour actions, including those

9    brought in the airline industry—to act as mediator.  (Sept. 26, 2013, Harris Decl. [Docket

10   No. 39] ¶ 4.)  Mediation went forward in September 2012, during which the parties

11   executed a short-form Memorandum of Understanding providing for the creation of a

12   $250,000 settlement fund.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 4.)  Over the

13   next several months, the parties proceeded to negotiate the terms of a long-form

14   settlement agreement encompassing the terms of the Memorandum of Understanding.

15   (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 4.)  In May 2013, those negotiations

16   resulted in the execution of the Settlement Agreement that is presently before the Court.

17   (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 4.)

18          **B.    The Specific Claims for Relief Alleged in this Action.**

19          Again, the Settlement Agreement seeks to resolve Plaintiff's claims for (a) missed

20   meal breaks, (b) uniform-expense reimbursement, (c) inadequate workplace seating, (d)

21   continuing wages, (e) pay-stub violations, and (f) unfair competition.  This section

22   provides a brief recap of those claims, as well as of the evidence reviewed by Class

23   Counsel in connection with negotiating the settlement of those claims.

24          **1.    Plaintiff's Meal-Period Claim.**

25          The relevant Industrial Welfare Commission ("IWC") wage order provides that

26   "[n]o employer shall employ any person for a work period of more than five (5) hours

27   without a meal period of not less than 30 minutes."  8 Cal. Code Regs. § 11090 subsec.

28   11(A).  <u>See also</u> Cal. Lab. Code § 512(a) (stating same).  Under the Labor Code, "[i]f an

1    employer fails to provide an employee a meal period . . . in accordance with an applicable

2    order of the [IWC], the employer shall pay the employee one additional hour of pay at the

3    employee's regular rate of compensation for each work day that the meal . . . period

4    [wa]s not provided."  Cal. Lab. Code § 226.7(b).

5        As alleged in the Complaint, Plaintiff's meal-period claim is focused on a very

6    specific subset of meal-period violations, namely, those instances in which ATS's payroll

7    records reflect "NO LUNCH" codings.  (See Dec. 9, 2011, Removal [Docket No. 1] Ex.

8    1 at ¶¶ 8 (alleging that "ATS failed to provide Plaintiff and [a]irport [a]gents with meal-

9    period premium wages for those occasions on which they were not provided with

10   adequate meal breaks . . . despite the fact that [ATS] kept track of those instances so that

11   it could reverse the automatic meal-period deduction taken by its payroll system each

12   workday"), 34 (seeking meal-period wages for "[t]hose instances [that] are recorded in

13   ATS's payroll system").)  According to evidence reviewed in connection with negotiating

14   the Settlement Agreement, ATS required employees to sign a "NO LUNCH" form

15   whenever the nature of the work prohibited them from taking a required meal break; a

16   "NO LUNCH" coding was then made in ATS's timekeeping system to reverse the

17   automatic deduction.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 6–7.)  Also

18   according to that evidence, ATS never paid any meal-period wages for the "NO

19   LUNCH" workdays.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 6–7.)

20       Based on this evidence, Plaintiff seeks to settle only the meal-period liability

21   arising when ATS recorded a missed meal, i.e., those instances in which a "NO LUNCH"

22   coding was made in ATS's timekeeping system.  To this end, the Settlement Agreement's

23   release is limited to the factual allegations pled in the Complaint.  (Sept. 26, 2013, Harris

24   Decl. [Docket No. 39] ¶¶ 1, 6 & Ex. 1 at § 14.)  Because those factual allegations are

25   limited to ATS's "NO LUNCH" policy, the Settlement Class' meal-period claims that do

26   not relate to the "NO LUNCH" policy are not being released.

27       According to the evidence reviewed in connection with the mediation, there are a

28   total of 3,701 "NO LUNCH" codings across the Settlement Class.  (Sept. 26, 2013,

Harris Decl. [Docket No. 39] ¶ 7.)  Those 3,701 codings were experienced by 410 individuals, including Plaintiff herself.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 7; July 8, 2013, Supplemental Decl. of Collette McDonald in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("July 8, 2013, McDonald Decl.") [Docket No. 33] ¶¶ 2–3.)  On average, then, the 410 individuals experienced approximately 9 canceled meals each.

After deducting requested attorney's fees and costs of $82,500 and $8,069.34, respectively; claims-administration costs of approximately $20,000; and Plaintiff's requested enhancement award of $5,000, a total of $134,430.66 of the Gross Settlement Payment will remain for distribution.  Of this $134,430.66 Net Settlement Fund, one-third ($44,805.74) is earmarked for distribution to those of the 410 Class Members who submit valid claim forms.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1, 9 & Ex. 1 at § 7.D.)  The $44,805.74 will be distributed on a *pro rata* basis according to the number of "NO LUNCH" codings experienced by each such Class Member relative to the total number of "NO LUNCH" codings for all Class Members who submit valid claim forms. (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1, 9 & Ex. 1 at § 7.D.)

Based on the present claims-submission rate, it appears that between 25% to 50% of the Settlement Class will submit claims.[4]  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 10.)  If 50% submit valid claims, the average net settlement payment for canceled meals will be $218.56 (= $44,805.74 ÷ 205 Class Members), or $24.21 per canceled meal (= $44,805.74 ÷ 1,851 canceled meals); if 25% submit valid claims, the average net settlement payment for canceled meals will be $435.01 (= $44,805.74 ÷ 103 Class

_____

[4] A participation rate of between 25% and 50% represents a positive response to a class-wide settlement.  See, e.g., Kakani v. Oracle Corp., 2007 WL 2221073 at *4 (N.D. Cal. filed Aug. 2, 2007) (explaining that "[h]uman nature dictates that[,] despite counsel's best efforts, not all class members will submit claims"); Smith v. CRST Van Expedited, Inc., 2013 WL 163293 at *4 (S.D. Cal. filed Jan. 14, 2013) (noting that 44% of the class had submitted claims, which the court characterized as a "positive" response); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 485 (E.D. Cal. 2010) (noting that "31% of the class submitted claims"); Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response).

