









In general, American courts operate under what is known as the "American Rule" which requires each party to bear the burden for its own legal fees. The Supreme Court has upheld this principle on many occasions for a number of reasons. For example, the knowledge that a loss means paying the other side's legal fees might prohibit plaintiffs from bringing suit or defendants from defending themselves. Nor should a party be penalized for bringing suit or defending itself. Determining proper fees would become an adminstrative nightmare. Fee awards might also drive attorneys fees up, by removing the pressure of the market and replacing it with the force of the bench.

In certain circumstances, however, both the courts and Congress have found it appropriate to authorize fee-shifting. Especially in the area of Civil Rights and Environmental Law, fee-shifting provisions have been built into statutes. The expense of quality legal counsel should not prohibit private citizens from bringing suit to uphold these laws which are for the common good. There are more than 150 statutes that allow for fee-shifting, among them the Clean Air Act, the Americans with Disabilities Act, the Individuals with Disabilities Education Act, the Rehabilitation Act, the Civil Rights Act, and the Back Pay act.

After years of wrangling over the matter of attorney fee hourly rates, the Court in *Laffey v. Northwest Airlines, Inc*., 572 F.Supp. 354, 371 (D.D.C. 1983) ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation.

The Department of Justice (DOJ) crafted its own rules for, and maintains, its version of the Laffey Matrix (see   http://www.usdoj.gov/usao/dc/Divisions / Civil_Division/Laffey_Matrix_7.html)

After scrutinizing the DOJ's methodology of setting and adjusting hourly rates for the Matrix, reviewing recent court decisions and contacting an expert economist, many firms in the Baltimore-Washington area (and due to FLRA/MSPB rulings, around the country) now utilize the Adjusted Laffey Matrix .

# LAFFEY MATRIX









|  |  |  | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice,

measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.