1   Alan Harris (SBN 146079)
    David Zelenski (SBN 231768)
2   HARRIS & RUBLE
    6424 Santa Monica Boulevard
3   Los Angeles, California 90038
    Telephone:  (323) 962-3777
4   Facsimile:  (323) 962-3004
    aharris@harrisandruble.com
5   dzelenski@harrisandruble.com

6   John P. Dorigan (SBN 98964)
    LAW OFFICES OF JOHN P. DORIGAN
7   78-560 Via Bolero
    La Quinta, California 92253
8   Telephone:  (760) 564-3804
    Facsimile:  (760) 564-3807
9   jpdorigan@aol.com

10  *Attorneys for Plaintiff*

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  COLLETTE McDONALD, individually          Case No. EDCV 11-01946 VAP (SPx)
    and on behalf of all others similarly
15  situated,                                **DECLARATION OF ALAN HARRIS
                                             IN SUPPORT OF PLAINTIFF'S
16               Plaintiff,                  MOTION FOR AWARD OF
                                             ATTORNEY'S FEES AND
17       v.                                  REIMBURSEMENT OF COSTS**

18  AIRPORT TERMINAL SERVICES,
    INC., and DOES 1–100, inclusive,         *Assigned to Hon. Virginia A. Phillips*
19
                 Defendants.                 Date:  November 18, 2013
20                                           Time:  2:00 p.m.
                                             Courtroom:  2
21

22

23

24

25

26

27

28

**ALAN HARRIS** declares under penalty of perjury of the laws of the United States and the State of California as follows:

1.    I am a member in good standing of the State Bar of California and am one of the attorneys for Plaintiff Collette McDonald in the within action.  I make this Declaration in support of Plaintiff's Motion for attorney's fees and costs.  The requested fees and costs were incurred in litigating the above-captioned matter, including negotiating the class-wide Settlement Agreement and General Release ("Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1**.[1]  I aver that all of the documents appended to this Declaration have been maintained in my office in the ordinary course of business under my direction and control, and, if sworn as a witness, I could competently testify to each and every fact set forth herein from my own personal knowledge.

### *Experience*

2.    I have been and am licensed as an attorney, first in Illinois (1974) and later in California (1989).  I am a graduate of the University of Illinois (A.B. 1970, J.D. 1974).  After graduation from law school in January 1974, I was hired as a litigation associate at a plaintiffs' antitrust boutique in Chicago, Illinois:  Freeman, Freeman & Salzman, P.C.  I became a partner in that firm in 1980, and I started my own practice in 1982.  I speak before professional organizations on topics of interest to the Bar, and I have represented plaintiffs in complex business litigation for over thirty-six years.  See e.g., Illinois v. Ill. Brick Co., Inc., 431 U.S. 720 (1977); In re My Left Hook, LLC, 129 Fed. Appx. 352 (9th Cir. 2005); Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); In re Blue Coal Corp., 986 F.2d 687 (3d Cir. 1993); In re Blue Coal Corp., 206 B.R. 730 (M.D. Pa. 1997); U.S. v. Gleneagles Inv. Co., Inc., 584 F. Supp. 671, 689 (M.D. Pa. 1984), aff'd. in part and vacated in part, and remanded sub. nom., U.S. v. Tabor Ct. Realty Corp. 803 F.2d 1288 (3d Cir. 1986), cert. den. sub. nom., McClellan Realty Co. v. U.S. 483 U.S. 1005 (1987);

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings set forth in the Settlement Agreement.

*In re Uranium Antitrust Litig.*, 503 F. Supp. 33 (N.D. Ill. 1981); *In re Grand Jury*, 469 F. Supp. 666 (M.D. Pa. 1980); *In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364 (M.D. Pa. 1979), *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 251 (N.D. Ill. 1978); *In re Anthracite Coal Antitrust Litig.*, 78 F.R.D. 709 (M.D. Pa. 1978); *In re Masterkey Antitrust Litig.*, 1977 U.S. Dist. LEXIS 12948 (D. Conn. 1977) (six-week jury trial for plaintiffs); *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383 (N.D. Ill. 1975); *In re Cement-Concrete Block, Chicago Area, Grand Jury Proceedings*, 381 F. Supp. 1108 (N.D. Ill. 1974); *Parmet v. Lapin*, 2004 Cal. App. Unpub. LEXIS 5217 (June 1, 2004).  I have gone to jury and bench trials on behalf of plaintiffs and, once, a bench trial for a defendant, Allstate Insurance Company.  I have represented employees in numerous disputes concerning their receipt of wages, both before the California Division of Labor Standards Enforcement and before state and federal courts.  *See, e.g.*, *Jacobs v. CSAA Inter Ins. Bureau*, 2009 U.S. Dist. LEXIS 37153 (N.D. Cal. filed May 1, 2009); *Escobar v. Whiteside Constr. Corp.*, 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. 2008) (wage-and-hour collective action); *Tremblay v. Chevron Stations, Inc.*, 2008 Westlaw 2020514 (N.D. Cal. 2008) (wage-and-hour collective action); *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July 5, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative wage-and-hour class action); *Covillo v. Specialty's Café*, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); *Perez v. Maid Brigade, Inc.*, 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); *Hoffman v. Uncle P Prods.*, 2008 Cal. App. Unpub. LEXIS 3609; *Bithell v. E.P. Mgmt. Servs., LP*, 2007 WL 4216854 (Cal. Ct. App. 2007) (sustaining a class-wide settlement as fair and

reasonable, and finding that class counsel adequately represented the class); DuPont v.
Avalon Hollywood Servs., Inc., 2007 WL 93386 (Cal. App. 2007); Gregory v. Superior
Court, 2004 WL 2786357 (Cal. Ct. App. 2004).  In addition, I have been appointed lead
class counsel in many wage-and-hour class actions.  See, e.g., Kang v. Albertson's, Inc.,
C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Tremblay v. Chevron
Stations, Inc., N.D. Cal. Case No. CV 07-6009 EDL ($4,500,000 settlement); Doty v.
Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement);
Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000
settlement); Alfano v. Int'l Coffee & Tea, LLC, C.D. Cal. Case No. CV 04-8996 SVW;
Jenne v. On Stage Audio Corp., C.D. Cal. Case No. CV 04-2045 CAS; Hansen v.
Advanced Tech Sec. Servs., Inc., Los Angeles Sup. Ct. Case No BC 367175 ($1,050,000
settlement); Ross v. Human Res., Inc., Los Angeles Sup. Ct. Case No. BC 351506;
Harrington v. Manpay, LLC, Los Angeles Sup. Ct. Case No. BC 312171 ($1,000,000
settlement); Brackett v. Saatchi & Saatchi, Los Angeles Sup. Ct. Case No. BC 298728;
Readmond v. Straw Dogs, Inc., Los Angeles Sup. Ct. Case No. BC257394; Greenberg v.
EP Mgmt. Servs., LP, Los Angeles Sup. Ct. Case No. BC 237787 ($5,348,000
settlement); Angel Paws, Inc. v. Avalon Payroll Servs., Inc., Los Angeles Superior Court
Case No. BC 188982 ($450,000 settlement); Saunders v. Metro Image Group, San Diego
Sup. Ct. Case No. GIC 809753; Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case
No. M 81026 ($950,000 settlement); Deckard v. Banco Popular N. Am., related to Silva
v. Banco Popular N. Am., C.D. Cal. Case No. CV 08-6709 JFW ($1,050,000 settlement);
Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2013 U.S. Dist. LEXIS 109930 (C.D.
Cal. filed July 29, 2013) ($834,474 settlement).  The present case, along with a majority
of the foregoing cases, was prosecuted on a contingent-fee basis.

3.     David Zelenski, an attorney at my firm who worked on the above- captioned
matter, has worked with me on numerous wage-and-hour matters.  See, e.g., Gonzalez v.
Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 93013 (C.D. Cal. filed July
5, 2012) (successful opposition to a defense motion to compel arbitration in a putative

wage-and-hour class action); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2012 U.S. Dist. LEXIS 139764 (C.D. Cal. filed Sept. 27, 2012) (successful motion to correct improper defense contact of class members in a putative wage-and-hour class action); Covillo v. Specialty's Café, 2012 U.S. Dist. LEXIS 114602 (N.D. Cal. filed Aug. 14, 2012) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action); Perez v. Maid Brigade, Inc., 2007 U.S. Dist. LEXIS 78412 (N.D. Cal. filed Oct. 11, 2007) (successful opposition to a defense motion to compel arbitration in a putative wage-and-hour class action). He has also been appointed class counsel in numerous wage-and-hour actions. See e.g., Kang v. Albertson's, Inc., C.D. Cal. Case No. CV 07-00894 CAS ($6,637,500 settlement); Doty v. Costco Wholesale Corp., C.D. Cal. Case No. CV 05-3241 FMC ($7,500,000 settlement); Agatep v. Exxon Mobil Corp., C.D. Cal. Case No. CV 05-2342 GAF ($1,500,000 settlement); Stratford v. Citicorp West FSB, Monterey Sup. Ct. Case No. M 81026 ($950,000 settlement); Gonzalez v. Preferred Freezer Servs. LBF, LLC, 2013 U.S. Dist. LEXIS 109930 (C.D. Cal. filed July 29, 2013) ($834,474 settlement). Mr. Zelenski is a graduate of Reed College (B.A. 1999) and the University of Southern California (J.D. 2003) (law review). He is a member of the California Bar (June 28, 2004), and his law-school Note, Talent Agents, Personal Managers, and Their Conflicts in the New Hollywood, 76 S. Cal. L. Rev. 979 (2003), has been cited by the California Supreme Court in Marathon Entertainment, Inc. v. Blasi, 42 Cal. 4th 974 (2008). In addition, Mr. Zelenski was designated a 2013 "Super Lawyers Rising Star."

### *Summary of Plaintiff's Claims and of the Settlement*

4.     This case was filed by my office on Plaintiff's behalf on November 2, 2011, in Riverside County Superior Court. As detailed in the concurrently filed Memorandum of points and authorities, Plaintiff's Complaint alleges putative class-wide claims against Defendant Airport Terminal Services, Inc. ("ATS") for (a) the failure to pay meal-period wages for documented missed meal breaks, (b) the failure to reimburse for uniform-maintenance expenses, and (c) the failure to provide adequate workplace seating. The

Complaint also alleges claims for (d) "continuing wages" and (e) pay-stub damages that are derivative of the failures to provide meal-period compensation and uniform-maintenance reimbursement. The Settlement Agreement seeks to resolve these claims on behalf of all non-exempt individuals employed by ATS in California since November 2, 2007. The Settlement Agreement was the result of a private mediation before Lynn Frank of Frank and Feder—a mediator well-versed in wage-and-hour actions, including those brought in the airline industry. The parties selected Ms. Frank to act as mediator in June 2012. Mediation proceeded three months later, during which the parties executed a short-form Memorandum of Understanding providing for the creation of a $250,000 settlement fund. Over the next several months, the parties negotiated the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding. In May 2013, those negotiations resulted in the execution of the Settlement Agreement that is presently before the Court.

5.      *The Settlement Class*. According to data provided by ATS, there are approximately 1,238 individuals who have been employed by ATS as non-exempt employees since November 2, 2007. Also according to data provided to my office by ATS, each of these individuals was employed by ATS as an "airport agent."

6.      *Plaintiff's Underlying Meal-Period Claim*. As alleged in the Complaint, Plaintiff's missed-meal claim is limited to those situations in which ATS's payroll records reflect that airport agents had a "NO LUNCH" coding on their time sheets. Because the Settlement Agreement's release is limited to the factual allegations in the Complaint, agents who do not exclude themselves from the settlement will only be releasing meal-break claims that stem from the "NO LUNCH" allegations. Based on my discussions with Plaintiff, on a review of her time sheets, on my interviews with various airport agents employed by ATS since November 2007, and on the full and frank exchange of information throughout the settlement-negotiation process, ATS's timekeeping system would automatically deduct a meal break each workday for all agents. Accordingly, when an agent could not take a meal break, ATS would have to go

into its timekeeping system to reverse the automatic deduction so that the correct number of hours worked by agents were reflected therein.  If the missed break was attributable to the nature of the work—*i.e.*, if the agent was simply too busy to take a break on a particular day—the agent was required to submit a "NO LUNCH" form to ATS so attesting.  I have reviewed these "NO LUNCH" forms, and they clearly state at the top that, "[g]iven the nature of the work at ATS, there are times when an employee may not be able to take a lunch period."  A true and correct, redacted copy of one such "NO LUNCH" form is attached hereto as **Exhibit 2**.

7.    With respect to each instance when a "NO LUNCH" form was submitted, ATS marked the relevant agent's time records with a "NO LUNCH" notation.  During the settlement-negotiation process, ATS provided data indicating that, since November 2, 2011, there were a total of 3,701 such "NO LUNCH" codings across the Settlement Class.  These 3,701 "NO LUNCH" codings were experienced by 410 agents.  According to Plaintiff, she herself experienced at least ten such codings since November 2011.  (July 8, 2013, Supplemental Decl. of Collette McDonald in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("July 8, 2013, McDonald Decl.") [Docket No. 33] ¶ 2.)  Based on my discussions with Plaintiff, on a review of her pay records, and on my interviews with various airport agents employed by ATS since November 2007, ATS *never* paid the meal-period "premium" wage specified by California Labor Code section 226.7 for any of these "NO LUNCH" workdays.  ATS itself has been extremely forthcoming in terms of explaining its "NO LUNCH" policies and confirmed during settlement negotiations that it never pays meal-period wages for these codings.  Again, this was ATS's policy notwithstanding the fact that the "NO LUNCH" forms attribute the reason for the missed meals to the nature of the work at ATS.

8.    In connection with negotiating the Settlement Agreement, ATS provided my office with data indicating that the average hourly wage for the Settlement Class was $12.47.  Accordingly, total meal-period damages for Plaintiff's "NO LUNCH" claim are

estimated to be $46,151.47 (= 3,701 "NO LUNCH" workdays × $12.47 hourly wage). Assuming an even distribution of the 3,701 "NO LUNCH" codings across the 410 affected agents, each such agent experienced an average of 9 "NO LUNCH" codings. On a *per capita* basis, each of the 410 agents is therefore entitled to approximately $112 (= $12.47 hourly wage × 9 "NO LUNCH" workdays) in meal-period premium pay under section 226.7.

9.    Under the Settlement Agreement, ATS has agreed to make a Gross Settlement Payment of $250,000. The Gross Settlement Payment includes amounts for fees, expenses, and a possible incentive payment to Plaintiff; after deducting those amounts, the remaining portion (the "Net Settlement Fund") will be distributed to Class Members who submit valid claim forms. Assuming that the Court approves $82,500 in attorney's fees (equal to 33% of the Gross Settlement Payment), $8,069.34 in litigation expenses, $20,000 in claims-administration expenses, and a $5,000 incentive award, $134,430.66 will remain for distribution to participating Class Members. Under the Settlement Agreement, 33.33% of the Net Settlement Fund, or $44,805.74, will be shared by those of the 410 "NO LUNCH" agents who submit valid claim forms. In other words, although the Settlement Class consists of 1,238 agents, this 33.33% "sub-fund" will be earmarked exclusively for the 410 agents who experienced "NO LUNCH" codings. The $44,805.74 sub-fund amount is only $1,345.73 less than the total "NO LUNCH" damages calculated in paragraph 7 above. Accordingly, even if 100% of all 410 agents submit valid claim forms, they will be compensated nearly in full, as each will receive, on average, approximately $110 (= $44,805.74 ÷ 410 agents) under the settlement, *i.e.*, only $2 less than the average *per capita* damages calculated in paragraph 8 above.

10.    Of course, as explained in Plaintiff's moving papers, it is highly unlikely that everyone in the Settlement Class will submit claims. Based on statistics provided to me by the Claims Administrator selected by the parties, it appears that between 25% to 50% of the Settlement Class will submit claims. If 50% submit claims, the average settlement payment for "NO LUNCH" claims doubles to approximately $219

(= $44,805.74 ÷ 205 agents), *i.e.*, over $100 more than the average *per capita* damages calculated in paragraph 8 above.  If the participation rate is 25%, the average settlement payment increases to approximately $435 (= $44,805.74 ÷ 103 agents), *i.e.*, over $300 more than the average *per capita* damages calculated in paragraph 8 above.

11.     The estimated recoveries calculated in paragraphs 9 and 10 above are averages.  Under the Settlement Agreement, the $44,805.74 portion of the Net Settlement Fund allocated for Plaintiff's "NO LUNCH" claim will be shared by participating Class Members based on the relative number of "NO LUNCH" codings they experienced.  This ensures that the $44,805.74 will be divided in the most equitable manner possible, with Class Members who experienced relatively more "NO LUNCH" workdays receiving a larger share than those who experienced relatively fewer "NO LUNCH" workdays.  Assuming, then, a 100% participation rate, some Class Members will receive more than $110, and some will receive less than $110; assuming a 50% participation rate, some participating Class Members will receive more than $219, and some will receive less than $219; and assuming a 25% participation rate, some participating Class Members will receive more than $435, and some will receive less than $435.

12.     ***Plaintiff's Underlying Uniform-Cleaning Claim***.  Plaintiff's expense-reimbursement claim, brought pursuant to Labor Code section 2802, is limited to the allegation that ATS failed to reimburse airport agents for the costs of maintaining their uniforms.  As with the meal-break claim, because the Settlement Agreement's release is limited to the factual allegations in the Complaint, agents who do not exclude themselves from the settlement will only be releasing expense-reimbursement claims that stem from the uniform-cleaning allegations, leaving intact any claims for the failure to reimburse for other expenses.  Based on my discussions with Plaintiff, on my interviews with various airport agents employed by ATS since November 2007, and on the full and frank exchange of information throughout the settlement-negotiation process, ATS required all of its airport agents to wear work uniforms, including Plaintiff herself.  Based again on that same information—particularly on my interviews with numerous airport agents—

1    although these uniforms were provided to agents free of charge, agents were told that it

2    was their responsibility to keep their uniforms clean.  According to airport agents, ATS

3    never explained to them that they could request cleaning-cost reimbursement, and ATS

4    never provided any such reimbursement.  Plaintiff herself declares as much in her

5    accompanying Declaration.  (July 8, 2013, McDonald Decl. [Docket No. 33] ¶ 4.)

6        13.    Under the Settlement Agreement, in satisfaction of Plaintiff's uniform-

7    cleaning claim, 66.67% of the $134,430.66 Net Settlement Fund, or $89,624.92, will be

8    distributed on a *pro rata* basis to those of the 1,238 agents who submit valid claim forms.

9    Assuming a 100% participation rate, each agent will receive approximately $72

10   (= $89,624.92 ÷ 1,238 agents) in uniform-cleaning reimbursement.  Based again, though,

11   on statistics provided to me by the Claims Administrator selected by the parties, it

12   appears that between 25% to 50% of the Settlement Class will submit claims.  If 50%

13   submit claims, then each participating Class Member will receive approximately $145

14   (= $89,624.92 ÷ 619 agents); if 25% submit claims, then each participating Class

15   Member will receive approximately $289 (= $89,624.92 ÷ 310).  In my opinion, these

16   amounts are reasonable to compensate employees for the costs of maintaining their

17   uniforms.  I have had an opportunity to personally examine agents' uniforms, and, during

18   my investigation, many airport agents explained to me that there was no directive from

19   ATS that their uniforms be dry-cleaned.  In addition, during my discussions with various

20   agents and with Defendant during the settlement-negotiation process, I was made aware

21   of the fact that, in lieu of cleaning their uniforms, agents could simply request new

22   garments from ATS.  These facts minimize the extent of damages attributable to uniform-

23   cleaning costs.

24       14.    ***The Reasonableness of the Estimated Payments***.  To recap, based on the

25   above figures, participating Class Members will likely receive between $219 to $435 for

26   their "NO LUNCH" codings (to the extent they experienced any such codings) and

27   between $145 to $289 for uniform-cleaning reimbursement.  After extensive discussions

28   with my colleagues, I have formed the opinion that these amounts are fair.  First, as noted

above, the meal-period settlement amounts will provide participating Class Members with *more* than 100% of what is actually owed under section 226.7 of the Labor Code.  In addition, because agents' uniforms were not required by ATS to be dry cleaned, the reimbursement portion of the settlement represents a significant recovery for arguably minimal damages.

15.    I note that the Settlement Agreement seeks to resolve derivative claims for improper pay stubs and continuing wages stemming from the two underlying causes of action alleged in the Complaint.  As with the underlying claims for missed meals and expense reimbursement, because the Settlement Agreement's release is limited to the factual allegations in the Complaint, agents who do not exclude themselves from the settlement will only be releasing derivative pay-stub and continuing-wage claims that stem from the "NO LUNCH" and uniform-cleaning allegations.  Moreover, as explained in Plaintiff's Memorandum filed herewith, the Airline Deregulation Act ("ADA") may operate to preempt Plaintiff's meal-period claims.  ATS has strenuously advanced the ADA preemption defense since this case's inception and throughout the entirety of the settlement-negotiation process, particularly during the mediation.  According to ATS, compliance with California's meal-period statute would have an immediate effect on the scheduling of flights and an ultimate "pass-through" effect on air fare.  If ADA preemption applies, then *none* of the Settlement Class are entitled to *any* meal-period damages, let alone damages stemming from Plaintiff's meal-period-derivative claims.  Furthermore, also as discussed in Plaintiff's Memorandum filed herewith, even if Plaintiff's underlying meal-period claim is not preempted, recent Central District of California authority holds that derivative claims under sections 203 and 226 cannot be based on violations of California's meal-period statute.  The recoveries noted in paragraph 14 above are therefore reasonable in light of the substantial risk discounts that apply in the context of settlement.  For instance, consider Plaintiff's pay-stub claim.  The pay-stub claim is based on the Labor Code's requirement that wage statements be provided to employees with each paycheck, listing the correct amount of gross and net

wages earned.  The claim is derivative in the sense that, whenever ATS coded a "NO LUNCH" workday for an airport agent, ATS should have paid a missed-break wage—a wage that should have appeared on the agent's pay stub.  Because Plaintiff's pay-stub claim is wholly derivative of the missed-meal allegations, it is limited to those 410 Settlement Class members who experienced "NO LUNCH" workdays.  As noted in paragraph 8 above, each Settlement Class member experienced, on average, a total of nine "NO LUNCH" workdays.  Accordingly, on average, each Settlement Class member received, at most, nine separate pay stubs that failed to list additional wages for "NO LUNCH" workdays.[2]  Under the Labor Code, total statutory damages for these violations equal $850.  See Cal. Lab. Code § 226(e) (specifying damage amounts of $50 for the initially defective pay stub and $100 for each defective pay stub thereafter).  As explained in paragraph 14 above, participating Class Members will likely receive between $219 to $435 from that portion of the Net Settlement Fund allocated to address the Complaint's meal-period claim.  Because, on average, each Settlement Class member has only $112 in "actual" meal-period damages, the additional $107 to $323 that each participating Class Member will, on average, likely receive represents between 13% to 38% of total pay-stub damages.

16.    ***The Settlement Agreement's Non-Monetary Relief***.  In addition to providing the above-described monetary relief, the Settlement Agreement requires ATS to request the installation of additional, regulator-permitted seating for its agents at airport worksites.  The Settlement Agreement also requires ATS to request the installation of regulator-permitted mats at its airport worksites in order to alleviate the stress of standing when seating is an impossibility.  This relief is designed to address Plaintiff's allegations in the Complaint that ATS failed to provide adequate seating at its airport worksites.  As explained in Plaintiff's Memorandum filed herewith, the seating

---

[2] Of course, it is possible that all "NO LUNCH" workdays experienced by a given agent occurred over the course of, say, two pay periods, meaning that he or she received only two defective pay stubs, not nine.  In other words, nine pay-stub violations occur only if each "NO LUNCH" workday occurred in its own pay period.

allegations have been resolved on a non-monetary basis because, under the current state of the law, claims for improper seating do not give rise to claims for damages. Based on my discussions with Plaintiff, on my interviews with various airport agents employed by ATS since November 2007, and on the full and frank exchange of information throughout the settlement-negotiation process—including the provision by ATS of photographic evidence documenting the locations in which it presently does provide employee seating—I have concluded that this non-monetary relief is appropriate. This is particularly true in light of the fact that, because Plaintiff is a former employee, she lacked standing (so to speak) to obtain such relief after a full trial on the merits of her seating claim.

### *Class Counsel's Lodestar*

17. Attached hereto as **Exhibit 3** is a true and correct copy of detailed records of the time and expenses incurred by Harris & Ruble in, *inter alia*, initiating the case, litigating the action, preparing for and attending mediation, negotiating the settlement, preparing the settlement-related documents, and attempting to secure preliminary approval of the settlement. The time records run through July 5, 2013, and so do not reflect any time spent preparing the present fee request. Nor do the records reflect any time that will be incurred in seeking final approval of the settlement. It is my practice and the policy of Harris & Ruble that all employees record their professional time in tenth-of-an-hour increments on a contemporaneous basis, and Exhibit 3 reflects that practice. In addition, I regularly review the time and expense records of all Harris & Ruble employees, I have reviewed all of the records attached as Exhibit 3, and I believe that they accurately—yet conservatively—represent the time productively and necessarily spent in the prosecution of this case.

18. Exhibit 3 reflects the following attorney hours and rates:

/ / / / /

| Table 1: Unadjusted Lodestar | | | |
|---|---|---|---|
| *Attorney* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | $800 | 63.40 | $50,720.00 |
| D. Zelenski | $430 | 161.70 | $69,531.00 |
| *Total* | $534.21 | 225.10 | $120,251.00 |

(Ex. 3 at 29.)  Harris & Ruble has filed motions for attorney's fees in common-fund settlements based on these hourly rates, and those motions have been approved by courts in both Los Angeles and San Francisco.

