Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California 90038
Telephone:  (323) 962-3777
Facsimile:  (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
La Quinta, California 92253
Telephone:  (760) 564-3804
Facsimile:  (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>    Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Date:  November 18, 2013<br>Time:  2:00 p.m.<br>Courtroom:  2 |

PL.'S MOT. FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEM. OF P. & A. IN SUPP. THEREOF

**PLEASE TAKE NOTICE** that, on November 18, 2013, at 2:00 p.m., in Courtroom 2 of the above-entitled Court located at 3470 Twelfth Street, Riverside, California 92501—or at such other date, time, or place as the Court may designate—Plaintiff Collette McDonald will move pursuant to Federal Rule of Civil Procedure 23(e) for an order granting final approval of the class-wide Settlement Agreement and General Release ("Settlement Agreement") reached in the above-captioned action.[1]  The Settlement Agreement was preliminarily approved—and the Settlement Class defined therein was conditionally certified—on July 16, 2013.

The Motion will be made and based upon this Notice; the Memorandum of points and authorities appended hereto; the Declarations of Alan Harris and Markham Sherwood filed herewith; all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

The Motion is made pursuant to the July 16, 2013, Order granting preliminary approval, as well as pursuant to the Court-approved Class Notice disseminated on August 26, 2013.  The Class Notice specifies a final-fairness-hearing date of November 18, 2013.

The required meet-and-confer took place commencing on May 7, 2013—when the Settlement Agreement was executed—and on various dates thereafter.


Dated:  October 21, 2013                    HARRIS & RUBLE

                                            _____/s/ *David Zelenski*_____

                                            Alan Harris
                                            David Zelenski
                                            *Attorneys for Plaintiff*

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings set forth in the Settlement Agreement.

# *MEMORANDUM OF POINTS AND AUTHORITIES*

## *Table of Contents*

I.   Introduction ................................................................................................. 1

II.  Summary of the Relevant Background Information ................................... 1

    A.   Plaintiff's Initiation of this Action and the Parties' Attempts at
    Resolution ............................................................................................. 1

    B.   The Specific Claims for Relief Alleged in this Action ....................... 3

        1.   Plaintiff's Meal-Period Claim ................................................. 3

        2.   Plaintiff's Expense-Reimbursement and Derivative
        Claims ....................................................................................... 4

        3.   Plaintiff's Improper-Seating Claim ......................................... 8

    C.   The Order Granting Preliminary Approval and Conditional
    Certification ......................................................................................... 9

    D.   Distribution of the Settlement Fund to Class Members ...................... 9

    E.   The Provision of Class Notice and the Settlement Class'
    Response ............................................................................................. 11

    F.   The Payments to Class Members Based on the Response Rate .......... 13

    G.   Additional Non-Monetary Relief Under the Settlement
    Agreement ........................................................................................... 16

    H.   Fees, Costs, and Plaintiff's Incentive Award ................................... 17

III. Argument .................................................................................................... 19

    A.   Class Certification Has Already Been Granted ............................... 19

    B.   The Settlement Meets the Requirements for Final Approval .............. 20

1.    *Settlement Negotiations Were Conducted at Arm's Length* ................................................................................ 21

2.    *The Strength of Plaintiff's Case* ........................................... 21

3.    *The Likely Duration of Further Litigation* ........................... 23

4.    *The Risk of Maintaining Class-Wide Status Through Trial* .................................................................................... 23

5.    *The Settlement Amount Offered* ........................................... 24

6.    *The Extent of Discovery and the Stage of the Proceedings* ............... 24

7.    *The Experience and Views of Counsel* ................................. 25

8.    *The Reaction of the Class to the Proposed Settlement* ....................... 25

IV.    *Conclusion* ...................................................................... 25

1

## *Table of Authorities*

2

3

*Cases* [2]

Aguirre v. DSW, Inc.
   2012 U.S. Dist. LEXIS 62984 (C.D. Cal. filed Jan. 19, 2012).....................................23

Angeles v. U.S. Airways, Inc.
   2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013)..................................21, 22

Beck-Ellman v. Kaz USA, Inc.
   2013 WL 1748729 (S.D. Cal. filed Jan. 7, 2013) .............................................14

Blackwell v. SkyWest Airlines, Inc.
   2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008) ...........................................22

Bond v. Ferguson Enters., Inc.
    2011 WL 2648879 (E.D. Cal. filed June 30, 2011)......................................13

Bright v. 99¢ Only Stores
   189 Cal. App. 4th 1472 (2010) .....................................................................8

Brinker Rest. Corp. v. Superior Court
   53 Cal. 4th 1004 (2012) ...............................................................................24

Burden v. Selectquote Ins. Servs.
   2013 WL 3988771 (N.D. Cal. filed Aug. 2, 2013).........................................14

Campbell v. First Investors Corp.
   2012 WL 5373423 (S.D. Cal. filed Oct. 29, 2012).........................................19

Franco v. Ruiz Food Prods., Inc.
   2012 WL 5941801 (E.D. Cal. filed Nov. 27, 2012) ......................................25

Harris v. Investors' Business Daily, Inc.
   138 Cal. App. 4th 28 (2006) ..........................................................................7

Helm v. Alderwoods Group, Inc.
   2011 WL 5573837 (N.D. Cal. filed Nov. 15, 2011).......................................24

---

[2] Pursuant to the Court's Standing Order, where possible, all legal-database citations are to Westlaw instead of Lexis.

In re Educ. Testing Serv. Praxis Principles of Learning & Teaching
    2006 WL 3332829 (E.D. La. filed Nov. 15, 2006)........................................ 14

In re Mercury Interactive Corp. Sec. Litig.
    618 F.3d 988 (9th Cir. 2010) ....................................................................... 10

In re NASDAQ Market-Makers Antitrust Litig.
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 23

Int'l Union v. Gen Motors Corp.
    497 F.3d 615 (6th Cir. 2007) ....................................................................... 11

Jones v. Spherion Staffing LLC
    2012 WL 3264081 (C.D. Cal. filed Aug. 7, 2012) ...................................... 22

Linney v. Cellular Alaska P'ship
    1997 WL 450064 (N.D. Cal. filed July 18, 1997) ...................................... 20

McKenzie v. Fed. Express Corp.
    2012 WL 2930201 (C.D. Cal. filed July 2, 2012) ...................................... 20

Minor v. FedEx Office & Paint Servs., Inc.
    2013 U.S. Dist. LEXIS 106655 (N.D. Cal. filed July 30, 2013) ................ 14

Monterrubio v. Best Buy Stores, L.P.
    --- F.R.D. ---, 2013 WL 2106085 (E.D. Cal. filed May 14, 2013) .............. 13

Moshogiannis v. Sec. Consultants Group, Inc.
    2012 WL 423860 (N.D. Cal. filed Feb. 8, 2012) ........................................ 13

Mullane v. Cent. Hanover Bank & Trust Co.
    339 U.S. 306 (1950).................................................................................... 13

Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................ 23, 25

Ordonez v. Radio Shack, Inc.
    2013 WL 210223 (C.D. Cal. filed Jan. 17, 2013)...................................... 24

Rodriguez v. Disner
    688 F.3d 645 (9th Cir. 2012) ...................................................................... 18

Rodriguez v. West Publ'g Corp.
    563 F.3d 948 (9th Cir. 2009) ................................................................. 14, 18

Rodriguez v. West Publ'g Corp.
    2007 U.S. Dist. LEXIS 74767 (C.D. Cal. filed Sept. 10, 2007)................................... 24

Rodriguez v. West Publ'g Corp.
    2007 U.S. Dist. LEXIS 74849 (C.D. Cal. filed Sept. 10, 2007)............................. 14, 23

Rowe v. N.H. Motor Transp. Ass'n
    552 U.S. 364 (2008)................................................................................. 21

Sandoval v. Tharaldson Employee Mgmt., Inc.
    2010 WL 2486346 (C.D. Cal. filed June 15, 2010)........................................... 25

