Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
4771 Cromwell Avenue
Los Angeles, California 90027
Telephone: (323) 962-3777
Facsimile: (323) 962-3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

John P. Dorigan (SBN 98964)
LAW OFFICES OF JOHN P. DORIGAN
78-560 Via Bolero
La Quinta, California 92253
Telephone: (760) 564-3804
Facsimile: (760) 564-3807
jpdorigan@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE McDONALD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., and DOES 1–100, inclusive,<br><br>Defendants. | Case No. EDCV 11-01946 VAP (SPx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO OBJECTION TO PROPOSED SETTLEMENT**<br><br>*Assigned to Hon. Virginia A. Phillips*<br><br>Date: November 18, 2013<br>Time: 2:00 p.m.<br>Courtroom: 2 |

# Table of Contents

I.    Introduction .................................................................................................... 1

II.    Summary of the Relevant Procedural History ............................................ 3

III.    Argument ........................................................................................................ 7

    A.    The Court May Properly Reject the Objection for
        Noncompliance with the Settlement Agreement ............................... 7

    B.    Class Counsel and the Claims Administrator Are Entitled to
        Recover Their Respective Fees and Costs from the Common
        Fund .............................................................................................. 10

        1.    The $250,000 Gross Settlement Payment is a Common-
            Fund Recovery .................................................................. 10

        2.    The Total Amount of Fees Requested for Class Counsel
            Are Justified Under the Applicable Case Law .................... 12

        3.    Class Counsel's Costs, and the Fees and Costs of the
            Claims Administrator, Are Reasonable ............................. 18

    C.    Ms. Spahn Had Ample Time to Review Class Counsel's
        Publicly Available Fee-and-Cost Request .................................... 19

IV.    Conclusion .................................................................................................. 21

## Table of Authorities

*Cases* [1]

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y
    421 U.S. 420 (1975)..........................................................................................10

Barbosa v. Cargill Meat Solutions Corp.
    --- F.R.D.---, 2013 WL 3340939 (E.D. Cal. filed July 2, 2013)............................13, 19

Beck-Ellman v. Kaz USA, Inc.
    2013 WL 1748729 (S.D. Cal. filed Jan. 7, 2013) ...............................................8

Berrien v. New Raintree Resorts Int'l, LLC
    2012 U.S. Dist. LEXIS 33572 (N.D. Cal. filed Mar. 13, 2012) ..............................8

Boeing Co. v. Van Gemert
    444 U.S. 472 (1980)......................................................................................11, 12

Bolton v. U.S. Nursing Corp.
    2013 WL 2456564 (N.D. Cal. filed June 6, 2013) ...............................................19

Bond v. Ferguson
    2011 WL 2648879 (E.D. Cal. filed June 30, 2011)...............................................12

Carter v. Anderson Merchandisers, LP
    2010 WL 1946757 (C.D. Cal. filed May 11, 2010)...............................................18

Cent. R.R. & Banking Co. v. Pettus
    113 U.S. 116 (1885).......................................................................................10

Cicero v. DirecTV, Inc.
    2010 WL 2991486 (C.D. Cal. filed July 27, 2010) ...............................................13

Cohorst v. BRE Props., Inc.
    2011 WL 7061923 (S.D. Cal. filed Nov. 14, 2011) ...............................................8

Collado v. Toyota Motor Sales, U.S.A., Inc.
    2011 WL 5506080 (C.D. Cal. filed Oct. 17, 2011) ...............................................17

---

[1] Pursuant to the Court's Standing Order, where possible, all legal-database citations are to Westlaw instead of Lexis.

Craft v. County of San Bernardino
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................ 13

Dennis v. Kellogg Co.
   2013 WL 1883071 (S.D. Cal. filed May 3, 2013) ...................................... 7–8

Franco v. Ruiz Food Prods., Inc.
   2012 WL 5941801 (E.D. Cal. filed Nov. 27, 2012) ................................ 11–12

Gardner v. Equilon Enters., LLC
   2012 U.S. Dist. LEXIS 142033 (C.D. Cal. filed Oct. 1, 2012) .................... 20

Gross v. Symantec Corp.
   2013 U.S. Dist. LEXIS 75516 (N.D. Cal. filed May 28, 2013) ...................... 7

Hall v. Cole
   412 U.S. 1 (1973) ........................................................................................ 10

Hopkins v. Stryker Sales Corp.
   2013 WL 496358 (N.D. Cal. filed Feb. 6, 2013) .................................... 16, 18

In re Activision Sec. Litig.
   723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................... 12

In re Heritage Bond Litig.
   2005 WL 1594403 (C.D. Cal. filed June 10, 2005) .................................... 8–9

In re Mercury Interactive Corp. Sec. Litig.
   618 F.3d 988 (9th Cir. 2010) ...................................................................... 20

In re Nuvelo Sec. Litig.
   2011 WL 2650592 (N.D. Cal. filed July 6, 2011) ....................................... 13

In re Petition of Hill
   775 F.2d 1037 (9th Cir. 1985) ..................................................................... 12

In re TFT-LCD (Flat Panel) Antitrust Litig.
   2011 WL 7575004 (N.D. Cal. filed Dec. 27, 2011) ........................... 8, 19–20

Jefferson v. H & M Hennes & Mauritz, L.P.
   2013 U.S. Dist. LEXIS 2875 (C.D. Cal. filed Jan. 7, 2013)................... 11, 18

Knight v. Red Door Saloons, Inc.
    2009 WL 248367 (N.D. Cal. filed Feb. 2, 2009) ........................................... 12

Koz v. Kellog Co.
    2013 U.S. Dist. LEXIS 129205 (C.D. Cal. filed Sept. 10, 2013) ................................ 18

Lazarin v. Pro Unlimited, Inc.
    2013 WL 3541217 (N.D. Cal. filed July 11, 2013) ................................. 11, 19

Mills v. Electric Auto-Lite Co.
    396 U.S. 375 (1970) ........................................................... 10–11

Moore v. Verizon Commc'ns, Inc.
    2013 WL 4610764 (N.D. Cal. filed Aug. 28, 2013) ........................... 8

Oppenheimer Fund v. Sanders
    437 U.S. 340 (1978) .............................................................. 11

Rodriguez v. D.M. Camp & Sons
    2012 WL 6115651 (E.D. Cal. filed Dec. 7, 2012) ............................ 8

Sandoval v. Tharaldson Employee Mgmt., Inc.
    2010 WL 2486346 (C.D. Cal. filed June 15, 2010) ................................. 14–15

Singer v. Becton Dickinson & Co.
    2010 WL 2196104 (S.D. Cal. filed June 1, 2010) ............................ 14

