1

2

3                                                          O

4

5                                          JS-6

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  COLLETTE McDONALD,          )   Case No. EDCV 11-
    individually and on         )   1946VAP(SPx)
12  behalf of all others        )
    similarly situated,         )   **ORDER GRANTING (1)**
13                              )   **PLAINTIFF'S MOTION FOR FINAL**
                                 )   **APPROVAL OF CLASS ACTION**
14              Plaintiff,       )   **SETTLEMENT AND (2) MOTION**
                                 )   **FOR ATTORNEYS' FEES**
15       v.                      )
                                 )   **[Motions filed on September**
16  AIRPORT TERMINAL             )   **26, 2013 and October 21,**
    SERVICES, INC., and DOES )   **2013]**
17  1-100, inclusive,            )
                                 )
18              Defendants. )
    _____ )

19

20       Before the Court is a Motion for Final Approval of

21  Class Action Settlement filed by Plaintiff Collette

22  McDonald ("Plaintiff") on behalf of herself and others

23  similarly situated ("Mot." or "Motion") (Doc. No. 44) and

24  a Motion for Award of Attorneys' Fees and Reimbursement

25  Costs ("Attys.' Fees Mot.") (Doc. No. 38.)  The matter

26  came before the Court for hearing on November 18, 2013.

27  The Court considered all papers in support of, and in

28  opposition to, the Motion, and the arguments put forth at

    the hearing, and for the reasons set forth below, GRANTS

1 the Motions for Final Approval of the Class Settlement
2 and Attorneys' Fees.

3

4                          **I. BACKGROUND**
5 **A.   Procedural Background**
6      On November 2, 2011, Plaintiff filed a complaint in
7 the California Superior Court (Ex. 1 to Not. of Removal
8 (Doc. No. 1) ("Complaint") against Defendant Airport
9 Terminal Services, Inc. ("Defendant") ("ATS"), alleging
10 (1) failure to provide meal-period wages in violation of
11 Cal. Labor Code §§ 226.7 and 512; (2) failure to provide
12 adequate pay stubs in violation of Cal. Labor Code § 226;
13 (3) failure to reimburse for uniform-maintenance expenses
14 in violation of Cal. Labor Code § 2802; (4) failure to
15 timely pay all wages in violation of Cal. Labor Code §§
16 201-203; and (5) violation of Cal. Bus. & Prof. Code §§
17 17200, <u>et seq</u>. (<u>See</u> Compl.)  On December 9, 2011,
18 Defendant removed the action to this Court.  (<u>See</u> Not. of
19 Removal.)

20

21      On October 25, 2012, Plaintiff filed a Notice of
22 Tentative Settlement, providing that the parties intended
23 to have a settlement agreement executed by November 15,
24 2012.  (<u>See</u> Doc. No. 21 ("Notice of Tentative
25 Settlement") at 2.)  On May 15, 2013, Plaintiff filed a
26 Notice of Execution of the Long-Form Settlement
27 Agreement.  (<u>See</u> Doc. No. 24.)

28

1   On May 23, 2013, Plaintiff filed a Motion for
2   Preliminary Approval of Class Settlement.  (Doc. No. 26.)
3   On May 31, 2013, Defendant filed a Notice of Non-
4   Opposition to Plaintiff's Motion for Preliminary Approval
5   (Doc. No. 30).  On June 24, 2013, the Court issued a
6   tentative ruling denying the Motion and permitting
7   Plaintiff to file additional briefing in support of the
8   Motion.  Plaintiff filed supplemental briefing on July 8,
9   2013, and the Court granted preliminary approval of the
10  class action settlement on July 16, 2013.  (July 16, 2013
11  Minute Order Granting Plaintiff's Motion for Preliminary
12  Approval of Class Action Settlement ("Preliminary
13  Approval Order") (Doc. No. 36.))

14

15  On September 26, 2013, Plaintiff filed a Motion for
16  Approval of Attorney Fees and Reimbursement of Costs
17  (Doc. No. 39); the Declaration of John Dorigan and
18  Exhibit 1 (Doc. No. 40); the Declaration of Alan Harris
19  and Exhibits 1-9 (Doc. No. 43) and a Request for Judicial
20  Notice (Doc. No. 41).[1]  On October 21, 2013, Plaintiff
21  filed the Motion for Final Approval ("Motion"); the
22  Declaration of Alan Harris and Exhibits 1-2 (Doc. No.
23  45); and the Declaration of Markham Sherwood and Exhibits
24  A-C (Doc. No. 46).  Defendant did not file an opposition
25  to either of these Motions.

26

27  _____

28  [1]The Court did not rely on the documents offered and
    accordingly does not take judicial notice of them.

1      On November 14, 2013, Plaintiffs filed a Supplemental

2  Declaration of David Zelenski Regarding Final Claims-

3  Administration Statistics ("Zelenski Decl. II") (Doc. No.

4  50) and the Amended Declaration of Markham Sherwood Re

5  Report on Claim Forms and Exclusions Received ("Sherwood

6  Decl. II") (Doc. No. 50-1).  These Declarations contain

7  the finalized claim-administration statistics, and the

8  Court has relied on these figures in ruling on the

9  Motion.

10

11  **B.  Settlement Terms**

12     **1.  Parties to the Settlement Agreement**

13      The Settlement Agreement is between Plaintiff

14  Collette McDonald, individually and on behalf of others

15  similarly situated, and Defendant Airport Terminal

16  Services.  (Ex. 1 to Harris Decl ("Settlement Agreement")

17  at 1.)  The certified Settlement Class consists of all

18  employees who were employed by ATS in California at any

19  time from November 2, 2007 to July 16, 2013.  (Mot. at

20  9.)  There are a total of 1,238 persons in the Settlement

21  Class.  (Sherwood Decl. ¶ 4.)  The Settlement Agreement

22  resolves class-wide claims for ATS's alleged (i) non-

23  payment of meal-period premiums; (ii) failure to

24  reimburse for uniform maintenance expenses; (iii) failure

25  to pay wages timely; (iv) failure to provide accurate

26  information on pay stubs stemming from the failure to pay

27  meal period premiums; and (v) unfair business practices

28

1  stemming fro the failure to pay meal period premiums and
2  reimburse for uniform-maintenance.  (Id.)  The Settlement
3  would also address civil penalties from either the
4  alleged failure to provide adequate seating or the other
5  alleged violations.  (Id.)