1    Members), or $48.44 per canceled meal (= $44,805.74 ÷ 925 canceled meals).

2         Based on the evidence reviewed in connection with the mediation, these estimated

3    average net payments represent *more* than what Class Members stand to receive after a

4    successful trial.  This follows because, under the Labor Code, an employee's meal-period

5    wage is equal to his or he "regular rate," which for present purposes is his or her hourly

6    wage, see Cal. Lab. Code § 226.7, and because, according to ATS's records, the average

7    hourly wage for the Settlement Class is only $12.47.  (Sept. 26, 2013, Harris Decl.

8    [Docket No. 39] ¶ 8.)  Accordingly, total damages for missed meals across the *entire*

9    Settlement Class equal $46,151.47 (= 3,701 canceled meals × $12.47 hourly wage), or

10   $112.56 (= $46,151.47 ÷ 410 individuals) for each individual who experienced a

11   canceled meal.  Assuming, then, that between 25% to 50% of the Settlement Class submit

12   claims, Class Members stand to receive between $100 to $300 more than what they are

13   owed in missed-meal compensation for "NO LUNCH" codings.

14            **2.    *Plaintiff's Expense-Reimbursement and Derivative Claims.***

15        In addition to the meal-break claim, Plaintiff's Complaint alleges that ATS failed

16   to reimburse employees for the costs of maintaining their uniforms, in violation of section

17   2802 of the Labor Code.  Plaintiff's Complaint also alleges that, based on ATS's alleged

18   failures to provide uniform-maintenance reimbursement and meal-period premium wages

19   for "NO LUNCH" codings, ATS is liable for continuing wages under sections 201

20   through 203 of the Labor Code, pay-stub damages under section 226 of the Labor Code,

21   and unfair competition under section 17200 *et seq.* of the Business and Professions Code.

22        As to uniform-maintenance reimbursement, section 2802 of the Labor Code

23   requires an employer to "indemnify his or her employee[s] for all necessary expenditures

24   or losses incurred by the employee[s] in direct consequence of the discharge of [their]

25   duties."  Cal. Lab. Code § 2802(a).  Moreover, under the relevant IWC wage order,

26   "[w]hen uniforms are required by employers to be worn by . . . employee[s] as a

27   condition of employment, such uniforms shall be provided and maintained by the

28   employer."  8 Cal. Code Regs. § 11090 subsec. 9(A).  Based on these provisions,

1   Plaintiff's Complaint alleges that ATS's employees were required to wear uniforms but

2   were never reimbursed for cleaning them.  (See Dec. 9, 2011, Removal [Docket No. 1]

3   Ex. 1 at ¶¶ 11–12, 40–41.)  According to evidence reviewed in connection with the

4   mediation, although all ATS employees—including Plaintiff—were responsible for

5   cleaning their uniforms, ATS never reimbursed them for cleaning costs and never

6   apprised them that they were entitled to request cleaning-expense reimbursement.  (Sept.

7   26, 2013, Harris Decl. [Docket No. 39] ¶ 12; July 8, 2013, McDonald Decl. [Docket No.

8   33] ¶ 4.)  However, the evidence reviewed also demonstrated that ATS never required

9   employees to professionally dry clean these garments; instead, employees were free to

10  machine-wash their uniforms with their non-work apparel, reducing any costs associated

11  with the alleged failure to reimburse.  (Sept. 26, 2013, Harris Decl. [Docket No. 39]

12  ¶¶ 12–13; July 8, 2013, McDonald Decl. [Docket No. 33] ¶ 4.)  Further reducing any

13  such costs is the fact that, in lieu of cleaning their uniforms, ATS permitted employees to

14  simply request new garments.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 13.)

15      As to Plaintiff's continuing-wage, pay-stub, and unfair-competition claims, these

16  causes of action are entirely derivative of the above-described uniform-maintenance and

17  "NO LUNCH" meal-period claims.  Accordingly, if the underlying claims ultimately fail,

18  the continuing-wage, pay-stub, and unfair-competition claims likewise fail.  For instance,

19  as to continuing wages, Labor Code sections 201 and 202 require that former employees

20  be timely paid for all wages due and owing upon the termination of employment.  See

21  Cal. Lab. Code §§ 201(a), 202(a).  Employers who violate section 201 or 202 owe their

22  aggrieved employees an additional day's worth of wages for each day of non-payment,

23  up to a maximum of thirty days.  Id. § 203(a).  The employees' wages, in other words,

24  "continue" to accrue for up to thirty days.  Plaintiff's Complaint alleges that former ATS

25  employees—including Plaintiff herself, whose employment ended in mid-2011 (see July

26  8, 2013, McDonald Decl. [Docket No. 33] ¶ 2)—who were denied meal-period wages on

27  days reflecting "NO LUNCH" codings are entitled to these continuing wages.  (Dec. 9,

28  2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 13, 42–44.)  The same goes for all employees

1   who were not provided amounts to cover the expense of cleaning their uniforms.  (Dec. 9,

2   2011, Removal [Docket No. 1] Ex. 1 at ¶ 43.)

3       As alleged, then, Plaintiff's continuing-wage claim does not address all violations

4   of sections 201 and 202.  For example, it does not address the failure to issue a timely

5   final paycheck to former employees (occurring, say, when an employee is fired but is not

6   given a check on his or her last day).  Similar to the meal-period claim, then, Plaintiff's

7   continuing-wage claim is limited to a very specific type of violation:  the failure to

8   include all outstanding wages in employees' final paychecks based on either a failure to

9   pay meal-period premium wages for "NO LUNCH" codings or a failure to provide

10  additional amounts for uniform-cleaning reimbursement.  Because the Settlement

11  Agreement's release is limited to the Complaint's factual allegations, only these

12  derivative continuing-wage claims are being released.

13      The same can be said for Plaintiff's pay-stub claim under section 226 of the Labor

14  Code, which claim is derivative of the above-described "NO LUNCH" violation.  Section

15  226 requires employers to provide their employees with "accurate itemized statement[s]"

16  accompanying their paychecks, listing, *inter alia*, all wages earned.  Cal. Lab. Code

17  § 226(a).  If "[a]n employee suffer[s] injury" stemming from a failure to provide such

18  information, he or she is entitled to recover statutory damages of up to $100 for each

19  incorrect pay stub.  Id. § 226(e)(1).  As alleged in Plaintiff's Complaint, whenever ATS

20  coded a "NO LUNCH" workday for an employee, it should have paid a missed-break

21  wage, and that wage should have appeared on the employee's pay stub.  (Dec. 9, 2011,

22  Removal [Docket No. 1] Ex. 1 at ¶¶ 10, 38.)  As alleged, then, Plaintiff's pay-stub claim

23  does not address all violations of section 226.  Similar to the continuing-wage claim,

24  because the Settlement Agreement's release is limited to the factual allegations pled in

25  the Complaint, only this derivative pay-stub cause of action is being released.