19.     ***Class Counsel's Hourly Rates.***  Recently, in an effort to bring Harris & Ruble's rates up to date with the current prevailing market rate, I retained the services of an expert in the field, Peter D. Zeughauser, to opine on proper market-based billing rates for class-action cases and to provide me with insight in setting rates for Harris & Ruble's hourly clients.  Mr. Zeughauser has executed a Declaration setting forth his opinion as to the rates for Harris & Ruble's attorneys, including rates for myself and Mr. Zelenski.  A true and correct copy of his Declaration is attached hereto as **Exhibit 4**.  In his Declaration, Mr. Zeughauser notes that, for over seventeen years, he "ha[s] served as a legal management consultant to law firms throughout the United States[ and] . . . ha[s] also consulted with numerous law firms with offices in Los Angeles and throughout the United States regarding the appropriate amount to charge clients for services rendered by the firms." (Ex. 4 at ¶ 8.)  According to Mr. Zeughauser's website, a true and correct printout of which is attached hereto as **Exhibit 5**, his clients include the law firms of Akin Gump Strauss Hauer & Feld; Gibson, Dunn & Crutcher; Howard Rice; K&L Gates; Manatt, Phelps & Phillips; Mayer Brown; Morgan, Lewis & Bockius; Morrison & Foerster; O'Melveny & Myers; Proskauer; and Winston & Strawn.  (Ex. 5 at 1–2.)  Mr. Zeughauser's assessment of a "reasonable" hourly rate for Harris & Ruble's attorneys was based directly upon his in-depth knowledge of the prevailing market rates in Los Angeles.  (Ex. 4 at ¶ 9.)  He has "published numerous articles in national, state and local

legal publications on the topic of determining the appropriate value of legal services," and he is "a member of the Board of Editors of America Lawyer Magazine," for which he is a regular columnist who "often address[es] the subject of proper techniques for determining the appropriate value of legal services." (Ex. 4 at ¶ 6.) The following is a partial list of Mr. Zeughauser's fee-related publications:

- <u>Alternative Billing: Clients Aren't Biting</u>, Legal Times, May 1, 2000.
- <u>An Alternative to Alternative Fees</u>, The American Lawyer, Dec. 1996.
- Lawyers are from Mercury, Clients are from Pluto (1999).
- <u>The New Math: Associate Pay Raises Will Have a Domino Effect on the Entire Legal Industry, Clients Will Build In-House Empires, and Many Firms Will Collapse</u>, Legal Times, May 1, 2000, at 46.
- <u>Tower of Billables</u>, 88 A.B.A.J. 14 (Apr. 2002).
- <u>The Use of Alternative Fee Arrangements to Achieve Smart Results and Improve Outside Counsel Relationships</u>, 871 PLI Corp. 47 (1994).
- <u>Using Alternative Fee Arrangements to Improve Client Relationships, Law Firm Profitability and Results</u>, Legal Econ., Apr. 1997 at 22.

20.    According to Mr. Zeughauser, my current rate should be $895 per hour and Mr. Zelenski's current rate should be $625 per hour. (Ex. 4 at ¶ 11.) Although Mr. Zeughauser has thus concluded that Harris & Ruble's rates should be increased beyond those set forth in table 1 above, I am *not* requesting any increase for my own hourly rate or Mr. Zelenski's hourly rate. In fact, with respect to the within action, I am requesting that Harris & Ruble's lodestar be computed using a $600 hourly rate for myself and a $322.50 hourly rate for Mr. Zelenski. These rates were approved by the Central District of California on March 11, 2013, for myself and Mr. Zelenski in an order granting a motion for attorney's fees filed by Harris & Ruble in a wage-and-hour action. A true and correct copy of that order is attached hereto as **Exhibit 6**. Based on these reduced rates, the following table sets forth Harris & Ruble's total attorney fees for the above-captioned matter:

| Table 2:  Reduced Lodestar | | | |
|---|---|---|---|
| *Attorney* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | $600 | 63.40 | $38,040.00 |
| D. Zelenski | $322.50 | 161.70 | $52,148.25 |
| *Total* | $400.66 | 225.10 | $90,188.25 |

21.    As noted in table 2, Harris & Ruble's mixed hourly rate if $400.66.  The mixed hourly rate, as well as Mr. Harris' individual rate and Mr. Zelenski's individual rate, is far less than the rates charged by other firms in Central District wage-and-hour class actions.  For example, in Wang v. Chinese Daily News, Inc., 2008 U.S. Dist. LEXIS 123824 (C.D. Cal. filed Oct. 3, 2008), vacated on other grounds, 132 S. Ct. 74 (2011), the Central District approved hourly rates of up to $800.  Wang, 2008 U.S. Dist. LEXIS at *8–9.  More recently, in Rutti v. Lojack Corp., 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. filed July 31, 2012), the Central District approved hourly rates of up to $750.  Rutti, 2012 U.S. Dist. LEXIS 107677 at *33.

22.    Under the Settlement Agreement, Class Counsel are permitted to seek attorney's fees of up to 33% of the Gross Settlement Payment, *i.e.*, $82,500.  All legal services in this action have been provided on a contingent-fee basis, and the downward-adjusted lodestar for these services—$90,188.25—exceeds the 33% fee allocation by $7,688.25.  Moreover, Harris & Ruble is not the only law firm representing Plaintiff and the Settlement Class in this case; the Law Office of John P. Dorigan performed extensive services as co-counsel herein.  According to the Declaration of John P. Dorigan filed herewith, Mr. Dorigan performed 82.60 hours of work.  (Sept. 26, 2013, Decl. of John P. Dorigan in Supp. of Mot. for Att'ys Fees & Reimbursement of Costs ("Sept. 26, 2013, Dorigan Decl.") [Docket No. 40] ¶ 5 & Ex. 1 at 5.)  Based on his hourly rate of $450, Mr. Dorigan's lodestar is $37,170.00.  (Sept. 26, 2013, Dorigan Decl. [Docket No. 40] ¶ 5 & Ex. 1 at 5.)  The total lodestar for Class Counsel is therefore $127,358.25, reflecting a mixed hourly rate of $413.90 across 307.70 hours of work.  The $127,358.25 exceeds the

Settlement Agreement's fee allocation by $44,858.25.

23.    As explained in the Memorandum filed herewith, Class Counsel's lodestar can be recomputed—and, in fact, adjusted upward—based on Laffey matrix. Attached hereto as **Exhibit 7** is a true and correct copy of the adjusted Laffey matrix, available at http://www.laffeymatrix.com/see.html. Attached hereto as **Exhibit 8** are true and correct copies of salary tables from the U.S. Office of Personnel Management. As detailed in the accompanying Memorandum, the salary tables can be used to modify the figures in the adjusted Laffey matrix to reflect cost-of-living differentials across different geographical regions. Plaintiff has requested that the Court take judicial notice of both the adjusted Laffey matrix and the salary tables in her Request for judicial notice, filed herewith.

24.    Aside from fees, the Settlement Agreement also permits Class Counsel to request reimbursement for incurred litigation expenses of up to $15,000. To date, Class Counsel have advanced all costs incurred in this case. As reflected on Harris & Ruble's time records, total incurred litigation expenses come to $8,069.34. (Ex. 3 at 31.) Because Class Counsel are seeking only $8,069.34 in costs, the remaining $6,930.66 will be distributed to participating Class Members as part of the Net Settlement Fund.

### *Class Notice*

25.    In granting preliminary approval of the Settlement Agreement, the Court approved the form of the Class Notice, claim form, and request-for-exclusion form attached hereto as **Exhibit 9**. These documents were mailed to the Settlement Class on August 26, 2013, by the Gilardi & Co., LLC ("Gilardi")—the Claims Administrator selected by the parties. As stated in the Class Notice, Settlement Class members have until October 10, 2013, to submit claim forms or to request exclusion. (Ex. 9 at 2–4.) As also stated in the Class Notice, Settlement Class members have until October 25, 2013, to file objections to the Settlement Agreement. (Ex. 9 at 2–4.)

26.    Since the mailing of the Class Notice, Gilardi has regularly informed Class Counsel as to the number of submitted claims, exclusion requests, and objections. According to Gilardi, as of the filing of this Declaration, 269 Class Members have

submitted claim forms, and only 12 agents have requested exclusion. In addition, only objection has been submitted. On September 17, 2013, the Court rejected that objection for noncompliance with the Central District's Local Rules. (See generally Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37].)

I have read the foregoing, and the facts set forth therein are true and correct of my own personal knowledge. Executed September 26, 2013, in the County of Los Angeles, State of California.

/s/ *Alan Harris*

Alan Harris

DECL. OF ALAN HARRIS IN SUPP. OF PL.'S MOT. FOR AWARD OF ATT'YS FEES & COSTS

# EXHIBIT 1

## <u>SETTLEMENT AGREEMENT AND GENERAL RELEASE</u>

This Settlement Agreement and General Release ("Settlement Agreement") is entered as of May 7, 2013, by and among Plaintiff Collette McDonald ("Plaintiff"), individually and on behalf of others similarly situated, and Defendant Airport Terminal Services, Inc. ("Defendant"). Plaintiff and Defendant also shall be referred to herein individually as a "Party" and collectively as the "Parties."

## 1.    <u>Case Description.</u>

The following pending action is covered by the settlement memorialized in this Settlement Agreement:  the putative class action filed on November 2, 2011, in the Riverside County Superior Court, Case Number INC 1108937, entitled *McDonald v. Airport Terminal Services, Inc.* (the "Lawsuit"), subsequently removed to the Central District of California, Case Number EDCV 11-01946 VAP (SPx).

The Lawsuit asserts claims for (i) the alleged non-payment of meal-period premiums in violation of California Labor Code sections 226.7 and 512, as well as the applicable Industrial Welfare Commission Wage Order; (ii) the alleged failure to reimburse for uniform-maintenance expenses in violation of California Labor Code section 2802; (iii) the alleged failure to timely pay wages in violation of California Labor Code sections 201, 202, and 203 stemming from Defendant's alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; (iv) the alleged failure to provide accurate information on pay stubs in violation of California Labor Code section 226 stemming from Defendant's alleged failure to pay meal-period premiums; and (v) alleged unfair business practices under California Business and Professions Code section 17200 *et. seq.* stemming from Defendant's alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses.  In addition, the Lawsuit alleges civil-penalty liability from either an alleged failure to provide adequate seating to employees or from the aforementioned alleged violations, including such civil penalties stemming from California Labor Code sections 204, 220 *et seq.*, 226.3, 558, 1198, 1199, 2698, 8 Cal. Code Regs. 11090 § 9(A), and the applicable Industrial Welfare Commission Wage Order.

Plaintiff's counsel, Alan Harris and David Zelenski of Harris & Ruble, and John P. Dorigan of the Law Offices of John P. Dorigan, diligently pursued an investigation of Plaintiff's claims against Defendant, including any and all applicable defenses and the applicable law.  The investigation included, *inter alia*, the exchange of information, as well as numerous conferences between the Parties' respective counsel.

This Settlement Agreement was reached after extensive arm's length negotiations, and it was negotiated in light of all known facts and circumstances, including the mutual risks of significant delay, costs, and uncertainty associated with litigation; various defenses asserted by Defendant; and numerous potential appellate issues.  With the assistance of a formal private mediation under the auspices of an experienced wage-and-hour mediator, Lynn Frank, the Parties have agreed to this Settlement Agreement to wholly and finally resolve the Lawsuit and the claims asserted within the Lawsuit.

2.      **Defendant's Non-Admissions Clause.**

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit and further denies that, for purposes other than the settling of the Lawsuit, any part of the Lawsuit is appropriate for class certification.  The Lawsuit, the negotiation and execution of the Settlement Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement Agreement (i) shall not be used as an admission or evidence of wrongdoing on behalf of Defendant; (ii) shall not be an admission or evidence of fault on behalf of Defendant in any action before a civil, criminal, or administrative agency; and (iii) shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of these or similar claims for class certification in the Lawsuit or with respect to any other proceeding.

3.      **Settlement-Class Definition.**

For purposes of this Settlement Agreement, the class will be comprised of all non-exempt employees who were employed by Defendant within California from November 2, 2007, to the date of entry of preliminary approval of the Settlement Agreement ("Settlement Class").  The Settlement Class, however, will not include any person who files a timely request for exclusion, as detailed below.  Individuals who do not request exclusion will be "Class Members."

4.      **Appropriateness of Settlement Class.**

For purposes of this Settlement Agreement (and steps taken toward effectuating this Settlement Agreement) only, the Parties conditionally stipulate to certification of the Settlement Class.

Plaintiff's counsel believe that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and that it is in the best interest of Settlement Class members' claims in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, and numerous potential appellate issues.  Defendant and its counsel also agree that the settlement is fair, reasonable, and adequate and that it is in the best interest of Settlement Class.

5.      **Court Approval as Condition to the Settlement.**

Plaintiff, on behalf of herself and Class Members, along with Defendant, and subject to the approval of the Court, stipulate that the Lawsuit will be compromised, settled, and dismissed pursuant to the terms and conditions set forth in this Settlement Agreement and that, after the Court's final approval of this settlement, judgment shall be entered, subject to the continuing jurisdiction of the Court as set forth below and subject to the definitions, terms, and conditions within this Settlement Agreement, which by this reference become an integral part of this Settlement Agreement.

6.     **Appointment of Class Counsel.**

The Parties agree to the appointment of Alan Harris and David Zelenski of Harris & Ruble, and John P. Dorigan of the Law Offices of John P. Dorigan, as class counsel ("Class Counsel") for Class Members for purposes of effectuating this settlement.

7.     **Settlement Payments.**

A total sum of $250,000 ("Gross Settlement Payment") shall be paid in consideration for the releases, covenants, and promises set forth in this Settlement Agreement in full settlement of all claims set forth in the Lawsuit, including all amounts itemized below in sections 7A through 7E. The Gross Settlement Payment shall be a fixed common-fund settlement, and no portion shall revert to Defendant unless this Settlement Agreement is not finally approved by the Court. Said payment shall be made at the times and in the manner set forth in section 17 herein, and said payment shall be distributed among Class Members who submit valid and timely claim forms, Plaintiff, the Claims Administrator (defined below), and Class Counsel as set forth in this section.

As discussed below, the Gross Settlement Payment shall be used to satisfy (i) attorneys' fees and costs; (ii) claims-administration fees, including the reasonable fees charged by the Claims Administrator to cover any costs associated with the required tax reporting on any individual settlement payments, and the issuing of any and all 1099 and W-2 IRS Forms; (iii) Plaintiff's enhancement payment; and (iv) payment to Class Members, including any resulting employer-side tax liabilities to Defendant. The Gross Settlement Payment shall be used to satisfy any and all payments (and associated costs) required by the Settlement Agreement.

A.     **Attorneys' Fees and Costs.**

As part of the overall settlement and release of claims, and subject to approval by the Court, Defendant agrees that the amount of attorneys' fees to be allocated from the Gross Settlement Payment to Class Counsel shall be determined by the Court. Class Counsel will also request that the Court reimburse Class Counsel for actual and reasonable costs and expenses incurred in bringing and maintaining the Lawsuit.

Defendant will not object to Class Counsel's request for attorneys' fees not to exceed thirty-three percent (33%) of the total Gross Settlement Payment. Defendant will not object to Class Counsel's request for reimbursement of costs and expenses in an amount not to exceed $15,000 to be paid from the Gross Settlement Payment. Class Counsel will file their request for attorneys' fees and costs to be paid from the Gross Settlement Payment on or before the date that Class Notice is mailed out by the Claims Administrator. The attorneys' fees and costs awarded by the Court shall be paid to Class Counsel after the distribution of settlement checks to Class Members who submit valid and timely claims forms. The Claims Administrator—not Defendant—shall issue an IRS Form 1099 to Class Counsel reflecting the awarded attorneys' fees and costs.

Except as set forth herein, Plaintiff, Class Members, and Defendant shall bear their own attorneys' fees and costs. Except as herein expressly provided regarding payment to the Claims

3

Administrator, Class Counsel assume full responsibility for payment of all costs of any sort whatsoever, including witness and expert fees, incurred by Plaintiff or by any of Plaintiff's counsel of record related to this matter.

      B.    <u>Claims-Administration Fees.</u>

Subject to approval by the Court, the reasonable fees charged by the Claims Administrator shall be paid from the Gross Settlement Payment after final approval and funding of the settlement.  These reasonable fees shall include any costs associated with the required tax reporting on any individual settlement payments, and the issuing of any and all 1099 and W-2 IRS Forms.

      C.    <u>Plaintiff's Enhancement Award.</u>

Subject to approval by the Court, Defendant agrees that Plaintiff can receive an enhancement of up to $5,000 (subject to an IRS Form 1099) for serving as a class representative. Plaintiff assumes sole responsibility for tax reporting regarding this payment.  Any enhancement payment awarded by the Court shall be paid to Plaintiff after the distribution of settlement checks to Class Members who submit valid and timely claim forms.

      D.    <u>Payment to the Settlement Class.</u>

After deducting from the Gross Settlement Payment (i) Class Counsel's attorneys' fees and costs as awarded by the Court, (ii) Plaintiff's enhancement award as awarded by the Court, (iii) any tax liabilities the Settlement Agreement creates for Defendant, and (iv) the fees and costs associated with claims administration, the remainder ("Net Settlement Fund" or "NSF") shall be distributed to Class Members who submit valid and timely claim forms.

Two-thirds, or approximately 66.67%, of the NSF will be evenly distributed among all Class Members who submit valid and timely claim forms.  The remaining one-third, or approximately thirty-three and a third percent 33.33%, of the NSF will be distributed pro rata based on number of cancelled meal periods as reported by Defendant for Class Members who have submitted valid claim forms.  Defendant will provide a summary of the Settlement Class' cancelled meal periods so that the Claims Administrator may calculate the pro rata share for each Class Member who submits a valid and timely claim form, and should there be a dispute regarding this number Defendant's records will control.

The portion of the NSF evenly distributed among all Class Members who submit valid and timely claim forms will be characterized as 75% expense reimbursement and 25% interest. The portion of the NSF distributed based on Class Members' pro rata share of cancelled meal periods will be characterized 50% as wages, 25% as liquidated damages, and 25% as interest. As to that portion of Class Members' settlement proceeds that constitutes wages, any and all employer taxes, including but not limited to the employer FICA, FUTA, and SDI contributions ("Employer Taxes"), will be paid from the Gross Settlement Payment. The Claims Administrator will provide to Defendant an accounting of the Employer Taxes paid for all Class Members who submit valid and timely claim forms.

15611430v.4

      E.     <u>No Warranty by Defendant.</u>

Plaintiff understands and agrees that Defendant is not providing Plaintiff or Class Members with tax or legal advice and that Defendant makes no representations regarding tax obligations or consequences, if any, related to this Settlement Agreement.

With the exception of a lien in the amount of $67,500 issued by RD Legal Funding, LLC, pursuant to a transferred and assigned right to such settlement funds from Class Counsel (specifically Dale Alan Harris, Esq. or Harris & Ruble), Plaintiff and her attorneys certify that (i) they have no knowledge of any other liens on the settlement proceeds and that (ii) no other notices of any liens have been filed in the Lawsuit. The $67,500 subject to RD Legal Funding, LLC's lien is an amount less than Class Counsel's anticipated recovery of attorneys' fees and costs, as described above in section 7A.

The Parties agree that the Claims Administrator will satisfy the RD Legal Funding, LLC lien from settlement funds distributed pursuant to section 7A.

Although settlement funds distributed pursuant to section 7A are anticipated to satisfy the entire amount of the above-referenced lien, the Claims Administrator will notify both Parties if the settlement funds distributed pursuant to section 7A are not sufficient to satisfy the entire amount of the above-referenced lien. Within seven (7) days of such notification from the Claims Administrator, Class Counsel will provide the Claims Administrator with a check in an amount equal to the amount by which the above-referenced lien in the amount of $67,500 exceeds the amount of settlement funds distributed pursuant to section 7A. Class Counsel agree and warrant that in no event should the satisfaction of the lien affect settlement-fund distributions other than those in section 7A, and that, to the extent any other conflict arises, Class Counsel will agree to waive any entitlement to section 7A payments to the extent necessary to provide settlement payments to Class Members.

**8.    <u>Non-Monetary Relief.</u>**

Not later than one-hundred-eighty (180) calendar days following final approval of this Settlement Agreement by the Court:

      A.     Defendant shall provide refresher training to supervisors to clarify that all breaks that do not interfere with airline routes, rates, or services are permitted and authorized.

      B.     Defendant shall inquire of third-party airport operators and regulators whether mats are permitted and, if so, shall request their installation at work locations.

      C.     Defendant shall inquire of third-party airport operators and regulators whether additional seating is permitted and, if so, shall request provision of such seating at work locations where such seating would not interfere with the nature of, or practical realities regarding, the work there performed.

The Parties have agreed to memorialize the non-monetary relief set forth herein by posting a bulletin regarding Defendant's compliance with the terms of section 8 at all work

locations where any Class Member works and by providing a copy of said bulletin to Class Counsel.  Defendant has also agreed to make that bulletin available to all currently employed Class Members, who may request and obtain a copy from their supervisor or manager.

**9.**    **Claims Administration.**

Subject to approval of the Court, the Parties will select a neutral third-party claims administrator ("Claims Administrator") to perform all acts related to providing the Class Notice (defined below) to the Settlement Class; calculating and distributing settlement funds as payments to Class Members who submit valid and timely claim forms, an enhancement payment to Plaintiff, attorneys' fees, employer-side tax liabilities to Defendant, and third-party administration fees and costs; processing all necessary 1099 and W-2 IRS Forms; and otherwise ensuring the terms of the Settlement Agreement are achieved.

**10.**    **Seeking Preliminary Approval from the Court.**

The settlement of the Lawsuit is conditioned upon the Court's providing both preliminary and final approval of the settlement terms.  As promptly as possible, Class Counsel shall file a motion with the Court for preliminary approval of this Settlement Agreement.  Defendant shall support the request for preliminary approval.  Defendant shall file a statement of non-opposition with respect to Plaintiff's motion for preliminary approval of this Settlement Agreement.  The submission for preliminary court approval will include the proposed forms of the Class Notice and all other necessary documents.

**11.**    **Information to the Claims Administrator.**

Not later than thirty (30) calendar days after receipt of notice of the Court's entry of an order of preliminary approval, Defendant shall provide to the Claims Administrator a database that contains the last-known name, mailing address, social security number, and number of meal-period cancellations for all members of the Settlement Class ("Confidential Information for the Claims Administrator").  Defendant shall cooperate and provide any additional information the Claims Administrator may reasonably request for the purpose of providing the Class Notice to Settlement Class members, allocating and distributing the settlement amounts, and otherwise administering this Settlement Agreement.

Defendant will provide the above information to the Claims Administrator confidentially. In exchange, the Claims Administrator must agree to use the Confidential Information for the Claims Administrator solely for the purposes of performing its third-party administrator duties of providing the Class Notice to the Settlement Class and thereafter executing the Settlement Agreement's terms.  The Claims Administrator must agree to maintain in the strictest of confidence all Confidential Information for the Claims Administrator and not to disclose this information in any manner whatsoever, in whole or in part, except as specifically provided herein.  The Claims Administrator acknowledges and understands that the Confidential Information for the Claims Administrator shall not be disclosed or released to Plaintiff, the Settlement Class, or their counsel under any circumstance without the express written consent of counsel for Defendant.  The Claims Administrator shall destroy all Confidential Information for the Claims Administrator received in connection with processing and effecting this Settlement

Agreement after retaining such information for sixty (60) calendar days after issuing the final settlement payment.

**12.    Class Notice and Requests for Exclusion.**

      A.    <u>Notice to the Class and Requests for Exclusion.</u>

Not later than ten (10) calendar days after receipt of the information described in section 11, the Claims Administrator shall provide a Notice of Pendency of Class Action, Proposed Settlement, and Hearing Date for Court Approval ("Class Notice") to the Settlement Class. Such Class Notice shall include an explanation of the procedure for requesting exclusion from the Settlement Class. All such forms shall be attached to Plaintiff's motion for preliminary approval of this Settlement Agreement and shall first be approved by the Court. The Claims Administrator shall run the names and addresses of members of the Settlement Class through the National Change of Address database.

The Settlement Class shall have forty-five (45) calendar days from the date the Class Notices are mailed to postmark claim forms or requests for exclusion (such requests for exclusion are also referred to as "Opt Outs"). In order to validly request exclusion, the Opt Out must be completed in its entirety in accordance with all instructions set forth in the Class Notice.

The Claims Administrator will perform one (1) address follow-up on returned mail and will re-mail the Class Notice to an updated address (if any) within fifteen (15) calendar days of receipt of the returned mail. (The forty-five-day time limit will run from the date of the second mailing for those Class Members. To the extent a Class Notice from the initial mailing is not returned within that forty-five-day time limit, it shall be deemed to have been sent to a valid address even if it is thereafter returned.) It is the intent of the Parties that reasonable, but not extraordinary, efforts be used to locate members of the Settlement Class. If the initial Class Notice is returned, the Claims Administrator will search using the social security number of the Settlement Class member for a more current address. If no address is found within ten (10) calendar days, no further action is required.

All Class Members who have submitted valid and timely claim forms and who have not requested exclusion will receive a payment of the NSF as set forth in sections 12D and 17 herein. If a Settlement Class member submits both a valid and timely claim form, on the one hand, and a valid and timely Opt Out, he or she will be deemed to have submitted a valid and timely claim form, and the Opt Out will be disregarded.

If any Settlement Class member submits a defective claim form or Opt Out that has been postmarked before the forty-five-day response deadline, the Claims Administrator shall send a cure letter to such individual, advising that the form is defective, stating the nature of the defect, and advising that the defect must be cured to render the claim form or Opt Out valid. The cure letter shall state that the individual has ten (10) calendar days from the date of the cure letter or the response deadline, whichever date is later, to postmark a revised claim form or Opt Out. Defective claim forms and requests for exclusion will be considered invalid and, if received after the response deadline, Settlement Class members shall have no right to cure them.

Any Settlement Class member who does not affirmatively opt out of the settlement by submitting a valid and timely request for exclusion shall be bound by all of the Settlement Agreement's terms, including those pertaining to the released claims, as well as any final judgment that may be entered by the Court, if the Court grants final approval of the Settlement Agreement.

B.      Claims Administration.

Settlement Class members shall mail all claim forms and Opt Outs directly to the Claims Administrator at the address indicated by the Class Notice.  If a claim form or Opt Out is sent to either Party or their counsel, that Party or its counsel shall forward the document to the Claims Administrator, and it shall be deemed mailed on the date of the original postmark.

If there is any dispute as to the information provided on the claim form or Opt Out, the Claims Administrator shall be solely responsible for resolving any such disputes after consultation with the parties.  The Claims Administrator's ruling will be binding on the Settlement Class member and cannot be appealed.  For purposes of any Settlement Class member disputes regarding the settlement payment amount or calculation thereof, Defendant's records will control.