Schulte v. Fifth Third Bank
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................... 14

Silber v. Mabon
    18 F.3d 1449 (9th Cir. 1994) ................................................................... 13

Silva v. U.S. Bancorp
    2011 WL 7096576 (C.D. Cal. filed Oct. 6, 2011) ............................................ 8

Smith v. CRST Van Expedited, Inc.
    2013 WL 163293 (S.D. Cal. filed Jan. 14, 2013) ................................... 17, 18, 19

Staton v. Boeing Co.
    327 F.3d 938 (9th Cir. 2003) ................................................................... 17

Theme Promotions, Inc. v. New Am. Mktg. FSI
    546 F.3d 991 (9th Cir. 2008) ................................................................... 7

Torrisi v. Tucson Elec. Power Co.
    8 F.3d 1370 (9th Cir. 1993) .................................................................... 20

Van Vranken v. Atl. Richfield Co.
    901 F. Supp. 294 (N.D. Cal. 1995)............................................................. 18

Vasquez v. Coast Valley Roofing, Inc.
    266 F.R.D. 482 (E.D. Cal. 2010) .............................................................. 19

Weeks v. Kellogg Co.
    2011 U.S. Dist. LEXIS 155472 (C.D. Cal. filed Nov. 23, 2011) .......................... 14, 17

Wren v. RGIS Inventory Specialists
    2011 WL 1230826 (N.D. Cal. filed Apr. 1, 2011) ................................................ 21, 24

***Statutes***

49 U.S.C. § 41713 ....................................................................................................... 21

Cal. Bus. & Prof. Code § 17200 ............................................................................... 5, 7

Cal. Bus. & Prof. Code § 17203 ................................................................................... 7

Cal. Bus. & Prof. Code § 17208 ................................................................................... 7

Cal. Civ. Proc. Code § 338 ........................................................................................... 7

Cal. Lab. Code § 201 .............................................................................................. 4, 6

Cal. Lab. Code § 202 .................................................................................................... 6

Cal. Lab. Code § 203 ........................................................................................... 4, 6, 22

Cal. Lab. Code § 226 ......................................................................................... 4, 6–7, 22

Cal. Lab. Code § 226.7 ........................................................................................... 3, 16

Cal. Lab. Code § 512 .............................................................................................. 3, 23

Cal. Lab. Code § 1198 .................................................................................................. 8

Cal. Lab. Code § 2698 .................................................................................................. 8

Cal. Lab. Code § 2802 ............................................................................................. 4, 5

***Rules***

Fed. R. Civ. Proc. 23 ..............................................................................9, 11, 13, 19, 20, 23

*Regulations*

8 Cal. Code Regs. § 11090......................................................................3, 5, 8, 23

*Other Authorities*

Manual for Complex Litigation Fourth (2004)...................................................14

PL.'S MOT. FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT; MEM. OF P. & A. IN SUPP. THEREOF

*I.    Introduction.*

On July 16, 2013, the Court preliminarily approved a Settlement Agreement between Plaintiff Collette McDonald and Defendant Airport Terminal Services, Inc. ("ATS"). The Settlement Agreement seeks to resolve class-wide claims for (a) ATS's alleged failure to pay meal-period wages to employees for documented missed meal breaks, (b) ATS's alleged failure to reimburse employees for the costs of maintaining their uniforms, and (c) ATS's alleged failure to provide employees with adequate workplace seating. The Settlement Agreement also seeks to resolve class-wide claims for (d) "continuing wages," (e) pay-stub damages, and (f) unfair competition that are derivative of the above-noted meal-period and uniform-expense claims. Under the Settlement Agreement, ATS has agreed to establish a $250,000 common fund for the benefit of 1,238 current and former employees. From the $250,000 common fund, those Class Members who have submitted claim forms will receive an average meal-period payment of $230, *i.e.*, *more* than 200% of what each member of the Settlement Class, on average, is owed for missed meals under Plaintiff's theory of the case. Those Class Members who have submitted claim forms will also receive an *additional* $238 each for the above-noted non-meal violations. Class Members will receive these amounts even if Class Counsel's requested fees and costs, the Claims Administrator's requested fees and costs, and Plaintiff's requested incentive award are approved in full. Furthermore, under the Settlement Agreement, ATS has agreed to provide the Settlement Class with additional, non-monetary relief to reduce the prospect of future missed breaks and seating violations—relief that could not otherwise be achieved absent settlement, even at the conclusion of a successful trial. Given these substantial benefits, and in light of the arguably dispositive defenses applicable to each of Plaintiff's claims, the Settlement Agreement should be finally approved as fair, reasonable, and adequate.

*II.    Summary of the Relevant Background Information.*

*A.    Plaintiff's Initiation of this Action and the Parties' Attempts at Resolution.*

Plaintiff commenced this action in Riverside County Superior Court on November

2, 2011.  (Dec. 9, 2011, Notice of Removal of Civil Action to U.S. Dist. Court ("Removal") [Docket No. 1] Ex. 1 at p. 18 of 58.)  ATS removed the action on December 9, 2011.  (See generally Removal [Docket No. 1].)

Plaintiff's Complaint alleges that ATS violated the Labor Code by failing to provide employees with proper meal breaks and failing to reimburse employees for the costs of maintaining their uniforms.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 7–8, 11–12, 32–35, 40–41.)  The Complaint also alleges a derivative claim under the Labor Code— stemming from the meal-break allegations—that ATS failed to provide adequate pay stubs to employees.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 9–10, 36–39.)  Similarly, the Complaint alleges a derivative Labor Code claim—also stemming from the meal-break allegations, as well as from the uniform-reimbursement allegations—that ATS failed to pay all wages due and owing to former employees.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 13, 42–44.)  In addition, the Complaint alleges a derivative unfair-competition claim under the California Business and Professions Code stemming from ATS's alleged failures to provide proper breaks and uniform-maintenance reimbursement.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 45–46.)  Finally, the Complaint alleges that ATS failed to provide adequate seating for employees.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 14–15.)

After removal, Plaintiff filed a Motion to strike ATS's Answer, arguing that ATS's affirmative defenses had been defectively alleged.  (Dec. 29, 2011, Notice of Mot. & Mot. to Strike ATS's Ans. to Pl.'s Unverified Compl. for Damages [Docket No. 10] at 2:20–10:4.)  The parties then stipulated to a continuance of the hearing on the Motion so that they could meet and confer about resolving Plaintiff's claims by settlement.  (See generally Jan. 5, 2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans. to Pl. Collette McDonald's Compl., et al., Pending Early Settlement Discussions [Docket No. 12]; Feb. 8, 2012, Stipulation Continuing Hearing on Mot. to Strike Def. ATS's Ans. to Pl. Collette McDonald's Compl., et al., Pending Early Settlement Discussions [Docket No. 15].)

After extensive negotiations, the parties agreed that the services of a private

mediator would assist in resolving Plaintiff's claims.  (Oct. 21, 2013, Decl. of Alan Harris in Supp. of Mot. for Final Approval of Class-Action Settlement ("Harris Decl.") [Docket No. 45] ¶ 5.)  In June 2012, the parties selected Lynn Frank of Frank and Feder—a mediator well-versed in wage-and-hour actions, including those brought in the airline industry—to act as mediator.  (Harris Decl. [Docket No. 45] ¶ 5.)  Mediation went forward in September 2012, during which the parties executed a short-form Memorandum of Understanding providing for the creation of a $250,000 settlement fund.  (Harris Decl. [Docket No. 45] ¶ 5.)  Over the next several months, the parties proceeded to negotiate the terms of a long-form settlement agreement encompassing the terms of the Memorandum of Understanding.  (Harris Decl. [Docket No. 45] ¶ 5.)  In May 2013, those negotiations resulted in the execution of the Settlement Agreement that is presently before the Court.  (Harris Decl. [Docket No. 45] ¶ 5.)