Smith v. CRST Van Expedited, Inc.
    2013 WL 163293 (S.D. Cal. filed Jan. 14, 2013) ........................... 18

Sprague v. Ticonic National Bank
    307 U.S. 161 (1939) .............................................................. 10

Staton v. Boeing Co.
    327 F.3d 938 (9th Cir. 2003) ..................................................... 11

Thieriot v. Celtic Ins. Co.
    2011 WL 1522385 (N.D. Cal. filed Apr. 21, 2011) ...................................... 17

Trustees v. Greenough
    105 U.S. 527 (1882) ............................................................. 10

PL.'S MEM. OF P. & A. IN RESP. TO OBJECTION TO PROPOSED SETTLEMENT

Vasquez v. Coast Valley Roofing, Inc.
  266 F.R.D. 482 (E.D. Cal. 2010) ................................................................. 15

Vizcaino v. Microsoft Corp.
  290 F.3d 1043 (9th Cir. 2002) ................................................................... 13

Weeks v. Kellogg Co.
  2011 U.S. Dist. LEXIS 155472 (C.D. Cal. filed Nov. 23, 2011) ........................... 11, 20

Wren v. RGIS Inventory Specialists
  2011 WL 1230826 (N.D. Cal. filed Apr. 1, 2011) ....................................... 16

*Statutes and Rules*

Cal. Central Dist. Local R. 1-3 ............................................................. 9

Cal. Central Dist. Local R. 11-4.1 ........................................................ 6

Cal. Central Dist. Local R. 83-2.1.2.2 ................................................... 9

Cal. Lab. Code § 226.7 ..................................................................... 15

PL.'S MEM. OF P. & A. IN RESP. TO OBJECTION TO PROPOSED SETTLEMENT

## I.    *Introduction.*

On September 17, 2013, the Court received an "Objection to Proposed Settlement" submitted by Class Member Silvija Spahn.  The Objection contends that the fees and costs requested under the Settlement Agreement and General Release ("Settlement Agreement") between Plaintiff Collette McDonald and Defendant Airport Terminal Services, Inc. ("ATS") are excessive and, in any event, should not be paid out of the $250,000 common fund established by the Settlement Agreement.[2]  The Objection also contends that, because a website was not established at which the pleadings in this case could be viewed, Ms. Spahn could not evaluate the reasonableness of the fee-and-cost request.  Both of these arguments are without merit, and the Objection should be overruled.

As explained below, because attorney's fees and costs incurred in generating a common-fund settlement, as well as the fees and costs associated with administering such a settlement, constitute class-wide benefits, courts typically allow such amounts to be financed from the common fund itself.  Accordingly, there is nothing improper about deducting Class Counsel's attorney's fees and costs, and the fees and costs of claims administration, from the $250,000 common fund established by the Settlement Agreement.  Here, in fact, Class Counsel's fee request exceeds the 25% benchmark by only $20,000—a reasonable amount when judged relative to the total amount of time spent litigating this action.  Although Class Counsel's lodestar reflects over $127,358.25 in fees, they are requesting only $82,500—*i.e.*, $44,858.25 less than their lodestar.[3] Because this request will still allow participating Class Members to receive, on average, *more* than 200% of their missed-meal damages, as well as an *additional* $238 for the alleged non-meal-period violations, the request is proper and should be granted in full.

---

[2] Unless otherwise noted, capitalized terms used herein have the meanings set forth in the Settlement Agreement, attached most recently as Exhibit 1 to the October 21, 2013, Declaration of Alan Harris in support of final approval.

[3] As detailed below, the Claims Administrator is also requesting less in reimbursement than its total incurred fees and costs.

Class Counsel's cost request is also proper. Under the Settlement Agreement, Class Counsel were permitted to ask for up to $15,000 in litigation expenses. However, Class Counsel seek only 54% of that amount—*i.e.*, only $8,069.34 in costs. Again, the costs associated with prosecuting a settled class action are routinely recovered from the common fund. Moreover, because such costs are presumed reasonable when they are below the ceilings set forth in settlement agreements, and because Class Counsel's costs are significantly less than Settlement Agreement's cost ceiling, they should be approved in full.

As to the Objection's second argument, there is no merit to the contention that Ms. Spahn could not evaluate Class Counsel's fee-and-cost request. Class Counsel filed their Motion for fees and costs two weeks before the deadline to submit claim forms and one month before the deadline to submit objections. Since the time of that filing, Class Counsel's Motion has been publicly available on the Central District's PACER system. Although Ms. Spahn appears to be represented by an attorney—who presumably has ready access to PACER—and although she and her counsel had a full month to download and review the specifics of that Motion prior to the expiration of the objection deadline, she has not supplemented her Objection with any argument concerning Class Counsel's Motion. Indeed, on September 20, 2013, the Court rejected Ms. Spahn's Objection for noncompliance with the Central District's Local Rules; despite the rejection, and despite the fact that Class Counsel filed their Motion well-before the expiration of the objection deadline, she did not re-file her papers either before or after the date that Class Counsel's Motion was filed, let alone supplement them with any further argument.

In any event, even if it were true that Ms. Spahn did not have access to Class Counsel's Motion prior to the objection deadline, and even if her Objection were properly before the Court, it is effectively moot. As explained below, in connection with seeking preliminary approval, Class Counsel filed documentation with the Court substantiating their fee-and-cost request *before* notice of the settlement was even delivered to the Settlement Class. In reviewing that documentation, the Court held that the requested fees

1    were justified by Class Counsel's time records.  Although additional work has been

2    performed in this case since the date of that ruling, Class Counsel are not seeking

3    compensation for any of that additional time or for any additional expenses.  Their

4    Motion for fees and costs, in fact, is based solely on the records reviewed by the Court in

5    connection with granting preliminary approval.  Again, because Class Counsel are

6    seeking compensation for significantly less than the total amount of time actually

7    expended, the Objection fails.  The Settlement Agreement should therefore be finally

8    approved, and all contemplated fees and costs should be awarded in full.

9    **II.    *Summary of the Relevant Procedural History.***

10       Plaintiff and ATS executed the Settlement Agreement in early May 2013.  (Oct.

11   21, 2013, Decl. of Alan Harris in Supp. of Mot. for Final Approval of Class-Action

12   Settlement ("Oct. 21, 2013, Harris Decl.") [Docket No. 45] ¶ 5 & Ex. 1 at 14.)  Under the

13   Settlement Agreement, ATS has agreed to make an all-cash, $250,000 Gross Settlement

14   Payment, which sum will be distributed to Class Members who have submitted valid

15   claim forms after deducting amounts for Class Counsel's fees and costs, the Claims

16   Administrator's fees and costs, and Plaintiff's enhancement award.[4]  (Oct. 21, 2013,

17   Harris Decl. [Docket No. 45] Ex. 1 at § 7.)  On May 23, 2013, Plaintiff filed her Motion

18   for preliminary approval of the Settlement Agreement.  (See generally May 23, 2013,

19   Notice of Mot. & Mot. for Preliminary Approval of Class-Action Settlement &

20   Conditional Certification of Settlement Class [Docket No. 26].)  During the June 24,

21   2013, hearing on the Motion, the Court requested supplemental briefing directed to the

22   issue of whether Plaintiff's claims were amenable to class-wide treatment.  (See June 24,

23   2013, Civil Minutes [Docket No. 31] at 1; Nov. 8, 2013, Decl. of David Zelenski in Resp.