6
7          **2.  Settlement Payments**

8      The Settlement Agreement requires Defendant to pay a
9  total settlement sum of $250,000.00 ("Gross Settlement
10 Payment").  (Settlement Agreement at 3.)  The Gross
11 Settlement Payment shall be used to satisfy: (i)
12 attorneys' fees and costs; (ii) claims-administration
13 fees; (iii) Plaintiff's enhancement payment; (iv) payment
14 to Class Members; and (v) any and all payments (and
15 associated costs) required by the Settlement Agreement.
16 (Id.)  In terms of the payment to the Settlement Class,
17 after deducting attorneys' fees, Plaintiff's enhancement
18 award, any tax liabilities, and claim administration
19 fees, the balance (the "Net Settlement Fund" or "NSF")
20 will be distributed to Class Members who submit valid and
21 timely claim forms.  (Id. at 4.)  Two-thirds of the NSF
22 will be evenly distributed among all Class Members who
23 submit valid and timely claim forms.  (Id.)  The
24 remaining one-third of the NSF will be distributed pro
25 rata based on the number of canceled meal periods as
26 reported by Defendant.  (Id.)

27
28

### 3.   Non-Monetary Relief

Under the Settlement Agreement, Defendant agrees to provide the following non-monetary relief, within 180 days of final approval of the settlement: (1) Defendant will provide refresher training to supervisors to clarify that all breaks that do not interfere with airline routes, rates, or services are permitted and authorized; (2) Defendant will inquire with third-party airport operators and regulators whether mats are permitted and, if permitted, will request their installation at work locations; and (3) Defendant will inquire with third-party operators and regulators whether additional seating is permitted and, if permitted, will request provision of such seating at locations where it will not interfere with the nature of, or practical realities regarding, the work performed.  (Settlement Agreement at 5.)

## C.   Settlement Procedure

### 1.   Notice to Class Members and Claims Received

The parties retained Gilardi & Co., LLC ("Gilardi") as a Settlement Administrator.  On or before August 16, 2013, Defendant provided the Settlement Administrator with a file containing 1,238 records with the names, addresses, and number of canceled meal periods for known Class Members.[2]  (Sherwood Decl. ¶ 4.)  On August 26,

---

[2]The Preliminary Settlement Approval also required Defendant to provide the social security numbers of all
(continued...)

6

1  2013, within ten days of receiving the Class List, the

2  Settlement Administrator mailed the Notice to Class of

3  Proposed Settlement of Class Action to the Class List.

4  (<u>Id.</u> ¶ 6.)  Class Members had 45 calendar days to respond

5  and mail Claim Forms or Opt Out Requests.  (Preliminary

6  Approval Order at 23.)

7

8      Before mailing out the Class Notice, the Settlement

9  Administrator ran all of the records through the National

10 Change of Address Database.  (Sherwood Decl. ¶ 4.)  As of

11 October 18, 2013, the Settlement Administrator had

12 received 129 Notice Packets returned by the United States

13 Postal Service.  (<u>Id.</u> ¶ 7.)  These records were sent to

14 "skip tracing" and updated addresses were found for 117

15 of the records, and the Notice Packets were re-mailed.

16 (<u>Id.</u>)  These efforts satisfy the requirement to make

17 "reasonable, but not extraordinary, efforts" to locate

18 members of the proposed class, including an "address

19 follow-up on returned mail."  (<u>See</u> Mot. at 13.)

20

21     The Settlement Class had 45 calendar days to respond

22 and mail claim forms or opt out requests.  The postmark

23 deadline for requesting exclusion was October 10, 2013,

24 and the postmark deadline to submit an objection was

25

26 _____

27      [2](...continued)
   Class Members.  (Preliminary Approval Order at 22.)  The
   Court does not find this discrepancy, however, to be so
28 significant as to undermine final approval.

October 25, 2013.  (Sherwood Decl. ¶¶ 12-13.)  As of
November 14, 2013, the Settlement Administrator had
received 30 timely requests for exclusion and no
objections, although one objection was submitted to the
Court.  (Sherwood Decl. II ¶¶ 4-5; Mot. at 25.)  Of the
30 timely requests for exclusion, 14 also submitted a
timely Claim Form, and per the Settlement Agreement their
Claim Form will be honored and their request for
exclusion considered invalid.  (Sherwood Decl. II ¶ 4)
As a result, there were 16 valid requests for exclusion.
(Id.)  In total, the Settlement Administrator received
373 timely Claim Forms and 12 late Claim Forms, which
Class Counsel proposes should be honored.  (Id. ¶ 7; Mot.
at 13.)  Of the 386 Claim Forms received, Defendant's
records indicate that 186 experienced canceled meal
periods.  (Sherwood Decl. II ¶ 7.)

   **2.  Notice of Settlement**

   The notice packet included the Notice, the Claim
Form, and the Request for Exclusion Form.  (Id. ¶ 6.)
The Notice describes the action, the definition of the
Settlement Class, the class-wide claims and the binding
effect of a class-wide judgment, explains that Class
Members may opt out and enter an appearance through an
attorney, and specifies the time requirements and manner
of requesting exclusion.  (Mot. at 11; Ex. A to Sherwood
Decl.)  The Notice also provides a plain-language

8

overview of the settlement terms, indicates the time and
place of the final-approval hearing, and provides
information about the fees requested by Class Counsel and
the named Plaintiff and the procedure for allocating the
Net Settlement Funds to Class Members.  (Id.)

The Claim Form required Class Members to provide
their name, address, and telephone numbers.  (Ex. A to
Sherwood Decl.)  The Claim Form also stated the date on
which Class Members were required to postmark their
completed Claim Forms and Releases.  (Id. at 5.)  The
Request for Exclusion Form requires the Class Member to
provide their name, address, and telephone number and
explains the consequences of opting out of the Class
Settlement and the postmark deadline for opting out.
(Id. at 6.)