26      Plaintiff's final derivative claim is for unfair competition under section 17200 *et*

27  *seq*. of the Business and Professions Code.  Section 17200 defines "unfair competition"

28  as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code

§ 17200.  In effect, "[a]n action based on this statute 'borrows' violations of other laws," <u>Harris v. Investors' Business Daily, Inc.</u>, 138 Cal. App. 4th 28, 32–33 (2006), meaning that any statutory violation automatically results in a violation of section 17200.[5] Plaintiff may properly seek restitution for "NO LUNCH" meal-period wages and uniform-expense reimbursement under section 17200 *et seq.* simultaneously with her claims under the Labor Code.[6]  <u>See</u> Cal. Bus. & Prof. Code § 17203.  This, in fact, is precisely what Plaintiff seeks by way of her section 17200 claim.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at ¶¶ 45–46.)  Again, because the Settlement Agreement's release is limited to the factual allegations pled in the Complaint, only this precise, derivative unfair-competition claim is being released.

Based on the projected claims-response rate of between 25% and 50%, Class Members stand to receive considerable compensation for these derivative claims under the Settlement Agreement.  Again, after deducting requested attorney's fees and costs of $82,500 and $8,069.34, respectively; claims-administration costs of approximately $20,000; and Plaintiff's requested enhancement award of $5,000, a total of $134,430.66 of the Gross Settlement Payment will remain for distribution to Class Members.  As noted above, of this $134,430.66 Net Settlement Fund, one-third ($44,805.74) is earmarked for the "NO LUNCH" meal-period claim; the remaining two-thirds ($89,624.92) is to be used to pay the uniform-maintenance, continuing-wage, pay-stub, and unfair-competition claims of those Class Members who submit valid claims.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1, 13, 15 & Ex. 1 at § 7.D.)  The $89,624.92

---

[5] In other words, this claim completely overlaps Plaintiff's alleged underlying claims. Plaintiff has alleged it because it expands the applicable statute of limitations.  <u>Compare</u> Cal. Civ. Proc. Code § 338 (adopting a three-year statute for "action[s] upon a liability created by statute") <u>with</u> Cal. Bus. & Prof. Code § 17208 (establishing a four-year limitations period for unfair-competition violations).

[6] Because section 17200 only permits restitutionary damages, <u>see</u>, <u>e.g.</u>, <u>Theme Promotions, Inc. v. New Am. Mktg. FSI</u>, 546 F.3d 991, 1009 (9th Cir. 2008) (explaining that "[t]he California Supreme Court has held that nonrestitutionary disgorgement is akin to a damages remedy:  relief that is not allowed under the UCL [*i.e.*, the unfair-competition law]"), and because continuing wages and statutory pay-stub damages are nonrestitutionary, the only damages available under Plaintiff's unfair-competition claim are those stemming from the alleged meal-period and expense-reimbursement allegations.

will be divided equally among all such Class Members.  (Sept. 26, 2013, Harris Decl.

[Docket No. 30] ¶¶ 1, 13, 15 & Ex. 1 at § 7.D.)  If 50% submit valid claims, then each

participating Class Member will receive $144.79 (= $89,624.92 ÷ 619 Class Members); if

25% submit valid claims, then each participating Class Member will receive $289.11

(= $89,624.92 ÷ 310).  Again, these recoveries are on top of whatever amounts Class

Members will receive for the "NO LUNCH" claim.  This additional recovery is

considerable in light of the limited damages suffered on account of employees not being

reimbursed for machine-washing their uniforms.  It is also considerable given ATS's

arguably dispositive defenses, discussed below in section III.B.1 of this Memorandum.

### 3.    *Plaintiff's Improper-Seating Claim.*

Plaintiff's final claim in her Complaint concerns ATS's alleged failure to provide

adequate seating for its employees.  (Dec. 9, 2011, Removal [Docket No. 1] Ex. 1 at

¶¶ 14–15.)  As to seating, the relevant IWC wage order requires that "[a]ll working

employees . . . be provided with suitable seats when the nature of the work reasonably

permits the use of seats."  8 Cal. Code Regs. § 11090 subsec. 14(A).  A violation of the

wage order's seating requirement is a violation of the Labor Code.  See Cal. Lab. Code

§ 1198 (stating that "[t]he employment of any employee . . . under conditions of labor

prohibited by [a wage] order is unlawful"); Bright v. 99¢ Only Stores, 189 Cal. App. 4th

1472, 1479 (2010) (holding that "section 1198 renders unlawful violations of the suitable

seating requirement of [the] wage order").  However, seating violations do not give rise

to a claim for damages; instead, they merely form the basis for a civil-penalty claim

under the Private Attorneys General Act ("PAGA"), section 2698 *et seq.* of the Labor

Code.  See, e.g., Silva v. U.S. Bancorp, 2011 WL 7096576 at *4 (C.D. Cal. filed Oct. 6,

201) (holding that "monetary remedies for these violations are only available in the form

of penalties under PAGA"); Plaisted v. Dress Barn, Inc., 2013 WL 300913 at *6 (C.D.

Cal. filed Jan. 25, 2013) (holding the same).

For this reason, although Plaintiff's Complaint includes improper-seating

allegations, it does not allege a "stand-alone" improper-seating claim.  Because non-

penalty damages are unavailable for any such violation, the Settlement Agreement
includes non-monetary relief addressing the seating issue.  Specifically, after final
approval of the settlement, ATS is required to request the installation of additional
seating that airport regulators determine does not interfere with airport operations.  (Sept.
26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1, 16 & Ex. 1 at § 8.)  In addition, ATS is
required to request the installation of regulator-approved mats to alleviate the stress of
standing when seating is impossible.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1,
16 & Ex. 1 at § 8.)  As explained below in section III.B.2 of this Memorandum, these
prospective benefits provided by the Settlement Agreement could not have been obtained
even after a successful trial on the merits, given Plaintiff's status as a former employee.