C.      Reports.

Within ten (10) calendar days of the conclusion of the forty-five-day period noted above (extended, if necessary, by the time periods also noted above), the Claims Administrator will provide a written report to both Parties' counsel noting the number of Class Notices sent, the number that were returned as undeliverable (after the follow-up required herein), and the number of valid and timely claim forms and Opt Outs received.  Prior to the due date for this report, the Claims Administrator will reasonably respond to requests from either Party's counsel for a report on the current status of the claims-administration process.

D.      Revocation of Settlement Agreement.

If five percent (5%) or more of the Settlement Class submit valid Opt Outs by the forty-five-day response deadline, then Defendant may, at its election, rescind the Settlement Agreement, and all actions taken in furtherance of the Settlement Agreement will be null and void.  Defendant must exercise this right of rescission, in writing, to Class Counsel within fourteen (14) calendar days after the Claims Administrator notifies the Parties of the total number of valid and timely Opt Outs received by the forty-five-day response deadline.

E.      Payments.

The Claims Administrator shall be responsible for making all payments to any person or entity from the Gross Settlement Payment; for taking care of all required tax deductions, withholding, and reporting; and for communicating the information regarding status of the payments to the Parties' counsel.

Pursuant to section 17 below, the Claims Administrator shall issue settlement checks to all Class Members who have submitted valid and timely claims forms, reflecting each respective Class Member's share of the NSF.

The Parties agree that all settlement checks mailed to Class Members will be voided if not negotiated within one-hundred-twenty (120) calendar days of the date of their mailing to the Class Member. Any funds represented by settlement checks returned as undeliverable and those settlement checks remaining un-cashed after the expiration of the one-hundred-twenty-day time period shall constitute "unpaid residuals in class-action litigation." *See, e.g.*, *Cundiff v. Verizon California, Inc*., 167 Cal. App. 4th 718 (2008). Those unpaid residuals shall escheat to the State of California Controller's Office unclaimed-property fund. *See, e.g.*, *Akaosugi v. Benihana Nat. Corp.*, 2013 WL 269083, at *2 (N.D. Cal. Jan. 24, 2013) (granting final approval of distribution of unpaid class-settlement residuals "to escheat to the State of California Controller's Office's unclaimed property fund").

## 13.    **Objections.**

All objections to the settlement must be served and filed with the Court at least sixteen (16) court days before the date set for hearing the motion for final approval of the Settlement Agreement. All objections must be served on both Parties' counsel and filed with the Court, along with a notice of intention to appear. Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement, unless otherwise ordered by the Court. Only Class Members who do submit timely and valid Opt Outs may file objections. The Parties' counsel may file, at least five (5) court days before the final approval hearing (or some other date as set by the Court), responses to any written objections filed with the Court.

## 14.    **Releases.**

Upon final approval by the Court, Plaintiff and each Class Member releases Defendant and each of its officers, directors, employees, agents, direct and indirect subsidiaries or affiliated corporations, organizations, representatives, insurers, predecessors, successors, assigns, clients (and their respective officers, directors, employees, agents, managers, and fiduciaries), and counsel (collectively referred to as the "Released Parties") from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type that is based on or arises out of the allegations the Lawsuit, including but not limited to such claims for (i) the alleged non-payment of meal-period premiums in violation of California Labor Code sections 226.7 and 512, as well as the applicable Industrial Welfare Commission Wage Order; (ii) the alleged failure to reimburse for uniform-maintenance expenses in violation of California Labor Code section 2802; (iii) the alleged failure to timely pay wages in violation of California Labor Code sections 201, 202, and 203 stemming from Defendant's alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; (iv) the alleged failure to provide accurate information on pay stubs in violation of California Labor Code section 226 stemming from Defendant's alleged failure to pay meal-period premiums; (v) alleged unfair business practices under California Business and Professions Code section 17200 *et. seq.* stemming from

Defendant's alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; and (vi) alleged civil-penalty liability from either an alleged failure to provide adequate seating to employees or from the aforementioned alleged violations, including such civil penalties stemming from California Labor Code sections 204, 220 *et seq.*, 226.3, 558, 1198, 1199, 2698, 8 Cal. Code Regs. 11090 § 9(A), and the applicable Industrial Welfare Commission Wage Order.

This release covers all claims for interest, attorneys' fees, and costs related to the Lawsuit. Class Members who have not timely returned complete and timely claim forms shall not share in the distribution of any part of the Gross Settlement Payment but nevertheless shall be bound by the release provisions of this Settlement Agreement. As they relate to these Released Claims, Class Members waive all rights under California Civil Code section 1542 and understand that they are releasing known and unknown claims within the scope of this release. Section 1542 states:

> A general release does not extend to claims which the creditor does not know about or does not suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

## 15. Stay of Proceedings.

The Parties agree to refrain from further litigation of the Lawsuit, except such proceedings necessary to implement and obtain an order granting approval of the terms of the Settlement Agreement. The Parties further agree that the mutual, voluntary cessation of litigation shall terminate if the motion for final approval of the Settlement Agreement is denied by the Court.

## 16. Effective Date.

The effective date of this Settlement Agreement ("Effective Date") is the date upon which (a) the Settlement Agreement is finally approved substantially in accordance with the terms of this Settlement Agreement and (b) the Court's entry of judgment and dismissal of the Lawsuit substantially in accordance with the terms of this Settlement Agreement ("Judgment") become final. For purposes of defining the Effective Date, the date upon which the settlement and Judgment become final is the last date of (a) final approval by the Court if there are no objections made and no further objections can be made; (b) if there are objections to the Settlement Agreement that are not withdrawn, and if no appeal, review, or writ is sought from the Judgment, the day after the period for appeal has expired; or (c) if an appeal, review, or writ is sought from the Judgment, the day after the Judgment is affirmed or the appeal, review, or writ is dismissed or denied.

## 17. Settlement Funding and Payout Deadlines.

The Gross Settlement Payment shall be funded as set forth in this section.

A.    <u>Initial Deposit ($ 20,000).</u>

Within five (5) business days upon entry of preliminary approval of this Settlement Agreement by the Court, Defendant shall deposit an initial $20,000 in an escrow account established and maintained by the Claims Administrator.  The Parties intend that these funds be used by the Claims Administrator to provide the Class Notice.

B.    <u>Subsequent Deposit ($230,000).</u>

Defendant shall deposit the balance of the Gross Settlement Payment in the amount of $230,000 within ten (10) business days following the Effective Date.  The Claims Administrator shall issue settlement checks to all Class Members who have submitted valid and timely claim forms forthwith.  The Claims Administrator shall issue payments forthwith to Class Counsel and the named Plaintiff in accordance with sections 7A and 7C herein.

## 18.    <u>Communications with Class Members.</u>

Under no circumstances will any counsel or Plaintiff encourage a Settlement Class member to request exclusion.

The Parties and their respective attorneys agree that the terms of this Settlement Agreement and the negotiations leading to its execution shall not be discussed with or promoted to the media or legal community without the advance written consent of the opposite party or as required by the Court.  Notwithstanding the foregoing, either party (i) may respond to inquiries from the press, and may tell the public in general that this Lawsuit "has been resolved between the Parties"; and (ii) may disclose the terms of this Settlement Agreement to members of the Settlement Class, the Court, and the Claims Administrator in order to obtain preliminary and final approval of the Settlement Agreement.

## 19.    <u>Failure of the Settlement Due to Non-Approval by the Court.</u>

In the event of non-approval by the Court (or by any reviewing court) of this Settlement Agreement, the Settlement Agreement shall be deemed voided, and no party or counsel shall be entitled to the payment amounts contemplated herein.  Moreover, in the event of non-approval by the Court, no party (or other witness) may use the fact that the Parties agreed to settle the case, the settlement documents, or any communications regarding the Settlement Agreement as evidence of Defendant's liability or lack thereof or as proof of the suitability of the case for class certification or representative treatment.  Moreover, any payments made pursuant to section 17 are to be returned to Defendant in the case of non-approval by the Court (or by any reviewing court).

## 20.    <u>Tax Issues.</u>

This Settlement Agreement does not constitute tax advice to any recipient of monies. Settlement Class members will be advised to seek individual tax advice in the Class Notice. Defendant will not be held responsible for individual tax liability, if any, found to exist on behalf of Class Members who submit valid and timely claim forms.  Any tax withholdings, deductions,

or obligations arising out of the distribution of the Gross Settlement Payment to Plaintiff and Class Members shall be funded exclusively by the Gross Settlement Payment.

**21.    Future Cooperation.**

The Parties and their respective counsel of record shall proceed diligently to prepare and execute all documents, to seek the necessary court approvals, and to do all other things reasonably necessary to conclude the settlement and dismiss the Lawsuit in accordance with this Settlement Agreement.  The Parties agree to cooperate fully to achieve final approval of the Settlement Agreement substantially in accordance with the terms outlined herein.

**22.    Construction and Interaction.**

This Settlement Agreement, including any Exhibits thereto, constitutes the entire agreement among the Parties.  No representations, warranties, or inducements have been made to any Party concerning the subject matter of this Settlement Agreement other than the representations, warranties, and covenants contained herein.  This Settlement Agreement terms shall each be construed according to their fair meaning and intent.  Each Party represents that his, her, or its counsel have participated and cooperated in the drafting and preparation of this Settlement Agreement; hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any Party on the basis that said Party was the drafter.

**23.    Governing Law.**

California law governs the interpretation and application of this Settlement Agreement and the administration of any claims.

**24.    Counterparts.**

This Settlement Agreement may be executed in one or more faxed or e-mailed counterparts, which counterparts may be filed with the Court.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.

**25.    Parties' Authority.**

The signatories hereto represent that they are fully authorized to enter this Settlement Agreement and bind the Parties to the terms and conditions hereof.

**26.    Continuing Jurisdiction.**

Except as otherwise specifically provided for herein, the Central District of California shall retain jurisdiction to enforce this Settlement Agreement; to supervise all notices, the administration of the Settlement Agreement, and the distribution of the Gross Settlement Payment; and to hear and adjudicate any dispute arising from or related to the Settlement Agreement.

15611430v.4

**27.**  **Class Signatures.**

It is agreed that, because the Settlement Class is so numerous, it would be impossible or impractical to have each Class Member execute this Settlement Agreement.  Plaintiff therefore executes this Settlement Agreement on behalf of all Class Members.  The Class Notice shall advise all members of the Settlement Class of the binding nature of the release, and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

**28.**  **Representations Regarding Other Matters.**

Class Counsel represent that they know of no other claims or attempted claims against Defendant or any related party.

**29.**  **Plaintiff's Individual Settlement.**

Notwithstanding the terms of section 30, Plaintiff's individual settlement agreement ("Individual Agreement"), attached hereto as Exhibit A, is incorporated within the terms of this Settlement Agreement.  The executed Individual Agreement will be submitted to the Court in connection with the Parties' efforts to seek preliminary approval of the Settlement Agreement.  Plaintiff's Individual Agreement is incorporated within this Settlement Agreement by this reference.

**30.**  **Sole and Entire Class-Wide Agreement.**

This Settlement Agreement sets forth the entire agreement between the Parties with respect to class-wide issues, and it fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Settlement Agreement.  No prior or other oral or written understanding shall be of any force or effect with respect to the class-wide matters covered by this Settlement Agreement.

This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their respective successors-in-interest.

/ / / / /

15611430v.4

31.   **Section Headings.**

Section headings in this Settlement Agreement are included herein for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

**REVIEWED AND ACCEPTED:**

Dated: May 9, 2013      Plaintiff Collette McDonald

                                 Collette McDonald

Dated: May 7, 2013      Defendant Airport Terminal Services, Inc.

                                 By: _____

                                 Its: _____

**APPROVED AS TO FORM AND CONTENT:**

Dated: May 7, 2013      HARRIS & RUBLE

                                 Alan Harris
                                 David Zelenski
                                 *Attorneys for Plaintiff Collette McDonald*

Dated: May 7, 2013      SEYFARTH SHAW LLP

                                 Aaron R. Lubeley
                                 Simon L. Yang
                                 *Attorneys for Defendant Airport Terminal Services, Inc.*

15611430v.4

**31.    Section Headings.**

       Section headings in this Settlement Agreement are included herein for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

**REVIEWED AND ACCEPTED:**

Dated: May 7, 2013       Plaintiff Collette McDonald

_____
Collette McDonald

Dated: May 7, 2013       Defendant Airport Terminal Services, Inc.

_____
By: _Margaret D. Hohl_____

Its: _Vice President_____

**APPROVED AS TO FORM AND CONTENT:**

Dated: May 7, 2013       HARRIS & RUBLE

_____
Alan Harris
David Zelenski
*Attorneys for Plaintiff Collette McDonald*

Dated: May 7, 2013       SEYFARTH SHAW LLP

_____
Aaron R. Lubeley
Simon L. Yang
*Attorneys for Defendant Airport Terminal Services, Inc.*

15611430v.4

## SETTLEMENT AGREEMENT AND GENERAL RELEASE
### (Exhibit A:  Individual Settlement Agreement)

This individual settlement agreement ("Individual Agreement") is entered as of April 10, 2013, by Plaintiff Collette McDonald ("Plaintiff") and Defendant Airport Terminal Services, Inc. ("Defendant").  Plaintiff and Defendant also shall be referred to herein individually as a "Party" and collectively as the "Parties."

The terms of this Individual Agreement, which is Exhibit A to the Settlement Agreement and General Release ("Settlement Agreement") entered by the Parties, are wholly incorporated into the Settlement Agreement by its attachment as Exhibit A and the Settlement Agreement's explicit reference to the Individual Agreement in section 29 of the Settlement Agreement.

## 1.    Plaintiff's Additional Individual Release.

In addition to the releases provided in section 14 of the Settlement Agreement, Plaintiff does hereby—for herself and for her heirs, representatives, attorneys, executors, administrators, successors, and assigns—release, acquit, and forever discharge Defendant and all owners, affiliates, related companies, subsidiaries, divisions, parents, and the members, managers, investors, shareholders, officers, directors, partners, servants, agents, employees, representatives, attorneys, insurers, bankruptcy trusts, past, present, and future of Defendant, and all persons acting under, by, through, or in concert with any of them, and each of them, from any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time to the date of execution of this Individual Agreement (or Settlement Agreement, using whichever date is later), including, but not limited, to any claims or causes of action arising out of or in any way relating to Plaintiff's employment relationship with Defendant.

Plaintiff agrees that this release of claims includes, but is not limited to, claims for breach of any implied or express contract or covenant; claims for promissory estoppel; claims of entitlement to any pay; claims for failure to reimburse expenses; claims of wrongful denial of insurance and employee benefits; claims for wrongful termination, public-policy violations, defamation, invasion of privacy, emotional distress, or other common-law or tort matters; claims of harassment, retaliation, or discrimination under federal, state, or local law; claims based on any federal, state, or other governmental statute, regulation, or ordinance, including, without limitation, Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment & Housing Act, the California Family Rights Act, the California Labor Code, the Fair Labor Standards Act, and the Employee Retirement Income Security Act.  Excluded from this release are any claims for breach of this Individual Agreement, any claims for compensation under California laws regarding workers' compensation for injury at work, any claims for unemployment insurance, and any other claims that cannot be waived by law.

For the purpose of implementing a full and complete release, Plaintiff expressly acknowledges that the release she gives in this Individual Agreement is intended to include in its effect, without limitation, claims that she did not know or suspect to exist in her favor at the time of the execution of this Individual Agreement, regardless of her knowledge of such claims or the facts upon which they might be based, that would materially have affected the settlement of this matter, and that the consideration given under the Individual Agreement was also for the release of those claims and contemplates the extinguishment of any such unknown claims. Plaintiff expressly waives the provisions of California Civil Code section 1542 and understands that she is releasing known and unknown claims within the scope of this release. California Civil Code section 1542 states:

> A general release does not extend to claims which the creditor does not know about or does not suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiff, being aware of this section, hereby expressly waives and relinquishes all rights and benefits it may have under this section, as well as any other statutes or common-law principles of a similar effect.

Notwithstanding the foregoing, nothing in this Individual Agreement releases any claims that arise after Plaintiff's execution of this Individual Agreement (or Settlement Agreement, using whichever date is later) or precludes her from enforcing this Individual Agreement.

## 2. <u>No Reemployment.</u>

Plaintiff waives any claim of reinstatement with Defendant, or any of its subsidiaries, parents, successors, or affiliated companies. Plaintiff agrees that she shall not knowingly apply for work as an employee or independent contractor with Defendant or any of Defendant's subsidiaries, parents, successors, or affiliated companies. Plaintiff further agrees that any application to be an employee or independent contractor that Plaintiff makes to Defendant, or any of Defendant's subsidiaries, parents, or affiliated companies, may be rejected by the company or entity to which application is made. Plaintiff understands and acknowledges that neither Defendant nor any related entity has an obligation to re-hire her or retain her as either an employee or independent contractor, and that any such refusal to re-hire her or retain her will not subject Defendant, or a related entity, to liability on any grounds.

## 3. <u>Defendant's Release.</u>

In exchange for the promises contained in this Individual Agreement, Defendant agrees that it or any person acting by, through, or under it releases Plaintiff from any and all claims Defendant has against Plaintiff arising through the date of this Individual Agreement, and Defendant agrees that it will not institute any action or actions, cause or causes of action (in law or in equity), suits, debts, liens, claims, or demands, known or unknown, fixed or contingent, that it may have or claim to have in state or federal court, or before any state, federal, or local government agency, or before any administrative or advisory body, arising from or attributable

to Plaintiff through the date of this Individual Agreement (or Settlement Agreement, whichever date is later).

Defendant specifically agrees that it is compromising, settling, and releasing Plaintiff from any right or claim and for all liability that may presently exist for any potential employment-related claim. Defendant specifically acknowledges that it is aware of and familiar with the provisions of California Civil Code section 1542, which section provides:

> A general release does not extend to claims which the creditor does not know about or does not suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Defendant, being aware of this section, hereby expressly waives and relinquishes all rights and benefits it may have under this section, as well as any other statutes or common-law principles of a similar effect.

Notwithstanding the foregoing, nothing in this Individual Agreement releases any claims that arise after Defendant's execution of this Individual Agreement (or Settlement Agreement, using whichever date is later) or precludes Defendant from enforcing this Individual Agreement.

## 4.    Time to Negotiate and Consider this Agreement.

In addition to having the opportunity to negotiate this Individual Agreement (as well as the Settlement Agreement), the Parties, before signing the Individual Agreement (and the Settlement Agreement), have been advised to consult with, and have in fact consulted with, their attorneys to obtain advice concerning their rights and obligations under both the Individual Agreement and the Settlement Agreement.

The Parties represents that they have carefully read this Individual Agreement and find that it has been written in language that they understand. They also acknowledge that they are entering into this Individual Agreement knowingly, willingly, and voluntarily. In addition, Plaintiff has been given twenty-one (21) calendar days to consider whether to accept this Individual Agreement and has signed it only after reading, considering, and understanding it. If Plaintiff signs this Individual Agreement before the expiration of the twenty-one-day period, she is expressly waiving her right to consider the Individual Agreement for any remaining portion of that twenty-one-day period. The Parties agree that any changes made to this Individual Agreement from the version originally presented to Plaintiff, whether those changes are deemed material or non-material, do not extend the twenty-one-day period Plaintiff has been given to consider this Individual Agreement.

Accordingly, Plaintiff understands and agrees that:

/ / / / /

15611430v.4

A.      Plaintiff has had a reasonable time within which to consider this Individual Agreement before executing it;

B.      Plaintiff acknowledges she was advised by Defendant in writing to consult with her attorneys before executing this Individual Agreement;

C.      Plaintiff has discussed this Individual Agreement with her attorneys;

D.      Plaintiff has carefully read and fully understands all of the provisions of this Individual Agreement, including the fact that this Individual Agreement contains a release of claims;

E.      Plaintiff knowingly and voluntarily agrees to all of the terms set forth in this Individual Agreement; and

F.      Plaintiff knowingly and voluntarily intends to be legally bound by the same.

**5.      Revocation.**

Plaintiff has the right to revoke this Individual Agreement within seven (7) calendar days of its execution.  To revoke this Individual Agreement, Plaintiff must deliver a written and signed statement of revocation to Seyfarth Shaw LLP, 333 South Hope Street, Suite 3900, Los Angeles, California no later than 5:00 p.m. on the seventh day after Plaintiff signs this Individual Agreement.  Plaintiff agrees to keep written documentation proving that she delivered her revocation of this Individual Agreement as provided in this section.  If Plaintiff revokes this Individual Agreement, all of the promises made by Plaintiff and Defendant through or related to this Individual Agreement, as well as the Settlement Agreement, will not be effective, and Plaintiff will not be entitled to any of the settlement funds discussed therein.

**6.      Effectiveness of this Individual Agreement.**

Absent revocation by Plaintiff pursuant to the terms in section 4 of this Individual Agreement, the terms of this Individual Agreement will become effective on the date that the Court grants preliminary approval of the Settlement Agreement.

**7.      Remedies in Event of Breach.**

The Parties agree acknowledge that each would be irreparably harmed by any breach of the commitments in the Individual Agreement and that, in the event of any breach, the prevailing Party shall be entitled to the recovery of all costs and attorney's fees incurred in enforcing this Individual Agreement.

**8.      Counterparts.**

This Individual Agreement may be executed in one or more faxed or e-mailed counterparts, which counterparts may be filed with the Court.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.

9.    **Parties' Authority.**

The signatories hereto represent that they are fully authorized to enter this Individual Agreement and bind the Parties to the terms and conditions hereof.

10.    **Sole and Entire Agreement.**

Other than the Settlement Agreement, this Individual Agreement sets forth the entire agreement between the Parties, and it fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Individual Agreement. No prior or other oral or written understanding shall be of any force or effect with respect to the class-wide matters covered by this Settlement Agreement.

This Individual Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their respective successors-in-interest.

11.    **Section Headings.**

Section headings in this Individual Agreement are included herein for convenience of reference only and shall not constitute a part of this Individual Agreement for any other purpose.

12.    **Governing Law and Interpretation.**

This Individual Agreement shall be governed in accordance with the laws of the State of California without regard to its conflict-of-laws provisions.  The Parties consent to the jurisdiction of California in connection with the enforcement of this Individual Agreement.


**REVIEWED AND ACCEPTED:**

Dated: May 9, 2013          Plaintiff Collette McDonald

_____
Collette McDonald


Dated: May 7, 2013          Defendant Airport Terminal Services, Inc.

_____

By: _____

Its: _____

15611430v.4

5

9.    **Parties' Authority.**

    The signatories hereto represent that they are fully authorized to enter this Individual Agreement and bind the Parties to the terms and conditions hereof.

10.    **Sole and Entire Agreement.**

    Other than the Settlement Agreement, this Individual Agreement sets forth the entire agreement between the Parties, and it fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Individual Agreement. No prior or other oral or written understanding shall be of any force or effect with respect to the class-wide matters covered by this Settlement Agreement.

    This Individual Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their respective successors-in-interest.

11.    **Section Headings.**

    Section headings in this Individual Agreement are included herein for convenience of reference only and shall not constitute a part of this Individual Agreement for any other purpose.

12.    **Governing Law and Interpretation.**

    This Individual Agreement shall be governed in accordance with the laws of the State of California without regard to its conflict-of-laws provisions. The Parties consent to the jurisdiction of California in connection with the enforcement of this Individual Agreement.

**REVIEWED AND ACCEPTED:**

Dated: May 7, 2013    Plaintiff Collette McDonald

                             _____

                             Collette McDonald

Dated: May 7, 2013    Defendant Airport Terminal Services, Inc.

                             *Margaret D. Hohl*

                             By: _____

                             Its: _____

15611430v.4

**APPROVED AS TO FORM AND CONTENT:**

Dated: May 7, 2013          HARRIS & RUBLE

                            _____
                            Alan Harris
                            David Zelenski
                            *Attorneys for Plaintiff Collette McDonald*

Dated: May 7, 2013          SEYFARTH SHAW LLP

                            _____
                            Aaron R. Lubeley
                            Simon L. Yang
                            *Attorneys for Defendant Airport Terminal Services, Inc.*

**APPROVED AS TO FORM AND CONTENT:**

Dated: May 7, 2013          HARRIS & RUBLE

_____

Alan Harris
David Zelenski
*Attorneys for Plaintiff Collette McDonald*

Dated: May 7, 2013          SEYFARTH SHAW LLP

_____

Aaron R. Lubeley
Simon L. Yang
*Attorneys for Defendant Airport Terminal Services, Inc.*

15611430v.4

# EXHIBIT 2



# NO LUNCH FORM

Given the nature of the work at ATS, there are times when an employee may not be able to take a lunch period. Employees are required to obtain authorization from their supervisor to work through a lunch period, unless the emergent nature of the situation does not allow for prior approval. This approval form is to reflect the reasons why an employee misses a lunch period.

Employee Name:

Date of missed lunch period:

Reason employee missed lunch period:

How long is your scheduled lunch period:

½ hour

1 hour

Approved by: _

*Manager or Supervisor Signature*                    *Date*

**Missed Lunch Process**

1. Employee obtains verbal approval from supervisor/manager to miss lunch period.
2. Employee turns form into supervisor/manager within 24 hours of missed lunch date.
3. Supervisor/Manager signs form and keeps for documentation.