### B.    The Specific Claims for Relief Alleged in this Action.

Again, the Settlement Agreement seeks to resolve Plaintiff's claims for missed meal breaks, uniform-expense reimbursement, inadequate workplace seating, continuing wages, pay-stub violations, and unfair competition.  This section provides a brief recap of those claims and of the evidence relating thereto.

### 1.    Plaintiff's Meal-Period Claim.

The relevant Industrial Welfare Commission ("IWC") wage order provides that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes."  8 Cal. Code Regs. § 11090 subsec. 11(A).  See also Cal. Lab. Code § 512(a) (stating same).  Under the Labor Code, "[i]f an employer fails to provide an employee a meal period . . . in accordance with an applicable order of the [IWC], the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period [wa]s not provided."  Cal. Lab. Code § 226.7(b).

As alleged in the Complaint, Plaintiff's meal-period claim is focused on a very specific subset of meal-period violations, namely, those instances in which ATS's payroll

records reflect "NO LUNCH" codings.  (See Removal [Docket No. 1] Ex. 1 at ¶¶ 8 (alleging that "ATS failed to provide Plaintiff and [a]irport [a]gents with meal-period premium wages for those occasions on which they were not provided with adequate meal breaks . . . despite the fact that [ATS] kept track of those instances so that it could reverse the automatic meal-period deduction taken by its payroll system"), 34 (seeking meal-period wages for "[t]hose instances [that] are recorded in ATS's payroll system").)  According to evidence reviewed by Class Counsel, ATS required employees to sign a "NO LUNCH" form whenever the nature of the work prohibited them from taking a required meal break; a "NO LUNCH" coding was then made in ATS's timekeeping system to reverse the automatic deduction.  (Harris Decl. [Docket No. 45] ¶ 7.)  Although the "NO LUNCH" form attributed the reason for the missed meal to the nature of the work—as opposed to attributing it to the employee's voluntary decision to work through the meal—ATS *never* paid any meal-period wages for the "NO LUNCH" workdays. (Harris Decl. [Docket No. 45] ¶ 8.)

Based on this evidence and these allegations, Plaintiff seeks to settle *only* the meal-period liability arising when ATS recorded a missed meal, *i.e.*, those instances in which a "NO LUNCH" coding was made in ATS's timekeeping system.  To this end, the Settlement Agreement's release is limited to the factual allegations pled in the Complaint. (Harris Decl. [Docket No. 45] Ex. 1 at § 14.)  Because those factual allegations are limited to ATS's "NO LUNCH" policy, the Settlement Class' meal-period claims that do not relate to the "NO LUNCH" policy are not being released.

## 2.    *Plaintiff's Expense-Reimbursement and Derivative Claims.*

In addition to the meal-break claim, Plaintiff's Complaint alleges that ATS failed to reimburse employees for the costs of maintaining their uniforms, in violation of section 2802 of the Labor Code.  Plaintiff's Complaint also alleges that, based on ATS's alleged failures to provide uniform-maintenance reimbursement and meal-period premium wages for "NO LUNCH" codings, ATS is liable for continuing wages under sections 201 through 203 of the Labor Code, pay-stub damages under section 226 of the Labor Code,

and unfair competition under section 17200 *et seq.* of the Business and Professions Code.

As to uniform-maintenance reimbursement, section 2802 of the Labor Code requires an employer to "indemnify his or her employee[s] for all necessary expenditures or losses incurred by the employee[s] in direct consequence of the discharge of [their] duties." Cal. Lab. Code § 2802(a). Moreover, under the relevant IWC wage order, "[w]hen uniforms are required by employers to be worn by . . . employee[s] as a condition of employment, such uniforms shall be provided and maintained by the employer." 8 Cal. Code Regs. § 11090 subsec. 9(A). Based on these provisions, Plaintiff's Complaint alleges that ATS's employees were required to wear uniforms but were never reimbursed for the costs of cleaning them. (See Removal [Docket No. 1] Ex. 1 at ¶¶ 11–12, 40–41.) According to evidence reviewed in connection with the mediation, although all ATS employees—including Plaintiff—were responsible for cleaning their uniforms, ATS never reimbursed them for cleaning costs and never apprised them that they were entitled to request cleaning-expense reimbursement. (Harris Decl. [Docket No. 45] ¶ 13; July 8, 2013, Supplemental Decl. of Collette McDonald in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class ("McDonald Decl.") [Docket No. 33] ¶ 4.) However, the evidence reviewed also demonstrates that ATS never required employees to professionally dry clean these garments; instead, employees were free to machine-wash their uniforms with their non-work apparel, reducing any costs associated with the alleged failure to reimburse. (Harris Decl. [Docket No. 45] ¶ 14; McDonald Decl. [Docket No. 33] ¶ 4.) Further reducing any such costs is the fact that, in lieu of cleaning their uniforms, ATS permitted employees to simply request new garments. (Harris Decl. [Docket No. 45] ¶ 14.) Because the Settlement Agreement's release is limited to the Complaint's factual allegations, the only expense-reimbursement claim being released concerns uniform-cleaning costs, not the whole panoply of reimbursable expenses under section 2802. (Harris Decl. [Docket No. 45] Ex. 1 at § 14.)

As to Plaintiff's continuing-wage, pay-stub, and unfair-competition claims, these

claims are entirely derivative of the above-described uniform-maintenance and "NO LUNCH" meal-period claims. Accordingly, if the underlying claims ultimately fail, the continuing-wage, pay-stub, and unfair-competition claims likewise fail. For instance, as to continuing wages, Labor Code sections 201 and 202 require that former employees be timely paid all wages due and owing upon the termination of employment. See Cal. Lab. Code §§ 201(a), 202(a). Employers who violate section 201 or 202 owe their aggrieved employees an additional day's worth of wages for each day of non-payment, up to a maximum of thirty days. Id. § 203(a). The employees' wages, in other words, "continue" to accrue for up to thirty days. Plaintiff's Complaint alleges that former ATS employees who were denied meal-period wages for "NO LUNCH" workdays—including Plaintiff herself, whose employment ended in mid-2011 (see McDonald Decl. [Docket No. 33] ¶ 2)—are entitled to these continuing wages. (Removal [Docket No. 1] Ex. 1 at ¶¶ 13, 42–44.) The same goes for all employees who were not provided amounts to cover the expense of cleaning their uniforms. (Removal [Docket No. 1] Ex. 1 at ¶ 43.)

As alleged, then, Plaintiff's continuing-wage claim does not address all violations of sections 201 and 202. For example, it does not address the failure to issue a timely final paycheck to former employees (occurring when, say, employees are fired but not given a check on their last day). Similar to the meal-period claim, then, Plaintiff's continuing-wage claim is limited to a very specific type of violation: the failure to include all wages in employees' final paychecks based on either a failure to pay meal-period wages for "NO LUNCH" codings or a failure to provide amounts for uniform-cleaning reimbursement. Because the Settlement Agreement's release is limited to the Complaint's factual allegations, only these derivative continuing-wage claims are being released. (Harris Decl. [Docket No. 45] Ex. 1 at § 14.)

The same can be said for Plaintiff's pay-stub claim under section 226 of the Labor Code, which claim is derivative of the above-described "NO LUNCH" violation. Section 226 requires employers to provide their employees with "accurate itemized statement[s]" accompanying their paychecks, listing, *inter alia*, all wages earned. Cal. Lab. Code

§ 226(a).  If "[a]n employee suffer[s] injury" stemming from a failure to provide such information, he or she is entitled to recover statutory damages of up to $100 for each incorrect pay stub.  Id. § 226(e)(1).  As alleged in Plaintiff's Complaint, whenever ATS coded a "NO LUNCH" workday for an employee, it should have paid a missed-break wage, and that wage should have appeared on the employee's pay stub.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 10, 38.)  As alleged, then, Plaintiff's pay-stub claim does not address all violations of section 226.  Similar to the continuing-wage claim, because the Settlement Agreement's release is limited to the factual allegations pled in the Complaint, only this derivative pay-stub cause of action is being released.  (Harris Decl. [Docket No. 45] Ex. 1 at § 14.)