24   to Objection to Settlement ("Nov. 8, 2013, Zelenski Decl.") [Docket No. 49] ¶ 2 & Ex. 1

25   at 3–10.)  The Court also specifically requested during the hearing that Plaintiff's

26   supplemental briefing address the reasonableness of Class Counsel's fee-and-cost

27

28   [4] Ms. Spahn's Objection does not take issue with Plaintiff's requested enhancement award.

1    request.  (See June 24, 2013, Civil Minutes [Docket No. 31] at 1; Nov. 8, 2013, Zelenski

2    Decl. [Docket No. 49] ¶ 2 & Ex. 1 at 15–16.)

3        Further to the Court's directive, Plaintiff filed her supplemental briefing on July 8,

4    2013.  (See generally July 8, 2013, Supplemental Mem. of P. & A. in Supp. of Mot. for

5    Preliminary Approval of Class-Action Settlement & Conditional Certification of

6    Settlement Class ("July 8, 2013, Pl.'s Supplemental Mem.") [Docket No. 32].)  In that

7    briefing, Plaintiff explained that Class Counsel were seeking $82,500 in fees—i.e., 33%

8    of the common fund—from the $250,000 Gross Settlement Payment.  (July 8, 2013, Pl.'s

9    Supplemental Mem. [Docket No. 32] at 24:10–25:12.)  In support of this request, Class

10   Counsel argued that their lodestar was at least $127,358.25—i.e., $44,858.25 less than

11   the $82,500 requested.  (July 8, 2013, Pl.'s Supplemental Mem. [Docket No. 32] at

12   24:10–25:12.)  In support of their argument, Class Counsel filed a Declaration attaching

13   detailed copies of their time records, reflecting total attorney time of 307.70 hours.  (July

14   8, 2013, Supplemental Decl. of Alan Harris in Supp. of Mot. for Preliminary Approval of

15   Class-Action Settlement & Conditional Certification of Settlement Class ("July 8, 2013,

16   Harris Decl.") [Docket No. 34] ¶ 23.)  The $127,358.25 lodestar was computed as a

17   function of those 307.70 hours.[5]  (July 8, 2013, Harris Decl. [Docket No. 34] ¶¶ 16–23.)

18       On July 16, 2013, after having reviewed Plaintiff's supplemental briefing, the

19   Court granted preliminary approval of the Settlement Agreement.  (July 16, 2013, Civil

20   Minutes [Docket No. 36] at 21–23.)  In granting preliminary approval, the Court held that

21   Class Counsel had "adequately demonstrate[d] a reason for departing from the 25 percent

22   benchmark."  (July 16, 2013, Civil Minutes [Docket No. 36] at 20.)  According to the

23   Court, because participating "Class Members will receive nearly 100 percent of their

24   outstanding meal-period compensation . . . as well [as] reimbursement for uniform

25

26       [5] As detailed in Class Counsel's Declaration filed with the supplemental preliminary-
     approval briefing, the $127,358.25 figure was computed after discounting the hourly rates
27   of two of Plaintiff's three attorneys.  (July 8, 2013, Harris Decl. [Docket No. 34] ¶¶ 17,
     20–23.)  As explained more fully below, adjusting those rates to more accurately reflect
28   the typical rates in the Central District of California results in an increased lodestar of
     $209,151.64—$126,651.64 more than what Class Counsel actually seek.

cleaning costs,"[6] and because "the lodestar calculation significantly exceeds the benchmark level of fees[,] . . . the Court f[ound] the amount of attorneys' fees requested supports preliminary approval of the settlement." (July 16, 2013, Civil Minutes [Docket No. 36] at 20.)

Pursuant to the Settlement Agreement's notice procedures, the Parties' chosen Claims Administrator—Gilardi & Co., LLC ("Gilardi")—delivered the Court-approved Class Notice, claim form, and opt-out form to the 1,238 individuals in the Settlement Class on August 26, 2013. (Oct. 21, 2013 Decl. of Markham Sherwood re Mailing of Notice to Class of Proposed Settlement of Class Action, Claim Form, & Req. for Exclusion Form & Report on Claim Forms & Exclusions Received ("Oct. 21, 2013, Sherwood Decl.") [Docket No. 46] ¶¶ 4, 6.) Under the Settlement Agreement, the Settlement Class had forty-five days—*i.e.*, until October 10, 2013—to complete and return their claim forms or opt-out requests. (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 12.A.) Individuals also had until October 25, 2013, to file and serve objections. (<u>See</u> Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 13.)

As of the date that Plaintiff filed her Motion for final approval of the Settlement Agreement, a total of 376 individuals submitted claims (= 30% of the Settlement Class), and only sixteen individuals validly requested exclusion. (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] ¶¶ 10–11, 14.) In addition, only one individual—Ms. Spahn—has attempted to object. (Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶¶ 3–4.) Since the date that the Motion for final approval was filed, no further objections have been served or filed. (<u>See</u> Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 4 & Ex. 3.)

As to objections, the Settlement Agreement provides that "[a]ll objections to the settlement must be served and filed with the Court, . . . along with a notice of intention to appear" at the final approval hearing. (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 13.) This provision was expressly noted in the Class Notice delivered to the

---

[6] As noted above and as explained below, based on the finalized claims-administration statistics, participating Class Members actually stand to receive more than 200% of their outstanding meal-period compensation.

Settlement Class. (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] Ex. A at 4 (stating that, "to object to the settlement, you or your attorney must file with the Clerk of the Court a notice of appearance, along with your objection, no later than October 25, 2013" and that "you or your attorney must serve a copy of your notice of appearance and your objection on Class Counsel and ATS'[s] counsel, postmarked no later than October 25, 2013").)