**D.   Payment to Class Members Based on Response Rate**

Under the Settlement Agreement, the $250,000 Gross
Settlement Payment will be distributed to Class Members
who have submitted valid Claim Forms, after deductions
for Class Counsel's fees and costs, the Settlement
Administrators' fees and costs, and the enhancement
payment to Plaintiff.  (Mot. at 13-14.)  Assuming the
Court approves $82,500.00 in Attorneys' fees (33 percent
of the Gross Settlement Payment), $8,069.34 in litigation
expenses, $20,000.00 in claims-administration expenses to

1   the Settlement Administrator, and a $5,000.00 incentive

2   award for Plaintiff, $134,430.66 will remain for

3   distribution to participating Class Members.  (Mot. at

4   15.)  Disbursements will be limited to Class Members who

5   submit Claim Forms.  (Mot. at 14.)  One-third of the this

6   amount ($44,805.74) is earmarked for distribution to

7   participating Class Members who experienced "NO LUNCH"

8   workdays, and two-thirds ($89,624.92) will be distributed

9   evenly to participating Class Members in satisfaction of

10  their uniform-maintenance, continuing wage, pay-stub, and

11  unfair competition claims.  (Mot. at 15.)  Based on the

12  number of participating Class Members, each Class Member

13  will receive $232.00 for their uniform cleaning claim and

14  in addition, each participating Class Member with "NO

15  LUNCH" workdays will receive an average of $241.00 in

16  missed-meal compensation.  (Zelenski Decl. II ¶¶ 5, 6.)

17

18                      **II. LEGAL STANDARD**

19  **A.   Class Certification**

20       Parties seeking class certification for settlement

21  purposes must satisfy the requirements of Federal Rule of

22  Civil Procedure 23 ("Rule 23").  Amchem Prods., Inc. v.

23  Windsor, 521 U.S. 591, 620 (1997).  A court considering

24  such a request should give the Rule 23 certification

25  factors "undiluted, even heightened, attention in the

26  settlement context."  Id.

27

28

Under Rule 23(a), in order to bring a class
action, a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all
> members is impracticable ["numerosity"], (2) there
> are questions of law or fact common to the class
> ["commonality"], (3) the claims or defenses of the
> representative parties are typical of the claims
> or defenses of the class ["typicality"], and (4)
> the representative parties will fairly and
> adequately protect the interests of the class
> ["adequacy of representation"].

In addition to these prerequisites, a plaintiff must
satisfy one of the prongs of Rule 23(b) in order to
maintain a class action.  Where, as here, a plaintiff
moves for class certification under Rule 23(b)(3), the
plaintiff must prove:

> the questions of law or fact common to the
> members of the class predominate over any
> questions affecting only individual members, and
> that a class action is superior to other
> available methods for the fair and efficient
> adjudication of the controversy.  The matters
> pertinent to the findings include: (A) the
> interest of members of the class in individually

controlling the prosecution or defense of
separate actions; (B) the extent and nature of
any litigation concerning the controversy
already commenced by or against members of the
class; (C) the desirability or undesirability of
concentrating the litigation of the claims in
the particular forum.[3]

**B.    Approving Class Action Settlement**

Rule 23(e) states: "[t]he claims, issues, or defenses
of a certified class may be settled, voluntarily
dismissed, or compromised only with the court's
approval."  The court must hold a hearing and find that
the settlement "is fair, reasonable, and adequate."  Fed.
R. Civ. P. 23(e)(2).  Review of a proposed settlement
generally proceeds in two stages, a hearing on
preliminary approval followed by a final fairness
hearing.  <u>See</u> Federal Judicial Center, Manual for Complex
Litigation, § 21.632 (4th ed. 2004).

**III. DISCUSSION**

**A.    Rule 23 Class Certification**

Based on the showing made by the parties in support
of the Motion for Preliminary Approval and the Motion for

---

[3]A fourth factor, "the difficulties likely to be
encountered in the management of a class action," need
not be considered when class certification is only for
settlement purposes.  Fed. R. Civ. P. 23(b)(3)(D); <u>Amchem
Prods.</u>, 521 U.S. at 620.

1  Final Approval and as discussed more fully in the

2  Preliminary Approval Order, the Court finds the parties

3  have met their burden as to the prerequisites for class

4  certification set forth in Rule 23(a) and (b)(3). (<u>See</u>

5  Preliminary Approval Order at 5.)

6

7      Specifically, the proposed class potentially includes

8  1,238 members[4], and therefore is so numerous that joinder

9  is impracticable. (<u>See</u> Mot. at 12.) As to commonality,

10 there are four common questions that exist: (1) whether

11 Defendant's policy of not providing meal-period premium

12 wages for documented inadequate meal breaks violates the

13 California Labor Code's express requirement that wages be

14 provided for missed meal breaks, as well as the

15 requirement that pay stubs reflect all compensation due

16 and owing; (2) whether Defendant is required to reimburse

17 Airport Agents for uniform-cleaning costs; (3) whether

18 the failure to reimburse for uniform-cleaning costs (as

19 well as the failure to provide meal-period premium wages)

20 constitutes a failure to pay all outstanding wages upon

21 the termination of employment; and (4) whether

22 Defendant's policy constitutes unfair competition.

23 (Preliminary Approval Order at 6.) As to typicality, the

24 facts common to the proposed class and the Plaintiff -

25 not receiving meal-period wages for lunch coding or

26 reimbursement for the costs of cleaning her uniform -

27      [4]Plaintiff had initially estimated the proposed class
   as approximately 1,098 members. (Preliminary Approval
28 Order at 5.)

1 │ create liability for claims typical to the class.

2 │ (Preliminary Approval Order at 9.)