### C.    The Order Granting Preliminary Approval.

After the Settlement Agreement was executed in May 2013, Plaintiff filed her
Motion for preliminary approval.  (See generally May 23, 2013, Notice of Mot. & Mot.
for Preliminary Approval of Class-Action Settlement & Conditional Certification of
Settlement Class [Docket No. 26].)  During the June 24, 2013, hearing on the Motion, the
Court requested supplemental briefing directed principally to the issue of whether
Plaintiff's claims were amenable to class-wide treatment.  (See June 24, 2013, Civil
Minutes [Docket No. 31] at 1.)  Plaintiff filed that briefing on July 8, 2013.  (See
generally July 8, 2013, Supplemental Mem. of P. & A. in Supp. of Mot. for Preliminary
Approval of Class-Action Settlement & Conditional Certification of Settlement Class
[Docket No. 32].)  After reviewing Plaintiff's supplemental briefing, the Court issued a
detailed ruling certifying the Settlement Class under Federal Rule of Civil Procedure
23(a) and (b)(3).  (See July 16, 2013, Civil Minutes [Docket No. 36] at 1–12.)

## III.   Argument.

### A.    Class Counsel Are Entitled to Recover Fees from the Common Fund.

Federal Rule of Civil Procedure 23 provides that, "[i]n a certified class action, the
court may award reasonable attorney's fees and nontaxable costs that are authorized by
law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Rule 23(h) applies to

requests for attorney's fees for settled class actions.  See Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) (explaining that "[a]ttorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate and reasonable'").  According to the Ninth Circuit, in order to protect the due-process rights of unnamed class members, any such request must be filed prior to the deadline to object to the settlement.  In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th Cir. 2010) (hereinafter, "In re Mercury").  See also Weeks v. Kellogg Co., 2011 U.S. Dist. LEXIS 155472 at *80 (C.D. Cal. filed Nov. 23, 2011) (applying In re Mercury and holding that the filing of a fee petition one week before the objection deadline comported with due process); In re TFT-LCF (Flat Panel) Antitrust Litig., 2011 WL 7575004 at *2 (N.D. Cal. filed Dec. 27, 2011) (holding that class counsel's filing of their fee motion one month before the objection deadline satisfied In re Mercury); Gardner v. Equilon Enters., LLC, 2012 U.S. Dist. LEXIS 142033 at *5 (C.D. Cal. filed Oct. 1, 2012) (requiring class counsel to file their motion for fees fourteen days before the objection deadline).  Here, the Class Notice approved by the Court and delivered to the Settlement Class specifies an objection deadline of October 25, 2013.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 25 & Ex. 9 at 2–4.)  Although the Court did not set a filing deadline for Class Counsel's fee request, they are filing the present Motion one month prior to the expiration of the objection window.  The present Motion therefore complies with In re Mercury.

Turning to the merits of the Motion, in analyzing Rule 23(h) fee requests, courts "'have an independent obligation to ensure that the award, like the settlement itself, is reasonable[] even if the parties have already agreed to an amount.'"  Greko v. Diesel U.S.A., Inc., 2013 WL 1789602 at *8 (N.D. Cal. filed Apr. 26, 2013) (quoting In re Bluetooth Headset Prods. Litig., 654 F.3d 936, 941 (9th Cir. 2011)).  For purposes of determining a reasonable fee, "'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'"  Greko, 2013 WL 1789602 at *8.  Generally speaking, though, "[t]he lodestar method is . . . preferable when calculating

statutory attorney fees, whereas the percentage-of-recovery approach is appropriate when the fees will be drawn from a common fund." <u>Clark v. Payless Shoesource, Inc.</u>, 2012 WL 3064288 at *1 (W.D. Wash. filed July 27, 2012) (citing <u>In re Bluetooth Headset Prods. Litig.</u>, 654 F.3d at 941). The percentage method is also particularly suited for common-fund settlements achieved at a procedurally early litigation stage. <u>See Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) (stating that "the primary basis of the fee award remains the percentage method" and that, although the lodestar can be used as a "crosscheck of the percentage method," it should not "imply that class counsel should necessarily receive a lesser fee for settling a case quickly").

As explained by the Ninth Circuit, a "common fund" exists "when (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." <u>In re Petition of Hill</u>, 775 F.2d 1037, 1041 (9th Cir. 1985). According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [amount]." <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 444, 479 (1980). Here, the $250,000 Gross Settlement Payment is a common fund, as each Class Member will be entitled to a sum certain computed as a function of his or her "NO LUNCH" meals and the total number of Class Members who submit valid claims. Accordingly, the Court should apply the percentage-of-recovery approach when setting the amount of Class Counsel's fee.[7] As explained below, because Class Counsel's requested fees are within the range specified by the Ninth Circuit, and because they are approximately $50,000 less than Class Counsel's lodestar, the Motion should be granted.

### B.    Class Counsel's Requested Fees Are Within the Range of Approval.

The Ninth Circuit has explained that "25 percent of the fund [i]s the 'benchmark' award that should be given in common fund cases." <u>Six (6) Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990). That said, "the exact percentage

---

[7] In any event, as explained below in section III.C of this Memorandum, Class Counsel's requested fee is also appropriate under the lodestar analysis.

varies depending on the facts of the case, and in 'most common fund cases, the award *exceeds* that benchmark.'" <u>Bond v. Ferguson</u>, 2011 WL 2648879 at *9 (E.D. Cal. filed June 30, 2011) (quoting <u>Knight v. Red Door Salons, Inc.</u>, 2009 WL 248367 at *6 (N.D. Cal. filed Feb. 2, 2009)) (emphasis supplied).  <u>See also</u> <u>In re Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989) (stating that "nearly all common fund awards range around 30%").  This is particularly true when class members stand to recover a significant amount of their potential damages and when class counsel's lodestar exceeds the fee request.  <u>See</u> <u>Singer v. Becton Dickinson & Co.</u>, 2010 WL 2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (departing from the benchmark and awarding fees equal to 33.33% of the settlement fund when class members would recover "110% of the claimed losses"); <u>Hopkins v. Stryker Sales Corp.</u>, 2013 WL 496358 at *3 (N.D. Cal. filed Feb. 6, 2013) (explaining that courts depart from the benchmark when the requested fees are "significantly less than the lodestar," citing cases).