No Lunch Form 8/06

# EXHIBIT 3

**HARRIS & RUBLE**
ATTORNEYS AND COUNSELORS AT LAW
6424 SANTA MONICA BLVD.
LOS ANGELES, CA 90038
TEL (323) 962-3777
FAX (323) 962-3004

ATS ads Collette McDonald

Page: 1
07/05/2013
Billing Ref:    WINTERS-ATS
Invoice No:    1336

<u>Fees</u>

| | | Rate | Hours | |
|---|---|---|---|---|
| 12/18/2010 | | | | |
| AH | Telephone call to potential client re possible wage-and-hour claims. | 800.00 | 0.10 | 80.00 |
| 01/24/2011 | | | | |
| AH | Telephone call to potential client regarding meal-period claims. | 800.00 | 0.10 | 80.00 |
| AH | Email to John Dorigan regarding potential case. | 800.00 | 0.10 | 80.00 |
| 09/09/2011 | | | | |
| AH | E-mail correspondence with John Dorigan regarding draft LWDA ltr. | 800.00 | 0.10 | 80.00 |
| 09/14/2011 | | | | |
| AH | Reply e-mail to John Dorigan regarding case filing. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with John Dorigan re cast of characters. | 800.00 | 0.10 | 80.00 |
| 09/28/2011 | | | | |
| AH | Telephone call to Collette McDonald. | 800.00 | 0.10 | 80.00 |
| 09/29/2011 | | | | |
| AH | Telephone call to Collette McDonald - Spoke --- With DZ and Dorigans on phone, discuss retainer and complaint and responsibilities of class rep. | 800.00 | 0.50 | 400.00 |
| AH | E-mail correspondence with John Dorigan regarding "NO LUNCH" claims. | 800.00 | 0.10 | 80.00 |
| 09/30/2011 | | | | |
| AH | E-mail correspondence with John Dorigan regarding draft Complaint. | 800.00 | 0.10 | 80.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 10/01/2011 | | | | | |
| | AH | E-mail correspondence with John Dorigan regarding Defendant's scope of operations. | 800.00 | 0.10 | 80.00 |
| 10/02/2011 | | | | | |
| | AH | Legal research and drafting of Complaint. | 800.00 | 4.20 | 3,360.00 |
| 10/03/2011 | | | | | |
| | AH | E-mail correspondence with John Dorigan re McDonald pay records. | 800.00 | 0.10 | 80.00 |
| 10/08/2011 | | | | | |
| | AH | Legal research re possible split-shift claim. | 800.00 | 2.70 | 2,160.00 |
| | AH | Review Plaintiff's documents and prepare draft damage analysis. | 800.00 | 1.80 | 1,440.00 |
| 10/09/2011 | | | | | |
| | AH | E-mail correspondence with John Dorigan regarding feasibility of split-shift claim. | 800.00 | 0.30 | 240.00 |
| | AH | Legal research regarding potential claims. | 800.00 | 1.10 | 880.00 |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan regarding legal research. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with John Dorigan regarding potential witnesses. | 800.00 | 0.10 | 80.00 |
| 10/10/2011 | | | | | |
| | AH | Telephone call to Collette McDonald - Voice Mail. | 800.00 | 0.10 | 80.00 |
| 10/11/2011 | | | | | |
| | DZ | Revised Compl. | 430.00 | 3.00 | 1,290.00 |
| | DZ | Correspondence with Alan Harris and John Dorigan via e-mail re revised Compl. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski re ATS complaint. | 800.00 | 0.10 | 80.00 |
| 10/12/2011 | | | | | |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan re complaint. | 800.00 | 0.10 | 80.00 |
| 10/13/2011 | | | | | |
| | AH | E-mail correspondence with John Dorigan re complaint. | 800.00 | 0.10 | 80.00 |
| 10/25/2011 | | | | | |
| | AH | E-mail correspondence with John Dorigan re Complaint. | 800.00 | 0.10 | 80.00 |
| 10/26/2011 | | | | | |
| | DZ | Drafted Compl. | 430.00 | 2.00 | 860.00 |
| | DZ | Correspondence with John Dorigan via e-mail re filing | | | |

Page: 3
07/05/2013
Billing Ref:    WINTERS-ATS
Invoice No:    1336

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | of Compl. | 430.00 | 0.10 | 43.00 |
| | AH | Drafting Complaint. | 800.00 | 0.50 | 400.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding Complaint. | 800.00 | 0.10 | 80.00 |
| 11/06/2011 | | | | | |
| | AH | E-mail correspondence with potential witness. | 800.00 | 0.10 | 80.00 |
| 11/09/2011 | | | | | |
| | DZ | Reviewed file-stamped Compl., et al. | 430.00 | 0.20 | 86.00 |
| | DZ | Prepared Compl., et al. for service on Def. | 430.00 | 0.30 | 129.00 |
| | DZ | Correspondence with Alan Harris and John Dorigan via e-mail re service of Compl. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski and Dorigan re service of Complaint. | 800.00 | 0.10 | 80.00 |
| 11/15/2011 | | | | | |
| | DZ | Reviewed executed Proof of Service of Summons. | 430.00 | 0.10 | 43.00 |
| | DZ | Prepared Proof of Service for filing with Court and service on Def.'s Registered Agent. | 430.00 | 0.20 | 86.00 |
| 11/30/2011 | | | | | |
| | DZ | Reviewed file-stamped Proof of Service of Summons. | 430.00 | 0.10 | 43.00 |
| 12/08/2011 | | | | | |
| | DZ | Docketed relevant dates re resp. to Compl. | 430.00 | 0.10 | 43.00 |
| 12/10/2011 | | | | | |
| | AH | Reviewing documents--ATS answer, seeking award of attorneys' fees under 218.5. | 800.00 | 0.20 | 160.00 |
| 12/12/2011 | | | | | |
| | DZ | Reviewed Def.'s Ans. to Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | Researched possible mot. to strike Def.'s Ans. | 430.00 | 0.30 | 129.00 |
| | DZ | Reviewed Def.'s Rule 7.1 Disclosure Statement. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Judge Phillips' Standing Order. | 430.00 | 0.20 | 86.00 |
| | DZ | Meet-and-confer correspondence to Simon Yang via e-mail re Def.'s Ans. to Compl. | 430.00 | 0.70 | 301.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding motion-to-strike meet-and-confer. | 800.00 | 0.30 | 240.00 |
| 12/13/2011 | | | | | |
| | DZ | Drafted Mot. to Strike Def.'s Ans. | 430.00 | 5.70 | 2,451.00 |
| 12/14/2011 | | | | | |
| | DZ | Drafted Mot. to Strike; drafted Zelenski Decl. in Supp. of Mot. to Strike and Proposed Order Granting Mot. to Strike. | 430.00 | 4.60 | 1,978.00 |
| | DZ | Correspondence with Alan Harris and John Dorigan via | | | |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | e-mail re Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | AH | Legal research re motion to strike. | 800.00 | 1.50 | 1,200.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding Motion to Strike. | 800.00 | 0.10 | 80.00 |
| **12/15/2011** | | | | | |
| | DZ | Reviewed Def.'s Proof of Service of Docs. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised Mot. to Strike. | 430.00 | 1.20 | 516.00 |
| | AH | Reviewed Standing Order. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Declaration of Simon Yang in Support of Notice of Removal. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Notice to Parties of ADR Program. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Declaration of Ruthanne Whitner in Support of Notice of Removal. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Defendant's Disclosure Statement. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Defendant's Notice of Interested Parties. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Notice of Removal. | 800.00 | 0.20 | 160.00 |
| **12/16/2011** | | | | | |
| | DZ | Reviewed Notice of Removal, et al. (filed by Court). | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed Standing Order. | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed Def.'s Notice of Compliance with Removal Statute. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Def.'s Notice of Standing Order. | 430.00 | 0.10 | 43.00 |
| | AH | Reviewed Notice of Compliance with 28 U.S.C. § 1446(d). | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Notice of Court's Standing Order. | 800.00 | 0.10 | 80.00 |
| **12/19/2011** | | | | | |
| | DZ | Revised Mot. to Strike and Zelenski Decl. in Supp. thereof. | 430.00 | 0.60 | 258.00 |
| | DZ | Voicemail from Simon Yang re scheduling of meet-and-confers (Rule 26(f) early meeting of counsel and Pl.'s Mot. to Strike). | 430.00 | 0.10 | 43.00 |
| | DZ | Scheduled meet-and-confer session re Rule 26(f) and re Pl.'s Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | DZ | Met and conferred with Simon Yang re Pl.'s potential Mot. to Strike.  Explained to Mr. Yang that our position isn't to have Def.'s affirmative defenses stricken without leave to amend.  We would just like to know the factual bases for the asserted defenses.  Agreed to continue discussions tomorrow at approximately 2:00 p.m. (together with Aaron Lubeley and Alan Harris). | 430.00 | 0.20 | 86.00 |
| **12/20/2011** | | | | | |
| | DZ | Telephone conference with Aaron Lubeley.  Met and conferred regarding Pl.'s Mot. to Strike. | 430.00 | 0.40 | 172.00 |

ATS ads Collette McDonald

| | | Rate | Hours | |
|---|---|---|---|---|
| **12/21/2011** | | | | |
| AH | E-mail correspondence with Dave Zelenski regarding meet-and-confer. | 800.00 | 0.10 | 80.00 |
| **12/27/2011** | | | | |
| AH | E-mail correspondence with Dave Zelenski regarding Motion to Strike. | 800.00 | 0.10 | 80.00 |
| **12/29/2011** | | | | |
| DZ | Discussed Mot. to Strike with John Dorigan. | 430.00 | 0.20 | 86.00 |
| DZ | Revised Mot. to Strike, Zelenski Decl. in Supp. of Mot. to Strike, and Proposed Order Granting Mot. to Strike. | 430.00 | 1.30 | 559.00 |
| DZ | E-filed Mot. to Strike, et al. | 430.00 | 0.20 | 86.00 |
| DZ | Reviewed and revised Ltr. to LWDA re civil-penalty claims. | 430.00 | 0.30 | 129.00 |
| DZ | Correspondence with John Dorigan via e-mail re Ltr. to LWDA. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence from Simon Yang via e-mail re meet-and-confer follow-up concerning Pl.'s Mot. to Strike. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang via e-mail re response to Def.'s meet-and-confer follow-up letter. | 430.00 | 0.50 | 215.00 |
| AH | Email to Simon Yang. | 800.00 | 0.10 | 80.00 |
| AH | Email to David Zelenski regarding civil penalties. | 800.00 | 0.10 | 80.00 |
| AH | Reviewed Declaration of David Zelenski in Support of Motion to Strike. | 800.00 | 0.10 | 80.00 |
| **01/02/2012** | | | | |
| DZ | Drafted Joint Conference Report. | 430.00 | 2.50 | 1,075.00 |
| AH | E-mail correspondence with Dave Zelenski regarding Joint Conference Report. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski and Mr. Dorigan re meet and confer, scheduled for tomorrow. | 800.00 | 0.10 | 80.00 |
| **01/03/2012** | | | | |
| DZ | With Alan Harris, continued meet-and-confer process with Aaron Lubeley and Simon Yang re Mot. to Strike. | 430.00 | 0.30 | 129.00 |
| DZ | Drafted Stipulation and Proposed Order Continuing Hearing on Mot. to Strike. | 430.00 | 1.10 | 473.00 |
| DZ | Discussed Stipulation and Proposed Order Continuing Hearing on Mot. to Strike with Alan Harris. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with Simon Yang via e-mail re Stipulation and Proposed Order Continuing Hearing on Mot. to Strike. | 430.00 | 0.30 | 129.00 |
| AH | Telephone call to Aaron R. Lubeley - Spoke --- With Simon Yang and DZ on the phone.  Discuss motion to strike and settlement. Agree to stipulation re same. | 800.00 | 0.30 | 240.00 |
| AH | E-mail correspondence with Dave Zelenski and defense counsel regarding Stipulation Continuing | | | |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | Hearing on Motion to Strike. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Lubeley, Aaron regarding possible attempts early resolution. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding deadlines. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Yang, Simon regarding tolling issues. | 800.00 | 0.10 | 80.00 |
| 01/05/2012 | | | | | |
| | DZ | Discussed status of Stipulation with Simon Yang. Also discussed Pl.'s intent to add an LCPAGA cause of action. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Def.'s revisions to Stipulation and Proposed Order Continuing Hearing on Mot. to Strike. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Simon Yang via e-mail re revised Stipulation and Proposed Order to Continue Hearing on Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | DZ | Filed Stipulation and Proposed Order Continuing Hearing on Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | DZ | Prepared courtesy copy of Stipulation for delivery to Court. | 430.00 | 0.10 | 43.00 |
| 01/06/2012 | | | | | |
| | DZ | Arranged for delivery of Stipulation courtesy copy to Judge Phillips. | 430.00 | 0.10 | 43.00 |
| 01/09/2012 | | | | | |
| | DZ | Correspondence from Simon Yang via e-mail re Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed re-noticing Mot. to Strike with Alan Harris. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Simon Yang via e-mail re continuing hearing on Mot. to Strike. | 430.00 | 0.10 | 43.00 |
| | DZ | Drafted Am. Notice of Mot. to Strike. | 430.00 | 0.20 | 86.00 |
| | AH | Reviewed Amendment to Motion to Strike Defendant's Answer. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Yang, Simon regarding Amended Notice. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding Amended Notice. | 800.00 | 0.10 | 80.00 |
| 01/10/2012 | | | | | |
| | DZ | Prepared courtesy copy of Am. Notice of Mot. to Strike. | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed Order Continuing Hearing on Mot. to Strike, et al. | 430.00 | 0.10 | 43.00 |
| | AH | Reviewed Order re Stipulation to Continue. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding Order as to Stipulation to Continue. | 800.00 | 0.10 | 80.00 |

ATS ads Collette McDonald

|  |  |  | Rate | Hours |  |
|---|---|---|---|---|---|
| **01/11/2012** | | | | | |
|  | DZ | Left voicemail message for Clerk, returning Clerk's call from this morning (disconnected). | 430.00 | 0.10 | 43.00 |
|  | DZ | Researched possible exemption issues. | 430.00 | 1.00 | 430.00 |
| **01/17/2012** | | | | | |
|  | DZ | Discussed mediation with Alan Harris. | 430.00 | 0.10 | 43.00 |
|  | DZ | Correspondence with Simon Yang via e-mail re informal mediation and re addition of PAGA claim. | 430.00 | 0.30 | 129.00 |
| **01/23/2012** | | | | | |
|  | DZ | Left voicemail message for Simon Yang re early settlement discussions. | 430.00 | 0.10 | 43.00 |
| **01/25/2012** | | | | | |
|  | DZ | Correspondence with Simon Yang via e-mail re addition of PAGA claim and re early settlement discussions. | 430.00 | 0.10 | 43.00 |
|  | AH | E-mail correspondence with Dave Zelenski and defense counsel re settlement attempts. | 800.00 | 0.10 | 80.00 |
| **01/27/2012** | | | | | |
|  | DZ | Engaged in early settlement discussion with Alan Harris and Simon Yang. | 430.00 | 0.30 | 129.00 |
| **01/31/2012** | | | | | |
|  | DZ | Correspondence with Simon Yang via e-mail re PAGA-amendment follow-up. | 430.00 | 0.10 | 43.00 |
|  | AH | E-mail correspondence with Dave Zelenski and Mr. Yang regarding PAGA follow-up. | 800.00 | 0.10 | 80.00 |
| **02/01/2012** | | | | | |
|  | DZ | Correspondence from LWDA re right-to-sue ltr. | 430.00 | 0.10 | 43.00 |
|  | AH | E-mail correspondence with John Dorigan regarding civil-penalties letter. | 800.00 | 0.10 | 80.00 |
| **02/02/2012** | | | | | |
|  | DZ | Correspondence from Simon Yang via e-mail re early settlement discussions and re PAGA. | 430.00 | 0.10 | 43.00 |
|  | AH | E-mail correspondence with Dave Zelenski re schedule. | 800.00 | 0.10 | 80.00 |
| **02/03/2012** | | | | | |
|  | DZ | Correspondence with Simon Yang via e-mail re early settlement discussions and re PAGA. | 430.00 | 0.20 | 86.00 |
|  | DZ | Drafted Stipulation and Proposed Order re Deadlines. | 430.00 | 1.00 | 430.00 |
|  | DZ | Correspondence with Simon Yang via e-mail re draft Stipulation and Proposed Order re Deadlines. | 430.00 | 0.10 | 43.00 |
|  | AH | E-mail correspondence with Dave Zelenski regarding early settlement discussions. | 800.00 | 0.10 | 80.00 |
|  | AH | E-mail correspondence with Dave Zelenski and Mr. | | | |

Page: 8
07/05/2013
Billing Ref:    WINTERS-ATS
Invoice No:    1336

ATS ads Collette McDonald

| | | Rate | Hours | |
|---|---|---|---|---|
| | Yang re draft stipulation and proposed order. | 800.00 | 0.10 | 80.00 |
| **02/05/2012** | | | | |
| DZ | Correspondence with Alan Harris via e-mail re PAGA amendment. | 430.00 | 0.10 | 43.00 |
| **02/06/2012** | | | | |
| DZ | Researched ADA preemption issue. | 430.00 | 3.00 | 1,290.00 |
| **02/07/2012** | | | | |
| DZ | Correspondence from Simon Yang via e-mail re Stipulation and Proposed Order continuing deadlines and taking Mot. to Strike off-calendar. | 430.00 | 0.10 | 43.00 |
| DZ | Left voicemail message for Simon Yang re Stipulation and Proposed Order. | 430.00 | 0.10 | 43.00 |
| DZ | Researched relation-back issue re PAGA claims. | 430.00 | 0.50 | 215.00 |
| DZ | Discussed outstanding Stipulation issue with Alan Harris. | 430.00 | 0.10 | 43.00 |
| DZ | With Alan Harris, discussed PAGA issue in Stipulation with Simon Yang. | 430.00 | 0.30 | 129.00 |
| AH | Email to Aaron R. Lubeley. | 800.00 | 0.10 | 80.00 |
| AH | Telephone call to Aaron R. Lubeley - Voice Mail. | 800.00 | 0.10 | 80.00 |
| **02/08/2012** | | | | |
| DZ | Revised Stipulation and Proposed Order to address tolling of statute of limitations. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang via e-mail re revisions to Stipulation and Proposed Order. | 430.00 | 0.10 | 43.00 |
| DZ | Discussed today's settlement conference with Alan Harris. | 430.00 | 0.50 | 215.00 |
| DZ | Correspondence with Alan Harris via e-mail re ADA preemption. | 430.00 | 0.20 | 86.00 |
| DZ | With Alan Harris, held early settlement conference with Aaron Lubeley and Simon Yang. | 430.00 | 0.50 | 215.00 |
| DZ | E-filed Stipulation and Proposed Order re Deadlines. | 430.00 | 0.20 | 86.00 |
| AH | E-mail correspondence with Lubeley, Aaron and Dave Zelenski re settlement discussion (.1) and prepare for same (.7). | 800.00 | 0.80 | 640.00 |
| AH | E-mail correspondence with Yang, Simon re stipulation. | 800.00 | 0.10 | 80.00 |
| AH | Telephone call to Aaron R. Lubeley regarding settlement discussions. | 800.00 | 0.50 | 400.00 |
| AH | Drafted Stipulation to Withdraw Motion to Strike. | 800.00 | 0.10 | 80.00 |
| AH | Legal researcfh and drafting re settlement issues. | 800.00 | 2.20 | 1,760.00 |
| AH | E-mail correspondence with potential expert witness. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Lubeley, Aaron re mediation. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Aaron Lubeley and David Zelenski regarding potential early resolution. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski regarding | | | |

ATS ads Collette McDonald

|  |  | Rate | Hours |  |
|---|---|---|---|---|
|  | ADA preemption. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Yang, Simon regarding Class data. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski regarding revised Stipulation. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Lubeley, Aaron to set up conference call to discuss mediation. | 800.00 | 0.10 | 80.00 |
| **02/09/2012** |  |  |  |  |
| DZ | Correspondence with Legal Support Unlimited via e-mail re courtesy copy of Stipulation and Proposed Order. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with John Dorigan regarding ATS operations. | 800.00 | 0.10 | 80.00 |
| **02/10/2012** |  |  |  |  |
| DZ | Reviewed Order re Stipulation Concerning Deadlines. | 430.00 | 0.20 | 86.00 |
| **02/20/2012** |  |  |  |  |
| AH | E-mail correspondence with Dave Zelenski regarding settlement issues. | 800.00 | 0.10 | 80.00 |
| **02/22/2012** |  |  |  |  |
| DZ | Reviewed Class-size information from Def. | 430.00 | 0.50 | 215.00 |
| DZ | Correspondence with Alan Harris via e-mail re sample-size calculations. | 430.00 | 0.10 | 43.00 |
| DZ | Discussed sample-size calculations and settlement analysis with Alan Harris. | 430.00 | 0.50 | 215.00 |
| AH | E-mail correspondence with Dave Zelenski re sample size for mediation effort. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Simon Yang and Aaron Lubeley regarding mediation data. | 800.00 | 0.10 | 80.00 |
| **02/23/2012** |  |  |  |  |
| AH | Legal research regarding seating issues. | 800.00 | 2.00 | 1,600.00 |
| **02/24/2012** |  |  |  |  |
| DZ | Correspondence from Simon Yang via e-mail re mediation data. | 430.00 | 0.10 | 43.00 |
| DZ | Discussed mediation data with Alan Harris. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang re mediation data. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski regarding settlement data. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Yang, Simon regarding settlement data. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with John Dorigan regarding settlement issues. | 800.00 | 0.10 | 80.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| **02/29/2012** | | | | | |
| | DZ | Discussed Def.'s provision of settlement info. with Simon Yang. | 430.00 | 0.10 | 43.00 |
| **03/02/2012** | | | | | |
| | AH | E-mail correspondence with Yang, Simon regarding Class data. | 800.00 | 0.10 | 80.00 |
| **03/05/2012** | | | | | |
| | DZ | Correspondence from Simon Yang via e-mail re settlement discussions. | 430.00 | 0.10 | 43.00 |
| | DZ | Drafted settlement mem. re data provided by Def. | 430.00 | 0.50 | 215.00 |
| | DZ | Discussed opening settlement proposal with Alan Harris. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with John Dorigan via e-mail re PAGA amendment. | 430.00 | 0.10 | 43.00 |
| | AH | Telephone call to Aaron R. Lubeley - Voice Mail. | 800.00 | 0.10 | 80.00 |
| | AH | Telephone call to potential private mediator. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with John Dorigan re settlement. | 800.00 | 0.10 | 80.00 |
| | AH | Legal research re settlement issues. | 800.00 | 2.20 | 1,760.00 |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan regarding tolling issues. | 800.00 | 0.10 | 80.00 |
| **03/07/2012** | | | | | |
| | AH | Legal research re 226 issue --Legal research re 226 claim. | 800.00 | 1.30 | 1,040.00 |
| **03/08/2012** | | | | | |
| | DZ | Discussed re-filing of Mot. to Strike Def.'s Ans. to Compl. with Alan Harris. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed stipulating to continue filing deadline for Mot. to Strike with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Drafted First Am. Compl. | 430.00 | 1.00 | 430.00 |
| | DZ | Correspondence with Simon Yang via e-mail re Stipulation to file First Am. Compl. | 430.00 | 0.20 | 86.00 |
| **03/12/2012** | | | | | |
| | DZ | Discussed Stipulation re First Am. Compl. with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Drafted Stipulation re First Am. Compl. | 430.00 | 0.90 | 387.00 |
| | DZ | Correspondence with Simon Yang via e-mail re Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed Def.'s revisions to Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | Revised Def.'s draft of Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | E-filed Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed file-stamped Stipulation re Filing First Am. Compl. | 430.00 | 0.10 | 43.00 |

ATS ads Collette McDonald

| | | Rate | Hours | |
|---|---|---|---|---|
| AH | E-mail correspondence with Yang, Simon and DZ re stipulation and settlement. | 800.00 | 0.10 | 80.00 |
| **03/13/2012** | | | | |
| DZ | Reviewed settlement data re PAGA amounts. | 430.00 | 1.00 | 430.00 |
| **03/14/2012** | | | | |
| DZ | Continued settlement-proposal analysis. | 430.00 | 1.00 | 430.00 |
| DZ | Correspondence with Alan Harris and John Dorigan re settlement-proposal analysis. | 430.00 | 0.60 | 258.00 |
| DZ | Discussed settlement-proposal analysis with Alan Harris. | 430.00 | 0.50 | 215.00 |
| DZ | Correspondence with Simon Yang via e-mail re settlement demand. | 430.00 | 0.10 | 43.00 |
| AH | Work on damage analysis. | 800.00 | 1.50 | 1,200.00 |
| AH | E-mail correspondence with Dave Zelenski regarding settlement demand. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with John Dorigan re draft settlement agreement. | 800.00 | 0.10 | 80.00 |
| **03/15/2012** | | | | |
| DZ | Correspondence from John Dorigan via e-mail re settlement demand. | 430.00 | 0.20 | 86.00 |
| DZ | Discussed e-mail from John Dorigan with Alan Harris. | 430.00 | 0.20 | 86.00 |
| **03/23/2012** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re Pl.'s settlement demand. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence from Simon Yang via e-mail re resp. to opening settlement demand. | 430.00 | 0.20 | 86.00 |
| DZ | With Alan Harris, discussed Def.'s counterproposal with Simon Yang. | 430.00 | 0.20 | 86.00 |
| DZ | Continued discussing Def.'s counterproposal with Simon Yang. | 430.00 | 0.30 | 129.00 |
| DZ | Correspondence with Alan Harris via e-mail re settlement negotiations. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski and defense re settlement. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Yang, Simon regarding settlement demand. | 800.00 | 0.10 | 80.00 |
| **03/25/2012** | | | | |
| AH | Legal research re legislative history and wage order concerning seating issues. | 800.00 | 2.90 | 2,320.00 |
| AH | E-mail correspondence with John Dorigan and Dave Zelenski regarding seating issues. | 800.00 | 0.10 | 80.00 |
| **03/28/2012** | | | | |
| AH | E-mail correspondence with Yang, Simon regarding | | | |