Plaintiff's final derivative claim is for unfair competition under section 17200 *et seq.* of the Business and Professions Code.  Section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  In effect, "[a]n action based on this statute 'borrows' violations of other laws," Harris v. Investors' Business Daily, Inc., 138 Cal. App. 4th 28, 32–33 (2006), meaning that any statutory violation results in a violation of section 17200.[3]  Plaintiff may properly seek restitution for "NO LUNCH" meal-period wages and uniform-expense reimbursement under section 17200 *et seq.* along with her claims under the Labor Code.[4] See Cal. Bus. & Prof. Code § 17203.  This, in fact, is precisely what Plaintiff seeks by way of her section 17200 claim.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 45–46.)  Again, because the Settlement Agreement's release is limited to the factual allegations pled in the Complaint, only this precise, derivative unfair-competition claim is being released. (Harris Decl. [Docket No. 45] Ex. 1 at § 14.)

---

[3] In other words, this claim completely overlaps Plaintiff's alleged underlying claims. Plaintiff has alleged it because it expands the applicable statute of limitations.  Compare Cal. Civ. Proc. Code § 338 (adopting a three-year statute for Labor Code violations) with Cal. Bus. & Prof. Code § 17208 (establishing a four-year limitations period).

[4] Because section 17200 only permits restitution as opposed to damages *per se*, see, e.g., Theme Promotions, Inc. v. New Am. Mktg. FSI, 546 F.3d 991, 1009 (9th Cir. 2008), and because continuing wages and statutory pay-stub damages are nonrestitutionary, the only recovery available under Plaintiff's unfair-competition claim are those stemming from the alleged meal-period and expense-reimbursement allegations.

### 3.     *Plaintiff's Improper-Seating Claim.*

Plaintiff's final claim in her Complaint concerns ATS's alleged failure to provide adequate seating for its employees.  (Removal [Docket No. 1] Ex. 1 at ¶¶ 14–15.)  As to seating, the relevant IWC wage order requires that "[a]ll working employees . . . be provided with suitable seats when the nature of the work reasonably permits the use of seats."  8 Cal. Code Regs. § 11090 subsec. 14(A).  A violation of the wage order's seating requirement is a violation of the Labor Code.  See Cal. Lab. Code § 1198 (stating that "[t]he employment of any employee . . . under conditions of labor prohibited by [a wage] order is unlawful"); Bright v. 99¢ Only Stores, 189 Cal. App. 4th 1472, 1479 (2010) (holding that "section 1198 renders unlawful violations of the suitable seating requirement of [the] wage order").  However, seating violations do *not* give rise to a claim for damages; instead, they merely form the basis for a civil-penalty claim under the Private Attorneys General Act ("PAGA"), section 2698 *et seq.* of the Labor Code.  See, e.g., Silva v. U.S. Bancorp, 2011 WL 7096576 at *4 (C.D. Cal. filed Oct. 6, 2011) (holding that "monetary remedies for these violations are only available in the form of penalties under PAGA").

For this reason, although Plaintiff's Complaint includes improper-seating allegations, it does not allege a "stand-alone" improper-seating claim.  Because non-penalty damages are unavailable for any such violation, the Settlement Agreement includes non-monetary relief addressing the seating issue.  Specifically, ATS is required under the Settlement Agreement to request the installation of additional seating that airport regulators determine does not interfere with airport operations.  (Harris Decl. [Docket No. 45] Ex. 1 at § 8.)  In addition, ATS is required to request the installation of regulator-approved mats to alleviate the stress of standing when seating is impossible.  (Harris Decl. [Docket No. 45] Ex. 1 at § 8.)  As explained below in section III.B.5 of this Memorandum, these prospective benefits provided by the Settlement Agreement could not have been obtained even after a successful trial on the merits, given Plaintiff's status as a former employee.

### C.  The Order Granting Preliminary Approval and Conditional Certification.

After the Settlement Agreement was executed in May 2013, Plaintiff filed her Motion for preliminary approval.  (See generally May 23, 2013, Notice of Mot. & Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class [Docket No. 26].)  During the June 24, 2013, hearing on the Motion, the Court requested supplemental briefing directed principally to the issue of whether Plaintiff's claims were amenable to class-wide treatment.  (See June 24, 2013, Civil Minutes ("Civil Minutes") [Docket No. 31] at 1.)  Plaintiff filed that briefing on July 8, 2013.  (See generally July 8, 2013, Supplemental Mem. of P. & A. in Supp. of Mot. for Preliminary Approval of Class-Action Settlement & Conditional Certification of Settlement Class [Docket No. 32].)  On July 16, 2013, after having reviewed Plaintiff's supplemental briefing, the Court issued a detailed ruling certifying the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(3).  (See Civil Minutes [Docket No. 36] at 1–12.)

### D.  Distribution of the Settlement Fund to Class Members.

The certified Settlement Class consists of all non-exempt employees who were employed by ATS in California at any time from November 2, 2007, through July 16, 2013.  (Harris Decl. [Docket No. 45] Ex. 1 at § 3.)  There are a total of 1,238 individuals in the Settlement Class.  (Oct. 21, 2013, Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form, & Req. for Exclusion Form & Report on Claim Forms & Exclusions Received ("Sherwood Decl.") [Docket No. 46] ¶ 4.)  Pursuant to the Settlement Agreement's terms, ATS has agreed to pay $250,000 in cash (the "Gross Settlement Payment") for the Settlement Class' benefit. (Harris Decl. [Docket No. 45] Ex. 1 at § 7.)

The Gross Settlement Payment is to be used to pay the costs of delivering the Class Notice, claim form, and exclusion-request form to the Settlement Class, as well as to pay attorney's fees and costs to Class Counsel, and an incentive award to Plaintiff, all as

/ / / / /

approved by the Court.[5]  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.A–C.)  After those amounts are deducted, the remainder (the "Net Settlement Fund") will be distributed to Class Members in a two-step process.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)  In the first step, 33.33% of the Net Settlement Fund will be distributed among those Class Members who have submitted valid and timely claim forms.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)  This distribution will be made on a *pro rata* basis according to the relative number of "NO LUNCH" meal periods experienced by each such Class Member, as reflected in ATS's payroll system.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)  Accordingly, the more workdays that ATS's time sheets reflect a "NO LUNCH" coding for a participating Class Member, the greater his or her share.  In the second step of the distribution, the remaining 66.67% of the Net Settlement Fund will be divided evenly among all Class Members who have submitted valid and timely claim forms.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)

The portion of the Net Settlement Fund distributed according to "NO LUNCH" workdays will be characterized as 50% wages, 25% liquidated damages, and 25% interest; the portion distributed evenly among participating Class Members will be characterized as 75% expense reimbursement and 25% interest.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)  As to the portion constituting wages, relevant taxes will be withheld.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)  Unclaimed funds—on account of, *e.g.*, uncashed settlement checks—will escheat to the State of California Controller's Office, where they will be held for Class Members as unclaimed property.  (Harris Decl.

---

[5] Class Counsel filed their Motion for attorney's fees and costs on September 26, 2013, requesting $82,500 in fees and $8,069.34 in incurred litigation expenses.  (Sept. 26, 2013, Pl.'s Notice of Mot. & Mot. for Award of Att'ys Fees & Reimbursement of Costs ("Mot. for Fees") [Docket No. 38] at 25:23–24.)  The Motion for attorney's fees and costs was filed on that early date—*i.e.*, two weeks before the end of the claims-submission deadline and one month before the objection deadline—to safeguard the due-process rights of the Settlement Class.  See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th Cir. 2010) (holding that a district court should set a schedule that provides class members an opportunity to review class counsel's completed fee motion before the objection window expires).  The reasonableness of the amount of fees and costs requested is discussed at length in the Motion for fees and is briefly recapped in section II.H of this Memorandum, *infra*.