Ms. Spahn's Objection was received by the Court on September 17, 2013. (Notice of Doc. Discrepancies [Docket No. 37] at 1, 4.) Although the Objection purports to have been submitted by Ms. Spahn in *pro per*, additional documents submitted with the Objection appear to have been signed by John C. Spahn—an attorney licensed to practice law in the State of California. (Compare Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 4–7 (reflecting that the Objection was filed by Ms. Spahn in *pro per*) with Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 2, 7, 9, 11 (reflecting John C. Spahn's signature); Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 5 & Ex. 4 at 1.) According to those documents, Mr. Spahn is a member of the United States District Court, Central District of California. (Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 2, 7, 9, 11.) He is also registered with the California State Bar at the same address as Ms. Spahn: 401 South El Cielo Road, Apartment 188, Palm Springs, California 92262. (Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 5 & Ex. 4 at 1.)

Among the documents submitted to the Court by Mr. and Ms. Spahn were the Objection itself, Proofs of Service, and a Certification and Notice of Interested Parties. (Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 2–12.) No notice of intent to appear at the final approval hearing—again, one of the documents required by the Settlement Agreement—was included with these documents. In addition, when Mr. and Ms. Spahn submitted their papers to the Court, they neglected to include a mandatory chambers copy, in violation of Central District Local Rule 11-4.1. Cal. Central Dist. Local R. 11-4.1. For this reason, the Court rejected the Objection and ordered it returned

1  to Ms. Spahn's counsel.  (Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37]
2  at 1.)

3      As reflected by the docket in the within action, Ms. Spahn never re-filed her
4  Objection.  (Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 4 & Ex. 3.)  She has also
5  never re-served Class Counsel with any further papers in support of her rejected
6  Objection.  (See Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 4.)  Notwithstanding her
7  decision to take no further action, and notwithstanding her noncompliance with the terms
8  of the Settlement Agreement and the Central District's Local Rules, Class Counsel are
9  hereby filing this responsive Memorandum.  The Settlement Agreement expressly allows
10  for such a response, stating that "[t]he Parties' counsel may file, at least five (5) court
11  days before the final approval hearing . . . , responses to any written objections."  (Oct.
12  21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 13.)  The final approval hearing is
13  currently set for November 18, 2013, which gives the Parties until November 8, 2013, to
14  file their respective Memoranda.[7]  This Memorandum is therefore timely.

15  **III.  Argument.**

16      **A.    The Court May Properly Reject the Objection for Noncompliance with the**
17          **Settlement Agreement.**

18      Courts routinely require that objections to class-wide settlements be filed in order
19  to be considered at the final fairness hearing.  See, e.g., Gross v. Symantec Corp., 2013
20  U.S. Dist. LEXIS 75516 at *7–8 (N.D. Cal. filed May 28, 2013) (in granting preliminary
21  approval of a class-wide settlement, requiring that "all comments and objections must be
22  filed with the [c]ourt and received by [c]lass [c]ounsel and [d]efendants' [c]ounsel prior
23  to the [final f]airness [h]earing," and stating that, in order "for [an objector's] comment to
24  be considered by the [c]ourt[,] . . . all papers, briefs, pleadings, or other documents that
25  any objector would like the [c]ourt to consider ('[o]bjections') must be filed with the
26  [c]ourt"); Dennis v. Kellogg Co., 2013 WL 1883071 at *9 (S.D. Cal. filed May 3, 2013)

27

28  [7] Because November 11, 2013, is a holiday, the filing deadline falls on November 8, 2013.

(in granting preliminary approval of a class-wide settlement, holding that "[a]ny [c]lass member who desires to object either to the settlement, [f]ee and [e]xpense [a]ward, or class representative incentive awards must timely file with the [c]lerk of this [c]ourt and timely serve on the [p]arties' counsel by hand or first-class mail a notice of the objection(s) and proof of membership in the [c]lass and the grounds for such objections"); <u>Beck-Ellman v. Kaz USA, Inc.</u>, 2013 WL 1748729 at *9 (S.D. Cal. filed Jan. 7, 2013) (in granting preliminary approval, requiring that "[a]ny objections to the settlement or the motion for fees, enhancements, or costs [] be filed" with the court); <u>Rodriguez v. D.M. Camp & Sons</u>, 2012 WL 6115651 at *13 (E.D. Cal. filed Dec. 7, 2012) (in granting preliminary approval of a wage-and-hour class-wide settlement, holding that, "[f]or comments or objections to be considered at the [final fairness] hearing, the [c]lass [m]ember *must file* comments with the [c]lerk of this [c]ourt indicating briefly the nature of the [c]lass [m]ember's comments, support, or objection") (emphasis in original).

    If an objection has not been filed with a court as required, the court has discretion to overrule the objection on that basis alone.  <u>See</u>, <u>e.g.</u>, <u>Moore v. Verizon Commc'ns, Inc.</u>, 2013 WL 4610764 at *12 (N.D. Cal. filed Aug. 28, 2013) (overruling several objections to a class-wide settlement because they "w[ere] not filed with the [c]ourt"); <u>Berrien v. New Raintree Resorts Int'l, LLC</u>, 2012 U.S. Dist. LEXIS 33572 at *7 (N.D. Cal. filed Mar. 13, 2012) (holding that two objections that were untimely filed with the court "are deemed to have been waived"); <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, 2011 WL 7575004 at *3 (N.D. Cal. filed Dec. 27, 2011) (explaining that, although an objection was mailed to the court before the objection deadline, it was never actually filed on that date, and that, "[o]n that basis alone, the [c]ourt refuses to consider the objection"); <u>Cohorst v. BRE Props., Inc.</u>, 2011 WL 7061923 at *4 (S.D. Cal. filed Nov. 14, 2011) (overruling an objection to a class-wide settlement on the ground that it was received by the court after the time period to object); <u>In re Heritage Bond Litig.</u>, 2005 WL 1594403 at *10 n.9 (C.D. Cal. filed June 10, 2005) (in reviewing an objection

1  submitted to the court, holding that, "because the document is not file stamped, and

2  therefore not part of the [c]ourt's record, the [c]ourt does not consider [it]").

3      Here, as noted above, the Settlement Agreement requires that all objections must

4  be filed with the Court in order to be considered.  (Oct. 21, 2013, Harris Decl. [Docket

5  No. 45] Ex. 1 at § 13.)  Also as noted above, the Class Notice expressly detailed this

6  requirement.  (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] Ex. A at 4.)  In granting

7  preliminary approval, the Court reviewed the notice-and-response procedures specified

8  by the Settlement Agreement, including the procedure for objecting, and held that these

9  procedures were "acceptable."  (July 16, 2013, Civil Minutes [Docket No. 36] at 21–22.)