3 │

4 │   As to the adequacy of the representation, Plaintiff

5 │ presented evidence sufficient to demonstrate that because

6 │ her incentive award is not conditional, her interests are

7 │ not divergent and she has the ability to protect the

8 │ interests of the class fairly and adequately.  (Id. at

9 │ 10.)  Plaintiff also submitted evidence sufficient to

10 │ demonstrate Class Counsel's qualifications.  (Id. at 10-

11 │ 11; Harris Decl. ¶¶ 2-4.)

12 │

13 │   Plaintiff also demonstrated that the four common

14 │ questions of the Class predominate over any

15 │ individualized inquiries, and a class action appears to

16 │ be superior to other available methods of fairly and

17 │ efficiently adjudicating this matter.  (Id. at 12.)

18 │

19 │ **B.   Fairness and Adequacy of the Settlement Agreement**

20 │   In determining whether or not the settlement is fair,

21 │ reasonable, and adequate, courts balance several factors,

22 │ including: (1) whether the proposed settlement appears to

23 │ be the product of serious, informed, non-collusive

24 │ negotiations; (2) the strength of plaintiffs' case; (3)

25 │ the risk, expense, complexity, and likely duration of

26 │ further litigation; (4) the risk of maintaining class

27 │ action status throughout the trial; (5) the amount

28 │

offered in settlement; (6) the extent of discovery
completed, and the stage of the proceedings; (7) the
experience and views of counsel; (8) the presence of a
governmental participant;[5] and (9) the reaction of the
class members to the proposed settlement.  See Class
Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th
Cir. 1992); In re Tableware Antitrust Litig., 484 F.
Supp. 2d 1078, 1079 (citing Manual for Complex
Litigation, Second § 30.44 (1985)).

This is "by no means an exhaustive list of relevant
considerations," though, and "[t]he relative degree of
importance to be attached to any particular factor will
depend on the unique circumstances of each case."
Officers for Justice v. Civil Serv. Com., 688 F.2d 615,
625 (9th Cir. 1982).

In evaluating a proposed settlement, "[i]t is the
settlement taken as a whole, rather than the individual
component parts, that must be examined for overall
fairness."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026
(9th Cir. 1998).  The Court "does not have the ability to
delete, modify, or substitute certain provisions," and
"[t]he settlement must stand or fall in its entirety."
Id.  The question is not whether the settlement "could be
prettier, smarter, or snazzier," but solely "whether it

---

[5]As this factor does not apply to this case, the
Court does not address it.

1   is fair, adequate, and free from collusion."   <u>Id.</u> at

2   1027.

3

4       **1.   Whether the Proposed Settlement is the Product**

5           **of Non-collusive Negotiations**

6       The Settlement Agreement appears to be the product of

7   non-collusive negotiations.   The parties conducted

8   extensive negotiations, including several settlement

9   offers and counter-offers.   (Mot. at 2-3, 21; Harris

10  Decl. ¶ 5.)   The parties agreed to work with a private

11  mediator in June 2012, and participated in mediation in

12  September 2012.   (<u>Mot.</u> at 21.)   The mediation was

13  fruitful, and resulted in a short-form memorandum of

14  understanding providing for the creation of a $250,000.00

15  settlement fund.   (<u>Id.</u> at 2-3.)   Since the execution of

16  that memorandum, the parties proceeded to negotiate the

17  terms of a long-form settlement agreement encompassing

18  the terms of the memorandum of understanding.   (<u>Id.</u>)

19  These negotiations resulted in the execution of the

20  Proposed Settlement Agreement in May 2013.   The

21  Settlement Agreement appears to be the product of arm's

22  length, informed, and non-collusive negotiations, and the

23  Court finds this factor weighs in favor of approval of

24  the settlement.

25

26

27

28

**2.   Strength of Plaintiff's Case**

The court evaluates the strength of a plaintiff's case in order to "judge the fairness of a proposed compromise." <u>Carson v. American Brands, Inc.</u>, 450 U.S. 79, 88 n.14 (1981).  The court determines whether the likelihood of success warrants the amount and form of relief offered in the settlement.  <u>Id.</u>

In her Motion for Preliminary Approval, Plaintiff conceded that "certain potentially dispositive defenses exist that may obviate <u>any and all</u> damages in this case." (Harris July 8, 2013 Decl. ¶ 9 (emphasis in original).) First, Plaintiff's meal-break claims may be preempted under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  (Harris Decl. ¶ 9.)  If preemption applies, then Class Members are not entitled to any meal-period damages.  (<u>Id.</u>)  Indeed, the Southern and Northern Districts of California dismissed as preempted class actions brought by airline-industry employees claiming a failure to provide meal and rest breaks as required under California law.  <u>See</u> <u>Angeles v. U.S. Airways, Inc.</u>, 2013 WL 622032, *1, 8 (N.D. Cal. Feb. 19, 2013) <u>reconsideration denied,</u>, 2013 WL 3243905 (N.D. Cal. June 26, 2013) (Granting motion to dismiss with prejudice because the meal and rest break claims are preempted by the ADA); <u>Blackwell v. SkyWest Airlines, Inc.</u>, 2008 WL 5103195, *1, 17, 21 (S.D. Cal. Dec. 3, 2008) (Granting

1 motion for summary adjudication as to airline employees'
2 meal and rest break claims under California law as preempted).
3
4      If preemption applies, then Proposed Class Members
5 are not entitled to any meal-period damages.  (Mot. at
6 22.)  Even if preemption does not apply, Plaintiff's
7 derivative claims for noncompliant pay stubs and
8 continuing wages cannot be based on violations of
9 California's meal-period statute.  (Id.)  Finally,
10 Plaintiff's claim for improper seating may not apply
11 because the nature of the work may not reasonably permit
12 the use of seats.  (Id.)  According to Plaintiff,
13 "[t]hese defenses potentially eliminate any liability for
14 Plaintiff's pay-stub, continuing-wage, and seating
15 claims."  (Mot. at 23.)  In light of these defenses, and
16 in consideration of the weaknesses in Plaintiff's case, a
17 $250,000.00 Gross Settlement Payment appears to be
18 reasonable.  Therefore, this factor weighs in favor of
19 approval of the settlement.
20
21      **3.   Risk, Exposure, Complexity, and Likely Duration**
22           **of Further Litigation**
23      As stated above, Plaintiff faces the risk that she
24 will not succeed on the merits of her claims.
25 Furthermore, Plaintiff notes that even if she and the
26 Class Members eventually prevail on the merits of the
27 claim, they risk recovering less than the proposed
28

settlement because, as noted above, they may not be able
to recover meal-period damages and damages from their
derivative claims.  Considering that the Settlement would
give participating Class Members, on average, 200 percent
more than what they are owed for missed breaks, as well
as an additional payment of $232.00, it seems unlikely
Plaintiff would achieve a better result through continued
litigation.  Additionally, to litigate this action to its
conclusion likely would be expensive and time consuming,
with a likely duration of several years.  (Mot. at 23.)
For the foregoing reasons, this factor weights in favor
of approval of the settlement.