Here, Class Counsel are requesting $82,500 in fees, which comes to 33% of the Gross Settlement Payment.  Although this request exceeds the "benchmark," it is warranted in light of the fact that participating Class Members will likely receive 100% to 300% *more* than what they are owed for missed meals under Plaintiff's theory of the case, as well as an *additional* $145 to $290 for Plaintiff's non-meal-period and derivative claims.  Moreover, as explained below, Class Counsel's lodestar exceeds the fee request by over 50%.  These two factors support an upward adjustment from the benchmark.  <u>See</u> <u>In re Nuvelo Sec. Litig.</u>, 2011 WL 2650592 at *1 (N.D. Cal. filed July 6, 2011) (explaining that two factors considered in setting an appropriate percentage include "whether counsel achieved exceptional results" and whether the requested percentage compares favorably "with counsel's lodestar") (citing <u>Vizcaino</u>, 290 F.3d at 1048–50).  When determining what particular percentage is fair, reasonable, and adequate, courts also consider "the degree of risk assumed by counsel," whether "counsel's performance generated benefits beyond the cash settlement fund," whether "the fee lies above or below the market rate," the "length of time counsel represented the class on a

contingency basis," class counsel's "experience and skill," and the "reaction of the class." In re Nuvelo Sec. Litig., 2011 WL 2650592 at *1. Here, each of these factors weighs in favor of awarding more than the benchmark level of fees.

### 1.    *The Results Obtained and the Degree of Risk Assumed.*

The $250,000 settlement is an exceptional result obtained in the face of significant risk. Again, participating Class Members will likely receive 100% to 300% *more* than what they are owed for "NO LUNCH" meals—hardly a compromise of their claims if ever there were one. In addition, participating Class Members will likely receive an additional $145 to $290 for their uniform-maintenance expenses, pay-stub "injuries," and continuing wages. Although these recoveries are substantial in and of themselves, they are particularly large given the dispositive defenses available to ATS in this action. For instance, since this case's inception, ATS has argued that Plaintiff's meal-break claim is preempted under the Airline Deregulation Act ("ADA"). (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 15.) Under the ADA, "a state . . . may not enact or enforce a law, rule, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). ADA preemption applies to state laws "'having a connection with, or reference to,' carrier 'rates, routes or services' . . . even if [the laws'] effects on rates, routes or services 'is only indirect'" and even if the laws are "'consistent' . . . with federal regulation[s]." Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008). Now, ATS's counsel have repeatedly stressed to Class Counsel that compliance with California's meal-period statute would require ATS to regularly relieve employees of their duties so that they can take uninterrupted, thirty-minute meal breaks. (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 15.) Because this would have an obvious effect on the scheduling of flights, ATS's argument goes, California's meal-break statute is preempted by the ADA.

The Northern District of California, in fact, recently held as much in Angeles v. U.S. Airways, Inc., 2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013)—a putative class action brought on behalf of airline-industry employees. As explained in Angeles, "[i]t is

easy to imagine a situation in which an [employee] must, by law, be relieved of duty, but doing so would prevent an aircraft from being fueled or serviced, or cargo from being unloaded such that it would impact the schedule of the point-to-point transportation of passengers or cargo." Angeles, 2013 WL 622032 at *9.  According to Angeles, although "state laws and regulations [concerning meal breaks] do not directly regulate [an air carrier's] rates, routes or services, preemption appl[ies] even if the state law[s'] impact is indirect."  Id.  The court therefore dismissed the plaintiffs' meal-period claims.  Id.

Other courts have reached a similar conclusion.  In Blackwell v. SkyWest Airlines, Inc., 2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008), for instance, the Southern District held that an airplane-industry employee's class-wide meal-break claims were preempted under the ADA because they necessarily had an impact on air-carrier service.  According to Blackwell, "requiring [airline employers] to provide [employees with] meal . . . periods could result in cascading flight delays, increased risk of death or serious injury to passengers and damage to aircraft, and security breaches."  Blackwell, 2008 WL 5103195 at *17.  Moreover, because requiring compliance with California's meal-break statute would increase labor costs (by necessitating either the payment of meal-period premium wages or the hiring of additional staff), airfare would ultimately increase, which would have "the 'forbidden significant effect' on air carriers' . . . prices[] and routes that the ADA seeks to avoid."  Id. at *18.  Preemption therefore applies.  Id.

If preemption applies, then *none* of the Settlement Class are entitled to *any* meal-period damages, let alone damages under Plaintiff's derivative claims stemming therefrom.  Indeed, even if Plaintiff's underlying meal-period claim were not preempted, the Central District has recently held that derivative claims for noncompliant pay stubs and continuing wages cannot be based on violations of California's meal-period statute.  See Jones v. Spherion Staffing LLC, 2012 U.S. Dist. LEXIS 112396 at *21–26 (C.D. Cal. filed Aug. 7, 2012) (explaining that, because a missed-break lawsuit asserts a claim that an employer failed to provide proper breaks instead of a claim that an employer failed to provide wages *per se*, there is no derivative violation of Labor Code sections 226 or 203).

Adding to these risks is the fact that Class Counsel undertook this litigation on a contingent-fee basis, requiring them to shoulder not only the cost of attorney time, but all of the costs of nearly two years of litigation.  See Hopkins, 2013 WL 496358 at *3 (in awarding more than the 25% benchmark, explaining that "[c]lass [c]ounsel took a significant risk investing in this case" because it "was conducted on an entirely contingent fee basis against a well-represented [d]efendant" and because [a]ll of the financial risk of litigation was therefore assumed by [c]lass [c]ounsel, whose fee arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all of the costs of litigation"); Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801 at *16 (E.D. Cal. filed Nov. 27, 2012) (stating that "an award of one-third of the common fund as attorneys' fees has been found appropriate" when an "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel invest[] time, effort, and money with no guarantee of recovery").  Judged relative to these risks, that participating Class Members will likely recover two to three times their meal-period damages, plus an additional $145 to $290, weighs in favor of granting the present Motion in full.