Page: 12
07/05/2013

ATS ads Collette McDonald

Billing Ref:    WINTERS-ATS
Invoice No:    1336

| | | Rate | Hours | |
|---|---|---|---|---|
| | seating issues. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with John Dorigan regarding seating issues. | 800.00 | 0.10 | 80.00 |
| **03/30/2012** | | | | |
| AH | E-mail correspondence with John Dorigan regarding "NO LUNCH" issue. | 800.00 | 0.10 | 80.00 |
| **04/02/2012** | | | | |
| DZ | Discussed status of Def.'s counteroffer with Simon Yang. | 430.00 | 0.10 | 43.00 |
| **04/11/2012** | | | | |
| DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re status of settlement discussions and re possible ex parte application. | 430.00 | 0.30 | 129.00 |
| AH | E-mail correspondence with Dave Zelenski regarding settlement discussions. | 800.00 | 0.10 | 80.00 |
| **04/12/2012** | | | | |
| DZ | Voicemail message from Simon Yang re status of settlement. | 430.00 | 0.10 | 43.00 |
| DZ | Reviewed Brinker decision. | 430.00 | 1.00 | 430.00 |
| **04/13/2012** | | | | |
| DZ | Reviewed Hilton opinion re seating. | 430.00 | 0.30 | 129.00 |
| **04/16/2012** | | | | |
| DZ | Discussed status of settlement negotiations with Simon Yang. | 430.00 | 0.10 | 43.00 |
| **04/17/2012** | | | | |
| DZ | Drafted Further Stipulation re Deadlines and Proposed Order Granting Further Stipulation re Deadlines. | 430.00 | 1.20 | 516.00 |
| DZ | Correspondence with Simon Yang via e-mail re Further Stipulation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski regarding Stipulation. | 800.00 | 0.10 | 80.00 |
| **04/18/2012** | | | | |
| DZ | Discussed upcoming teleconference with Alan Harris and John Dorigan. | 430.00 | 0.20 | 86.00 |
| DZ | With Alan Harris and John Dorigan, continued settlement discussions with Aaron Lubeley and Simon Yang. | 430.00 | 0.70 | 301.00 |
| AH | E-mail correspondence with Dave Zelenski and Simon Yang regarding settlement. | 800.00 | 0.10 | 80.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 04/19/2012 | | | | | |
| | DZ | Revised First Am. Compl. | 430.00 | 0.50 | 215.00 |
| | DZ | Revised Stipulation and Proposed Order re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Simon Yang via e-mail re revisions to Stipulation and First Am. Compl. | 430.00 | 0.10 | 43.00 |
| | DZ | E-filed Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| | AH | Reviewed Stipulation for Extension of Time to File First Amended Complaint and Motion for Class Certification. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Dave Zelenski and defense counsel re filing of FAC | 800.00 | 0.10 | 80.00 |
| 04/20/2012 | | | | | |
| | DZ | Correspondence with Court via e-mail re Proposed Order Granting Stipulation. | 430.00 | 0.20 | 86.00 |
| 04/24/2012 | | | | | |
| | AH | E-mail correspondence with Dave Zelenski regarding private mediation. | 800.00 | 0.10 | 80.00 |
| | DZ | Correspondence with Alan Harris and John Dorigan via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| 04/27/2012 | | | | | |
| | DZ | Correspondence from Simon Yang via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| 05/02/2012 | | | | | |
| | DZ | Reviewed Order Granting Stipulation re Deadlines. | 430.00 | 0.10 | 43.00 |
| | AH | Reviewed Order Granting Further Stipulation in Light of Attempts at Early Resolution. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan re mediator selection. | 800.00 | 0.10 | 80.00 |
| 05/09/2012 | | | | | |
| | DZ | Correspondence with Alan Harris and John Dorigan via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed status of mediation with Simon Yang. | 430.00 | 0.10 | 43.00 |
| | AH | Research re mediator proposed by defense. | 800.00 | 1.00 | 800.00 |
| | AH | E-mail correspondence with John Dorigan re mediation. | 800.00 | 0.10 | 80.00 |
| 05/14/2012 | | | | | |
| | AH | Telephone call from Collette McDonald - Spoke regarding mediation. | 800.00 | 0.20 | 160.00 |
| 05/22/2012 | | | | | |
| | DZ | Correspondence with Simon Yang via e-mail re mediation. | 430.00 | 0.10 | 43.00 |

ATS ads Collette McDonald

Page: 14
07/05/2013
Billing Ref:    WINTERS-ATS
Invoice No:    1336

| | | Rate | Hours | |
|---|---|---|---|---|
| **06/01/2012** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski and defense re deposition schedule. | 800.00 | 0.10 | 80.00 |
| **06/04/2012** | | | | |
| DZ | Discussed mediation with Simon Yang. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with Alan Harris and John Dorigan via email re mediation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with John Dorigan and DZ re mediation. | 800.00 | 0.10 | 80.00 |
| **06/06/2012** | | | | |
| DZ | Discussed mediation with Alan Harris. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with John Dorigan via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Yang, Simon re mediation | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski and John Dorigan re mediation. | 800.00 | 0.10 | 80.00 |
| **06/14/2012** | | | | |
| DZ | Correspondence with Alan Harris via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with John Dorigan via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| DZ | With Alan Harris, left voicemail message for Simon Yang re mediation. | 430.00 | 0.10 | 43.00 |
| DZ | With Alan Harris, discussed mediation and filing of First Am. Compl. with Simon Yang. | 430.00 | 0.20 | 86.00 |
| AH | Telephone call to Simon Yang - discuss settlement and seating issues. | 800.00 | 0.20 | 160.00 |
| **06/15/2012** | | | | |
| DZ | Discussed mediation and First Am. Compl. with Simon Yang. | 430.00 | 0.20 | 86.00 |
| **06/17/2012** | | | | |
| DZ | Revised Stipulation re First Am. Compl. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang via e-mail re revised Stipulation re First Am. Compl. | 430.00 | 0.10 | 43.00 |
| **06/18/2012** | | | | |
| DZ | Correspondence from Simon Yang via e-mail re Stipulation re First Am. Compl. | 430.00 | 0.10 | 43.00 |
| DZ | E-filed Stipulation re Deadlines. | 430.00 | 0.20 | 86.00 |
| AH | E-mail correspondence with Dave Zelenski and | | | |

ATS ads Collette McDonald

| | | Rate | Hours | |
|---|---|---|---|---|
| | defense counsel re stipulation for amendment of complaint. | 800.00 | 0.10 | 80.00 |
| AH | Reviewed Stipulation for Extension of Time to Amend. | 800.00 | 0.10 | 80.00 |
| **06/19/2012** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| DZ | Reviewed file-stamped Stipulation re First Am. Compl. | 430.00 | 0.10 | 43.00 |
| **06/21/2012** | | | | |
| DZ | Correspondence from Marc Feder via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski regarding mediation. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Yang, Simon regarding mediation. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Marc Feder re mediation. | 800.00 | 0.10 | 80.00 |
| **06/28/2012** | | | | |
| DZ | Reviewed mediation-initiation docs. from Frank & Feder. | 430.00 | 0.30 | 129.00 |
| DZ | Correspondence with Alan Harris and John Dorigan via e-mail re docs. from Mediator. | 430.00 | 0.10 | 43.00 |
| **07/01/2012** | | | | |
| AH | E-mail correspondence with Admin for mediator re procedures. | 800.00 | 0.10 | 80.00 |
| **08/21/2012** | | | | |
| DZ | Correspondence from John Dorigan via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with John Dorigan re mediation. | 800.00 | 0.10 | 80.00 |
| **08/24/2012** | | | | |
| DZ | Discussed mediation with Alan Harris and Simon Yang. | 430.00 | 0.30 | 129.00 |
| **08/27/2012** | | | | |
| AH | Legal research re preemption. | 800.00 | 2.20 | 1,760.00 |
| **08/30/2012** | | | | |
| AH | E-mail correspondence with Dave Zelenski regarding mediation data. | 800.00 | 0.10 | 80.00 |
| DZ | Settlement discussions with Simon Yang. | 430.00 | 0.30 | 129.00 |
| DZ | Correspondence with Alan Harris via e-mail re damage analysis. | 430.00 | 0.30 | 129.00 |
| **09/05/2012** | | | | |
| DZ | Drafted Mediation Br. | 430.00 | 3.00 | 1,290.00 |
| DZ | Correspondence with Marc Feder (Mediator) via e-mail | | | |

Page: 16
07/05/2013

ATS ads Collette McDonald

Billing Ref:      WINTERS-ATS
Invoice No:            1336

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | re mediation. | 430.00 | 0.10 | 43.00 |
| **09/06/2012** | | | | | |
| | DZ | Drafted Further Stipulation re Mediation. | 430.00 | 0.50 | 215.00 |
| | DZ | Correspondence with Simon Yang via e-mail re Further Stipulation. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Alan Harris via e-mail re mediation. | 430.00 | 0.10 | 43.00 |
| | DZ | Left voicemail message for Simon Yang re status of Stipulation. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Simon Yang via e-mail re Proposed Order Granting Further Stipulation. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski regarding mediation. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Simon Yang regarding Stipulation. | 800.00 | 0.10 | 80.00 |
| | AH | E-mail correspondence with Yang, Simon re mediation. | 800.00 | 0.10 | 80.00 |
| **09/07/2012** | | | | | |
| | DZ | Discussed Further Stipulation with Simon Yang. | 430.00 | 0.20 | 86.00 |
| **09/12/2012** | | | | | |
| | DZ | Correspondence with John Dorigan via e-mail re Mediation Br. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan re mediation briefs. | 800.00 | 0.10 | 80.00 |
| **09/16/2012** | | | | | |
| | AH | Telephone call to John Dorigan - Spoke --- Discuss approach to upcoming mediation. | 800.00 | 0.10 | 80.00 |
| **09/17/2012** | | | | | |
| | DZ | Prepared case file for tomorrow's mediation. | 430.00 | 0.30 | 129.00 |
| | AH | Research and drafting of settlement agreement to use for discussion points, tomorrow. | 800.00 | 4.50 | 3,600.00 |
| | AH | Telephone call to John Dorigan - Spoke --- Discuss mediation, in the AM. | 800.00 | 0.10 | 80.00 |
| **09/18/2012** | | | | | |
| | DZ | Discussed today's mediation with Alan Harris. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence via e-mail with Mediator re mediation. | 430.00 | 0.10 | 43.00 |
| | DZ | Legal research re mediation points. | 430.00 | 0.50 | 215.00 |
| | DZ | Discussed settlement with Alan Harris. | 430.00 | 0.20 | 86.00 |
| | DZ | Reviewed draft Settlement Agreement. | 430.00 | 0.30 | 129.00 |
| | AH | Attended private mediation. | 800.00 | 8.00 | 6,400.00 |
| | AH | E-mail correspondence from Yang, Simon, forwarding memo of understasnding. | 800.00 | 0.10 | 80.00 |

Page: 17
07/05/2013

ATS ads Collette McDonald

Billing Ref:        WINTERS-ATS
Invoice No:                1336

|  |  | Rate | Hours |  |
|---|---|---|---|---|
| **09/20/2012** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re MOU. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski and defense re Memo of Understanding. | 800.00 | 0.10 | 80.00 |
| **09/21/2012** | | | | |
| AH | E-mail correspondence with Lubeley, Aaron re mediation. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Marc Feder re mediation. | 800.00 | 0.10 | 80.00 |
| **09/27/2012** | | | | |
| AH | Telephone call to Aaron R. Lubeley - Spoke --- Discuss settlement issues. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Yang, Simon re settlement. | 800.00 | 0.10 | 80.00 |
| DZ | Correspondence from Alan Harris via e-mail re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **10/02/2012** | | | | |
| AH | E-mail correspondence with Marc Feder regarding mediation follow-up. | 800.00 | 0.10 | 80.00 |
| **10/03/2012** | | | | |
| AH | E-mail correspondence with John Dorigan regarding reimbursement issues. | 800.00 | 0.10 | 80.00 |
| **10/05/2012** | | | | |
| AH | E-mail correspondence with Marc Feder re mediation follow-up. | 800.00 | 0.10 | 80.00 |
| **10/06/2012** | | | | |
| AH | E-mail correspondence with Yang, Simon re settlement. | 800.00 | 0.10 | 80.00 |
| **10/12/2012** | | | | |
| AH | Telephone call to Simon Yang - Spoke regarding settlement. | 800.00 | 0.10 | 80.00 |
| **10/15/2012** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re Notice of Settlement. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski regarding deadlines. | 800.00 | 0.10 | 80.00 |
| **10/16/2012** | | | | |
| DZ | Correspondence from Simon Yang via e-mail re Notice of Settlement. | 430.00 | 0.10 | 43.00 |
| **10/17/2012** | | | | |
| DZ | Drafted Joint Notice of Tentative Settlement. | 430.00 | 0.20 | 86.00 |
| DZ | Correspondence with Simon Yang via e-mail re Joint | | | |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | Notice of Tentative Settlement. | 430.00 | 0.10 | 43.00 |
| 10/24/2012 | | | | | |
| | DZ | Revised Alan Harris' draft of Settlement Agreement. | 430.00 | 1.50 | 645.00 |
| | DZ | Left voicemail for Simon Yang re Settlement Agreement and re Notice of Settlement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Simon Yang via e-mail re revised Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence from Dave Zelenski regarding Settlement Agreement revisions. | 800.00 | 0.10 | 80.00 |
| 10/25/2012 | | | | | |
| | DZ | E-filed Notice of Tentative Settlement. | 430.00 | 0.10 | 43.00 |
| | AH | Reviewed Notice of Tentative Settlement. | 800.00 | 0.10 | 80.00 |
| 10/29/2012 | | | | | |
| | DZ | Discussed Settlement Agreement status with Simon Yang. | 430.00 | 0.20 | 86.00 |
| 11/01/2012 | | | | | |
| | DZ | Left voicemail message for Aaron Lubeley re status of long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 11/09/2012 | | | | | |
| | DZ | Discussed status of Settlement Agreement with John Dorigan. | 430.00 | 0.10 | 43.00 |
| 11/14/2012 | | | | | |
| | DZ | Left voicemail message for Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 11/15/2012 | | | | | |
| | AH | Telephone call to Simon Yang - Voice Mail. | 800.00 | 0.10 | 80.00 |
| | AH | Telephone call to Aaron R. Lubeley - Voice Mail. | 800.00 | 0.10 | 80.00 |
| 11/16/2012 | | | | | |
| | AH | E-mail correspondence with Dave Zelenski and defense counsel re settlement. | 800.00 | 0.10 | 80.00 |
| | DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 11/20/2012 | | | | | |
| | DZ | Discussed status of settlement agreement with Simon Yang. | 430.00 | 0.10 | 43.00 |
| 11/21/2012 | | | | | |
| | DZ | Discussed status of revisions to Settlement Agreement with Simon Yang. | 430.00 | 0.10 | 43.00 |

ATS ads Collette McDonald

|  |  | Rate | Hours |  |
|---|---|---|---|---|
| **11/27/2012** |  |  |  |  |
| AH | Telephone call to Simon Yang - Voice Mail. | 800.00 | 0.10 | 80.00 |
| DZ | With Alan Harris, discussed status of Settlement Agreement draft with Aaron Lubeley. | 430.00 | 0.10 | 43.00 |
| **11/28/2012** |  |  |  |  |
| AH | Drafting documents--review defense comments to proposed settlement agreement. | 800.00 | 1.00 | 800.00 |
| **11/29/2012** |  |  |  |  |
| AH | Drafting documents--review my redlines to settlement agreement with Mr. Zelenski. | 800.00 | 0.10 | 80.00 |
| **11/30/2012** |  |  |  |  |
| AH | E-mail correspondence with Dave Zelenski regarding preliminary-approval papers. | 800.00 | 0.10 | 80.00 |
| DZ | With Alan Harris, discussed Settlement Agreement draft with Simon Yang. | 430.00 | 0.10 | 43.00 |
| DZ | Drafted McDonald Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.80 | 344.00 |
| DZ | Correspondence with Collette McDonald via e-mail re Pl.'s Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| **12/01/2012** |  |  |  |  |
| AH | Telephone call to Simon Yang - Voice Mail. | 800.00 | 0.10 | 80.00 |
| **12/03/2012** |  |  |  |  |
| DZ | Reviewed Def.'s draft Settlement Agreement. | 430.00 | 1.00 | 430.00 |
| DZ | Revised Settlement Agreement. | 430.00 | 2.00 | 860.00 |
| DZ | Correspondence with opposing counsel via e-mail re revised Settlement Agreement. | 430.00 | 0.20 | 86.00 |
| AH | E-mail correspondence with Dave Zelenski regarding Settlement Agreement. | 800.00 | 0.10 | 80.00 |
| **12/04/2012** |  |  |  |  |
| DZ | Correspondence from Simon Yang via e-mail re revisions to Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| DZ | Discussed revisions to Settlement Agreement with Alan Harris. | 430.00 | 0.10 | 43.00 |
| DZ | Left voicemail mesasge for Collette McDonald re status of Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| DZ | Made further revisions to Def.'s draft Settlement Agreement. | 430.00 | 1.70 | 731.00 |
| DZ | Correspondence with opposing counsel via e-mail re further revisions to Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| DZ | With Alan Harris, discussed revisions to Settlement Agreement with opposing counsel. | 430.00 | 0.70 | 301.00 |
| DZ | Correspondence with Collette McDonald via e-mail re Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | DZ | Correspondence with Collette McDonald via USPS re Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.20 | 86.00 |
| | AH | Telephone call to Simon Yang - Voice Mail. | 800.00 | 0.10 | 80.00 |
| | AH | Telephone call to Simon Yang - Spoke --- Discuss settlement issues, with DZ and defense partner. | 800.00 | 0.70 | 560.00 |
| | AH | E-mail correspondence with Yang, Simon regarding Settlement Agreement. | 800.00 | 0.10 | 80.00 |
| 12/05/2012 | | | | | |
| | DZ | Correspondence with Alan Harris via e-mail re upcoming events. | 430.00 | 0.10 | 43.00 |
| 12/11/2012 | | | | | |
| | AH | Telephone call to Collette McDonald regarding Settlement Agreement. | 800.00 | 0.10 | 80.00 |
| 12/12/2012 | | | | | |
| | AH | Telephone call to Simon Yang - Voice Mail. | 800.00 | 0.10 | 80.00 |
| 12/18/2012 | | | | | |
| | AH | Telephone call to Aaron R. Lubeley - Voice Mail. | 800.00 | 0.10 | 80.00 |
| 12/24/2012 | | | | | |
| | DZ | Reviewed Settlement Agreement from Def. | 430.00 | 0.30 | 129.00 |
| 02/01/2013 | | | | | |
| | DZ | Discussed status of Settlement Agreement with Simon Yang. | 430.00 | 0.20 | 86.00 |
| 03/05/2013 | | | | | |
| | DZ | Left voicemail message for Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 03/08/2013 | | | | | |
| | DZ | Discussed status of Settlement Agreement with Simon Yang. | 430.00 | 0.10 | 43.00 |
| 03/11/2013 | | | | | |
| | DZ | Reviewed Def.'s revisions to Settlement Agreement. | 430.00 | 0.40 | 172.00 |
| 03/12/2013 | | | | | |
| | DZ | Reviewed Def.'s revised draft of class-wide Settlement Agreement and Individual Settlement Agreement. | 430.00 | 1.00 | 430.00 |
| | DZ | Revised Settlement Agreement and Individual Settlement Agreement. | 430.00 | 1.80 | 774.00 |
| | DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re further-revised Settlement Agreement and Individual Settlement Agreement. | 430.00 | 0.20 | 86.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| **03/13/2013** | | | | | |
| | DZ | Voicemail message from Simon Yang re Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence from Simon Yang via e-mail re Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed revised draft of Settlement Agreement with Simon Yang. | 430.00 | 0.20 | 86.00 |
| **03/15/2013** | | | | | |
| | DZ | Discussed Def.'s revisions to Settlement Agreement with Alan Harris. | 430.00 | 0.20 | 86.00 |
| | DZ | Left voicemail for Simon Yang re Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed Mot. for Preliminary Approval with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Drafted Mot. for Preliminary Approval. | 430.00 | 4.50 | 1,935.00 |
| **03/18/2013** | | | | | |
| | DZ | Correspondence with Simon Yang via e-mail re Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| **03/19/2013** | | | | | |
| | DZ | Drafted Mot. for Preliminary Approval. | 430.00 | 7.30 | 3,139.00 |
| | DZ | Correspondence with Simon Yang via e-mail re draft Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| **03/22/2013** | | | | | |
| | AH | Drafting documents--motion for preliminary approval. | 800.00 | 0.80 | 640.00 |
| | AH | Drafting documents--Plaintiff's declaration in support of motion for preliminary approval. | 800.00 | 0.70 | 560.00 |
| **03/26/2013** | | | | | |
| | DZ | Left voicemail message for Simon Yang re long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **03/27/2013** | | | | | |
| | AH | Telephone call from Simon Yang - Spoke --- Discuss settlement issues. | 800.00 | 0.10 | 80.00 |
| **03/28/2013** | | | | | |
| | DZ | Correspondence from Simon Yang via e-mail re Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Def.'s revisions to Settlement Agreement. | 430.00 | 0.40 | 172.00 |
| | DZ | Correspondence with Simon Yang re further revisions to Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **03/29/2013** | | | | | |
| | DZ | Discussed Settlement Agreement with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Simon Yang via e-mail re | | | |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | | finalized Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **04/04/2013** | | | | | |
| | DZ | Revised Motion for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| | DZ | Left voicemail message for Simon Yang regarding status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Simon Yang via e-mail regarding revised Motion for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised Mot. for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| | DZ | Left voicemail message for Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Simon Yang via e-mail re revised Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| **04/05/2013** | | | | | |
| | DZ | Voicemail message from Simon Yang regarding status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Voicemail message from Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **04/09/2013** | | | | | |
| | DZ | Discussed status of Settlement Agreement with Simon Yang. | 430.00 | 0.20 | 86.00 |
| **04/10/2013** | | | | | |
| | DZ | Reviewed Defendant's further revisions to Settlement Agreement. | 430.00 | 0.20 | 86.00 |
| | DZ | Revised Settlement Agreement and Individual Agreement. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with Simon Yang via e-mail regarding revisions to Settlement Agreement and Individual Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised McDonald Declaration in Support of Motion for Preliminary Approval. | 430.00 | 1.00 | 430.00 |
| | DZ | Discussed revised McDonald Declaration in Support of Motion for Preliminary Approval with Alan Harris. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with John Dorigan via e-mail regarding revised McDonald Declaration in Support of Motion for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Left voicemail message for John Dorigan regarding Motion for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed file-stamped Pl.'s Case Management Statement. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised Motion for Preliminary Approval regarding risks of litigation. | 430.00 | 1.00 | 430.00 |
| | DZ | Discussed disbursement issues under Settlement Agreement with Alan Harris. | 430.00 | 0.10 | 43.00 |
| | AH | Drafting documents--motion for preliminary approval. | 800.00 | 0.30 | 240.00 |

ATS ads Collette McDonald

|  |  |  | Rate | Hours |  |
|---|---|---|---|---|---|
| 04/18/2013 | | | | | |
| | AH | E-mail correspondence with John Dorigan re client Declaration. | 800.00 | 0.10 | 80.00 |
| 04/19/2013 | | | | | |
| | DZ | Left voicemail message for Simon Yang regarding status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 04/23/2013 | | | | | |
| | DZ | Left voicemail message for Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 04/24/2013 | | | | | |
| | DZ | Discussed settlement status with Simon Yang. | 430.00 | 0.10 | 43.00 |
| 04/25/2013 | | | | | |
| | DZ | Reviewed Mcdonald Declaration in Support of Motion for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| 05/02/2013 | | | | | |
| | DZ | Left voicemail message for Simon Yang re status of settlement. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Order to Show Cause. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed Order to Show Cause with John Dorigan. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed Order to Show Cause with Alan Harris. | 430.00 | 0.10 | 43.00 |
| | AH | Telephone call to Aaron R. Lubeley - Voice Mail. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Minute Order to Show Cause. | 800.00 | 0.10 | 80.00 |
| 05/03/2013 | | | | | |
| | DZ | Discussed status of Settlement Agreement with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence with opposing counsel via e-mail re Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| 05/07/2013 | | | | | |
| | DZ | Left voicemail message for Aaron Lubeley re status of long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Left voicemail message for Simon Yang re status of long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re status of long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed finalized Settlement Agreement. | 430.00 | 0.30 | 129.00 |
| | DZ | Correspondence with Aaron Lubeley via e-mail re finalized Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with John Dorigan via e-mail re finalized Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | AH | Revised Settlement Agreement. | 800.00 | 0.20 | 160.00 |

ATS ads Collette McDonald

Billing Ref:     WINTERS-ATS
Invoice No:          1336

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| **05/09/2013** | | | | | |
| | DZ | Correspondence from John Dorigan via e-mail re executed Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with Aaron Lubeley via e-mail re Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| **05/10/2013** | | | | | |
| | DZ | Drafted Resp. to Order to Show Cause. | 430.00 | 0.20 | 86.00 |
| | DZ | E-filed Resp. to Order to Show Cause. | 430.00 | 0.10 | 43.00 |
| | DZ | Prepared Resp. to Order to Show Cause for delivery to Court. | 430.00 | 0.10 | 43.00 |
| | AH | Reviewed Response to Minute Order to Show Cause. | 800.00 | 0.10 | 80.00 |
| **05/13/2013** | | | | | |
| | DZ | Correspondence from One Legal re delivery of courtesy copy of Resp. to OSC. | 430.00 | 0.10 | 43.00 |
| **05/15/2013** | | | | | |
| | DZ | Left voicemail message for Simon Yang re status of Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence from Simon Yang via e-mail re long-form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Reviewed Def.-executed long-from Settlement Agreement. | 430.00 | 0.20 | 86.00 |
| | DZ | Drafted Notice of Execution of Long-Form Settlement Agreement. | 430.00 | 0.20 | 86.00 |
| | DZ | E-filed Notice of Execution of Long-Form Settlement Agreement. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised Mot. for Preliminary Approval. | 430.00 | 1.60 | 688.00 |
| | DZ | Drafted Class Notice and Claim Form. | 430.00 | 2.00 | 860.00 |
| | DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re draft Class Notice and Claim Form. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski and Mr. Dorigan re our receipt of executed settlement agreement. | 800.00 | 0.10 | 80.00 |
| | AH | Reviewed Notice of Execution of Long-Form Settlement Agreement. | 800.00 | 0.10 | 80.00 |
| **05/16/2013** | | | | | |
| | DZ | Reviewed Order Extending Time to Respond to OSC. | 430.00 | 0.10 | 43.00 |
| | DZ | Revised Mot. for Preliminary Approval. | 430.00 | 1.50 | 645.00 |
| | DZ | Correspondence with opposing counsel via e-mail re revised Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Drafted Harris Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| | DZ | Drafted Proposed Order Granting Mot. for Preliminary Approval. | 430.00 | 1.00 | 430.00 |
| | DZ | Correspondence with opposing counsel via e-mail re Proposed Order Granting Preliminary Approval. | 430.00 | 0.10 | 43.00 |