1    [Docket No. 45] Ex. 1 at § 12.E.)  ATS is therefore not entitled to a reversion of any

2    amounts.

3          **E.      The Provision of Class Notice and the Settlement Class' Response.**

4          In granting preliminary approval, the Court directed the parties to comply with the

5    notice provisions set out in the Settlement Agreement.  (Civil Minutes [Docket No. 36] at

6    21–23.)  Under the Settlement Agreement, a Class Notice, claim form, and exclusion-

7    request form were to be delivered to the Settlement Class by the parties' chosen Claims

8    Administrator.  (See Harris Decl. [Docket No. 45] Ex. 1 at §§ 11–12.A.)  The parties

9    selected Gilardi & Co., LLC ("Gilardi") as the Claims Administrator—a well-established

10   firm based in San Rafael, California that Class Counsel have successfully used in other

11   class-wide wage-and-hour settlements.  (Harris Decl. [Docket No. 45] ¶ 21.)

12         The Class Notice herein includes the information specified by Federal Rule of

13   Civil Procedure 23.  Specifically, the Class Notice describes the action, the definition of

14   the Settlement Class, and the class-wide claims; it explains that individuals can enter an

15   appearance through an attorney and that the Court will exclude whoever opts out; and it

16   specifies the time requirements and manner of requesting exclusion, as well as the

17   binding effect of a class-wide judgment.  (Compare Sherwood Decl. [Docket No. 46] Ex.

18   A with Fed. R. Civ. Proc. 23(c)(2)(B) (stating that "[t]he notice must clearly and

19   concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the

20   definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

21   member may enter an appearance through an attorney if the member so desires; (v) that

22   the court will exclude from the class any member who requests exclusion; (vi) the time

23   and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

24   members under Rule 23(c)(3)").)  Although Rule 23 does not expressly require that class

25   notices inform class members of their objection rights, see Int'l Union v. Gen Motors

26   Corp., 497 F.3d 615, 630 (6th Cir. 2007), the Class Notice herein explains that Class

27   Members could object (see Sherwood Decl. [Docket No. 46] Ex. A).  Similarly, although

28   Rule 23 does not require that class members be provided with an exclusion-request form,

the materials delivered to the Settlement Class included a pre-printed opt-out form.

(Sherwood Decl. [Docket No. 46] Ex. A.)  Furthermore, (i) the Class Notice provides a

plain-language overview of the Settlement Agreement's terms, (ii) it indicates the time

and place of the final-approval hearing, (iii) it displays the address and telephone number

of Class Counsel and the procedure for making inquiries, and (iv) it provides information

regarding the fees to be requested by Class Counsel and the incentive award to be

requested for the named Plaintiff.  (Sherwood Decl. [Docket No. 46] Ex. A.)  In addition,

the Class Notice explains the procedures for allocating the Net Settlement Fund to Class

Members.  (Sherwood Decl. [Docket No. 46] Ex. A.)  All told, this satisfies the content

requirements with respect to class-wide settlement notices, and the Court therefore

approved the template Class Notice—as well as the claim form and exclusion-request

form—for delivery to the Settlement Class in its Order granting preliminary approval.

(See Civil Minutes [Docket No. 36] at 21–23.)

As to dissemination of the Class Notice, claim form, and opt-out form, the Court

specifically found that "the notice and administrative procedures [set forth in the

Settlement Agreement were] adequate."  (Civil Minutes [Docket No. 36] at 23.)  Under

the Settlement Agreement, Gilardi was to deliver these materials to the Settlement Class

via first-class mail within ten days of receiving each individual's last-known address

from ATS.  (Harris Decl. [Docket No. 45] Ex. 1 at § 12.A.)  ATS provided 1,238 name-

and-address records to Gilardi on August 16, 2013, and, after updating each address using

the National Change of Address database—as required under the Settlement Agreement

(see Harris Decl. [Docket No. 45] Ex. 1 at § 12.A)—Gilardi timely mailed the Class

Notice, claim form, and opt-out form to the Settlement Class on August 26, 2013.

(Sherwood Decl. [Docket No. 46] ¶¶ 4, 6.)  Of the 1,238 Class Notices, claim forms, and

exclusion-request forms mailed, 129 were returned as undeliverable by the U.S. Postal

Service.  (Sherwood Decl. [Docket No. 46] ¶ 7.)  Pursuant to the Settlement Agreement,

Gilardi performed an address skip-trace as to these individuals, which provided 117

updated addresses.  (Sherwood Decl. [Docket No. 46] ¶ 7.)  Gilardi then re-mailed the

1   Class Notice, claim form, and exclusion-request form to these 117 individuals.

2   (Sherwood Decl. [Docket No. 46] ¶ 7.)  Under the Settlement Agreement, the Settlement

3   Class then had forty-five days to complete and return their claim forms or opt-out

4   requests.  (Harris Decl. [Docket No. 45] Ex. 1 at § 12.A.)

5        These delivery procedures constitute the "best notice . . . practicable under the

6   circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  See, e.g., Monterrubio v. Best Buy

7   Stores, L.P., --- F.R.D. ---, 2013 WL 2106085 at *8 (E.D. Cal. filed May 14, 2013)

8   (explaining that "the 'best notice . . . practicable under the circumstances'" does not mean

9   that "actual notice" must be provided to each and every class member; that "[n]otice by

10  mail is sufficient to provide due process to known affected parties, so long as the notice is

11  'reasonably calculated . . . to apprise interested parties of the pendency of the action and

12  afford them an opportunity to present their objections'"; and that "notice by mail to

13  [c]lass [m]embers' last known addresses" satisfies this standard) (quoting Fed. R. Civ.

14  Proc. 23(c)(2)(B)) (ellipses in original); Mullane v. Cent. Hanover Bank & Trust Co., 339

15  U.S. 306, 314 (1950)) (citing Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994));

16  Moshogiannis v. Sec. Consultants Group, Inc., 2012 WL 423860 at *7 (N.D. Cal. filed

17  Feb. 8, 2012) (approving a forty-five-day claims-submission period).

18       In response to Gilardi's mailing, only sixteen individuals validly opted out, only

19  one objection was submitted, and a total of 373 Class Members—i.e., 30% of the

20  Settlement Class—submitted timely claim forms.  (Sherwood Decl. [Docket No. 46]

21  ¶¶ 10–11, 14.)  As of October 18, 2013, an additional three Class Members submitted

22  claims after the forty-five-day claims-submission period.  (Sherwood Decl. [Docket No.

23  46] ¶ 14.)  In the interest of fairness, Class Counsel propose that those three additional

24  claims be honored.  See, e.g., Bond v. Ferguson Enters., Inc., 2011 WL 2648879 at *6

25  (E.D. Cal. filed June 30, 2011) (allowing untimely claims on the parties' agreement).

26       **F.    *The Payments to Class Members Based on the Response Rate.***

27       As explained above, under the Settlement Agreement, the $250,000 Gross

28  Settlement Payment will be distributed to Class Members who have submitted valid

claims after deducting amounts for Class Counsel's fees and costs, Gilardi's fees and costs, and an enhancement payment to Plaintiff for her services in prosecuting this action. Restricting the payments to those Class Members who have submitted claim forms is the usual procedure in class-wide settlements. See, e.g., Burden v. Selectquote Ins. Servs., 2013 WL 3988771 at *1, 6 (N.D. Cal. filed Aug. 2, 2013) (granting approval of a wage-and-hour settlement that allocates settlement funds only to those class members who have submitted claim forms); Minor v. FedEx Office & Paint Servs., Inc., 2013 U.S. Dist. LEXIS 106655 at *3–4, 10 (N.D. Cal. filed July 30, 2013) (same); Beck-Ellman v. Kaz USA, Inc., 2013 WL 1748729 at *2 (S.D. Cal. filed Jan. 7, 2013) (directing class members to submit claim forms in order to receive settlement payments); Weeks v. Kellogg Co., 2011 U.S. Dist. LEXIS 155472 at *53, 59, 148 (C.D. Cal. filed Nov. 23, 2011) (granting approval of a settlement that allocates settlement funds only to those class members who have submitted claim forms). See also Manual for Complex Litigation Fourth § 21.66 (2004) (advocating the use of claim forms).