10  The Court also reviewed and approved the Class Notice that was ultimately delivered to

11  the Settlement Class.  (July 16, 2013, Civil Minutes [Docket No. 36] at 22.)  Any

12  individuals seeking to object were therefore required to file their objections with the

13  Court in advance of the October 25, 2013, deadline.

14      Although Ms. Spahn submitted her Objection to the Court before October 25, the

15  Court rejected it for noncompliance with the filing procedures set forth by the Central

16  District's Local Rules.  Ms. Spahn failed to comply with these procedures despite the fact

17  that she appears to be represented by an attorney authorized to practice in the Central

18  District—*i.e.*, an attorney required to be familiar with the Central District's Local Rules.

19  See Cal. Central Dist. Local R. 83-2.1.2.2 (stating that "[e]ach applicant for admission to

20  the Bar of this Court must" certify that he or she "is familiar with the Court's Local

21  Rules").  Indeed, even if it is the case that Ms. Spahn attempted to file her Objection in

22  *pro per*, that does not exempt her from complying with the Central District's filing

23  procedures.  See id. at R. 1-3 (stating that "[p]ersons appearing *pro se* are bound by these

24  rules").  Because the Court rejected Ms. Spahn's Objection for noncompliance with the

25  Local Rules, and because she never sought to re-file it, her Objection is not properly

26  before the Court, and it may be overruled on that basis alone.

27  / / / / /

28

**B.    *Class Counsel and the Claims Administrator Are Entitled to Recover Their Respective Fees and Costs from the Common Fund.***

Assuming *arguendo* that Ms. Spahn's Objection is properly before the Court, it fails on the merits.  According to the Objection, neither Class Counsel's fees and costs nor Gilardi's fees and costs should come out of the $250,000 Gross Settlement Payment. (Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 4:24–25, 5:20.) Alternatively, the Objection argues that Class Counsel's fees and costs should be limited to 25% of the Gross Settlement Payment—*i.e.*, to $62,500.  (Sept. 20, 2013, Notice of Doc. Discrepancies [Docket No. 37] at 4:23, 5:20–21.)  Both of these contentions fail under the common-fund theory of recovery.

**1.    *The $250,000 Gross Settlement Payment is a Common-Fund Recovery.***

It is settled law that attorney's fees and costs, as well as claims-administration fees and costs, may—and should—be assessed against a common-fund settlement amount:

> Since the decisions in Trustees v. Greenough, 105 U.S. 527 (1882), and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.  See Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970); Sprague v. Ticonic National Bank, 307 U.S. 161 (1939); cf. Hall v. Cole, 412 U.S. 1 (1973).  The common-fund doctrine reflects the traditional practice in courts of equity, Trustees v. Greenough, supra, at 532–537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S., at 257–258.  The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.  See, e.g., Mills v. Electric

1    Auto-Lite Co., 396 U.S., at 392.  Jurisdiction over the fund involved in the

2    litigation allows a court to prevent this inequity by assessing attorney's fees

3    against the entire fund, thus spreading fees proportionately among those

4    benefited by the suit.  See id., at 394.

5    Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  The Supreme Court's holding in

6    Boeing Co. has been carried over by the Ninth Circuit to include the fees and costs of

7    claims administration.  See Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (in

8    analyzing a common-fund settlement, stating that "[t]he post-settlement cost of providing

9    notice to the class can reasonably be considered a benefit to the class").  See also Weeks

10   v. Kellogg Co., 2011 U.S. Dist. LEXIS 155472 at *107 (C.D. Cal. filed Nov. 23, 2011)

11   (in rejecting an objection to a common-fund settlement that claims-administration costs

12   should not be included in the total settlement value, explaining that, because the class

13   derives a benefit from the notice process, administration costs should be included in the

14   total value of the settlement) (citing Oppenheimer Fund v. Sanders, 437 U.S. 340, 356

15   (1978)).  Further to these equitable-based holdings, courts approving class-wide

16   common-fund settlements routinely permit attorney's fees and costs, and the fees and

17   costs of claims administration, to be deducted from the common fund itself.  See, e.g.,

18   Lazarin v. Pro Unlimited, Inc., 2013 WL 3541217 at *10 (N.D. Cal. filed July 11, 2013)

19   (in granting final approval of a class-wide settlement, awarding attorney's fees and costs

20   from the common fund, and awarding the claims administrator its fees and costs from the

21   common fund); Jefferson v. H & M Hennes & Mauritz, L.P., 2013 U.S. Dist. LEXIS

22   2875 at *7–10 (C.D. Cal. filed Jan. 7, 2013) (in granting final approval of a wage-and-

23   hour settlement, awarding class counsel 30% of the common fund in fees, as well as

24   additional amounts from the common fund for incurred litigation expenses and claims-

25   administration costs); Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801 at *13, 25

26   (E.D. Cal. filed Nov. 27, 2012) (in granting final approval of a wage-and-hour settlement,

27   awarding class counsel 33% of the settlement amount in attorney's fees, an additional

28   amount for litigation costs, and an additional amount for claims-administration fees and

1    costs, all payable from the common fund).

2          In the within action, the $250,000 Gross Settlement Payment is a common fund,

3    and all associated fees and costs may therefore be deducted from it.  As explained by the

4    Ninth Circuit, a common fund exists "when (1) the class of beneficiaries is sufficiently

5    identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with

6    some exactitude to those benefiting."  In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir.

7    1985).  According to the Supreme Court, "the[se] criteria are satisfied when each member

8    of a certified class has an undisputed and mathematically ascertainable claim to part of a

9    lump-sum [amount]."  Boeing Co., 444 U.S. at 479 (1980).  The Gross Settlement

10   Payment is a common fund because, under the Settlement Agreement, each member of

11   the certified Settlement Class is entitled to a sum certain computed as a function of his or

12   her missed meals and the total number of Class Members who submit valid claims.  Class

13   Counsel and Gilardi are therefore entitled to have their fees and costs paid from the Gross

14   Settlement Payment.  Accordingly, the Objection's contention that ATS should be

15   required to pay this amount on top of the $250,000 is without merit.