### 4.   Risk of Maintaining Class Action Status
#### Throughout the Trial

There is a risk that Plaintiff's claims may be
decertified before trial.  (Mot. at 23-24.)  It is
difficult to "'determin[e] on a classwide basis whether
[missed breaks] were violations . . . or whether
individual class members voluntarily opted to start their
meal break late, cut it short, or not take a break at
all.'" (Mot. at 24 (quoting Ordonez v. Radio Shack, Inc.,
2013 WL 210223 at *7 (C.D. Cal. Jan. 17, 2013).)  This
factor weighs in favor of approval of the settlement.

**5.    Amount Offered in Settlement**

The amount offered in the Settlement is $250,000.00.
(Settlement Agreement at 3.)  In exchange for the
Settlement, Class Members agree to release "any and all
claims, debts, liabilities, demands, obligations,
guarantees, costs, expenses, attorneys' fees, penalties,
damages, restitution, injunctive relief, or a remedy of
any other type that is based on or arises out of the
allegations in the Lawsuit . . . ."  (Settlement
Agreement at 9.)


Based on the number of Class Members who have
submitted claims, Class Members who did submit claims
will receive an average of $241.00 in missed-meal
compensation, which is more than 200 percent of what they
are actually owed. (Zelenski Decl. II ¶ 5.)  Under the
Settlement Agreement, one-third of the Net Settlement
Fund ($134,430.66 based on Plaintiff's estimates of
attorney's fees and other costs), or $44,805.74, will be
distributed on a pro rata basis to the Proposed Class
Members who had a "NO LUNCH" coding stamped on their time
sheets. (July 8, 2013 Harris Decl. ¶ 8.)  The average
hourly wage for the Proposed Class Members was $12.47.
(Mot. at 16.)  Of the 1,238 Class Members in the
Settlement Class, a total of 549 experienced "NO LUNCH"
workdays. (Mot. at 15; Sherwood Decl. ¶ 5.)  Total
damages for missed meals across the entire Settlement

Class are estimated to be $61,913.55 (4,965 "NO LUNCH"
workdays multiplied by $12.47 hourly wage), or, on
average, approximately $112.00 for each Class Member who
experienced a "NO LUNCH" workday.  (<u>Id.</u>)

     Of the 386 Class Members who submitted claims, 186
have "NO LUNCH" codings. (Zelenski Decl. II ¶ 5.)  The
total number of "NO LUNCH" codings for these
participating Class Members is 1,663.  (<u>Id.</u>)  Based on
these figures, the average pre-tax Net Settlement Payment
to each Class Member with "NO LUNCH" workdays is
approximately $241.00.  (<u>Id.</u>)  Thus, participating Class
Members will receive more than 200 percent of the $112.00
they are owed.  (<u>Id.</u>)

     As for Plaintiff's uniform-cleaning claims, Defendant
never expressly required its employees to professionally
clean their uniforms.  (Mot. at 16.)  It appears Class
Members machine-washed, not dry-cleaned, their uniforms.
(<u>Id.</u>)  Under the Settlement Agreement, two-thirds of the
$134,430.66 Net Settlement Fund, or $89.624.92, will be
distributed on a pro rata basis to the 386 participating
Class Members who submitted valid Claim Forms.  Thus,
each participating Class Member will be entitled to
$232.00 in addition to the amount they may receive for
their "NO LUNCH" claims. (Zelenski Decl. II ¶ 6.)  This

1   amount also satisfies the Class Members' continuing wage,

2   pay-stub, and unfair competition claim.  (Id. at 16.)

3

4        Based on the above discussion, the Court finds that

5   the Gross Settlement Payment remedies Plaintiff and the

6   Class Members for their alleged injuries.  This factor

7   weighs in favor of approval of the settlement.

8

9        **6.   Extent of Discovery Completed and Stage of**

10            **Proceedings**

11       This factor requires that the Court evaluate whether

12   "the parties have sufficient information to make an

13   informed decision about settlement." Linney v. Cellular

14   Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).

15   Here, "Plaintiff has not had occasion to undertake any

16   'formal' discovery," but has information, as provided by

17   Defendant, regarding "the size of the Settlement Class,

18   as well as the total number of cancelled breaks during

19   the class period." (Mot. for Preliminary Approval (Doc.

20   No. 26.) at 24-25)  In addition, counsel "undertook their

21   own independent investigation to inform their negotiating

22   position, including risk re-evaluation in light of the

23   potentially dispositive defenses . . . ."  (Id.).

24

25       Regarding the meal-period claim, Plaintiff's counsel

26   was provided with data indicating the precise number of

27   "NO LUNCH" codings stamped on Class Members' timesheets.

28

(July 8, 2013 Harris Decl. ¶ 6.)  Plaintiff's counsel
also conducted interviews with some Class Members to
verify Plaintiff's meal-period claims.  (Id.)

As for the uniform-cleaning reimbursement claim,
Plaintiff's counsel examined the uniforms and conducted
interviews with Proposed Class Members.  (Id. at ¶ 12.)
Plaintiff's counsel also received information from
Defendant regarding requesting new uniforms, in lieu of
cleaning them.  (Id.)

Finally, regarding the inadequate seating claim,
Defendant provided photographs to Plaintiff's counsel
documenting the locations in which it presently provides
employee seating.  (July 8, 2013 Harris Decl. ¶ 15.)
Plaintiff's counsel also interviewed Class Members
regarding this claim.  (Id.)