### 2.    *The Non-Cash Component of the Settlement.*

As noted above, the Settlement Agreement provides for non-monetary relief, including, *inter alia*, the installation of additional, regulator-approved seating.  This is a noteworthy prospective benefit, given that Plaintiff is a former employee who necessarily would not have been able to obtain such relief at trial.  See, e.g., Helm v. Alderwoods Group, Inc., 2011 WL 5573837 at *5 (N.D. Cal. filed Nov. 15, 2011) (in a wage-and-hour action, holding that "[a] former employee does not have standing to seek injunctive relief for any of the violations of his former employer").  Because "this concession from [Defendant] exceeds what Plaintiff[] could have obtained even if [she] had prevailed at trial[,] . . . this factor supports an increase from the benchmark."  Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *28 (N.D. Cal. filed Apr. 1, 2011).

### 3.    *The "Market Rate" for Class Counsel's Services.*

Class Counsel's 33% fee request comports with the "market rate" for a settlement

of this size.  The market-rate factor concerns "'the range of fee awards out of common funds of comparable size.'"  Morales v. Stevco, Inc., 2013 WL 1222058 at *3 (E.D. Cal. filed Mar. 25, 2013) (quoting Vizcaino, 290 F.3d at 1050).  See also In re Nuvelo Sec. Litig., 2011 WL 2650592 at *2 (in analyzing the percentage rate requested relative to the market rate, finding that "30% reasonably compares to other awards for [settlements of the same size]").  According to Central District, "25% is substantially below the average class fund fee nationally," and "[c]ases of under $10 [m]illion will often result in fees above 25%."  Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (citing a study by the Federal Judicial Center "of all class actions resolved or settled over a four-year period," which study "found a median percentage recovery range of 27–30%").  See also Cicero v. DirecTV, Inc., 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "20 to 30% [i]s the usual range in common fund cases where the recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–50% [is] commonly . . . awarded in case[s] in which the common fund is relatively small," and that "*cases below $10 million are often [compensated at] more than the 25% benchmark*") (emphasis supplied).  In light of the "market rate" for a settlement of this size, Class Counsel's 33% fee request is reasonable.

### 4.    Class Counsel's Contingent-Based Representation.

Class Counsel's fee request is further justified based on the contingent nature of their nearly two-year-long representation.  As recently explained by the Northern District, conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward adjustment from the benchmark.  Hopkins, 2013 WL 496358 at *3.  See also Gardner v. GC Servs., LP, 2012 WL 1119534 at *7 (S.D. Cal. filed Apr. 2, 2012) (in concluding that a 30% fee award was reasonable, explaining that "class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it"); Thieriot v. Celtic Ins. Co., 2011 WL 1522385 at *6 (N.D. Cal. filed Apr. 21, 2011) (in awarding a 33% fee, explaining that "[i]t is an established practice to reward attorneys who assume representation on a contingent basis with an

1   enhanced fee to compensate them for the risk that they might be paid nothing at all");

2   Carter v. Anderson Merchandisers, LP, 2010 WL 1946757 at *2 (C.D. Cal. filed May 11,

3   2010) (in awarding the requested fees, stating that "[t]he case was undertaken on a

4   contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of

5   no recovery in this case, representing a significant financial burden").  This factor

6   therefore weighs in favor of approving the requested fees.

7           **5.    *Class Counsel's Skill and the Complexity of the Issues.***

8           As recently explained by the Eastern District, "California wage and hour law is

9   extremely complex and the statutory/administrative language can be particularly difficult

10  to parse."  Morales, 2013 WL 1222058 at *3.  See also Franco, 2012 WL 5941801 at *16

11  (explaining that "specialist skills" are required "to litigate the legal theories relating to

12  wage and hour law and labor law"); Garcia v. Gordon Trucking, Inc., 2012 WL 5364575

13  at *10 (E.D. Cal. filed Oct. 31, 2012) (in awarding 33% of a common-fund settlement,

14  concluding that "th[e] case required substantial skill in litigating complex legal issues,

15  particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal

16  break claims").  As reflected in the Declaration of Alan Harris filed herewith, Class

17  Counsel have considerable experience in prosecuting complex class-wide cases,

18  including, in particular, wage-and-hour actions.  (See Sept. 26, 2013, Harris Decl.

19  [Docket No. 39] ¶¶ 2–3.)  "Overall, the specialized skill of Class Counsel in this area of

20  the law [i]s generally an asset to the Class Members."  Franco, 2012 WL 5941801 at *16.

21  Class Counsel's 33% is therefore reasonable.

22          **6.    *The Reaction of the Class.***

23          Thus far, of the 1,238 individuals in the Settlement Class, 269, or approximately

24  22%, have submitted claim forms.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 26.)

25  There are still two weeks left to go before the claims-submission window closes, and that

26  number, therefore, will no doubt increase.[8]  (Sept. 26, 2013, Harris Decl. [Docket No. 39]

27  _____

28  [8] Under the Settlement Agreement, although the claims-submission window closes on
    October 10, 2013, Class Members have until October 25, 2013, to submit objections.
    (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 25 & Ex. 9 at 2–4.)

¶ 25.)  In addition, only twelve individuals have requested exclusion, and only one

objection has been submitted.[9]  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 25.)  This

demonstrates support for the settlement, see, e.g., Franco, 2012 WL 5941801 at *14

(explaining that "'the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that [its] terms are favorable'") (quoting Nat'l

Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004);

Sandoval, 2010 WL 2486346 at *7 (in approving a settled wage-and-hour class action,

noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court

characterized as a "positive" response), and this factor thus weighs in favor of granting

the present fee request.

### C.    The Lodestar "Crosscheck" Confirms that the Requested Fees Are Reasonable.

When setting a fee award, courts can—and should—apply the alternative lodestar

method to provide "perspective on the reasonableness of a given percentage award."

Vizcaino, 290 F.3d 1043, 1050.  According to the Ninth Circuit, "[c]alculation of the

lodestar, which measures the lawyers' investment of time in the litigation, provides a

check on the reasonableness of the percentage award."  Id.