ATS ads Collette McDonald

| | | Rate | Hours | |
|---|---|---|---|---|
| AH | Reviewed Minute Order Extending Time to Respond to Order to Show Cause. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski and Gilardi re quote. | 800.00 | 0.10 | 80.00 |
| AH | E-mail correspondence with Dave Zelenski and defense counsel regarding Proposed Order Granting Preliminary Approval. | 800.00 | 0.10 | 80.00 |
| **05/17/2013** | | | | |
| DZ | Correspondence with Gilardi via e-mail re claims-administration estimate. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Kathleen Wyatt of Gilardi, seeking quote. | 800.00 | 0.10 | 80.00 |
| **05/20/2013** | | | | |
| DZ | Left voicemail message for Simon Yang re Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence from Gilardi re claims-administration estimate. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with opposing counsel via e-mail re Gilardi's claims-administration estimate. | 430.00 | 0.10 | 43.00 |
| DZ | Revised Mot. for Preliminary Approval. | 430.00 | 0.30 | 129.00 |
| DZ | Correspondence with opposing counsel via e-mail re Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| **05/21/2013** | | | | |
| DZ | Correspondence from Simon Yang via e-mail re revisions to Class Notice and Claim Form and re revisions to Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| DZ | Reviewed Def.'s revisions to Class Notice and Claim Form. | 430.00 | 0.30 | 129.00 |
| DZ | Revised Class Notice and Claim Form. | 430.00 | 0.60 | 258.00 |
| DZ | Reviewed Def.'s revisions to Mot. for Preliminary Approval. | 430.00 | 0.50 | 215.00 |
| DZ | Revised Mot. for Preliminary Approval, Harris Decl., and Proposed Order Granting Preliminary Approval. | 430.00 | 0.60 | 258.00 |
| DZ | Correspondence with Simon Yang via e-mail re revisions to Proposed Order Granting Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| AH | E-mail correspondence with Dave Zelenski and Simon Yang regarding Proposed Order. | 800.00 | 0.10 | 80.00 |
| **05/22/2013** | | | | |
| DZ | Correspondence with Simon Yang via e-mail re status of preliminary-approval docs. | 430.00 | 0.10 | 43.00 |
| DZ | Correspondence with opposing counsel re filing of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| DZ | Revised Class Notice. | 430.00 | 0.30 | 129.00 |
| DZ | Revised Mot. for Preliminary Approval and Decl. of Alan | | | |

Page: 26
07/05/2013

ATS ads Collette McDonald

Billing Ref:     WINTERS-ATS
Invoice No:              1336

|  |  | | Rate | Hours | |
|---|---|---|---|---|---|
|  |  | Harris in Supp. of Mot. for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| 05/23/2013 |  |  |  |  |  |
|  | DZ | Correspondence with Aaron Lubeley via e-mail re claims administration. | 430.00 | 0.10 | 43.00 |
|  | DZ | Correspondence with Garden City Group re claims-administration estimate. | 430.00 | 0.20 | 86.00 |
|  | DZ | Finalized Mot. for Preliminary Approval, et al. | 430.00 | 0.50 | 215.00 |
|  | DZ | E-filed Mot. for Preliminary Approval, et al. | 430.00 | 0.20 | 86.00 |
|  | DZ | Drafted Further Resp. to Order to Show Cause. | 430.00 | 0.20 | 86.00 |
|  | DZ | E-filed Resp. to Order to Show Cause. | 430.00 | 0.10 | 43.00 |
|  | DZ | Arranged for delivery of courtesy copies of Mot. for Preliminary Approval, et al., and Further Resp. to Order to Show Cause. | 430.00 | 0.20 | 86.00 |
| 05/28/2013 |  |  |  |  |  |
|  | DZ | Correspondence from Garden City Group re claims-administration estimate. | 430.00 | 0.10 | 43.00 |
| 05/29/2013 |  |  |  |  |  |
|  | DZ | Correspondence from Garden City Group (Brian Whitworth) via e-mail re claims-administration estimate. | 430.00 | 0.10 | 43.00 |
|  | DZ | Reviewed Garden City Group's claims-administration estimate. | 430.00 | 0.20 | 86.00 |
| 05/30/2013 |  |  |  |  |  |
|  | DZ | Correspondence from Simon Yang via e-mail re Def.'s Notice of Non-Opp'n to Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
|  | DZ | Reviewed Def.'s draft Notice of Non-Opp'n to Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| 05/31/2013 |  |  |  |  |  |
|  | DZ | Reviewed Def.'s filed Notice of Non-Opp'n to Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
|  | AH | Reviewed Notice of Non-Opposition to Motion for Preliminary Approval. | 800.00 | 0.10 | 80.00 |
| 06/03/2013 |  |  |  |  |  |
|  | DZ | Correspondence with Alan Harris via e-mail ATS claims administration. | 430.00 | 0.10 | 43.00 |
| 06/06/2013 |  |  |  |  |  |
|  | DZ | Correspondence from Gilardi via e-mail re claims-administration status. | 430.00 | 0.10 | 43.00 |
|  | DZ | Correspondence with Markham Sherwood via e-mail in response to Gilardi's inquiry. | 430.00 | 0.10 | 43.00 |
| 06/24/2013 |  |  |  |  |  |
|  | DZ | Prepared for hearing on Mot. for Preliminary Approval. | 430.00 | 1.00 | 430.00 |

ATS ads Collette McDonald

|  |  |  | Rate | Hours |  |
|---|---|---|---|---|---|
|  | DZ | Travel to and from Court for hearing on Mot. for Preliminary Approval. | 430.00 | 3.00 | 1,290.00 |
|  | DZ | Attended hearing on Mot. for Preliminary Approval. | 430.00 | 0.70 | 301.00 |
|  | DZ | Discussed hearing on Mot. for Preliminary Approval with Simon Yang. | 430.00 | 0.50 | 215.00 |
|  | DZ | Discussed hearing on Mot. for Preliminary Approval with Alan Harris. | 430.00 | 0.40 | 172.00 |
| 06/25/2013 |  |  |  |  |  |
|  | DZ | Left voicemail message for John Dorigan re hearing on Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
|  | DZ | Discussed Supplemental Mem. in Supp. of Mot. for Preliminary Approval with John Dorigan. | 430.00 | 0.20 | 86.00 |
|  | DZ | Researched commonality issue. | 430.00 | 1.40 | 602.00 |
|  | DZ | Drafted Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 3.00 | 1,290.00 |
| 06/26/2013 |  |  |  |  |  |
|  | DZ | Discussed Supplemental Mem. in Supp. of Mot. for Preliminary Approval with Alan Harris. | 430.00 | 0.20 | 86.00 |
|  | DZ | Researched commonality and predominance issues. | 430.00 | 1.00 | 430.00 |
|  | DZ | Drafted Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 3.30 | 1,419.00 |
|  | AH | Work on settlement issues.  Discuss with DZ and review Tentative. | 800.00 | 0.10 | 80.00 |
| 06/27/2013 |  |  |  |  |  |
|  | DZ | Correspondence with Simon Yang via e-mail re Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
|  | DZ | Drafted Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 4.40 | 1,892.00 |
|  | AH | E-mail correspondence with Yang, Simon. | 800.00 | 0.10 | 80.00 |
|  | AH | E-mail correspondence with Dave Zelenski. | 800.00 | 0.10 | 80.00 |
| 06/28/2013 |  |  |  |  |  |
|  | DZ | Discussed Supplemental Mem. in Supp. of Mot. for Preliminary Approval with Simon Yang. | 430.00 | 0.20 | 86.00 |
|  | DZ | Reviewed Civil Minutes re supplemental preliminary-approval briefing. | 430.00 | 0.10 | 43.00 |
|  | DZ | Researched typicality and adequacy prongs re Rule 23 certification. | 430.00 | 2.00 | 860.00 |
|  | DZ | Drafted Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 5.00 | 2,150.00 |
|  | DZ | Correspondence with Simon Yang via e-mail re Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
|  | AH | Reviewed Civil Minutes regarding Motion for Preliminary Approval. | 800.00 | 0.10 | 80.00 |

ATS ads Collette McDonald

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 06/30/2013 | | | | | |
| | DZ | Drafted Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 3.60 | 1,548.00 |
| | DZ | Correspondence with Simon Yang via e-mail re Supp. Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski re supplemental memo. | 800.00 | 0.50 | 400.00 |
| | AH | Review draft supplemental memorandum. | 800.00 | 0.40 | 320.00 |
| 07/01/2013 | | | | | |
| | DZ | Voicemail message from John Dorigan re Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Correspondence with John Dorigan via e-mail re Supplemental Mem. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | AH | E-mail correspondence with Dave Zelenski and John Dorigan re settlement issues. | 800.00 | 0.10 | 80.00 |
| 07/02/2013 | | | | | |
| | AH | E-mail correspondence with Dave Zelenski and Dorigan re draft AH Declaration. | 800.00 | 0.10 | 80.00 |
| | DZ | Drafted Supplemental McDonald Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| | DZ | Discussed Dorigan Decl. in Supp. of Mot. for Preliminary Approval with John Dorigan. | 430.00 | 0.30 | 129.00 |
| 07/03/2013 | | | | | |
| | DZ | Discussed Supplemental McDonald Decl. in Supp. of Mot. for Preliminary Approval with John Dorigan. | 430.00 | 0.20 | 86.00 |
| | DZ | With John Dorigan, discussed Supplemental Decl. of Collette McDonald with Ms. McDonald. | 430.00 | 0.50 | 215.00 |
| | DZ | Drafted Supplemental Decl. of Collette McDonald in Supp. of Mot. for Preliminary Approval. | 430.00 | 2.00 | 860.00 |
| | DZ | Correspondence with John Dorigan via e-mail re Supplemental Decl. of Collette McDonald. | 430.00 | 0.10 | 43.00 |
| 07/05/2013 | | | | | |
| | DZ | Drafted revised Class Notice (re Req. for Exclusion Form). | 430.00 | 0.50 | 215.00 |
| | DZ | Correspondence with Simon Yang and Aaron Lubeley via e-mail re revised Class Notice. | 430.00 | 0.10 | 43.00 |
| | DZ | Discussed Supplemental Mem. in Supp. of Mot. for Preliminary Approval with Simon Yang. | 430.00 | 0.20 | 86.00 |
| | DZ | Correspondence from John Dorigan via e-mail re Dorigan Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 0.10 | 43.00 |
| | DZ | Drafted Supplemental Harris Decl. in Supp. of Mot. for Preliminary Approval. | 430.00 | 2.50 | 1,075.00 |

ATS ads Collette McDonald

Billing Ref:    WINTERS-ATS
Invoice No:    1336

| | | Rate | Hours | |
|---|---|---|---|---|
| For Current Services Rendered | | | 225.10 | 120,251.00 |

### Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Alan Harris | 63.40 | $800.00 | $50,720.00 |
| David Zelenski | 161.70 | 430.00 | 69,531.00 |

### Advances

| | | |
|---|---|---|
| 10/31/2011 | Lexis research invoice 1110032209 for the billing period 10/01/11 - 10/31/11. | 52.51 |
| 12/31/2011 | Lexis Nexis invoice 1112032110 For the period 11/01/11 - 11/30/11. | 285.18 |
| | Lexis Nexis Research | 337.69 |
| | | |
| 10/01/2011 | Copies - Dale Alan Harris - McDonald Retainer. | 2.50 |
| 12/29/2011 | Copies - David Zelenski - Motion to Strike. | 6.25 |
| 12/31/2011 | Copies/Prints- DECEMBER 2011 | 15.00 |
| 01/31/2012 | Copies/Prints- JANUARY 2012 | 15.00 |
| 02/28/2012 | Copies/Prints- FEBRUARY 2012 | 15.00 |
| 03/31/2012 | Copies/Prints- MARCH 2012 | 15.00 |
| 04/30/2012 | Copies/Prints- APRIL 2012 | 15.00 |
| 05/31/2012 | Copies/Prints- MAY 2012 | 15.00 |
| 06/30/2012 | Copies/Prints- JUNE 2012 | 15.00 |
| 07/31/2012 | Copies/Prints- JULY 2012 | 15.00 |
| 08/30/2012 | Copies/Prints- AUGUST 2012 | 15.00 |
| 09/30/2012 | Copies/Prints- SEPTEMBER 2012 | 15.00 |
| 10/31/2012 | Copies/Prints- OCTOBER 2012 | 15.00 |
| 11/30/2012 | Copies/Prints- NOVEMBER 2012 | 15.00 |
| 12/31/2012 | Copies/Prints- DECEMBER 2012 | 15.00 |
| 01/31/2013 | Copies/Prints- JANUARY 2013 | 15.00 |
| 02/28/2013 | Copies/Prints- FEBRUARY 2013 | 15.00 |
| 03/31/2013 | Copies  & Printing - MARCH 2013 | 7.75 |
| 04/30/2013 | Copies/Prints- APRIL 2013 | 15.00 |
| 05/31/2013 | Copies/Prints- MAY 2013 | 15.00 |
| 06/30/2013 | Copies/Prints- JUNE 2013 | 15.00 |
| | Copies | 286.50 |
| | | |
| 06/28/2012 | Professional fee Frank & Feder - mediation. | 5,000.00 |
| | Professional fee | 5,000.00 |
| | | |
| 09/18/2012 | Mileage - Dale Alan Harris | 11.20 |
| | Mileage | 11.20 |
| | | |
| 12/02/2011 | Filing fee Law Offices John Dorigan -Reimbursement of filing fee. | 410.00 |
| 05/13/2013 | One Legal LLC invoice #2030292 Response, ECF Notification for Response | 24.95 |
| 05/13/2013 | One Legal LLC invoice #2030292- Response, ECF Notification for | |

Page: 30
07/05/2013

ATS ads Collette McDonald

Billing Ref:      WINTERS-ATS
Invoice No:              1336

| | | |
|---|---|---|
| | Response | 24.95 |
| 05/16/2013 | One Legal LLC invoice #2030476- NOTICE OF EXECUTION OF LONG-FORM SETTLEMENT AGREEMENT | 24.95 |
| 05/16/2013 | One Legal LLC invoice #2030476- NTC Of Execution Of Long-Form Settlement Agreement | 24.95 |
| 05/24/2013 | One Legal LLC invoice #2030782- MOTION FOR PRELIMINARY APPROVAL, ECF NOTIFICATION FOR MOTION FOR PRE APPROVAL, DEC OF ALAN HARRIS | 24.95 |
| 05/24/2013 | Filing fee One Legal LLC invoice #0059730- Motion For Prelim  Approval | 24.95 |
| | Filing fee | 559.70 |
| | | |
| 12/31/2011 | Research West Information Charges Invoice 824225048 For the period 12/01/11 - 12/31/11. | 498.24 |
| 01/31/2012 | Research Lexis Nexis invoice 1201032102 For the period 01/01/12 - 01/31/12. | 13.35 |
| 02/29/2012 | Research Lexis Nexis invoice 1202032047 for the period 02/01/12 - 02/29/12. | 58.46 |
| 03/31/2012 | Research Lexis Nexis invoice 1203031987 for the period 03/01/12 - 03/31/12. | 56.11 |
| 03/31/2012 | Research - Pacer invoice HR0109-Q12012 for the period 01/01/12 - 03/31/12. | 1.68 |
| 03/31/2012 | Research West Information Charges invoice 824749000 for the period 04/01/12 - 04/30/12. | 42.12 |
| 05/31/2012 | Legal Research Online- May 2012 | 25.00 |
| 06/30/2012 | Legal Research Online- June 2012 | 25.00 |
| 07/06/2012 | Research - Pacer invoice Q22012 for the period 04/01/12 - 06/30/12. | 0.30 |
| 07/30/2012 | Legal Research Online- July 2012 | 25.00 |
| 08/31/2012 | Legal Research Online- August 2012 | 25.00 |
| 09/30/2012 | Research LexisNexis invoice 1209031717 for the period 09/01/12 - 09/30/12. | 61.84 |
| 10/31/2012 | Legal Research Online- October 2012 | 25.00 |
| 11/30/2012 | Legal Research Online- November 2012 | 25.00 |
| 12/31/2012 | Research -12-1-12 TO 12-31-12 Westlaw Invoice # 826399772 | 11.51 |
| 01/31/2013 | Legal Research Online- January 2013 | 25.00 |
| 02/28/2013 | Legal Research Online- February 2013 | 25.00 |
| 03/31/2013 | Research - LexisNexis March  2013 | 210.26 |
| 04/30/2013 | Legal Research Online- April 2013 | 25.00 |
| 05/31/2013 | Legal Research Online- May 2013 | 25.00 |
| 06/30/2013 | Legal Research Online- June 2013 | 25.00 |
| | Research | 1,228.87 |
| | | |
| 12/31/2011 | Postage 2011 | 8.80 |
| 12/31/2012 | Postage 2012 | 27.00 |
| 06/30/2013 | Postage 2013 | 13.80 |
| | Postage | 49.60 |
| | | |
| 09/18/2012 | Parking - Dale Alan Harris | 8.00 |
| | Parking | 8.00 |

ATS ads Collette McDonald

| | | |
|---|---|---:|
| 11/10/2011 | Courier services - David Zelenski - Janney & Janney invoice LA111091114A-01 Summons; Complaint; Civil Case Cover Sheet; Certificate of Council; Notice of Case Assignment - Riverside Superior Court Historic Courthouse. | 56.00 |
| 12/29/2011 | Courier services - David Zelenski - Legal Support Unlimited - Invoice A1634 United States District Court, 3470 12th Street Riverside CA 92501. | 125.00 |
| 01/06/2012 | Courier services - David Zelenski - Courtesy - Legal Support Unlimited - United States District Court - 3470 12th Street Riverside CA 92501. | 125.00 |
| 01/10/2012 | Courier services - David Zelenski - Courtesy - Legal Support Unlimited - United States District Court - 3470 12th Street Riverside CA 92501. | 125.00 |
| 02/09/2012 | Courier services - David Zelenski - Courtesy - Legal Support Unlimited - United States District Court - 3470 12th Street Riverside CA 92501. | 125.00 |
| 04/20/2012 | Courier services - David Zelenski - Further Stipulation regarding Deadlines in Light of Parties Continued Attempts Abigail Treanor Early Resolution - One Legal LLC invoice 2016820 - United States District Court, Central District of California - Riverside CA. | 19.95 |
| 10/13/2012 | Courier services OnTrac tracking ID D10010509608399 to Frank & Feder 2173 Salk Avenue Suite 250 Carlsbad CA 92008. | 11.83 |
| | Courier services | 587.78 |
| | Total Advances Thru 07/05/2013 | 8,069.34 |
| | Total Current Work | 128,320.34 |
| | Balance Due | $128,320.34 |

Billing History

| Fees | Hours | Expenses | Advances | Finance Charge | Payments |
|---:|---:|---:|---:|---:|---:|
| 120,251.00 | 225.10 | 0.00 | 8,069.34 | 0.00 | 0.00 |

# EXHIBIT 4

DECLARATION OF PETER D. ZEUGHAUSER

I, Peter D. Zeughauser, Declare as follows:

1. I am an attorney duly licensed to practice law in the State of Missouri (admitted and in good standing since 1975) and California (admitted and in good standing since 1977). My California State Bar Number is 75253.

2. I have been engaged in the active practice of law since 1975. From July 1981 until January 1996 I was employed as an attorney by The Irvine Company (the "Company") in Newport Beach, California. The Company is one of the largest real estate developers in the United States with over $15,000,000,000.00 in assets. From May 1985 until January 1996, I served as the general counsel of the Company. During my employment by the Company, at various times I also held the positions of Division Counsel, Senior Division Counsel, Associate General Counsel, Vice President and Senior Vice President.

3. My responsibilities as general counsel of the Company included the oversight and management of the Company's legal affairs. In carrying out my responsibilities at the Company, I was responsible for managing over fifty outside law firms representing the Company in over 350 active legal matters at any given time, approximately half of which were disputes and litigation in which the Company was involved.

4. Over the course of my employment by the Company, I was responsible for the management of outside counsel representing the Company in thousands of disputes pursuant to attorney fee arrangements in excess of $100 million.

5. Since approximately 1985, I have spoken to over three hundred audiences comprised of attorneys, including many national, state and local bar association groups, on the proper management of legal matters. A significant number of these talks have been on the topic of determining the appropriate value of legal services, a subject on which I consult regularly as part of my occupation.

6. Since 1985, I have published numerous articles in national, state and local legal publications on the topic of determining the appropriate value of legal services. I am a member of the Board of Editors of America Lawyer Magazine and a regular columnist for the magazine. My writings in the magazine often address the subject of proper techniques for determining the appropriate value of legal services.

7. In 1995, I authored and published a book entitled *Lawyers are from Mercury, Clients are from Pluto*, which includes several chapters on the proper management of legal matters and proper techniques for determining the appropriate value of legal services.

8. Since January 1996, I have served as a legal management consultant to law firms throughout the United States. As part of my consulting work, I have trained over 1,000 partners in law firms throughout the United States on determining the appropriate value of legal services and on the utilization of appropriate billing techniques. I have also consulted with numerous law firms with offices in Los Angeles and throughout the United States

regarding the appropriate amount to charge clients for services rendered by the firms. I regularly advise law firms on the appropriate hourly rates to charge for lawyers in their firms.

9. In my work as a legal management consultant, I regularly advise law firms on the strengths and weaknesses of their practices and on practice management and opportunities, including the desirability of their entering and leaving certain markets for legal services, broadly defined as practice areas, geographic locations, and industry sectors. This aspect of my work requires me to be familiar with the billing rates of attorneys with different levels of experience and expertise in numerous specific practice areas and geographic markets. Among the practice areas and geographic markets I have knowledge of is wage and hour and other class action litigation in the Los Angeles market for legal services.

9. Harris & Ruble has retained me in this matter to offer my opinion on the reasonableness of hourly attorney rates for certain attorneys employed by them.

10. In rendering my opinion, I have reviewed the resumes of the attorneys and am also familiar with the firm's work.

11. In my opinion, the reasonable hourly rates for the following attorneys are:

| Attorney | Reasonable Hourly Rate |
| --- | --- |
| Lorraine Aguilar | $325.00 |
| Alan Harris | $895.00 |
| David Harris | $675.00 |
| Priya Mohan | $625.00 |
| David Zelenski | $625.00 |

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of May, 2013 at Newport Beach, California.

_____
Peter D. Zeughauser

# EXHIBIT 5



# Representative Clients

Akerman

Akin Gump Strauss Hauer & Feld

Baker & McKenzie

Choate Hall & Stewart

Crowell & Moring

Davis Wright Tremaine

Dickstein Shapiro

DLA Piper

Finnegan, Henderson, Farabow, Garrett & Dunner

Fish & Richardson

Foley & Lardner

Foley Hoag

Gibson, Dunn & Crutcher

Hogan Lovells

Howard Rice

Hunton & Williams

K&L Gates

Kilpatrick Townsend & Stockton

Manatt, Phelps & Phillips

Mayer Brown

Miles & Stockbridge

Miller & Chevalier

Morgan, Lewis & Bockius

Morrison & Foerster

O'Melveny & Myers

Osler, Hoskin & Harcourt

Patterson Belknap Webb & Tyler

Paul, Weiss, Rifkind, Wharton & Garrison

Perkins Coie

Polsinelli Shughart

Proskauer

Ropes & Gray

Shook, Hardy & Bacon

Case 5:11-cv-01946-VAP-SP    Document 43-1    Filed 09/30/13    Page 82 of 111    Page
ID #:804

Vinson & Elkins

Wilson Sonsini Goodrich & Rosati

Winston & Strawn

EXHIBIT 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | **SACV 11-00508-JVS (RNBx)** | Date March 11, 2013 |
| Title | **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.** | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers)  Order re Plaintiff's Motion for Attorney Fees and Non-Taxable Costs (Fld 2-11-13)

**The Court, having been informed that the parties submit on the Court's tentative ruling previously issued, hereby GRANTS IN PART the Plaintiff's motion referenced above and rules in accordance with the tentative ruling as follows:**

Plaintiff Virginia Velazquez and Steven Berry ("Plaintiffs") move this Court for an award of attorneys' fees and non-taxable costs. (Mot., Docket No. 192.) Defendant Costco Wholesale Corporation ("Costco") opposes the motion. (Opp'n, Docket No. 203.) Plaintiffs have filed a reply brief. (Docket No. 207.) For the following reasons, the Court GRANTS the motion in part.

## I.        Background

Plaintiffs commenced this action in 2011 on behalf of themselves and similarly situated employees against Costco for (1) failure to pay overtime compensation; (2) failure to provide accurate itemized wage statements; (3) "continuing wages" due to failure to pay unpaid wages upon termination; and (4) unfair competition under California Business & Professions Code § 17200 et seq. ("UCL"). (See Compl., Docket No. 1.) On May 31, 2011, Plaintiffs amended their Complaint and added Ed Whitaker ("Whitaker") as a named Plaintiff. (First Amended Compl., Docket No. 15.) On July 14, 2011, the Court dismissed the second claim for failure to provide accurate itemized wage statements. (Docket No. 26.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   __SACV 11-00508-JVS (RNBx)__          Date   March 11, 2013

Title   __Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.__

On October 11, 2011, the Court denied Plaintiffs' motion for class certification. (Docket No. 53.)  On August 14, 2012, Whitaker's claims were severed and transferred to the Eastern District of California.  (Docket No. 69.)  On August 27, 2012, the Court granted summary judgment in favor of Costco on Velazquez's "continuing wage" claim. (Docket No. 72.)

The matter proceeded to bench trial as to Plaintiff Velazquez and Berry's individual claims, including (1) claims for unpaid overtime; (2) Berry's claim for continuing wages; and (3) the UCL claim.  (Docket No. 115.)  The bench trial resulted in judgment for Plaintiffs on all three causes of action.  (Docket No. 181.)  Plaintiff Velazquez was awarded $102,144.47 in damages, restitution, and interest, and Plaintiff Berry was awarded $39,262.46 in damages, restitution, and interest.  (Id.)

Plaintiffs now move for an award of attorneys' fees in the sum of $275,872.28 and costs in the amount of $20,930.12.  (Mot. Br. 1.)

## II.      __Legal__ __Standard__

"State law establishes the required showing for attorney's fees in an action in diversity."  __Winterrowd__ v. __Am.__ __Gen.__ __Annuity__ __Ins.__ __Co.__, 556 F.3d 815, 827 (9th Cir. 2009) (citing __Kern__ __Oil__ & __Refining__ __Co.__ v. __Tenneco__ __Oil__ __Co.__, 792 F.2d 1380, 1388–89 (9th Cir. 1986)); see also __Bass__ v. __First__ __Pac.__ __Networks,__ __Inc.__, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").  At issue in this case is California Labor Code section 1194, which provides, in relevant part, that:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. Code § 1194(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  **SACV 11-00508-JVS (RNBx)**  Date  March 11, 2013

Title  **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

"Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees." Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995) (citing Kern, 792 F.2d at 1380). Under California law, as under federal law, the calculation of attorney's fees is guided by the "lodestar/multiplier" analysis. See Ketchum v. Moses, 24 Cal. 4th 1122 (2001); see also Hensley v. Eckerhart, 461 U.S. 424 (1983). "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" Ketchum, 24 Cal. 4th at 1131–32 (quoting Serrano v. Priest, 20 Cal. 3d 25, 48 (1977)). In determining reasonable compensation, courts "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation.'" Id. at 1132 (quoting Serrano, 20 Cal. 3d at 48).