The rationale for limiting settlement disbursements to class members who submit claim forms is that such a "process prevents checks from being mailed to unverified and old addresses[,] thereby reduc[ing] undeliverable mail and fraudulently cashed checks." Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 594 (N.D. Ill. 2011). See also Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74849 at *71–72 (C.D. Cal. filed Sept. 10, 2007) (explaining that "[b]lindly mailing checks to [c]lass [m]embers . . . would be costly, unnecessary and wasteful, and would deplete the [s]ettlement [f]und without necessarily benefitting [c]lass [m]embers"), rev'd in part on other grounds, 563 F.3d 948 (9th Cir. 2009). The claims process also economizes on claims-administration expenses. See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, 2006 WL 3332829 at *2 (E.D. La. filed Nov. 15, 2006) (explaining that "sending unsolicited checks to unverified addresses can end up 'cost[ing] a ton of money,'" as "administrators 'get to the point where you never close the case'"). To this end, the Settlement Agreement requires that individuals complete the relatively easy process of verifying

1    their contact information in order to receive a portion of the common-fund settlement.

2    (Sherwood Decl. [Docket No. 46] Ex. A.)

3        As noted above, a total of 376 Class Members submitted claim forms.  (Sherwood

4    Decl. [Docket No. 46] ¶ 14.)  Also as noted above, the Settlement Agreement provides

5    that payments from the $250,000 common fund be made to those Class Members after

6    deducting attorney's fees and costs, Gilardi's fees and costs, and Plaintiff's enhancement

7    payment.  Assuming that the Court awards $82,500 and $8,069.34 in fees and costs,

8    respectively to Class Counsel; $20,000 in claims-administration fees and costs to Gilardi;

9    and $5,000 to Plaintiff as an enhancement, $134,430.66 will remain for distribution to

10    participating Class Members.  Again, of this $134,430.66 Net Settlement Fund, one-third

11    ($44,805.74) is earmarked for distribution to those participating Class Members who

12    experienced "NO LUNCH" workdays according to the relative number of their canceled

13    meals, and two-thirds ($89,624.92) is to be distributed evenly to participating Class

14    Members in satisfaction of their uniform-maintenance, continuing-wage, pay-stub, and

15    unfair-competition claims.  (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.)

16        Of the 1,238 individuals in the Settlement Class, a total of 549 experienced "NO

17    LUNCH" workdays.  (Sherwood Decl. [Docket No. 46] ¶ 5.)  All told, there were a total

18    of 4,965 "NO LUNCH" workdays across these 549 individuals, meaning that, on

19    average, each individual experienced 9 "NO LUNCH" workdays.  (Sherwood Decl.

20    [Docket No. 46] ¶ 5.)  According to Gilardi, of the 376 Class Members who submitted

21    claims, 195 have no "NO LUNCH" codings.  (Sherwood Decl. [Docket No. 46] ¶ 14.)

22    The total number of "NO LUNCH" codings for these participating Class Members is

23    1,663.  (Sherwood Decl. [Docket No. 46] ¶ 14.)  Based on these figures, the average, pre-

24    tax net settlement payment to each of these Class Members is approximately $230

25    (= $44,805.74 ÷ 195 Class Members), or approximately $27 per "NO LUNCH" workday

26    (= $44,805.74 ÷ 1,663 "NO LUNCH" workdays).

27        Under Plaintiff's theory of the case, this average meal-period payment represents

28    *more* than what Class Members could have received after a successful trial.  This follows

because, under the Labor Code, an employee's meal-period wage is equal to his or her "regular rate," which for present purposes is his or her hourly wage, see Cal. Lab. Code § 226.7, and because, according to ATS's records, the average hourly wage for the Settlement Class is only $12.47. (Harris Decl. [Docket No. 45] ¶ 9.) Accordingly, total damages for missed meals across the entire Settlement Class equal $61,913.55 (= 4,965 "NO LUNCH" workdays × $12.47 hourly wage), or, on average, approximately $112 (= $61,913.55 ÷ 549 individuals) for each individual who experienced a "NO LUNCH" workday. Participating Class Members, on average, therefore stand to receive $118 more than they are owed in missed-meal compensation for "NO LUNCH" codings.

As for the remaining, $89,624.92 portion of the Net Settlement Fund, each Class Member who submitted a claim form will receive an equal share of the $89,624.92 in satisfaction of their uniform-maintenance, continuing-wage, pay-stub, and unfair-competition claims. (Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.) Again, a total of 376 individuals submitted claim forms. (Sherwood Decl. [Docket No. 46] ¶ 14.) Each such Class Member will therefore receive a pre-tax award of approximately $238 (= $89,624.92 ÷ 376 Class Members). These recoveries are *on top of* whatever amounts they may receive for their "NO LUNCH" claims. This additional recovery is considerable in light of the limited damages suffered on account of employees not being reimbursed for machine-washing their uniforms. It is also considerable given ATS's arguably dispositive defenses, discussed below in section III.B.2 of this Memorandum.

### G.    *Additional Non-Monetary Relief Under the Settlement Agreement.*

In addition to providing these monetary benefits, the Settlement Agreement requires ATS to request the installation of additional seating that airport regulators determine does not interfere with airport operations. (Harris Decl. [Docket No. 45] Ex. 1 at § 8.) In addition, ATS is required to request the installation of regulator-approved mats to alleviate the stress of standing when seating is impossible. (Harris Decl. [Docket No. 45] Ex. 1 at § 8.) As explained below in section III.B.5 of this Memorandum, these prospective benefits could not have been obtained even after a successful trial on the

1  merits, given Plaintiff's status as a former employee.

2  ### H.    Fees, Costs, and Plaintiff's Incentive Award.

3  The above-described payments to participating Class Members will be made in full

4  even if the Court grants all of Class Counsel's requested attorney's fees and costs, awards

5  all of Gilardi's fees and costs, and approves a $5,000 incentive award to Plaintiff. The

6  fees, costs, and enhancement payments should therefore be approved.

7  With respect to attorney's fees and costs, Class Counsel filed a Motion requesting

8  $82,500 in fees (equal to 33% of the Gross Settlement Payment) and $8,069.34 in costs

9  on September 26, 2013. (Mot. for Fees [Docket No. 38] at 25:23–24.) As explained in

10  that Motion, Class Counsel are entitled to have their fees and costs paid from the

11  $250,000 common fund. (Mot. for Fees [Docket No. 38] at 11:25–13:22.) As also

12  explained in the Motion, although the requested fees exceed the 25% "benchmark," they

13  are warranted because participating Class Members will, on average, receive more than

14  200% of their missed-meal damages under Plaintiff's theory of the case, as well as an

15  *additional* $238 for their non-meal-period and derivative claims—an exceptional result,

16  given the potentially dispositive defenses applicable to Plaintiff's claims. (Mot. for Fees

17  [Docket No. 38] at 13:23–17:15.) They are also warranted because Class Counsel's

18  lodestar, in fact, exceeds the fee request by over 50%. (Mot. for Fees [Docket No. 38] at

19  20:11–25:3.) Furthermore, because most settlements of comparable size result in fees in

20  excess of the benchmark, and because Class Counsel undertook this case on an entirely

21  contingent basis, the 33% fee request is reasonable. (Mot. for Fees [Docket No. 38] at

22  17:27–19:6.)

23  With respect to Gilardi's fees and costs, Plaintiff notes that "[t]he post-settlement

24  costs of providing notice to the class can reasonably be considered a benefit to the class."