16        **2.    *The Total Amount of Fees Requested for Class Counsel Are***

17               ***Justified Under the Applicable Case Law.***

18          As to the Objection's second contention—that the requested fees and costs should

19   be limited to 25%—although it is true that 25% is the benchmark level of fees for

20   common-fund settlements, "the exact percentage [that should be awarded] varies

21   depending on the facts of the case, *and in 'most common fund cases, the award exceeds*

22   *that benchmark.'*"  Bond v. Ferguson, 2011 WL 2648879 at *9 (E.D. Cal. filed June 30,

23   2011) (quoting Knight v. Red Door Saloons, Inc., 2009 WL 248367 at *6 (N.D. Cal. filed

24   Feb. 2, 2009)) (emphasis supplied).  See also In re Activision Sec. Litig., 723 F. Supp.

25   1373, 1377–78 (N.D. Cal. 1989) (stating that "*nearly all* common fund awards range

26   around 30%") (emphasis supplied).  The Objection fails given the specific facts of this

27   case concerning the size and type of relief afforded by the Settlement Agreement, the

28   total time spent by Class Counsel litigating this action, and the contingent-based nature of

Class Counsel's representation—the factors used to evaluate the appropriate size of a fee award.  See In re Nuvelo Sec. Litig., 2011 WL 2650592 at *1 (N.D. Cal. filed July 6, 2011) (explaining that whether to award above the benchmark depends on whether "counsel achieved exceptional results," whether "counsel's performance generated benefits beyond the cash settlement fund," and whether "the fee lies above or below the market rate," as well as on "a comparison with counsel's lodestar") (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

Here, Class Counsel are requesting $82,500 in fees, which comes to 33% of the Gross Settlement Payment.  Although this is $20,000 more than the benchmark level of fees, the increase is warranted because it comports with the "market rate" for settlements of comparable size.  See Barbosa v. Cargill Meat Solutions Corp., --- F.R.D.---, 2013 WL 3340939 at *17–18 (E.D. Cal. filed July 2, 2013) (in awarding a 33% fee request, stating that "the percentage award requested in this case is commensurate with percentage-of-the-benefit awards made in other wage-and-hour actions").  As explained in Plaintiff's Motion for fees, "'25% is substantially below the average class fund fee nationally,'" and "'[c]ases of under $10 [m]illion will often result in fees above 25%'"  (Sept. 26, 2013, Mem. of P. & A. in Supp. of Pl.'s Notice of Mot. & Mot. for Award of Att'ys Fees & Reimbursement of Costs ("Sept. 26, 2013, Mot. for Fees") [Docket No. 38] at 18:6–8 (quoting Craft v. County of San Bernardino, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (citing a study by the Federal Judicial Center "of all class actions resolved or settled over a four-year period," which study "found a median percentage recovery range of 27–30%") (citing Cicero v. DirecTV, Inc., 2010 WL 2991486 at *6 (C.D. Cal. filed July 27, 2010) (explaining that "20 to 30% [i]s the usual range in common fund cases where the recovery is between $50 and 200 million," that "case law surveys suggest that . . . 30–50% [is] commonly . . . awarded in case[s] in which the common fund is relatively small," and that "cases below $10 million are often [compensated at] more than the 25% benchmark")).)

/ / / / /

From the $250,000 common fund, even if market-rate is applied and 33% in fees are deducted, each Class Member who has submitted a valid claim form will receive, on average, 200% of his or her total missed-meal compensation under Plaintiff's theory of the case, as well as an additional $238 for the alleged non-meal-period and derivative claims. This further justifies an upward adjustment in fees. See e.g., Singer v. Becton Dickinson & Co., 2010 WL 2196104 at *8–9 (S.D. Cal. filed June 1, 2010) (in a settled wage-and-hour class action, departing from the benchmark and awarding 33.33% of the settlement fund in fees when the class would recover "110% of the claimed losses").

The substantial per-capita recoveries are calculated as follows. First, after deducting fees and costs from the $250,000 common fund, as well as Plaintiff's requested enhancement, $134,430.66 will remain for distribution to those Class Members who have submitted valid claim forms.[8] Of this $134,430.66 Net Settlement Fund, one-third ($44,805.74) is earmarked for distribution to those participating Class Members who experienced "NO LUNCH" workdays according to their relative number of those workdays, and two-thirds ($89,624.92) is to be distributed evenly to participating Class Members in satisfaction of their uniform-maintenance, continuing-wage, pay-stub, and unfair-competition claims. (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.) As to the "NO LUNCH" sub-fund, of the 1,238 individuals in the Settlement Class, a total of 549 experienced "NO LUNCH" workdays. (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] ¶ 5.) All told, there were 4,965 "NO LUNCH" workdays across these 549 individuals, meaning that, on average, each individual experienced 9 "NO LUNCH" workdays. (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] ¶ 5.) Of the 376 Class Members who submitted claims, 195 have "NO LUNCH" codings.[9] (Oct. 21, 2013,

---

[8] As explained in Plaintiff's Motion for final approval, to economize on claims-administration expenses and to eliminate the potential for fraud, the typical procedure for class-wide settlements is to restrict payments to class members who complete and submit claim forms. (Oct. 21, 2013, Mem. of P. & A. in Supp. of Pl.'s Notice of Mot. & Mot. for Final Approval of Class-Action Settlement ("Oct. 21, 2013, Mot. for Final Approval") [Docket No. 44] at 14:3–15:2.)

[9] As also explained in Plaintiff's Motion for final approval, this reflects a response rate of over 30%—a positive response to the Class Notice. (See Oct. 21, 2013, Mot. for Final Approval [Docket No. 44] at 25:10–21 (citing Sandoval v. Tharaldson Employee

Sherwood Decl. [Docket No. 46] ¶ 14.)  Based on the 195 "NO LUNCH" Class Members who submitted claims, each stands to receive a pre-tax award, on average, of approximately $230 (= $44,805.74 ÷ 195 Class Members) for Plaintiff's "NO LUNCH" claim.  Because an employee's meal-period damages for a missed meal are equal to his or her hourly wage, see Cal. Lab. Code § 226.7, and because the average hourly wage for the Settlement Class is only $12.47 (see Oct. 21, 2013, Harris Decl. [Docket No. 45] ¶ 9), each of the 195 participating Class Members will receive, on average, compensation for over 18 missed meals—*i.e.*, more than double the per capita number of missed meals.

As for the remaining $89,624.92 portion of the Net Settlement Fund, each Class Member who submitted a valid claim form will receive an equal share of the $89,624.92 in satisfaction of his or her uniform-maintenance, continuing-wage, pay-stub, and unfair-competition claims.  (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 7.D.) Because 376 individuals submitted claim forms, each will receive a pre-tax award of approximately $238 (= $89,624.92 ÷ 376 Class Members) on top of whatever amounts they may receive for their "NO LUNCH" claims.  As detailed in Plaintiff's Motion for final approval, this additional recovery is considerable in light of the limited damages suffered on account of employees not being reimbursed for machine-washing their uniforms.  (Oct. 21, 2013, Mot. for Final Approval [Docket No. 44] at 4:22–7:23.)  It is also considerable given ATS's arguably dispositive defenses to Plaintiff's alleged pay-stub and continuing-wage claims.[10]  (Oct. 21, 2013, Mot. for Final Approval [Docket No. 44] at 21:8–23:11.)

---

Mgmt., Inc., 2010 WL 2486346 at *7 (C.D. Cal. filed June 15, 2010) (in approving a settled wage-and-hour class action, noting that "24% of [c]lass [m]embers submitted valid claim[s]," which the court characterized as a "positive" response).)  See also Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 485 (E.D. Cal. 2010) (in approving a settled wage-and-hour class action, noting that "31% of the class submitted claims").