Plaintiff has conducted sufficient investigation of
the various issues in this case to warrant approval.
This factor weighs in favor of approval of the
settlement.

### 7.  Experience and Views of Counsel

As explained above, Plaintiff has demonstrated
sufficiently counsel's experience.  Counsel is also in

favor of the proposed settlement.  This factor weighs in
favor of approval.

**8.    The Reaction of the Class Members to the
Proposed Settlement**

Of the 1,238 Members in the Settlement Class, 386
have submitted claims (31 percent of the Settlement
Class), 16 Members have validly requested exclusion, and
only one objection has been submitted.[6]  (Mot. at 15.)
Of the estimated 549 members within the Settlement Class
who have experienced "NO LUNCH" workdays, 186 submitted
claims (33 percent).  (Mot. at 15.)  The Court finds the
substantial participation of Class Members, as well as
the lack of many objections, weighs in favor of final
approval.

---

[6]On September 17, 2013, the Court received an
"Objection to Proposed Settlement" filed by Class Member
Silvija Spahn.  The Objection was rejected for document
discrepancies, specifically, failure to provide a copy
for Judge.  (See Doc. No. 37.)  On November 8, 2013,
Plaintiff filed a Response to Objection to Proposed
Settlement ("Response to Objection") (Doc. No. 48) and
the Declaration of David Zelenksi in Response to
Objection to the Proposed Settlement (Doc. No. 49).  Ms.
Spahn objected that the fees and costs requested under
the Settlement Agreement were excessive and should not be
paid out of the common fund, and Ms. Spahn could not
evaluate the reasonableness of the fee cost request
because a website was not established where the pleadings
in the case could be viewed.  (Response to Objection at
1.)  Since Ms. Spahn has not re-submitted her objection
in accordance with the Notice of Document Discrepancy,
and the objection appears to be without merit, the Court
overrules the objection.

1    All of the factors discussed above weigh in favor of

2  final approval.  The Court, therefore, finds the

3  Settlement Agreement fair, reasonable, and adequate.

4

5  **C.   Attorneys' Fees and Incentive Payment for Plaintiff**

6    Plaintiff seeks allocation of settlement funds for

7  attorneys' fees and costs, and for an incentive award

8  payment.  Therefore, the Court also must evaluate the

9  fairness and reasonableness of these allocations.

10

11    **1.   Attorneys' Fees**

12    Under the Settlement Agreement, Plaintiff's counsel

13  requests attorneys' fees of up to 33 percent of the Gross

14  Settlement Payment, and up to $15,000.00 in costs and

15  expenses.  (Mot. at 14; Proposed Settlement Agreement at

16  3.)  In the Motion for Attorneys' Fees, Plaintiff

17  specifically requests attorney fees of $82,500 (33

18  percent) and $8,069.34 in litigation expenses.  (Attys.'

19  Fees Mot. at 1.)

20

21    Under both California and Ninth Circuit precedent, a

22  court may exercise discretion to award attorneys' fees

23  from a common fund by applying either the lodestar

24  method[7] or the percentage-of-the-fund method.[8]   <u>Wershba v.</u>

25  ───────────────
        [7]Under the lodestar method, the court calculates the
26  fee award by applying the number of hours reasonably
    spent by a reasonable hourly rate and then enhancing that
27  figure, if necessary to account for the risks associated
    with representation.  <u>Paul, Johnson, Alston & Hunt v.</u>
28                                    (continued...)

1  <u>Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 254 (2001);

2  <u>Fischel v. Equitable Life Assurance Soc'y of U.S.</u>, 307

3  F.3d 997, 1006 (9th Cir. 2002) (citing <u>Vizcaino v.</u>

4  <u>Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002)).

5  "Irrespective of the chosen method, 'the district court

6  should be guided by the fundamental principle that fee

7  awards out of common funds be 'reasonable under the

8  circumstances.'"  <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652,

9  667 (E.D. Cal. 2008) (citations omitted).

10

11      "Although statutory awards of attorneys' fees are

12  subject to 'lodestar' calculation procedures, a

13  reasonable fee under the common fund doctrine is

14  calculated as a percentage of the recovery."  <u>Six Mexican</u>

15  <u>Workers</u>, 904 F.2d at 1311.  25 percent is the

16  "'benchmark' award that should be given in common fund

17  cases."  <u>Id.</u>  "The benchmark percentage should be

18  adjusted, or replaced by a lodestar calculation, when

19  special circumstances indicate that the percentage

20  recovery would be either too small or too large in light

21  of the hours devoted to the case or other relevant

22  factors."  <u>Id.</u>  Thus, the "25 percent benchmark rate,

23  although a starting point for analysis, may be

24  _____

25      [7](...continued)
    <u>Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).

26
        [8]Under the percentage-of-the-fund method, the court
27  calculates the fee award by designating a percentage of
    the total common fund.  <u>Six Mexican Workers v. Ariz.</u>
28  <u>Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).

1  inappropriate in some cases.   Selection of the benchmark
2  or any other rate must be supported by findings that take
3  into account all of the circumstances of the case."
4  Vizcaino, 290 F.3d at 1048.   The Court will only approve
5  fee amounts over 25 percent of the common fund "if the
6  request for attorneys' fees is reasonable and
7  proportionate to the work performed."   Clesceri v. Beach
8  City Invst'ns & Prot. Servs, Inc., 2011 WL 320998, at *10
9  (C.D. Cal. Jan. 27, 2011) (citing Murillo v. Pac. Gas &
10 Elec. Co., 266 F.R.D. 468, 480 (E.D. Cal. 2010)).

11     Plaintiff argues that her 33 percent request is
12 warranted because (1) Proposed Class Members will
13 receive, on average, 200 percent of their outstanding
14 meal-period compensation and (2) based on a lodestar
15 calculation, the amount of attorneys' fees is greater
16 than 33 percent of the Gross Settlement Payment.
17 Plaintiff argues departing from the benchmark 25 percent
18 award is appropriate because of the results obtained and
19 the degree of risk assumed, the non-cash component of the
20 settlement, the contingent-based representation,
21 Counsel's skill and the complexity of the issues, and the
22 reaction of the Class to the Settlement.   (See generally
23 Attys.' Fees Mot.)