"Lodestar calculations are determined by multiplying the number of hours

reasonably expended during the litigation by a reasonable hourly rate."  In re Heritage

Bond Litig., 2005 WL 1594403 at *5 (C.D. Cal. filed June 10, 2005).  It is "common for

a counsel's lodestar figure to [then] be adjusted upward by some multiplier reflecting a

variety of factors such as the effort expended by counsel, the complexity of the case, and

the risks assumed by counsel."  Id. at *22 (citing In re Linerboard Antitrust Litig., 2004

WL 1221350 at *16 (E.D. Pa. filed June 2, 2004) (recognizing that the average multiplier

---

[9] The lone objection was received by the Court on September 17, 2013, but was
rejected for noncompliance with the Central District's Local Rules.  (See generally Sept.
20, 2013, Notice of Doc. Discrepancies [Docket No. 37].)  Under the Settlement
Agreement, Class Counsel have until five days before the final approval hearing to
respond to any objections.  Notwithstanding the Court's rejection of the lone objection,
Class Counsel intend on filing a response to the objection by November 13, 2013—five
days before the date specified in the Class Notice for the final approval hearing.

approved in common-fund cases is 3.89), <u>disapproved on other grounds as stated in</u> <u>In re</u> <u>ATM Fee Antitrust Litig.</u>, 686 F.3d 741, 755 n.7 (9th Cir. 2011)).

Here, based on the detailed, contemporaneously kept time records submitted with this Motion, Class Counsel's *unadjusted* lodestar (*i.e.*, with no multiplier) is $127,358.25, computed as a function of the following hours and rates:

| Table 1: Class Counsel's Requested Hourly Rates | | | | |
|---|---|---|---|---|
| *Attorney* | *JD Acquired* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | 1974 | $600 | 63.40 | $38,040.00 |
| J. Dorigan | 1981 | $450 | 82.60 | $37,170.00 |
| D. Zelenski | 2003 | $322.50 | 161.70 | $52,148.25 |
| *Total* | --- | --- | 307.70 | $127,358.25 |

(Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 17–22 & Ex. 3 at 29; Sept. 26, 2013, Decl. of John P. Dorigan in Supp. of Mot. for Att'ys Fees & Reimbursement of Costs [Docket No. 40] ¶ 5 & Ex. 1 at 5.)

Both the rates noted above and the associated hours are reasonable.  As to the rates, "'[t]he proper reference point in determining an appropriate fee award is the rate[] charged by private attorneys in the same legal market as prevailing counsel.'"  <u>Rutti v.</u> <u>Lojack Corp.</u>, 2012 WL 3151077 at *10 (C.D. Cal. filed July 31, 2012) (quoting <u>Trevino</u> <u>v. Gates</u>, 99 F.3d 911, 925 (9th Cir. 1996)).  The rate charged by private attorneys in the same legal market, in turn, is the "'prevailing market rate[] in the relevant community,'" <u>Davis v. City of San Francisco</u>, 976 F.2d 1536, 1546 (9th Cir. 1992) (quoting <u>Blum v.</u> <u>Stenson</u>, 465 U.S. 886, 895 (1984)), <u>vacated in part on other grounds by</u> 984 F.2d 345 (9th Cir. 1993)), and the relevant community is "'the forum district'—[here], the Central District of California," <u>Anderson v. Nextel Retail Stores, LLC</u>, 2010 U.S. Dist. LEXIS 71598 at *6 (C.D. Cal. filed June 30, 2010) (quoting <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992)).  When setting rates, courts should use the attorneys' "current" rates, *i.e.*, their rates at the time of the fee application.  <u>See</u> <u>In re HPL Techs.,</u> <u>Inc. Sec. Litig.</u>, 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (hereinafter, "<u>In re HPL</u>")

(explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

According to recent case authority, the above rates are within the range of rates recently approved by the Central District for complex class actions, including wage-and-hour actions.  See, e.g., Wang v. Chinese Daily News, Inc., 2008 U.S. Dist. LEXIS 123824 at *8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving rates of up to $800 per hour), vacated on other grounds, 132 S. Ct. 74 (2011); Rutti, 2012 WL 3151077 at *11 (in a wage-and-hour action, approving rates of up to $750 per hour); Pierce v. County of Orange, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving rates of up to $850 per hour); In re HP Laser Printer Litig., 2011 WL 3861703 at *5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour).  Class Counsel's present fee request of $82,500—effectively representing a reduction in their requested rates of over 50%—is therefore reasonable.

Alternatively, in assessing reasonableness, courts often refer to the "Laffey" matrix, "[a] widely recognized compilation of attorney . . . rate data" for the District of Columbia, "so named because of the case that generated the index," Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983).  In re Chiron Sec. Litig., 2007 WL 4249902 at *6 (N.D. Cal. filed Nov. 30, 2007).  Adjusting those rates for cost-of-living differences between the Washington, D.C. and Los Angeles areas, the In re Chiron court concluded that reasonable rates for a Los Angeles attorney with twenty-plus years of experience is $460.24, eleven to nineteen years of experience is $407.94, eight to ten years of experience is $329.49, and four to seven years of experience is $266.73.  Id. at *6–7.  Of course, six years have passed since the In re Chiron decision, and, as noted above, when setting rates, courts should use attorneys' current rates.  In addition, since the time that In re Chiron was decided, an "adjusted" Laffey matrix has been published "using a methodology advocated by economist Dr. Michael Kavanaugh" that "has been used by the United States District Court for the District of Columbia to determine the amount of a reasonable fee."  Bywaters v. United States, 670 F.3d 1221, 1226 n.4 (Fed.

Cir. 2012).  As explained by the Federal Circuit, the adjusted <u>Laffey</u> matrix "more accurately reflects the prevailing rates for legal services."  <u>Id.</u>  <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Hash v. United States</u>, 2012 WL 1252624 at *22 (D. Idaho filed Apr. 13, 2012) (agreeing that the "adjusted" <u>Laffey</u> matrix "is the most accurate representation of rates for legal services in the Washington D.C. area for complex litigation, . . . giv[ing] weight to the Federal Circuit's recent statement implying acceptance of the use of the Updated <u>Laffey</u> Matrix") (citing <u>Bywaters</u>, 670 F.3d at 1226 n.4).