After the lodestar figure has been calculated, the court may adjust it upward or downward based on a number of factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Id. The party seeking attorneys' fees always bears the burden of proving that the fees it seeks are reasonable. Gorman v. Tassajara Dev. Corp., 178 Cal. App. 4th 44, 98 (2009).

**III.        Discussion**

Costco does not dispute that California Labor Code § 1194(a) authorizes reasonable attorneys' fees and costs of suit for plaintiffs who succeed on their claims. (Opp'n Br. 4.) Therefore, the Court turns to the issue of whether the requested fees and costs are reasonable. Plaintiffs request an award of $275,872.28, representing a total of 662.80 hours worked multiplied by a mixed hourly rate of $416.22. (Mot. Br. 9, 21; Harris Decl. ¶ 9.)

Costco argues that Plaintiffs' fee request is unreasonable and should be significantly reduced. (Opp'n Br. 1.) It contends that the request is unreasonable because of (1) the request for fees incurred by and for former-plaintiff Whitaker, who has not prevailed; (2) the duplicative nature of the work in this case, for which Plaintiffs' counsel was already compensated following a prior trial; (3) the minimal additional work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **SACV 11-00508-JVS (RNBx)**                Date   March 11, 2013

Title   **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

actually performed; (4) Plaintiffs' limited success and "the amount of damages awarded as compared to the amount sought"; and (5) the unreasonableness of specific billing entries and non-taxable costs. (Id.) The Court considers these arguments as it discusses the lodestar below.

### A.    Hourly Rate

The Court first considers whether the hourly rates charged by Plaintiffs' attorneys are reasonable. Plaintiffs seek to recover attorneys' fees based on the following hourly rates:

| Attorney | Hourly Rate |
|---|---|
| Alan Harris | $600.00 |
| David Zelenski | $322.50 |
| Abigail Treanor | $322.50 |
| Priya Mohan | $322.50 |
| Matthew Kavanaugh | $266.25 |

(Mot. Br. 7.) In support, Plaintiffs submit the relevant experience and background of the attorneys, as well as a declaration from Peter D. Zeughauser. (Harris Decl. ¶¶ 2–6, 8 & Ex. 2, Docket No. 193.) Plaintiffs also contend that these hourly rates are reasonable because they were approved by the court in the single-plaintiff action Drenckhahn v. Costco Wholesale Corp., 2:08-cv-1408 JHN (SSx). (RJN, Ex. 4, at 10, Docket No. 194.) Drenckhahn was an unpaid-overtime case brought by a former Costco receiving manager, in which the plaintiff was awarded a judgment of $57,108.13. (RJN Ex 1; Ex. 3.) In Drenckhahn, the court reduced Mr. Harris's hourly rate from $800 to $600, taking into considering his "skill, experience, and reputation," as well as "the relatively small damage award and the straight-forward issues presented in this single plaintiff wage-and-hour claim." (Ex. 4, at 9.) The court also applied a 25 percent reduction to the requested hourly rates of other counsel, thus resulting in the rates charted above. (Id. at 10.) Plaintiffs argue that, since these same rates were previously approved by the Central District, "they should be approved once again by the within Court." (Mot. Br. 24.)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  **SACV 11-00508-JVS (RNBx)**                    Date   March 11, 2013

Title   **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

Costco contends that Mr. Harris's rate of $600 is unreasonable, and should be reduced to $425 an hour.  (Opp'n Br. 15.)  First, it argues that Plaintiffs do not submit any evidence that reasonable, paying clients would pay a $600 rate for this type of litigation.  Second, it contends that actual evidence shows that the hourly rate is unreasonable, citing a report indicating that attorneys with more than 31 years in practice have an average rate of $465.  (Opp'n, Yang Decl. ¶ 6, Docket No. 204.)  It also gives evidence of hourly rates for its own counsel in this matter, ranging from $315 to $468.  (Id.)  Lastly, it argues that the Court should not permit an hourly rate greater than $481, which is the reduced hourly rate applied in Jacobs v. Cal. State. Auto. Ass'n Inter-Ins. Bureau, 2009 WL 3562871, at *4 (N.D. Cal. 2009).  There, the court reduced Mr. Harris's hourly rate to $481.  Id.  The plaintiffs in that case reached a settlement in the amount of $1,500,000.00.  Id. at *1.

After reviewing the papers, the Court finds that the hourly rates requested are reasonable.  As Plaintiffs point out, the Court must follow the lodestar test and not the "paying client rate" test set forth in the Second Circuit's Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 189 (2nd Cir. 2007).  Instead, a reasonable hourly rate is measured by the reasonable market value of the attorney's services.  Chacon v. Litke, 181 Cal. App. 4th 1234, 1260 (2010).  And based on prevailing market rates and the skills and experience of Plaintiffs' counsel, the rates requested are fair.

In sum, the Court adopts the hourly rates requested by Plaintiffs.

## B.     Number of Hours

The Court now considers the calculation of hours that Plaintiffs' counsel has devoted to this case.

Plaintiffs' counsel have worked a total of 773.10 hours and anticipate working an additional twenty hours.  (Harris Decl. ¶¶ 7, 13.)  Of the total 793.10 total hours, Plaintiffs' counsel contends that they have voluntarily reduced that total time by 130.30 hours for a total of 662.80 hours.  (Id.)  This eliminated time "represents hours working on class-certification matters" and "hours spent working on Ed Whitaker's claims." (Mot. Br. 8; Harris Decl. ¶ 7.)  Furthermore, the eliminated time represents hours spent working with an expert witness whose testimony was not used at trial and time spent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **SACV 11-00508-JVS (RNBx)**                    Date   March 11, 2013

Title   **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

drafting initial objections to Costco's trial declarations.  (Id.)  In support of their motion, Plaintiffs submit time entries of all attorneys who worked on this case.  (Harris Decl. ¶ 7 & Ex 1.)

Costco contends that counsel's billing times are unreasonable and must be further reduced, as discussed below.

    1.     *Hours worked generally*

In general, based on the previous Drenckhahn case, Costco argues that the 662.80 hours of time of unreasonable.  First, it is 240 more hours than the Drenckhahn matter required.[1]  (Opp'n Br. 9.)  Costco also contends that Plaintiffs' counsel merely duplicated work they already performed in Drenckhahn.  (Opp'n Br. 10–11.)  Specifically, Plaintiffs' trial plan "merely sought to re-try Drenckhahn by eliciting testimony from those disclosed and discovered in other lawsuits but not here."  (Id. at 11.)  Lastly, Costco argues that this matter required much less work than the Drenckhahn in "almost every regard."  (See Opp'n Br. 12 tbl.)  For support, it points out that Costco's counsel billed just 61.7% of the attorneys' fees that it billed in Drenckhahn.  (Yang Decl. ¶ 6.)  Both cases also involved straightforward issues regarding simple wage-and-hour claims.  (Opp'n Br. 12.)

The Court does not find Costco's wholesale argument convincing given that this case concerns different plaintiffs and thus a different set of facts and evidence.  (See Reply Br. 20–22.)  The fact that counsel benefitted from some of its work in a prior case does not render its request for hours presumptively unreasonable.

Further, Costco specifically lists fees that should be eliminated.  The Court addresses these challenges in turn.

    2.     *Hours worked on Whitaker's claims*

Costco contends that Plaintiffs have insufficiently reduced their number of hours to

---

[1]  As Plaintiffs point out, although the hours requested here exceed the amount awarded in Drenckhahn, they do not exceed the number of hours counsel actually worked in that matter.  (See Reply Br. 5–6; RJN, Ex. 4, at 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    **SACV 11-00508-JVS (RNBx)**                    Date    March 11, 2013

Title    **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

account for time spent working on behalf of Whitaker, whose claims were severed on August 14, 2012.  (Opp'n Br. 7–8.)  For instance, Plaintiffs merely eliminate 18.20 hours to account for this work, and over half of those hours were related to Whitaker's deposition.  (Id. at 7.)  Costco also point to a billing entry in which Plaintiffs request fees for work done on Whitaker's behalf.  (See Harris Decl. Ex. 1, at 18.)  Furthermore, it argues that Plaintiffs have not eliminated billing entries reflecting time benefitting Whitaker but not specifically naming him—for example, time spent responding to written discovery requests that do not distinguish between Plaintiffs' discovery as oppose to Whitaker's.  (Opp'n Br. 8; see Harris Decl. Ex. 1, at 11.)  Costco therefore requests that, prior to August 14, 2012, such time spent not specifically identifying any Plaintiff should be reduced by one third.  (See Yang Decl. Ex. 3.)

The Court agrees that some reduction is necessary given the fact that Whitaker is not a prevailing plaintiff and Plaintiffs cannot recovery for time spent advancing his claims.  However, it recognizes that the number of hours cannot merely be reduced by one-third, as there is work that cannot be meaningfully divided because of the facts and law common to all Plaintiffs.  The Court thus reduces any billing entries prior to August 14, 2012 that do not specifically identify any Plaintiff by 15 percent.  Entries that mention one Plaintiff and Whitaker shall be reduced by 30 percent.  Moreover, Plaintiffs shall discount any remaining time entries referring to Whitaker that have not yet been eliminated.

        2.    *Fees for the nonprevailing portion of Velazquez's Claims; fees for unsuccessfully opposing summary adjudication*

Costco contends that Velazquez only prevailed on 71 percent of her claim since it obtained partial summary judgment on her pre-December 30, 2005 overtime claim because it was time barred.  (Opp'n Br. 19.)  Thus, 29 percent of her recovery does not permit recovery of attorneys' fees.  (See Yang Decl. Ex. 7.)

The Court declines to reduce these fees.  Under the standard set forth in Hensley v. Eckerhart, 461 U.S. 424, 435 (2003), "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  (See Reply Br. 12–13.)  Moreover, her unsuccessful overtime claim was substantially related to her successful claims and based on the same Labor Code provision.  Thus, the fee award need not be reduced given that Velazquez "won substantial relief" on her overtime

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  **SACV 11-00508-JVS (RNBx)**         Date   March 11, 2013

Title   **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

claim.  See 461 U.S. at 440.

Similarly, the Court declines to eliminate these fees for work expended opposing that partial summary judgment motion.  (See Yang Decl. Ex. 6.)  These hours were reasonably spent litigating the ultimately successful overtime claim.  See id. at 435 ("[T]he court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.").

3.     *Fees for opposing Costco's motion to sever and transfer*

Costco contends that fees opposing the motion to transfer were incurred on Whitaker's behalf.  (Yang Decl. Ex. 5.)  However, as Plaintiff points out, in opposing the motion to transfer, results were ultimately obtained that benefitted both Plaintiffs Velazquez and Berry.  (Reply Br. 17–18.)  "Apportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units."  Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 159 (2006).  Thus, the Court declines to eliminate these fees.

5.     *Fees for "clerical or secretarial work at attorney hourly rates"*

Costco argues that fees for clerical or secretarial work should be eliminated.  (Yang Decl. Ex. 8.)  In their reply, Plaintiffs agree to eliminate 18.90 hours for tasks "such as electronic filing, organization and scanning of documents, calendaring, and preparing proofs of service."  (Reply Br. 24; Harris Reply Decl. ¶ 11, Docket No. 208.)  The Court finds that this reduction is sufficient to address the need to eliminate fees for clerical work.

6.     *Fees and costs for travel time*

Costco contends that fees for travel time and costs for mileage are unreasonable.  (Yang Decl. Ex. 9.)  Specifically, Costco argues that paying for travel time is "outmoded" and many of Costco's clients preclude counsel from billing any travel time.  (Opp'n Br. 21–22.)  However, it cites no evidence for this claim.  On the other hand, Plaintiffs point out that prevailing parties are often granted their full hourly rate for reasonably expended travel time.  (Reply Br. 24–25 (citing Marbled Murrelet v. Pac. Lumber Co., 163 F.R.D.

8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   **SACV 11-00508-JVS (RNBx)**          Date   March 11, 2013

Title   **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

308, 327 (N.D. Cal. 1995); In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).)  Thus, the Court declines to eliminate these fees or costs.

### C.    Request for Costs

Plaintiffs also request non-taxable costs in the amount of $20,930.12.  (Harris Decl. ¶ 14.)  California Labor Code § 1194(a) expressly provides for recovery of litigation costs.  However, Costco contends that the following reductions should be made to the award of costs:

#### 1.    *Costs already requested and settled in connection with the bill of costs*

Plaintiffs previously filed an application to the clerk to tax costs in the amount of $5,409.10.  (See Docket No. 182.)  According to Costco, the parties have since settled the claim, and thus any costs duplicative of those settled should be denied.  (Opp'n Br. 22; Ex. 10.)  Plaintiffs do not discuss this issue in their reply brief.  Thus, the Court cannot discern whether any requested costs are duplicative.  However, to the extent that any costs in Plaintiffs' request have already been settled, those costs shall not be awarded.

#### 2    *$13,251.47 in block-billed, vague, or excessive costs*

Costco also contends that block-billed, vague, or excessive costs should be eliminated, including copying costs, courier costs, and legal research costs.  (Yang Decl. Ex. 11.)  After reviewing the list of costs, the Court finds that the amount is generally reasonable.  Moreover, Plaintiffs have shown that courts have used their discretion to award such costs.  (See Reply Br. 25.)  However, the Court finds that some reductions are necessary.  For instance, there are entries prior to August 14, 2012 that do not name a particular Plaintiff, and so it is difficult to determine if the costs and expenses were made to benefit Whitaker's claim.  Moreover, as Costco points out, courts in this district have reduced legal research costs to account for overhead.  See Pierce v. Cnty. of Orange, 2012 WL 5906663, at *23 (C.D. Cal. Mar. 2, 2012) (listing cases).  Lastly, Costco notes that the amount requested for copying costs is vague and excessive.  (Opp'n Br. 23.)  The Court agrees that most of the entries for copying are not sufficiently specific so that it may evaluate their reasonableness.  (See Harris Decl. Ex. 1, at 43–44.)

Thus, to account for expenses that may have been improperly included in

9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     **SACV 11-00508-JVS (RNBx)**              Date     March 11, 2013

Title     **Virginia Velazquez, et al. v. Costco Wholesale Corp., et al.**

Plaintiffs' request for costs, the Court makes the following reductions: (1) a reduction of 25 percent for all research costs and copying costs; and (2) a reduction of 15 percent thereafter for all costs incurred before August 14, 2012 not naming a particular Plaintiff.

3.     *Costs incurred solely on behalf of Whitaker*

Lastly, Costco argues that costs incurred on behalf of Whitaker are unreasonable because he is a nonprevailing party. (Yang Decl. Ex. 4.) The Court agrees, and any costs incurred solely for the prosecution of Whitaker's claims are also denied.

**IV.     Conclusion**

For the foregoing reasons, the motion is GRANTED in part. Plaintiff shall recalculate fees based on the approved hourly rates and the reduction of hours billed on certain tasks, as set forth in this ruling. Plaintiffs shall also recalculate costs in accordance with this order. Thereafter, the parties shall meet and confer to reach a joint proposed order regarding the fee award. Plaintiff's counsel shall submit a proposed order and final judgment within 20 days.

IT IS ORDERED.

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |

EXHIBIT 7











In general, American courts operate under what is known as the "American Rule" which requires each party to bear the burden for its own legal fees. The Supreme Court has upheld this principle on many occasions for a number of reasons. For example, the knowledge that a loss means paying the other side's legal fees might prohibit plaintiffs from bringing suit or defendants from defending themselves. Nor should a party be penalized for bringing suit or defending itself. Determining proper fees would become an adminstrative nightmare. Fee awards might also drive attorneys fees up, by removing the pressure of the market and replacing it with the force of the bench.

In certain circumstances, however, both the courts and Congress have found it appropriate to authorize fee-shifting. Especially in the area of Civil Rights and Environmental Law, fee-shifting provisions have been built into statutes. The expense of quality legal counsel should not prohibit private citizens from bringing suit to uphold these laws which are for the common good. There are more than 150 statutes that allow for fee-shifting, among them the Clean Air Act, the Americans with Disabilities Act, the Individuals with Disabilities Education Act, the Rehabilitation Act, the Civil Rights Act, and the Back Pay act.

After years of wrangling over the matter of attorney fee hourly rates, the Court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983) ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation.

The Department of Justice (DOJ) crafted its own rules for, and maintains, its version of the Laffey Matrix (see   http://www.usdoj.gov/usao/dc/Divisions / Civil_Division/Laffey_Matrix_7.html)

After scrutinizing the DOJ's methodology of setting and adjusting hourly rates for the Matrix, reviewing recent court decisions and contacting an expert economist, many firms in the Baltimore-Washington area (and due to FLRA/MSPB rulings, around the country) now utilize the Adjusted Laffey Matrix .











| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice,

measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

EXHIBIT 8

## SALARY TABLE 2013-DCB
## INCORPORATING A LOCALITY PAYMENT OF 24.22%
## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-VA-WV-PA
## RATES FROZEN AT 2010 LEVELS

### EFFECTIVE JANUARY 2013

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 22,115 | $ 22,854 | $ 23,589 | $ 24,321 | $ 25,056 | $ 25,489 | $ 26,215 | $ 26,948 | $ 26,977 | $ 27,663 |
| 2 | 24,865 | 25,456 | 26,279 | 26,977 | 27,280 | 28,082 | 28,885 | 29,687 | 30,490 | 31,292 |
| 3 | 27,130 | 28,034 | 28,938 | 29,843 | 30,747 | 31,651 | 32,556 | 33,460 | 34,364 | 35,269 |
| 4 | 30,456 | 31,471 | 32,486 | 33,501 | 34,516 | 35,531 | 36,546 | 37,560 | 38,575 | 39,590 |
| 5 | 34,075 | 35,210 | 36,346 | 37,481 | 38,616 | 39,752 | 40,887 | 42,022 | 43,158 | 44,293 |
| 6 | 37,983 | 39,249 | 40,514 | 41,780 | 43,046 | 44,312 | 45,578 | 46,843 | 48,109 | 49,375 |
| 7 | 42,209 | 43,616 | 45,024 | 46,431 | 47,838 | 49,246 | 50,653 | 52,061 | 53,468 | 54,875 |
| 8 | 46,745 | 48,303 | 49,861 | 51,418 | 52,976 | 54,534 | 56,092 | 57,649 | 59,207 | 60,765 |
| 9 | 51,630 | 53,350 | 55,070 | 56,791 | 58,511 | 60,232 | 61,952 | 63,673 | 65,393 | 67,114 |
| 10 | 56,857 | 58,752 | 60,648 | 62,544 | 64,439 | 66,335 | 68,230 | 70,126 | 72,022 | 73,917 |
| 11 | 62,467 | 64,548 | 66,630 | 68,712 | 70,794 | 72,876 | 74,958 | 77,040 | 79,122 | 81,204 |
| 12 | 74,872 | 77,368 | 79,864 | 82,359 | 84,855 | 87,350 | 89,846 | 92,341 | 94,837 | 97,333 |
| 13 | 89,033 | 92,001 | 94,969 | 97,936 | 100,904 | 103,872 | 106,839 | 109,807 | 112,774 | 115,742 |
| 14 | 105,211 | 108,717 | 112,224 | 115,731 | 119,238 | 122,744 | 126,251 | 129,758 | 133,264 | 136,771 |
| 15 | 123,758 | 127,883 | 132,009 | 136,134 | 140,259 | 144,385 | 148,510 | 152,635 | 155,500 * | 155,500 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2013 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2013/locality-pay-area-definitions/

## SALARY TABLE 2013-LA
### INCORPORATING A LOCALITY PAYMENT OF 27.16%
### FOR THE LOCALITY PAY AREA OF LOS ANGELES-LONG BEACH-RIVERSIDE, CA
### RATES FROZEN AT 2010 LEVELS

### EFFECTIVE JANUARY 2013

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 22,638 | $ 23,395 | $ 24,148 | $ 24,897 | $ 25,649 | $ 26,092 | $ 26,836 | $ 27,586 | $ 27,615 | $ 28,317 |
| 2 | 25,454 | 26,059 | 26,901 | 27,615 | 27,926 | 28,747 | 29,569 | 30,390 | 31,211 | 32,033 |
| 3 | 27,772 | 28,697 | 29,623 | 30,549 | 31,475 | 32,400 | 33,326 | 34,252 | 35,178 | 36,103 |
| 4 | 31,177 | 32,216 | 33,255 | 34,294 | 35,333 | 36,372 | 37,410 | 38,449 | 39,488 | 40,527 |
| 5 | 34,881 | 36,044 | 37,206 | 38,368 | 39,530 | 40,692 | 41,855 | 43,017 | 44,179 | 45,341 |
| 6 | 38,882 | 40,177 | 41,473 | 42,769 | 44,065 | 45,361 | 46,656 | 47,952 | 49,248 | 50,544 |
| 7 | 43,208 | 44,648 | 46,089 | 47,530 | 48,971 | 50,411 | 51,852 | 53,293 | 54,733 | 56,174 |
| 8 | 47,852 | 49,446 | 51,041 | 52,635 | 54,230 | 55,825 | 57,419 | 59,014 | 60,608 | 62,203 |
| 9 | 52,852 | 54,613 | 56,374 | 58,135 | 59,896 | 61,657 | 63,419 | 65,180 | 66,941 | 68,702 |
| 10 | 58,202 | 60,143 | 62,083 | 64,024 | 65,964 | 67,905 | 69,845 | 71,786 | 73,726 | 75,667 |
| 11 | 63,945 | 66,076 | 68,207 | 70,339 | 72,470 | 74,601 | 76,732 | 78,863 | 80,995 | 83,126 |
| 12 | 76,644 | 79,199 | 81,754 | 84,308 | 86,863 | 89,418 | 91,972 | 94,527 | 97,082 | 99,636 |
| 13 | 91,141 | 94,179 | 97,216 | 100,254 | 103,292 | 106,330 | 109,368 | 112,406 | 115,443 | 118,481 |
| 14 | 107,701 | 111,290 | 114,880 | 118,470 | 122,060 | 125,649 | 129,239 | 132,829 | 136,419 | 140,008 |
| 15 | 126,687 | 130,910 | 135,133 | 139,356 | 143,579 | 147,802 | 152,025 | 155,500 * | 155,500 * | 155,500 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

Applicable locations are shown on the 2013 Locality Pay Area Definitions page: http://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2013/locality-pay-area-definitions/

# SALARY TABLE 2007-DCB

## INCORPORATING THE 1.70% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 18.59%

## FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-PA-VA-WV

### (See http://www.opm.gov/oca/07tables/locdef.asp for definitions of locality pay areas.)

### (TOTAL INCREASE: 2.64%)

## EFFECTIVE JANUARY 2007

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 19,722 | $ 20,380 | $ 21,037 | $ 21,689 | $ 22,345 | $ 22,730 | $ 23,378 | $ 24,031 | $ 24,057 | $ 24,664 |
| 2 | 22,174 | 22,700 | 23,435 | 24,057 | 24,325 | 25,040 | 25,755 | 26,470 | 27,186 | 27,901 |
| 3 | 24,194 | 25,000 | 25,806 | 26,613 | 27,419 | 28,226 | 29,032 | 29,838 | 30,645 | 31,451 |
| 4 | 27,159 | 28,064 | 28,969 | 29,874 | 30,779 | 31,684 | 32,589 | 33,493 | 34,398 | 35,303 |
| 5 | 30,386 | 31,399 | 32,412 | 33,425 | 34,437 | 35,450 | 36,463 | 37,476 | 38,488 | 39,501 |
| 6 | 33,872 | 35,001 | 36,130 | 37,259 | 38,388 | 39,517 | 40,646 | 41,775 | 42,903 | 44,032 |
| 7 | 37,640 | 38,895 | 40,150 | 41,405 | 42,659 | 43,914 | 45,169 | 46,423 | 47,678 | 48,933 |
| 8 | 41,686 | 43,075 | 44,465 | 45,855 | 47,245 | 48,635 | 50,025 | 51,415 | 52,805 | 54,194 |
| 9 | 46,041 | 47,576 | 49,110 | 50,645 | 52,180 | 53,714 | 55,249 | 56,783 | 58,318 | 59,852 |
| 10 | 50,703 | 52,393 | 54,083 | 55,773 | 57,463 | 59,153 | 60,843 | 62,533 | 64,222 | 65,912 |
| 11 | 55,706 | 57,564 | 59,421 | 61,278 | 63,135 | 64,992 | 66,849 | 68,706 | 70,563 | 72,421 |
| 12 | 66,767 | 68,993 | 71,219 | 73,445 | 75,671 | 77,897 | 80,123 | 82,349 | 84,575 | 86,801 |
| 13 | 79,397 | 82,044 | 84,691 | 87,338 | 89,985 | 92,632 | 95,279 | 97,926 | 100,573 | 103,220 |
| 14 | 93,822 | 96,950 | 100,077 | 103,204 | 106,331 | 109,459 | 112,586 | 115,713 | 118,840 | 121,967 |
| 15 | 110,363 | 114,042 | 117,721 | 121,399 | 125,078 | 128,757 | 132,435 | 136,114 | 139,793 | 143,471 |

## SALARY TABLE 2007-LA

### INCORPORATING THE 1.70% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 24.03%

### FOR THE LOCALITY PAY AREA OF LOS ANGELES-LONG BEACH-RIVERSIDE, CA

(See http://www.opm.gov/oca/07tables/locdef.asp for definitions of locality pay areas.)