25  Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003). Accordingly, courts typically

26  allow such amounts to be financed from the common fund itself. See e.g., Weeks, 2011

27  U.S. Dist. LEXIS 155472 at *107; Smith v. CRST Van Expedited, Inc., 2013 WL 163293

28  at *5 (S.D. Cal. filed Jan. 14, 2013). Here, Gilardi is requesting $20,000 in fees and costs

1  for administering the settlement.  (Sherwood Decl. [Docket No. 46] ¶ 15.)  This is only

2  $26 more than the amount contemplated at the preliminary-approval stage (see Civil

3  Minutes [Docket No. 36] at 22), it is therefore "presumed reasonable," and it should be

4  approved.  Smith, 2013 WL 163293 at *5.

5          Finally with respect to Plaintiff's incentive award, the Settlement Agreement

6  permits Plaintiff to apply for an enhancement of up to $5,000.  (Harris Decl. [Docket No.

7  45] Ex. 1 at § 7.C.)  According to the Ninth Circuit, "[i]ncentive awards are fairly typical

8  in class action cases" and "are intended to compensate class representatives for work

9  done on behalf of [a] class, to make up for financial or representational risk undertaken in

10 bringing the action, and, sometimes, to recognize their willingness to act as a private

11 attorney general."  Rodriguez, 563 F.3d at 958–59, vacated on other grounds, Rodriguez

12 v. Disner, 688 F.3d 645, 660 (9th Cir. 2012)  As recently explained by the Southern

13 District of California, courts should consider "'the risk to the class representative in

14 commencing suit, both financial and otherwise,'" as well as "'the amount of time and

15 effort spent by the class representative'" and "'the personal benefit (or lack thereof)

16 enjoyed by the class'" under the settlement.  Smith, 2013 WL 163293 at *6 (quoting Van

17 Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

18         Here, all of the factors weigh in favor of approving the award.  Again, as a direct

19 result of Plaintiff's having brought this suit, Class Members who have submitted claims

20 will each receive, on average, *more* than 200% of their missed-meal damages, as well as

21 an *additional* $238 for their non-meal-period and derivative claims.  Second, Plaintiff has

22 expended considerable time conferring with Class Counsel and their investigators,

23 providing factual background and support, analyzing ATS's provided data, and attending

24 the mediation.  (May 23, 2013, Decl. of Collette McDonald in Supp. of Mot. for

25 Preliminary Approval of Class-Action Settlement & Conditional Certification of

26 Settlement Class [Docket No. 26] ¶¶ 2–4; McDonald Decl. [Docket No. 33] ¶¶ 5, 7.)

27 Third, she "undertook the financial risk that, in the event of a judgment in favor of [ATS]

28 in this action, [she] could have been personally responsible for any costs awarded in

favor of [ATS]." <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Indeed, incentive awards are particularly appropriate in the context of employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." <u>Campbell v. First Investors Corp.</u>, 2012 WL 5373423 at *8 (S.D. Cal. filed Oct. 29, 2012).  Because the requested incentive payment is *below* the range awarded in similar cases, <u>see</u> <u>Smith</u>, 2013 WL 163293 at *6 (noting that incentive awards range from $25,000 to $50,000), it should be approved.

That said, Plaintiff notes that, in granting preliminary approval, the Court concluded that her enhancement award should not exceed $1,240.  (Civil Minutes [Docket No. 36] at 20–21.)  The Court computed that amount by multiplying the hours she has personally spent litigating this case by her median hourly wage, $15.50.  (Civil Minutes [Docket No. 36] at 21.)  According to the Court, this amount was more reasonable than $5,000 "in light of the time expended" and "the disparity between the incentive award and the awards other [C]lass [M]embers will receive."  (Civil Minutes [Docket No. 36] at 21.)  In reaching this conclusion, the Court estimated that the average meal-period payment was $181 and that the average non-meal-period payment was $77.  As detailed above, based on the claims-administration data, the average meal-period and non-meal-period payments are actually $230 and $238, respectively.  In keeping with those increases, Plaintiff therefore respectfully requests that her enhancement award be increased to $5,000.

## III.  *Argument.*

### A.  *Class Certification Has Already Been Granted.*

As noted above, pursuant to Federal Rule of Civil Procedure 23, the Court has already certified the Settlement Class contemplated by the Settlement Agreement.  (Civil Minutes [Docket No. 36] at 4–12.)  As Plaintiff's claims have not changed since that time, certification remains appropriate, and the Court should finally certify a Class consisting all members of the preliminarily approved Settlement Class who did not

1  validly request exclusion under the Settlement Agreement.

2      **B.**     ***The Settlement Meets the Requirements for Final Approval.***

3      Rule 23 states that "[t]he claims . . . of a certified class may be settled . . . only

4  with the Court's approval." Fed. R. Civ. Proc. 23(e). As recently explained by the

5  Central District, "[a] court must engage in a two-step process to approve a proposed class

6  action settlement." <u>McKenzie v. Fed. Express Corp.</u>, 2012 WL 2930201 at *2 (C.D. Cal.

7  filed July 2, 2012). "First, the court must determine whether the proposed settlement

8  deserves preliminary approval." <u>Id.</u> If the court grants preliminary approval, then, after

9  class members have been given an opportunity to respond to the notice, "the [c]ourt must

10  determine whether final approval is warranted." <u>Id.</u> Final approval is warranted "only if

11  the settlement 'is fundamentally fair, adequate, and reasonable.'" <u>Id.</u> (quoting <u>Torrisi v.</u>

12  <u>Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993)).

13      Here, the Court has already granted preliminary approval, the Class Notice has

14  already been mailed, and Class Members have been afforded an opportunity to respond.

15  The present inquiry therefore focuses on whether the settlement is fair, adequate, and

16  reasonable in light of the responses received. In this regard:

17
18        Circuit law teaches that the court must balance the following factors
    to determine whether a class action settlement is fair, adequate, and
    reasonable: (1) the strength of the plaintiff's case; (2) the risk, expense,
19  complexity, and likely duration of further litigation; (3) the risk of
    maintaining class action status throughout the trial; (4) the amount offered in
20  settlement; (5) the extent of discovery completed and the stage of the
    proceedings; (6) the experience and views of counsel; . . . and [(7)] the
21  reaction of the class members to the proposed settlement.

22  <u>McKenzie</u>, 2012 WL 2930201 at *3 (citing <u>Torrisi</u>, 8 F.3d at 1375). Also relevant is

23  whether "'the settlement agreement was reached in arm's length negotiations,'" which

24  "'create[s] a presumption that the agreement is fair.'" <u>McKenzie</u>, 2012 WL 2930201at

25  *3 (quoting <u>Linney v. Cellular Alaska P'ship</u>, 1997 WL 450064 at *5 (N.D. Cal. filed

26  July 18, 1997)). Here, each of these factors weighs in favor of approval; Plaintiff's

27  Motion should therefore be granted.

28  / / / / /

### 1. Settlement Negotiations Were Conducted at Arm's Length.

As noted above, the Settlement Agreement is the result of a private mediation before an experienced wage-and-hour mediator. This supports approval. See, e.g., Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *14 (N.D. Cal. filed Apr. 1, 2011) (concluding that a settlement agreement negotiated under a mediator's supervision "supports a finding that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

### 2. The Strength of Plaintiff's Case.

Because the Settlement Class consists of airline-industry employees, there is a strong possibility that Plaintiff's meal-break claims are preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. Under the ADA, "a state . . . may not enact or enforce a law, rule, regulation, or other provision . . . related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). ADA preemption applies to state laws "'having a connection with, or reference to,' carrier 'rates, routes or services' . . . even if [the laws'] effects on rates, routes or services 'is only indirect'" and even if the laws are "'consistent' . . . with federal regulation[s]." Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008). ATS's counsel have repeatedly stressed to Class Counsel that compliance with California's meal-period statute would require ATS to regularly relieve employees of their work duties so that they can take uninterrupted, thirty-minute meal breaks. (Harris Decl. [Docket No 45] ¶ 16.) Because this would have an obvious effect on the scheduling of flights, ATS's argument goes, California's meal-break statute is preempted by the ADA.