[10] As catalogued in Plaintiff's Motion for final approval, additional dispositive defenses exist for Plaintiff's meal-period-based claims, further underscoring the substantial recovery that participating Class Members will receive from the "NO LUNCH" sub-fund.  (Oct. 21, 2013, Mot. for Final Approval [Docket No. 44] at 21:8–23:11.)

In addition to the cash recoveries, the Settlement Agreement provides for non-monetary relief addressing Plaintiff's missed-break claim, as well as her claim for improper seating.  (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 8.)  As set forth in the Motion for fees, because Plaintiff—a former employee—would not have been able to achieve such "injunctive" relief after a successful trial, an upward adjustment from the benchmark is appropriate.  (Sept. 26, 2013, Mot. for Fees [Docket No. 38] at 17:16–26 (citing Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *28 (N.D. Cal. filed Apr. 1, 2011).)

Class Counsel's 33% request is also warranted in light of their lodestar, which lodestar significantly exceeds the $82,500 in requested fees.  See Hopkins v. Stryker Sales Corp., 2013 WL 496358 at *3 (N.D. Cal. filed Feb. 6, 2013) (explaining that courts depart from the benchmark when the requested fees are "significantly less than the lodestar," reviewing numerous Central, Southern, and Eastern District of California cases awarding 33.33% or more in fees).  Specifically, the billing statements before the Court reflect an unadjusted lodestar (i.e., with no multiplier) of $127,358.25, computed based on the following hours and rates:

| Table 1: Class Counsel's Requested Hourly Rates | | | | |
|---|---|---|---|---|
| Attorney | JD Acquired | Hourly Rate | Hours | Lodestar |
| A. Harris | 1974 | $600 | 63.40 | $38,040.00 |
| J. Dorigan | 1981 | $450 | 82.60 | $37,170.00 |
| D. Zelenski | 2003 | $322.50 | 161.70 | $52,148.25 |
| Total | --- | --- | 307.70 | $127,358.25 |

(Sept. 26, 2013, Decl. of Alan Harris in Supp. of Pl.'s Mot. for Award of Att'ys Fees & Reimbursement of Costs [Docket No. 39] ¶¶ 17–22 & Ex. 3 at 29; Sept. 26, 2013, Decl. of John P. Dorigan in Supp. of Mot. for Att'ys Fees & Reimbursement of Costs [Docket No. 40] ¶ 5 & Ex. 1 at 5.)  As explained in the Motion for fees, the above rates are reasonable because they are less than those typically charged in the Central District for

/ / / / /

1  similar actions.  (Sept. 26, 2013 Mot. for Fees [Docket No. 38] at 21:15–22:13 (citing

2  cases).)  As further explained in that Motion, they are also far less than the rates

3  computed under the widely used <u>Laffey</u> matrix, which matrix leads to the following

4  lodestar:

| Table 2:  Class Counsel's <u>Laffey</u> Rates | | | | |
|---|---|---|---|---|
| *Attorney* | *JD Acquired* | *Hourly Rate* | *Hours* | *Lodestar* |
| A. Harris | 1974 | $789.50 | 63.40 | $50,054.30 |
| J. Dorigan | 1981 | $789.50 | 82.60 | $65,212.70 |
| D. Zelenski | 2003 | $580.61 | 161.70 | $93,884.64 |
| *Total* | --- | --- | 307.70 | $209,151.64 |

11  (Sept. 26, 2013, Mot. for Fees [Docket No. 38] at 22:14–24:15.)

12      As for Class Counsel's hours, across twenty-two months of litigation, the 307.70

13  hours worked amounts to, on average, less than half-an-hour per day.  As explained in

14  Plaintiff's Motion for fees, this is entirely reasonable when judged relative to other class

15  actions.  (<u>See</u> Sept. 26, 2013, Mot. for Fees [Docket No. 38] at 24:16–25:3 (citing

16  <u>Collado v. Toyota Motor Sales, U.S.A., Inc.</u>, 2011 WL 5506080 at *5 (C.D. Cal. filed

17  Oct. 17, 2011) (in analyzing class counsel's hours and concluding that they were

18  excessive, noting that the "request for compensation of 6,881 hours is best represented by

19  this being the equivalent to a collective 11.1 hours per day devoted by the five firms

20  during the pendency of this action).)

21      Finally, the 33% fee request is warranted on account of Class Counsel's

22  contingent-based representation.  As explained in the Motion for fees, "'[i]t is an

23  established practice to reward attorneys who assume representation on a contingent basis

24  with an enhanced fee to compensate them for the risk that they might be paid nothing at

25  all.'"  (Sept. 26, 2013, Mot. for Fees at 18:27–19:1 (quoting <u>Thieriot v. Celtic Ins. Co.</u>,

26  2011 WL 1522385 at *6 (N.D. Cal. filed Apr. 21, 2011) (awarding a 33% fee)).)  To date,

27  Class Counsel have received no fees during the entire pendency of this action, and they

28  have also advanced all costs.  This supports an upward adjustment from the benchmark.

See, e.g., Hopkins, 2013 WL 496358 at *3 (explaining that conducting a case "on an entirely contingent fee basis against a well-represented [d]efendant" supports an upward fee adjustment); Carter v. Anderson Merchandisers, LP, 2010 WL 1946757 at *2 (C.D. Cal. filed May 11, 2010) (in awarding the requested fees, stating that "[t]he case was undertaken on a contingency fee basis" and that "[c]lass [c]ounsel advanced all costs, despite the risk of no recovery in this case, representing a significant financial burden").

### 3.    Class Counsel's Costs, and the Fees and Costs of the Claims Administrator, Are Reasonable.

There is also no merit to the Objection's implicit contention that Class Counsel should not be awarded their costs on top of the 33% request. As recently explained by the Central District, "'[t]he prevailing view is that expenses are awarded *in addition to* the fee percentage.'" Jefferson, 2013 U.S. Dist. LEXIS 2875 at *9 (quoting 1 Alba Conte, Attorney Fee Awards § 2:08 at 50–51) (emphasis supplied). In fact, although the Settlement Agreement specifically allows Class Counsel to request up to $15,000 in litigation costs (see Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 7.A), they are seeking roughly half that amount in costs, *i.e.*, only $8,069.34. Similarly, although claims-administration fees and costs come to $21,117.39, Gilardi is seeking only $20,000 as reimbursement for its services. (Oct. 21, 2013, Sherwood Decl. [Docket No. 46] ¶ 15 & Ex. C at 2.) Because these amounts are less than the amounts contemplated by the Settlement Agreement, they are presumed reasonable and should be approved as payable from the common fund. See, e.g., Koz v. Kellogg Co., 2013 U.S. Dist. LEXIS 129205 at *24 (C.D. Cal. filed Sept. 10, 2013) (in approving class counsel's cost request, stating that "[t]he[] amounts are within that contemplated by the settlement, have been endorsed by experienced counsel and claims administration consultants involved in th[e] case, and are thus presumed reasonable");[11] Smith v. CRST Van Expedited, Inc., 2013 WL 163293 at *5 (S.D. Cal. filed Jan. 14, 2013) (stating the same).