24

25     In her Motion for Attorneys' Fees and Costs,
26 Plaintiff sets forth information supporting the lodestar
27 calculation.   According to the records provided,
28

Plaintiff's counsel has expended a total of 307.70 hours
working on this matter.  Harris expended 63.40 hours at
an hourly rate of $600.00 for a total of $38,040.00.
(Attys.' Fees Mot. at 21.)  Zelenski expended 161.70
hours at an hourly rate of $322.50 for a total of
$52,148.25.  (Id.)  Dorigan expended 82.60 hours at an
hourly rate of $450.00 for a total of $37,170.00.  (Id.)
Based on counsel's hourly rates, the total lodestar
calculation is $127,358.25.  Plaintiff argues that, since
the lodestar significantly exceeds the benchmark level of
fees, the 33 percent request is reasonable.

     To determine a reasonable rate for each attorney, the
Court must look to the rate prevailing in the community
for similar work performed by attorneys of comparable
skill, experience, and reputation.  Id. at 1210-11
(citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).
Plaintiff argues the hourly rates requested for Class
Counsel are reasonable according to the expert opinion of
Peter D. Zeughauser, and were recently approved by the
Central District of California in a wage and hour class
action.  (Harris Decl. ¶ 14; Exs. 3 and 5 to the Decl.)
Plaintiff also argues the fees are reasonable when
compared to the Laffey Matrix, which would allow for
rates of $789.50 for Harris and Dorigan and $580.61 for
Zelenski.  (Attys.' Fees Mot. at 24.)  The Court finds
these hourly rates are reasonable in light of the skill

1  and experience of the attorneys and the rate prevailing
2  in the community.

3

4      In determining a reasonable number of hours, the
5  Court must examine detailed time records to determine
6  whether the hours claimed are adequately documented and
7  whether any of them are unnecessary, duplicative, or
8  excessive.  <u>Chalmers v. City of Los Angeles</u>, 796 F.2d
9  1205, 1210 (9th Cir. 1986), <u>reh'g denied</u>, <u>amended on</u>
10 <u>other grounds</u>, 808 F.2d 1373 (9th Cir. 1987) (citing
11 <u>Hensley</u>, 461 U.S. at 433-34).  Plaintiff argues that
12 307.7 hours is a reasonable number of hours to expend
13 across 22 months of litigation, and amounts to, on
14 average, less than half-an-hour per day.  (Attys.' Fees
15 Mot. at 24.)  After reviewing the billing entries
16 submitted, the Court finds the hours and costs were
17 reasonably incurred in prosecuting the case.
18 Accordingly, Class Counsel's lodestar estimate is based
19 on a reasonable hourly rate and number of hours.

20

21     The Court finds Class Counsel's declarations in
22 support of the Motion for Attorneys' Fees provides
23 sufficient details to justify the requested $82,500.00.
24 (<u>See</u> Doc. Nos. 40, 43.)  Specifically, Plaintiff's
25 Counsel drafted pleadings, drafted the settlement
26 agreement, participated in and prepared for mediation,

27

28

1  and drafted all documents for preliminary and final

2  approval.  (Ex. 3 to Harris Decl.)

3

4      Plaintiff adequately demonstrates a reason for

5  departing from the 25 percent benchmark.  First, Class

6  Members will receive between 100-300 percent of their

7  outstanding meal-period compensation and reimbursement

8  for uniform cleaning costs.  Second, the lodestar

9  calculation significantly exceeds the benchmark level of

10  fees.  Thus, the Court finds the amount of attorneys'

11  fees requested supports approval of the settlement.

12

13      Moreover, the Court does not find awarding an amount

14  of $82,500.00 here would represent a windfall for

15  Plaintiffs' counsel.  The Court therefore finds the

16  requested amount of $82,500.00 to be within a reasonable

17  and fair range for the work on this case.

18

19      Plaintiff also seeks $8,069.34 in litigation

20  expenses.  (Attys.' Fees Mot. at 25.)  The Court notes

21  this amount is less than the $15,000.00 in expenses the

22  Court approved in the Preliminary Approval Order.  (See

23  Preliminary Approval Order at 13.)  The litigation

24  expenses requested include the costs of copying,

25  printing, mailing, mediation, filing fees, and courier

26  service fees.  (Ex. 3 to Harris Decl. 29-31.)  The Court

27  conducted a review of the records submitted by

28

1   Plaintiff's Counsel and finds the litigation expenses are

2   reasonable.

3

4       **2.   Incentive Payment for Plaintiff**

5       The Settlement proposes an incentive award of up to

6   $5,000.00 to the named Plaintiff for her efforts in

7   bringing and prosecuting this case.   (Mot. at 12;

8   Proposed Settlement Agreement at 4.)

9

10      In determining the appropriateness of the incentive

11  payment, the Court may consider:

12              1) the risk to the class representative in

13              commencing suit, both financial and otherwise;

14              2) the notoriety and personal difficulties

15              encountered by the class representative; 3) the

16              amount of time and effort spent by the class

17              representative; 4) the duration of the

18              litigation; and 5) the personal benefit (of lack

19              thereof) enjoyed by the class representative as

20              a result of the litigation.

21  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299

22  (N.D. Cal. 1995).

23

24      In support of Plaintiff's Motion for Preliminary

25  Approval, Plaintiff filed a declaration detailing the

26  time she devoted to the case: meeting with her attorneys,

27  helping draft and review the complaint, reviewing and

28

interpreting Defendant's documents, and attending a full-day mediation session.  (McDonald Decl. ¶¶ 2-4.)
Plaintiff also helped counsel by explaining Defendant's policies and interpreting Defendant's payroll documents.
(McDonald Decl. II ¶ 7.)  Plaintiff declares her "primary concern at all times has been" that Defendant's employees be treated fairly.  (McDonald Decl. ¶ 5.)  Plaintiff further declares that she "would continue to support the Settlement Agreement even if the Court were to deny awarding [her] any additional payments."  (McDonald Decl. II ¶ 7.)