A copy of the current, adjusted <u>Laffey</u> matrix is attached to the Declaration of Alan Harris filed herewith.  The adjusted <u>Laffey</u> matrix for June 1, 2013, to May 31, 2014, lists the following relevant rates for attorneys in the Washington, D.C. area:

| Table 2:  <u>Laffey</u> Matrix | |
| :---: | :---: |
| Experience | Rate |
| 20 + | $771 |
| 8–10 | $567 |

(Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 23 & Ex. 7 at 2.)  Because "[t]hese figures are . . . tailored for the District of Columbia, which has a lower cost of living than . . . Los Angeles[,] . . . some [further] adjustment" is appropriate.  <u>In re Chiron</u>, 2007 WL 4249902 at *6.  The <u>In re Chiron</u> court made this adjustment "us[ing] the federal locality pay differentials based on federally compiled cost of living data."  <u>Id.</u>  Copies of that same data—updated, of course, to 2013—are also attached to the Declaration of Alan Harris filed herewith.  According to that data, the Washington, D.C. area has a +24.22% locality pay differential, while the Los Angeles area has a +27.16% locality pay differential.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 23 & Ex. 8 at 1–2.)  These differentials suggest that the figures in table 2 must be adjusted upward by 2.4%.[10]

---

[10] The 2.4% cost-of-living adjustment is computed as follows:  (127.16 – 124.22) ÷ 124.22 = .0236, or 2.4%.  In <u>In re Chiron</u>, the court computed the cost-of-living adjustment for 2007 using the same methodology and the same federally compiled data (for 2007).  Specifically, the court noted that, in 2007, the Washington, D.C. area had a +18.59% locality pay differential, while the Los Angeles area had a +24.03% locality pay differential.  <u>In re Chiron</u>, 2007 WL 4249902 at *6.  Using those figures, the court computed a 4.6% cost-of-living adjustment (= (124.03 – 118.59) ÷ 118.59 = .0459, or

Adjusting the figures in table 2 upward by 2.4% results in the following:

| Table 3:  Cost-of-Living-Adjusted _Laffey_ Matrix ||
| Experience | Rate |
|---|---|
| 20 + | $789.50 |
| 8–10 | $580.61 |

Applying these rates, in turn, to Class Counsel's hours leads to the following lodestar:

| Table 4:  Class Counsel's _Laffey_ Rates |||||
| Attorney | JD Acquired | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| A. Harris | 1974 | $789.50 | 63.40 | $50,054.30 |
| J. Dorigan | 1981 | $789.50 | 82.60 | $65,212.70 |
| D. Zelenski | 2003 | $580.61 | 161.70 | $93,884.64 |
| _Total_ | --- | --- | 307.70 | $209,151.64 |

In other words, applying the _Laffey_ matrix increases Class Counsel's lodestar by approximately $80,000.  Judged from this perspective, then, Class Counsel's present fee request is even more reasonable and should be approved.

Turning to the hours expended in this case, Class Counsel note that this case has been pending since November 2011.  Across twenty-two months of litigation, the 307.70 hours worked amounts, on average, to less than half-an-hour per day.  This is eminently proper, cf. _Collado v. Toyota Motor Sales, U.S.A., Inc._, 2011 WL 5506080 at *5 (C.D. Cal. filed Oct. 17, 2011) (in analyzing class counsel's hours and concluding that they were excessive, noting that the "request for compensation of 6,881 hours is best

---

4.6%).  The In re Chiron court based its cost-of-living adjustment on the methodology employed by the Northern District in In re HPL.  In In re HPL, the court looked to the same federally compiled data (for 2005), noting that, in 2005, the Washington, D.C. area had a +15.98% locality pay differential, while the San Francisco area—where lead counsel's firm operated—had a +26.39% locality pay differential.  Using these figures, the In re HPL court computed a 9% cost-of-living adjustment (= (126.39 – 115.98) ÷ 115.98 = .0898, or 9%).  In re HPL, 366 F. Supp. 2d at 921–22 & n.1.  So that the Court can verify that the 2.4% differential computed by Plaintiff has, in fact, been computed using the same data and methodology used by the In re Chiron and In re HPL courts, copies of the 2013, 2007, and 2005 cost-of-living data from the U.S. Office of Personnel Management are attached to the Declaration of Alan Harris filed herewith.  (Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 23 & Ex. 8.)  These materials are available online at http://www.opm.gov/policy-data-oversight/payleave/salaries-wages/#url=2013.

PL.'S MOT. FOR AWARD OF ATT'YS FEES & COSTS; MEM. OF P. & A. IN SUPP. THEREOF

represented by this being the equivalent to a collective 11.1 hours per day devoted by the five firms during the pendency of this action"), and Class Counsel's requested hours should be deemed reasonable.

### D.    Class Counsel's Requested Expense Reimbursement Is Proper.

Although the Settlement Agreement permits Class Counsel to seek up to $15,000 in litigation costs (see Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶ 1, 24 & Ex. 1 at § 7.A), Class Counsel are seeking reimbursement of only $8,069.34 for expenses actually incurred.  As detailed in the Declaration of Alan Harris filed herewith (see Sept. 26, 2013, Harris Decl. [Docket No. 39] ¶¶ 1, 17, 24 & Ex. 3 at 31), the costs include "travel costs, mediation fees, expert fees, copy and scanning costs, filing fees, and electronic research fees[, which] fees are routinely reimbursed."  Franco, 2012 WL 5941801 at *22. See also Odrick v. UnionBanCal Corp., 2012 WL 6019495 at *6 (N.D. Cal. filed Dec. 3, 2012) (in a common-fund settlement, noting that class counsel were seeking reimbursement of "costs for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs," and concluding that "reimbursement of these costs and expenses in their entirety is justified"); Knight, 2009 WL 248367 at *7 (in a common-fund settlement, stating that class counsel's expenses "relate to online legal research, travel, postage and messenger services, phone and fax charges, court costs, and the costs of travel"; that "[a]ttorneys routinely bill clients for all of these expenses"; and that "it is therefore appropriate for counsel here to recover these costs from the [s]ettlement [f]und").  The request should therefore be approved in full.

### IV.    Conclusion.

The Court should approve Class Counsel's request for $82,500 in attorney's fees and $8,069.34 in incurred litigation costs from the $250,000 common-fund settlement.

Dated:  September 26, 2013                    HARRIS & RUBLE

                                                              /s/ David Zelenski
                                              Alan Harris, David Zelenski

PL.'S MOT. FOR AWARD OF ATT'YS FEES & COSTS; MEM. OF P. & A. IN SUPP. THEREOF