(TOTAL INCREASE: 2.40%)

### EFFECTIVE JANUARY 2007

*Annual Rates by Grade and Step*

| Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 20,626 | $ 21,315 | $ 22,002 | $ 22,684 | $ 23,370 | $ 23,773 | $ 24,450 | $ 25,133 | $ 25,161 | $ 25,796 |
| 2 | 23,191 | 23,742 | 24,510 | 25,161 | 25,441 | 26,189 | 26,937 | 27,685 | 28,433 | 29,181 |
| 3 | 25,303 | 26,147 | 26,990 | 27,834 | 28,677 | 29,520 | 30,364 | 31,207 | 32,051 | 32,894 |
| 4 | 28,405 | 29,352 | 30,298 | 31,244 | 32,191 | 33,137 | 34,083 | 35,030 | 35,976 | 36,922 |
| 5 | 31,780 | 32,839 | 33,899 | 34,958 | 36,017 | 37,076 | 38,136 | 39,195 | 40,254 | 41,313 |
| 6 | 35,425 | 36,606 | 37,787 | 38,968 | 40,149 | 41,329 | 42,510 | 43,691 | 44,872 | 46,052 |
| 7 | 39,367 | 40,679 | 41,992 | 43,304 | 44,616 | 45,928 | 47,241 | 48,553 | 49,865 | 51,177 |
| 8 | 43,598 | 45,051 | 46,505 | 47,959 | 49,412 | 50,866 | 52,320 | 53,773 | 55,227 | 56,680 |
| 9 | 48,153 | 49,758 | 51,363 | 52,968 | 54,573 | 56,178 | 57,783 | 59,388 | 60,993 | 62,598 |
| 10 | 53,029 | 54,796 | 56,564 | 58,331 | 60,099 | 61,866 | 63,634 | 65,401 | 67,168 | 68,936 |
| 11 | 58,262 | 60,204 | 62,146 | 64,089 | 66,031 | 67,973 | 69,916 | 71,858 | 73,800 | 75,743 |
| 12 | 69,830 | 72,158 | 74,486 | 76,814 | 79,142 | 81,470 | 83,798 | 86,126 | 88,454 | 90,783 |
| 13 | 83,039 | 85,808 | 88,576 | 91,344 | 94,113 | 96,881 | 99,649 | 102,418 | 105,186 | 107,954 |
| 14 | 98,126 | 101,397 | 104,668 | 107,938 | 111,209 | 114,480 | 117,750 | 121,021 | 124,292 | 127,562 |
| 15 | 115,426 | 119,273 | 123,121 | 126,968 | 130,816 | 134,663 | 138,511 | 142,358 | 145,400 * | 145,400 * |

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

## SALARY TABLE 2005-DCB
### INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 15.98%
### FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-PA-VA-WV
(See http://www.opm.gov/oca/05tables/locdef.asp for definitions of locality pay areas.)

(TOTAL INCREASE: 3.71%)

### EFFECTIVE JANUARY 2005

*Annual Rates by Grade and Step*

| GRADE | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | $ 18,575 | $ 19,195 | $ 19,813 | $ 20,428 | $ 21,046 | $ 21,409 | $ 22,018 | $ 22,633 | $ 22,659 | $ 23,238 |
| 2 | 20,885 | 21,381 | 22,072 | 22,659 | 22,912 | 23,586 | 24,260 | 24,933 | 25,607 | 26,281 |
| 3 | 22,787 | 23,546 | 24,306 | 25,066 | 25,825 | 26,585 | 27,345 | 28,104 | 28,864 | 29,624 |
| 4 | 25,581 | 26,433 | 27,285 | 28,138 | 28,990 | 29,843 | 30,695 | 31,548 | 32,400 | 33,253 |
| 5 | 28,620 | 29,575 | 30,529 | 31,484 | 32,438 | 33,393 | 34,347 | 35,302 | 36,257 | 37,211 |
| 6 | 31,903 | 32,966 | 34,030 | 35,093 | 36,157 | 37,220 | 38,284 | 39,347 | 40,411 | 41,474 |
| 7 | 35,452 | 36,633 | 37,815 | 38,997 | 40,179 | 41,361 | 42,543 | 43,724 | 44,906 | 46,088 |
| 8 | 39,262 | 40,570 | 41,878 | 43,186 | 44,495 | 45,803 | 47,111 | 48,419 | 49,728 | 51,036 |
| 9 | 43,365 | 44,810 | 46,255 | 47,700 | 49,145 | 50,590 | 52,036 | 53,481 | 54,926 | 56,371 |
| 10 | 47,755 | 49,347 | 50,940 | 52,532 | 54,124 | 55,717 | 57,309 | 58,902 | 60,494 | 62,086 |
| 11 | 52,468 | 54,217 | 55,966 | 57,715 | 59,464 | 61,213 | 62,962 | 64,711 | 66,460 | 68,209 |
| 12 | 62,886 | 64,981 | 67,077 | 69,173 | 71,269 | 73,364 | 75,460 | 77,556 | 79,652 | 81,747 |
| 13 | 74,782 | 77,274 | 79,766 | 82,259 | 84,751 | 87,244 | 89,736 | 92,228 | 94,721 | 97,213 |
| 14 | 88,369 | 91,315 | 94,260 | 97,206 | 100,152 | 103,098 | 106,044 | 108,990 | 111,936 | 114,882 |
| 15 | 103,947 | 107,413 | 110,878 | 114,344 | 117,809 | 121,274 | 124,740 | 128,205 | 131,671 | 135,136 |

NOTE: Locality rates of pay are basic pay only for certain purposes--see "Salary Tables for 2005" cover sheet.

## SALARY TABLE 2005-SF

### INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 26.39% FOR THE LOCALITY PAY AREA OF SAN JOSE-SAN FRANCISCO-OAKLAND, CA

(See http://www.opm.gov/oca/05tables/locdef.asp for definitions of locality pay areas.)

(TOTAL INCREASE: 4.30%)

### EFFECTIVE JANUARY 2005

*Annual Rates by Grade and Step*

| GRADE | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | $ 20,243 | $ 20,918 | $ 21,591 | $ 22,261 | $ 22,935 | $ 23,330 | $ 23,994 | $ 24,665 | $24,693 | $ 25,324 |
| 2 | 22,759 | 23,300 | 24,053 | 24,693 | 24,968 | 25,703 | 26,437 | 27,171 | 27,906 | 28,640 |
| 3 | 24,832 | 25,660 | 26,488 | 27,315 | 28,143 | 28,971 | 29,799 | 30,627 | 31,455 | 32,283 |
| 4 | 27,877 | 28,806 | 29,735 | 30,663 | 31,592 | 32,521 | 33,450 | 34,379 | 35,308 | 36,237 |
| 5 | 31,189 | 32,229 | 33,270 | 34,310 | 35,350 | 36,390 | 37,430 | 38,471 | 39,511 | 40,551 |
| 6 | 34,766 | 35,925 | 37,084 | 38,243 | 39,402 | 40,561 | 41,720 | 42,879 | 44,038 | 45,197 |
| 7 | 38,634 | 39,922 | 41,209 | 42,497 | 43,785 | 45,073 | 46,361 | 47,649 | 48,937 | 50,225 |
| 8 | 42,786 | 44,211 | 45,637 | 47,063 | 48,488 | 49,914 | 51,340 | 52,765 | 54,191 | 55,617 |
| 9 | 47,257 | 48,832 | 50,407 | 51,982 | 53,556 | 55,131 | 56,706 | 58,281 | 59,856 | 61,431 |
| 10 | 52,041 | 53,776 | 55,512 | 57,247 | 58,982 | 60,718 | 62,453 | 64,188 | 65,924 | 67,659 |
| 11 | 57,178 | 59,084 | 60,989 | 62,895 | 64,801 | 66,707 | 68,613 | 70,519 | 72,425 | 74,331 |
| 12 | 68,530 | 70,814 | 73,098 | 75,382 | 77,665 | 79,949 | 82,233 | 84,517 | 86,801 | 89,085 |
| 13 | 81,494 | 84,210 | 86,926 | 89,642 | 92,358 | 95,074 | 97,790 | 100,507 | 103,223 | 105,939 |
| 14 | 96,300 | 99,511 | 102,721 | 105,931 | 109,142 | 112,352 | 115,562 | 118,772 | 121,983 | 125,193 |
| 15 | 113,277 | 117,054 | 120,830 | 124,607 | 128,383 | 132,160 | 135,936 | 139,713 | 140,300 * | 140,300 * |

NOTE: Locality rates of pay are basic pay only for certain purposes--see "Salary Tables for 2005" cover sheet.

* Rate limited to the rate for level IV of the Executive Schedule (5 U.S.C. 5304 (g)(1)).

# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>              v.<br><br>AIRPORT TERMINAL SERVICES, INC.,<br>                              Defendant. | Case No. EDCV 11-01946 VAP (SPx)<br>**NOTICE TO CLASS OF PROPOSED SETTLEMENT OF CLASS ACTION** |

THIS NOTICE PERTAINS TO A PROPOSED CLASS-ACTION SETTLEMENT THAT PLAINTIFF COLLETTE McDONALD HAS REACHED WITH DEFENDANT AIRPORT TERMINAL SERVICES, INC. ("ATS"). IF YOU WERE EMPLOYED AS A NON-EXEMPT EMPLOYEE BY ATS IN CALIFORNIA FROM NOVEMBER 2, 2007, THROUGH JULY 16, 2013, AND HAVE RECEIVED THIS NOTICE, THEN YOU ARE ENTITLED TO A CASH PAYMENT FROM THIS PROPOSED SETTLEMENT, UPON FINAL APPROVAL. THE TOTAL SETTLEMENT AMOUNT IS $250,000.

THE PROPOSED SETTLEMENT CONCERNS ATS' ALLEGED FAILURE TO PROVIDE PROPER MEAL BREAKS UNDER CALIFORNIA LAW, AS WELL AS ATS' ALLEGED FAILURE TO REIMBURSE EMPLOYEES FOR UNIFORM-MAINTENANCE COSTS OR PROVIDE SEATING TO EMPLOYEES UNDER CALIFORNIA LAW. PLEASE BE ADVISED THAT, IN ORDER TO BE ELIGIBLE TO RECEIVE A PAYMENT FROM THE PROPOSED SETTLEMENT, YOU MUST COMPLETE THE CLAIM FORM ACCOMPANYING THIS NOTICE AND RETURN IT TO THE CLAIMS ADMINISTRATOR ON OR BEFORE **OCTOBER 10, 2013**.

## WHAT IS THIS CASE ABOUT?

Plaintiff Collette McDonald initiated this Lawsuit on November 2, 2011. The Lawsuit primarily alleges that ATS failed to provide meal-period premium pay for "cancelled" breaks in violation of California Labor Code sections 226.7 and 512, as well as of the applicable Industrial Welfare Commission wage order. In addition, the Lawsuit also alleges that ATS failed to reimburse employees for the costs of maintaining their uniforms under section 2802 of the California Labor Code and that ATS failed to provide adequate seating to employees in violation of the applicable Industrial Welfare Commission wage order. Based on those allegations, the Lawsuit also alleges a claim for improper pay stubs under California Labor Code section 226; a claim for the non-timely payment of wages under California Labor Code sections 201, 202, and 203; and a claim for unfair business practices under California Business and Professions Code section 17200 *et seq.*

After the exchange of relevant information and evidence, the Parties agreed to enter into private mediation to attempt to resolve the claims in the case. The Parties participated in mediation with Lynn S. Frank, a respected mediator of wage-and-hour class actions. With Ms. Frank's guidance, the Parties were able to negotiate a settlement of Plaintiff's claims.

The settlement described in this Class Notice is a direct result of those negotiations.

Counsel for Plaintiff—who are the attorneys appointed by the Court to represent the Settlement Class, Harris & Ruble and the Law Offices of John P. Dorigan ("Class Counsel")—have investigated and researched the facts and circumstances underlying the issues raised in the case and the law applicable. While Class Counsel believe that the claims alleged in this Lawsuit have merit, Class Counsel recognize that the risk and expense of continued litigation justify settlement. Based on the foregoing, Class Counsel believe the proposed settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

ATS has denied, and continues to deny, the factual and legal allegations in the case, and ATS believes that it has valid defenses to Plaintiff's claims. By agreeing to settle, ATS is not admitting liability on any of the factual allegations or claims in the case, or that the case can or should proceed as a class action. ATS has agreed to settle the case as part of a compromise with Plaintiff.

## SUMMARY OF THE PROPOSED SETTLEMENT

Under the proposed settlement, ATS will provide $250,000 (inclusive of attorney's fees and costs, administrative fees and costs, and incentive awards to Plaintiff McDonald, if awarded by the Court) to settle the claims raised by the Lawsuit. The $250,000 Gross Settlement Payment will be used to pay the claims of those individuals who were employed as non-exempt employees by ATS in California from November 2, 2007, through July 16, 2013. If approved by the Court, the proposed settlement will resolve the Lawsuit.

Court-approved Class Counsel will ask the Court for up to 33% of the $250,000 Gross Settlement Payment, *i.e.*, up to $82,500, as fees for investigating the facts, litigating the case, and negotiating the settlement, plus reimbursement of litigation expenses of up to $15,000. The issue of whether to award attorney's fees and costs to Class Counsel will be determined by the Court. Any amount awarded as attorney's fees must be approved by the Court in the final-approval hearing as discussed above.

Your legal rights are affected whether you act or don't act. *Accordingly, please read this Class Notice carefully. In order to obtain the financial benefits of this settlement, you must fill out the Claim Form included with this Notice and return it to the Claims Administrator postmarked on or before October 10, 2013*. There will be a final-approval hearing at which the Court will consider objections, if any, to the proposed settlement and at which the Court will determine whether the proposed settlement should be approved. This hearing will be held on **November 18, 2013 at 2:00 p.m.** in Courtroom 2 at the United States District Court, 3470 Twelfth Street, Riverside, California 92501. Request for Exclusion Forms must be postmarked on or before **October 10, 2013**. Objections must be filed and served on or before **October 25, 2013**.

IRS Forms W-2 and 1099 will be distributed to participating Class Members and the appropriate taxing authorities reflecting the payments they receive under the settlement. Class Members should consult their tax advisors concerning the tax consequences of the payments they receive under the settlement.

## SETTLEMENT TERMS

### 1.     THE SETTLEMENT TERMS AND WHAT YOU WILL RECEIVE

ATS has agreed to make a Gross Settlement Payment of $250,000. The Court will review and may approve payment of the following from the Gross Settlement Payment: attorney's fees (up to $82,500) and costs (up to $15,000) to Class Counsel, administrative expenses (up to $20,000) to the Claims Administrator for administering the claims process, and an incentive award to Plaintiff McDonald (up to $5,000) for her services in connection with prosecuting the Lawsuit. The balance of the Gross Settlement Payment will be distributed entirely to make distributions to and for the benefit of Settlement Class members who submit properly completed, timely Claim Forms. *IF YOU WANT TO RECEIVE A SHARE OF THE SETTLEMENT FUND, YOU MUST RETURN THE CLAIM FORM INCLUDED WITH THIS NOTICE, POSTMARKED ON OR BEFORE OCTOBER 10, 2013.* If you return your Claim Form and the settlement is finally approved, you will be sent a check in an amount to be computed by the Claims Administrator, calculated as described below.

### 2.     CALCULATION OF PAYMENTS TO CLASS MEMBERS

After deducting from the Gross Settlement Payment the amounts described in the immediately preceding paragraph (as approved by the Court), the balance (the "Net Settlement Fund") will be paid to Settlement Class members who have timely completed and submitted the enclosed Claim Form. Payments will be calculated in a two-step process. In the first step, 33.33% of the Net Settlement Fund will be distributed *pro rata* among Settlement Class members who submit timely Claim Forms based on the relative number of their "cancelled" meal periods as reported to and reflected in ATS' payroll records. In the second step of the distribution, 66.67% of the Net Settlement Fund will be divided evenly among all Settlement Class members who submit timely Claim Forms.

## RESULT OF THE SETTLEMENT

### 3.     THE SETTLEMENT-APPROVAL PROCEDURE

The Court has preliminarily approved the settlement and has scheduled the final-approval hearing, at which it will hear arguments in favor of and opposed to the settlement. The Court will also hear objections to the settlement from Settlement Class members who have notified the Court in advance that they want to address the Court at the hearing. The hearing will take place on **November 18, 2013 at 2:00 p.m.** in Courtroom 2 at the United States District Court, 3470 Twelfth Street, Riverside, California 92501. *It is not necessary for you to attend this hearing.*

If you exclude yourself from the Settlement Class, you are not entitled to object to, or comment on, the settlement or to speak at the hearing. If you do not exclude yourself from the settlement and you want to object to, or comment about, the settlement, you must submit your comments in writing as described below. If you want to appear at the hearing and address the Court, you must indicate your intent to do so in writing as described below. If you do not comply with these procedures, you will not be entitled to object to, or comment about, the settlement; to be heard at the hearing; to contest the approval of the settlement; or to appeal from any orders or judgments.

If the Court approves the settlement, the Court will enter a final judgment. The judgment will bind all Settlement Class members—except those who have excluded themselves—and will release all such Settlement Class members' settled claims as described in section 4 of this Notice, directly below.

## 4.    RELEASES

Members of the Settlement Class who do not exercise their right to exclude themselves from the settlement will release ATS and each of its officers, directors, employees, agents, direct and indirect subsidiaries or affiliated corporations, organizations, representatives, insurers, predecessors, successors, assigns, clients (and their respective officers, directors, employees, agents, managers, and fiduciaries), and counsel from the following:

> Any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, penalties, damages, restitution, injunctive relief, or a remedy of any other type that is based on or arises out of the allegations of the Lawsuit, including but not limited to such claims for (i) the alleged non-payment of meal-period premiums in violation of California Labor Code sections 226.7 and 512, as well as the applicable Industrial Welfare Commission Wage Order; (ii) the alleged failure to reimburse for uniform-maintenance expenses in violation of California Labor Code section 2802; (iii) the alleged failure to timely pay wages in violation of California Labor Code sections 201, 202, and 203 stemming from ATS' alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; (iv) the alleged failure to provide accurate information on pay stubs in violation of California Labor Code section 226 stemming from ATS' alleged failure to pay meal-period premiums; (v) alleged unfair business practices under California Business and Professions Code section 17200 *et. seq.* stemming from ATS' alleged failure to pay meal-period premiums and alleged failure to reimburse for uniform-maintenance expenses; and (vi) alleged civil-penalty liability from either an alleged failure to provide adequate seating to employees or from the aforementioned alleged violations, including such civil penalties stemming from California Labor Code sections 204, 220 *et seq.*, 226.3, 558, 1198, 1199, 2698, 8 Cal. Code Regs. 11090 § 9(A), and the applicable Industrial Welfare Commission Wage Order.

In addition, upon final approval of the settlement, each member of the Settlement Class who has not properly excluded himself or herself as provided below shall be deemed to have waived and released any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code, which section states:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Cal. Civ. Code § 1542 (emphasis supplied).

## 5.    YOUR OPTIONS

| YOUR OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| **Receive a Payment** | In order to receive your portion of the $250,000 Gross Settlement Payment, you must timely submit a Claim Form, postmarked on or before **October 10, 2013**, following the procedures described more fully below. |
| **Exclude Yourself** | If you choose not to accept the proposed settlement, you must submit a Request for Exclusion Form, postmarked on or before **October 10, 2013**.  You will not receive any portion of the $250,000 Gross Settlement Payment.  However, you will preserve your right to be a party to any *other* litigation against ATS for the violations alleged in *this* case. |
| **Object** | Tell the Court why you don't like the proposed settlement, following the procedures described more fully below.  However, if you exclude yourself from the settlement, you may not object. |
| **Do Nothing** | By doing nothing in response to this Notice, you will not receive any portion of the $250,000 Gross Settlement Payment.  However, you will release ATS from the claims described more fully below. |

### i.    RECEIVE A PAYMENT

If you want to receive a payment, calculated by the Claims Administrator as explained above, *you must return the Claim Form included with this Notice to the Claims Administrator postmarked on or before October 10, 2013* at the following address:  Airport Terminal Services, Inc. Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.  Your interests as a Class Member will be represented by Class Counsel without charge to you.  You may (but are not required to) contact Class Counsel.

You may appear at the hearing and address the Court regarding the settlement.  You may be represented by your own attorney at your own expense.  If you wish to object, you or your attorney must file with the Clerk of the Court a notice of appearance, along with your objection, no later than **October 25, 2013**.  In addition, you or your attorney must serve a

copy of your notice of appearance and your objection on Class Counsel and ATS' counsel, postmarked no later than **October 25, 2013**.  Counsel can be served at the following addresses:

| **Class Counsel** | **ATS' Counsel** |
|---|---|
| Alan Harris | Aaron R. Lubeley |
| David Zelenski | Simon L. Yang |
| HARRIS & RUBLE | SEYFARTH SHAW LLP |
| 6424 Santa Monica Boulevard | 333 South Hope Street, Suite 3900 |
| Los Angeles, California 90038 | Los Angeles, California 90071 |
| Telephone:  (323) 962-3777 | Telephone:  (213) 270-9600 |
| Facsimile:  (323) 962-3004 | Facsimile:  (213) 270-9601 |

### ii. *EXCLUDE YOURSELF*

If you do not want to be a Class Member, you must return the Request for Exclusion Form included with this Notice to the Claims Administrator postmarked on or before **October 10, 2013** at the following address:  Airport Terminal Services, Inc. Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.  By electing to be so excluded, (a) you will not receive the check generated by the settlement, even if you would otherwise be entitled to it; (b) you will not be bound by any further order or judgments entered for or against the Class; (c) you will have no right to object to the settlement or be heard at any hearing scheduled for the Court's consideration of the settlement; and (d) you may pursue any claims against ATS that were asserted by Plaintiff McDonald in this case by filing your own litigation at your own expense or by seeking to intervene in this lawsuit as an individual plaintiff at your own expense.

### iii. *OBJECT*

If you do not exclude yourself from the Settlement Class, you will be a Class Member and may object to the settlement.

Again, to object to the settlement, you or your attorney must file with the Clerk of the Court a notice of appearance, along with your objection, no later than **October 25, 2013**.  In addition, you or your attorney must serve a copy of your notice of appearance and your objection on Class Counsel and ATS' counsel, postmarked no later than **October 25, 2013**.  Counsel can be served at the following addresses:

| **Class Counsel** | **ATS' Counsel** |
|---|---|
| Alan Harris | Aaron R. Lubeley |
| David Zelenski | Simon L. Yang |
| HARRIS & RUBLE | SEYFARTH SHAW LLP |
| 6424 Santa Monica Boulevard | 333 South Hope Street, Suite 3900 |
| Los Angeles, California 90038 | Los Angeles, California 90071 |
| Telephone:  (323) 962-3777 | Telephone:  (213) 270-9600 |
| Facsimile:  (323) 962-3004 | Facsimile:  (213) 270-9601 |

### iv. *DO NOTHING*

If you do nothing in response to this Notice (*i.e.*, if you do not submit either a Claim Form or a Request for Exclusion Form), you will not receive a check for your portion of the Gross Settlement Payment.  However, you will be bound by any judgment entered with respect to the settlement, and you will release ATS, as explained in section 4 of this Class Notice, above.

## REQUESTING ADDITIONAL INFORMATION

The foregoing is only a summary of the Lawsuit and the proposed settlement.  For more detailed information, you may review the pleadings on file in the Lawsuit, which pleadings may be inspected at the Clerk's Office, United States District Court, 3470 Twelfth Street, Riverside, California 92501.  The Clerk will make the files from the Lawsuit available to you for inspection and copying at your own expense.

Any questions you have concerning the Lawsuit, the settlement, or this Class Notice should be directed to the Claims Administrator or to Class Counsel—not to Court personnel.  You may contact the Claims Administrator at the following address:  Airport Terminal Services, Inc. Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.  *Please include the case name and number, your name, and your return address on any letters, not just on the envelopes.*

***DO NOT CONTACT THE COURT FOR INFORMATION ABOUT THE ACTION OR THE SETTLEMENT.***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## McDONALD v. AIRPORT TERMINAL SERVICES, INC.
### Case No. EDCV 11-01946 VAP (SPx)

# CLAIM FORM

Barcode    BarDisplay
FName LName
Addr1 Addr2
City, St Zip-Zip4

Pursuant to the Court's order, this is a Claim Form that must be properly and timely completed, signed, and returned by Settlement Class members in order to receive any payment as a result of the settlement reached in *McDonald v. Airport Terminal Services, Inc*. **Do not submit your Claim Form to the Court.**

If you are a member of the Settlement Class, defined as all non-exempt employees who were employed by Airport Terminal Services, Inc. in California from November 2, 2007, through July 16, 2013, then, in order to receive a distribution from the settlement, you must return this Claim Form, *POSTMARKED no later than October 10, 2013*, to the following address:

Airport Terminal Services, Inc. Administrator
c/o Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912-8060

The completed Claim Form and any information submitted with it will be kept confidential and will be used only for purposes of administering the settlement.  No other Settlement Class member will see this information.

| CONTACT INFORMATION |
| --- |
| Name: |
| Street Address: |
| City, State Zip: |
| Telephone Number: |

I acknowledge reading the release specified above and certify under penalty of perjury that the information provided above is true and correct and that the submission of false information may subject me to civil and/or criminal penalties.

Signature: _____    Date: _____

**This Claim Form must be signed by the Settlement Class member.**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## McDONALD v. AIRPORT TERMINAL SERVICES, INC.
Case No. EDCV 11-01946 VAP (SPx)

## REQUEST FOR EXCLUSION FORM

Pursuant to the Court's order, this is a Request for Exclusion Form that must be properly and timely completed, signed, and returned by Settlement Class members in order to opt out of the settlement reached in *McDonald v. Airport Terminal Services, Inc.* If you want to receive a payment from the settlement reached in the Lawsuit, you should ***not*** fill in this Form. This Form is only used to exclude yourself from the Lawsuit.

If you want to exclude yourself from the settlement, you must return this Request for Exclusion Form, ***POSTMARKED no later than October 10, 2013***, to the following address:

Airport Terminal Services, Inc. Administrator

c/o Gilardi & Co. LLC

P.O. Box 8060

San Rafael, CA 94912-8060

**Do not submit your Request for Exclusion Form to the Court.**

If you exclude yourself, (a) you will not receive the check generated by the settlement, even if you would otherwise be entitled to it; (b) you will not be bound by any further order or judgments entered for or against the Class; (c) you will have no right to object to the settlement or be heard at any hearing scheduled for the Court's consideration of the settlement; and (d) you may pursue any claims against ATS that were asserted by Plaintiff McDonald in this case by filing your own litigation at your own expense or by seeking to intervene in this lawsuit as an individual plaintiff at your own expense.

The completed Request for Exclusion Form and any information submitted with it will be kept confidential and will be used only for purposes of administering the settlement. No other Settlement Class member will see this information.

| *CONTACT INFORMATION* |
| --- |
| Name: |
| Street Address: |
| City, State Zip: |
| Telephone Number: |

By signing this Form, I certify that I want to exclude myself from the Lawsuit.

Signature: _____    Date: _____

**This Request for Exclusion Form must be signed by the Settlement Class member.**

- 1 -