The Northern District of California, in fact, recently held as much in Angeles v. U.S. Airways, Inc., 2013 WL 622032 (N.D. Cal. filed Feb. 19, 2013)—a putative class action brought on behalf of airline-industry employees. As explained in Angeles, "[i]t is easy to imagine a situation in which an [employee] must, by law, be relieved of duty, but doing so would prevent an aircraft from being fueled or serviced, or cargo from being unloaded such that it would impact the schedule of the point-to-point transportation of

passengers or cargo." <u>Angeles</u>, 2013 WL 622032 at *9. According to <u>Angeles</u>, although "state laws and regulations [concerning meal breaks] do not directly regulate [an airline-industry employer's] rates, routes or services, preemption appl[ies] even if the state law[s'] impact is indirect." <u>Id.</u> The court therefore dismissed the plaintiffs' claims. <u>Id.</u>

Other courts have reached a similar conclusion. In <u>Blackwell v. SkyWest Airlines, Inc.</u>, 2008 WL 5103195 (S.D. Cal. filed Dec. 3, 2008), for instance, the Southern District held that an airline-industry employee's class-wide meal-break claims were preempted under the ADA because they necessarily had an impact on air-carrier service. According to <u>Blackwell</u>, "requiring [airline employers] to provide [employees with] meal . . . periods could result in cascading flight delays, increased risk of death or serious injury to passengers and damage to aircraft, and security breaches." <u>Blackwell</u>, 2008 WL 5103195 at *17. Moreover, because requiring compliance with California's meal-break statute would increase labor costs (by necessitating either the payment of meal-period premium wages or the hiring of additional staff), airfare would ultimately increase, which would have "the 'forbidden significant effect' on air carriers' . . . prices[] and routes that the ADA seeks to avoid." <u>Id.</u> at *18. Preemption therefore applies. <u>Id.</u>

If preemption applies, the *none* of the Settlement Class are entitled to any meal-period damages, let alone damages under Plaintiff's derivative claims stemming therefrom. Indeed, even if Plaintiff's meal-period claim were not preempted, the Central District has held that derivative claims for noncompliant pay stubs and continuing wages cannot be based on violations of California's meal-period statute. <u>See</u> <u>Jones v. Spherion Staffing LLC</u>, 2012 WL 3264081 at *8–9 (C.D. Cal. filed Aug. 7, 2012) (explaining that, because a missed-breaks lawsuit asserts a claim that an employer failed to provide proper breaks instead of a claim that an employer failed to provide wages *per se*, there is no derivative violation of sections 226 or 203). Another potentially dispositive defense applies to Plaintiff's seating claim. Many members of the Settlement Class work "under wing" on airport tarmacs (see Harris Decl. [Docket No. 45] ¶ 17), meaning they are arguably required to be on their feet while at work. As a result, "the nature of the[ir]

work" may not "reasonably permit[]" the use of seats.  8 Cal. Code Regs. § 11090 subsec. 14(A).  See also Aguirre v. DSW, Inc., 2012 U.S. Dist. LEXIS 62984 at *34 (C.D. Cal. filed Jan. 19, 2012) (holding that "subsection (A) should not be interpreted to require an employer to provide an employee engaged in a 'standing' job a seat whether engaged in active duties or not").  Accordingly, ATS may only be required to provide seating "in reasonable proximity to the work area"; so long as employees are "permitted to use such [proximate] seats," there is no violation.  8 Cal. Code Regs. § 11090 subsec. 14(B).  According to the evidence, ATS arguably does provide such reasonably proximate seating to employees.  (Harris Decl. [Docket No. 45] ¶ 17.)  These defenses potentially eliminate *any* liability for Plaintiff's pay-stub, continuing-wage, and seating claims, and this factor therefore weighs in favor of final approval.

### 3. The Likely Duration of Further Litigation.

In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Because the Settlement Class has been conditionally certified for settlement purposes only, the likely duration of further litigation might well be several years.  Granting approval of the settlement, on the other hand, would create a $250,000 common fund that would quickly pay participating Class Members more than 200% of what they are owed for missed breaks, as well as an additional payment of $238.  This supports approval.

### 4. The Risk of Maintaining Class-Wide Status Through Trial.

"[I]f 'insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1).'"  Rodriguez, 2007 U.S. Dist. LEXIS 74849 at *40 (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 476 (S.D.N.Y. 1998)).  With respect to meal-break claims in particular, the California Supreme Court has held that "[a]n employer's duty . . . under . . . section 512 . . . is an obligation to provide a meal period," which is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities

and permits them a reasonable opportunity to take an uninterrupted 30-minute break."
Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  This means that an employer is not liable for meal-break violations if the employee voluntarily foregoes a break.  As recently explained by the Central District of California, there is often "no way of determining on a classwide basis whether [missed breaks] were violations . . . or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a break at all."  Ordonez v. Radio Shack, Inc., 2013 WL 210223 at *7 (C.D. Cal. filed Jan. 17, 2013).  There is thus a risk that Plaintiff's claims may be decertified before trial, and this factor weighs in favor of approval.

### 5.    *The Settlement Amount Offered.*

As explained above, even if Plaintiff's incentive award, all requested fees, and all requested costs are awarded, Class Members who have submitted claims will receive an average of $230 in missed-meal compensation—*i.e.*, more than 200% of what they are actually owed—as well as an additional $238.  This represents a more-than-reasonable resolution of this case.  See Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74767 at *30 (C.D. Cal. filed Sept. 10, 2007) (noting that a "settlement amount representing 33% of the maximum possible recovery was well within a reasonable range").  In addition, the Settlement Agreement calls for additional, non-monetary relief that Plaintiff would not have been able to obtain by way of trial, given that she is a former employee.  See, e.g., Helm v. Alderwoods Group, Inc., 2011 WL 5573837 at *5 (N.D. Cal. filed Nov. 15, 2011) (holding that "[a] former employee does not have standing to seek injunctive relief").  Because "this concession from [Defendant] exceeds what Plaintiff[] could have obtained even if [she] had prevailed at trial," this factor weighs in favor of approval.  Wren, 2011 WL 1230826 at *28.

### 6.    *The Extent of Discovery and the Stage of the Proceedings.*

As noted in the Order granting preliminary approval, this factor looks at the evidence reviewed by Class Counsel in negotiating the settlement, and it asks whether Plaintiff was capable of making an informed settlement decision.  (See Civil Minutes

[Docket No. 36] at 17–18.)  In reviewing this factor, the Court concluded that "Plaintiff . . . conducted sufficient investigation of the various issues . . . to warrant approval." (Civil Minutes [Docket No. 36] at 18.)  This factor thus supports approval.

### 7.    The Experience and Views of Counsel.

As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have substantial experience in prosecuting class actions, including wage-and-hour actions, and they are of the opinion that the settlement represents an excellent bargain for the Class given the litigation risks of carrying this case through trial.  (Harris Decl. [Docket No. 45] ¶¶ 2–4, 15–17.)  This weighs in favor of approval.

### 8.    The Reaction of the Class to the Proposed Settlement.

As noted above, of the 1,238 individuals in the Settlement Class, 376 have submitted claims (= 30% of the Settlement Class), sixteen individuals have validly requested exclusion, and only one objection has been submitted.[6]  This demonstrates support for the settlement, see, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801 at *14 (E.D. Cal. filed Nov. 27, 2012) (explaining that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that [its] terms . . . are favorable'") (quoting Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529); Sandoval v. Tharaldson Employee Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response), and final approval should therefore be granted.

### IV.    Conclusion.

For the foregoing reasons, the Settlement Agreement should be finally approved.

Dated:  October 21, 2013                            _/s/ David Zelenski_

---

[6] The Settlement Agreement permits Class Counsel to file a response to any objections five court days before the final-approval hearing. (Harris Decl. [Docket No. 45] Ex. 1 at § 13.)  Although the lone objection was rejected by the Court for noncompliance with the Central District's Local Rules (see Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37]), Class Counsel will respond to it no later than November 8, 2013.