---

[11] Plaintiff notes that, in Koz, the Central District approved attorney hourly rates of up to $950—far above Class Counsel's requested hourly rates. See Koz, 2013 U.S. Dist. LEXIS 129205 at *23–24.

*C.*    ***Ms. Spahn Had Ample Time to Review Class Counsel's Publicly Available Fee-and-Cost Request.***

The Objection's final contention is that, because Gilardi did not create and maintain a settlement website at which relevant case filings could be reviewed, the dissemination of notice was somehow defective.  In granting preliminary approval and directing the delivery of the Class Notice to the Settlement Class, the Court did not require that the Parties establish a settlement website.  (See July 16, 2013, Civil Minutes at 21–23.)  Obviously, requiring the creation and maintenance of a website would have increased the costs of settlement administration, which would seem to be at cross-purposes with Ms. Spahn's above-discussed contention that the claims-administration costs are too high.  Putting that to the side, Plaintiff notes that courts routinely approve class-wide settlement agreements that do not provide for the creation of claims-administration websites.  See, e.g., Lazarin, 2013 WL 3541217 at *4 (in granting final approval of a wage-and-hour class-wide settlement, describing the notice process, which process consisted only of a mailing to class members); Barbosa, --- F.R.D. ---, 2013 WL 3340939 at *5 (same); Bolton v. U.S. Nursing Corp., 2013 WL 2456564 at *5–6 (N.D. Cal. filed June 6, 2013) (in granting preliminary approval of a wage-and-hour class-wide settlement, directing the settlement administrator to deliver notice via first-class mail but not requiring the creation of a settlement website).  The notice procedures herein therefore comported with due process, and the Objection should be overruled.

Moreover, even though the Court did not direct Gilardi to undertake the expense of creating a website at which the settlement documents could be downloaded, the entire docket in this case has been available for review in person through the Clerk of the Court, as well as online through the Court's PACER system.  Ms. Spahn's apparent attorney, as someone who is authorized to practice before the Central District, is presumably a registered CM/ECF user who could easily download whatever settlement-related documents he wanted.  See In re TFT-LCD (Flat-Panel) Antitrust Litig., 2011 WL 7575004 at *2 (in overruling an objection to a class-wide settlement, stating that class

counsel filed their motion for fees "a full month in advance of the objection deadline," at which point it "was made available to [c]lass [m]embers on the public docket, just like the other publicly-available documents filed in th[e] case," and explaining that, because the objector had "filed his objection and notice of appearance [] via the same ECF system that [c]o-[l]ead [c]lass [c]ounsel used to file the [f]ee [m]otion," he "cannot demonstrate any prejudice by the posting of the [f]ee [m]otion on the [c]ourt's public docket alone"). Furthermore, although Class Counsel's contact information—including a telephone number—was provided on the Class Notice (see Oct. 21, 2013, Sherwood Decl. [Docket No. 46] Ex. A at 5), neither Ms. Spahn nor her attorney ever contacted them to discuss the Objection or to request any documents (see Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 6).  Indeed, upon receipt of the Objection, Class Counsel themselves called the number listed on the Objection in order to address whatever questions Ms. Spahn had and to forward to her whatever documents she wanted to review.  (See Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 6.)  Mr. and Ms. Spahn, however, never responded.  (Nov. 8, 2013, Zelenski Decl. [Docket No. 49] ¶ 6.)

Ms. Spahn's apparent disinterest in following up belies her contention that she had no opportunity to review Class Counsel's fee request.  That Motion was filed one month prior to the objection deadline, which actually *exceeds* what the Ninth Circuit requires. See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 994–95 (9th Cir. 2010) (requiring that fee applications be filed prior to the deadline to object) (hereinafter, "In re Mercury"); Weeks, 2011 U.S. Dist. LEXIS 155472 at *80 (applying In re Mercury and holding that the filing of a fee petition one week before the objection deadline comported with due process); In re TFT-LCF (Flat Panel) Antitrust Litig., 2011 WL 7575004 at *2 (holding that class counsel's filing of their fee motion one month before the objection deadline satisfied In re Mercury); Gardner v. Equilon Enters., LLC, 2012 U.S. Dist. LEXIS 142033 at *5 (C.D. Cal. filed Oct. 1, 2012) (requiring class counsel to file their motion for fees fourteen days before the objection deadline).  As a matter of fact, the actual billing statements supporting Class Counsel's fee-and-cost request have been

PL.'S MEM. OF P. & A. IN RESP. TO OBJECTION TO PROPOSED SETTLEMENT

before the Court since July 8, 2013, when Plaintiff filed her supplemental papers in support of preliminary approval. As with the Motion for fees itself, those statements have been publicly accessible at the Court itself—and via the PACER system—since that date. Also equally available is the Court's July 16, 2013, Order granting preliminary approval, in which the Court analyzed those statements and concluded that they justify an upward departure from the 25% benchmark. Given Ms. Spahn's ready access to these materials, and given that Class Counsel are not basing their fee-and-cost request on any work or costs other than those reflected in the statements reviewed by the Court in granting preliminary approval, the Objection should be overruled.

## IV.    *Conclusion.*

For the foregoing reasons, the one and only Objection submitted herein should be overruled, and all contemplated fees and costs should be deducted from the $250,000 common fund. As a procedural matter, Plaintiff notes that the Effective Date for the Settlement Agreement—the date used to determine when the distribution to participating Class Members will occur—depends on whether any objections have been made. (Oct. 21, 2013, Harris Decl. [Docket No. 45] Ex. 1 at § 16.) Because Ms. Spahn's Objection was rejected by the Court for noncompliance and is therefore not even properly before the Court, Plaintiff respectfully requests that it be adjudged that no objections have, in fact, been submitted to the Settlement Agreement. This will facilitate more immediate distribution of the settlement funds to Class Members.

Dated:  November 8, 2013                    HARRIS & RUBLE
                                            LAW OFFICES OF JOHN P. DORIGAN

                                            _/s/ David Zelenski_
                                            Alan Harris
                                            David Zelenski
                                            John Dorigan
                                            *Attorneys for Plaintiff*

PL.'S MEM. OF P. & A. IN RESP. TO OBJECTION TO PROPOSED SETTLEMENT