The Court found Plaintiff is an adequate class representative because the incentive award here is not conditioned on Plaintiff's approval of the settlement. See Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. May 2, 2013).  Although this argument is well-taken, the Court is still concerned with the "significant disparity" (Radcliffe, 715 F.3d at 1165) between the incentive award and the payments to the rest of the Class Members.  Based on the number of valid Claim Forms filed, each participating Class Member will receive $232.00, and in addition to that amount, each Class Member with "NO LUNCH" work days will receive on average $241.00.  Plaintiff's proposed incentive award is significantly larger than these amounts.

1      In the Preliminary Approval Order, the Court found
2   that an incentive award of $5,000.00 was not reasonable
3   in light of the time expended, the applicable risks, and
4   the disparity between the incentive award and the awards
5   other Class Members will receive.  (Preliminary Approval
6   Order at 21.)  The Court revised the incentive award
7   based on the number of hours worked by Plaintiff in this
8   case, multiplied by her median hourly wage.  The Court
9   approximates Plaintiff has spent 80 hours working on this
10  case.  Her median hourly wage is $15.50.  (<u>See</u> McDonald
11  Decl. II ¶ 2.)  Multiplying these two amounts, the Court
12  found that an incentive award of $1,240.00 is
13  appropriate.  (<u>Id.</u>)

14

15     Plaintiff requests that the Court reconsider its
16  determination as to the incentive award in light of the
17  increase in recovery for participating Class Members.
18  The Court's initial analysis assumed 100 percent
19  participation by the Proposed Class Members.
20  (Preliminary Approval Order at 21.)  Assuming 100 percent
21  participation, the individual payment to Proposed Class
22  Members who have a meal-period claim would be
23  approximately $181.00.  For the remaining Class Members
24  who do not have a meal-period claim, the individual
25  payment would be $77.00.  (<u>Id.</u>)  Plaintiff requests that
26  in light of the increase in the payments to Class
27
28

Members, her enhancement award should also be increased
to $5,000.00.

The Court finds that an award of $5,000.00 is still
significantly larger than the award of any other
participating Class Member.  In recognition of the
increased award for participating Class Members, the
Court raises the incentive award to $2,000.00.

### 3.    Settlement Administrator Fees

In the Preliminary Approval Order the Court approved
Plaintiff's proposal to use Gilardi as the Settlement
Administrator.  (Preliminary Approval Order at 22.)  The
estimated cost of the Settlement Administrator's services
was $19,974.00.  (Id.)  The actual cost requested by
Plaintiff is $20,000.00.  (Mot. at 17.)  This is a
reasonable increase of only $26.00 and the Court approves
$20,000.00 in costs to the Settlement Administrator.

### D.    Adequacy of Notice Procedure

Rule 23 requires the court to direct to Class Members
"the best notice that is practicable under the
circumstances, including individual notice to all members
who can be identified through reasonable effort."  Fed.
R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1)
requires the court to "direct notice in a reasonable
manner to all Class Members who would be bound by the

34

proposal."  The notice must explain in easily understood
language the nature of the action, definition of the
class, class claims, issues and defenses, ability to
appear through individual counsel, procedure to request
exclusion, and the binding nature of a class judgment.
Fed. R. Civ. P. 23(c)(2)(B).  Plaintiff must provide
notice to potential opt-in class members that is "timely,
accurate, and informative."  See Hoffmann-La Rouche Inc.
v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim
forms must be informative and accurate.  Id. at 172;
Churchhill Village, L.L.C. v. Gen. Elec., 361 F.3d 566,
575 (9th Cir. 2004) (notice is satisfactory if it
"generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints
to investigate and to come forward and be heard").

On July 16, 2013, the Court approved the proposed
notice for the class and determined that the proposed
form and manner of class notice were adequate.
(Preliminary Approval Order at 22-23.)  The Court now
evaluates whether the parties executed class notice in
accordance with the Court's Preliminary Approval Order.

The parties followed the process for providing notice
approved in the Preliminary Approval Order.  (See Mot. at
12; Preliminary Approval Order at 21-23.)  The Settlement
Administrator provided notice to the Class using the form

1   and process the Court preliminary approved. (<u>Id.</u>) The

2   Settlement Administrator mailed the Notice Packet, which

3   included the Notice, the Claim Form, and a Request for

4   Exclusion Form, to each Class Member by August 26, 2013.

5   The Settlement Administrator received 386 claim forms, 16

6   valid requests for exclusion, and no objections. (<u>Id.</u> ¶¶

7   10, 11, 14; Mot. at 13.) 129 Notice Packets were

8   returned by the United States Postal Service. (Sherwood

9   Decl. ¶ 7.) These records were sent to "skip tracing"

10  and updated addresses were found for 117 of the records,

11  and the Notice Packets were re-mailed. (<u>Id.</u>)

12

13      Class Counsel complied with the notice requirements

14  of the Preliminary Approval Order. The ultimate Notice

15  sent to Class Members pursuant to the Preliminary

16  Approval Order was the best notice practicable under the

17  circumstances and provided sufficient notice to Class

18  Members through Class Counsel's reasonable effort.

19

20                      **IV. CONCLUSION**

21      After considering the foregoing factors, the Court

22  finds the Settlement is fundamentally fair, reasonable,

23  and adequate. Accordingly, the Court:

24      (1) GRANTS the Motion for Final Approval;

25      (2) APPROVES the Maximum Settlement Amount of

26          $250,00.00 to be paid by Defendant and dispersed

27          to Class Members, Class Counsel, the Class

28

                            36

1    Representative, and the Settlement Administrator
2    in the amounts approved by the Court in this
3    Order; and
4  (3) DISMISSES the action WITH PREJUDICE.   All Class
5    Members shall be bound by this Order.
6
7
8 Dated: November 19, 2013
9                                          VIRGINIA A. PHILLIPS
                                          United States District Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28